| Fill in this information to identify the case: | |
|---|---|
| Debtor Name: Toshiba Nuclear Energy Holdings (UK) Limited | |
| United States Bankruptcy Court for the: Southern District of New York | |
| Case Number (if known): 17-10750 (MEW) | |

☐ Check if this is an amended filing

## Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals

12/15

---

| **Part 1:** | **Summary of Assets** |
|---|---|

1. **Schedule A/B: Assets–Real and Personal Property**  (Official Form 206A/B)

    1a. **Real property:**

        Copy line 88 from Schedule A/B ................................................................... | $0

    1b. **Total personal property:**

        Copy line 91A from Schedule A/B ................................................................... | $3,680,392

    **+**

    1c. **Total of all property:**

        Copy line 92 from Schedule A/B ................................................................... | $3,680,392

---

| **Part 2:** | **Summary of Liabilities** |
|---|---|

2. **Schedule D: Creditors Who Have Claims Secured by Property**  (Official Form 206D)

    Copy the total dollar amount listed in Column A, Amount of claim, from line 3 of Schedule D ............................. | $0

3. **Schedule E/F: Creditors Who Have Unsecured Claims**  (Official Form 206E/F)

    3a. **Total claim amounts of priority unsecured claims:**

        Copy the total claims from Part 1 from line 6a of Schedule E/F ................................................. | $0

    3b. **Total amount of claims of nonpriority amount of unsecured claims:**

        Copy the total of the amount of claims from Part 2 from line 6b of Schedule E/F ...................................... | $0

    **+**

4. **Total liabilities**

    Lines 2 + 3a + 3b ................................................................... | $0

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| WESTINGHOUSE ELECTRIC COMPANY | : | Case No. 17-10751 (MEW) |
| LLC, *et al.*, | : | |
| | : | |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------- x

### GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

On March 29, 2017 (the "**Petition Date**"), Westinghouse Electric Company LLC ("**WEC LLC**") and certain debtor affiliates CE Nuclear Power International, Inc., Fauske and Associates LLC, Field Services, LLC, Nuclear Technology Solutions LLC, PaR Nuclear Holding Co., Inc., PaR Nuclear, Inc., PCI Energy Services LLC, Shaw Global Services, LLC, Shaw Nuclear Services, Inc., Stone & Webster Asia Inc., Stone & Webster Construction Inc., Stone & Webster International Inc., Stone & Webster Services LLC, Toshiba Nuclear Energy Holdings (UK) Limited, TSB Nuclear Energy Services Inc., WEC Carolina Energy Solutions, Inc., WEC Carolina Energy Solutions, LLC, WEC Engineering Services Inc., WEC Equipment & Machining Solutions, LLC, WEC Specialty LLC, WEC Welding and Machining, LLC, WECTEC Contractors Inc., WECTEC Global Project Services Inc., WECTEC LLC, WECTEC Staffing Services LLC, Westinghouse Energy Systems LLC, Westinghouse Industry Products International Company LLC, Westinghouse International Technology LLC, and Westinghouse Technology Licensing Company LLC (collectively, the "**Debtors**") each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors'

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961).   The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

chapter 11 cases are being jointly administered for procedural purposes only under case number 17-10751 (MEW) pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## OVERVIEW OF GLOBAL NOTES

Each of the Debtors has herewith filed separate Schedules of Assets and Liabilities ("**Schedules**") and Statements of Financial Affairs ("**Statements**"). These Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding Debtors' Schedules and Statements (the "**Global Notes**") relate to each Debtor's Schedules and Statements and set forth the basis upon which the Schedules and Statements are presented. **These Global Notes comprise an integral part of the Schedules and Statements and should be referred to and considered in connection with any review of the Schedules and Statements**. The Global Notes are in addition to any specific notes contained in any Debtor's Schedules or Statements. Information in the Schedules and Statements is presented as of the Petition Date and on an individual Debtor-by-Debtor basis, in either case unless otherwise noted. Disclosure of information in one Schedule, Statement, exhibit, or continuation sheet, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, exhibit, or continuation sheet.

**The Schedules, Statements, and Global Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors.**

The Schedules and Statements have been prepared pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 by the Debtors' management with the assistance of their advisors. Although management has made reasonable efforts to ensure that the Schedules and Statements are accurate and complete based upon information that was available to them at the time of preparation, subsequent information or discovery thereof may result in material changes to the Schedules and Statements, and inadvertent errors or omissions may exist. Moreover, the Schedules and Statements contain unaudited information, which is subject to further review and potential adjustment. Nothing contained in the Schedules and Statements shall constitute an admission of any claims or a waiver of any of the Debtors' rights with respect to the chapter 11 cases, including with respect to any issues involving substantive consolidation, recharacterization, equitable subordination, or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws to recover assets or avoid transfers.

The Schedules and Statements for each Debtor have been signed by Lisa J. Donahue, Chief Transition and Development Officer. In reviewing and signing the Schedules and Statements, Ms. Donahue necessarily relied upon the efforts, statements, and representations of the Debtors' other personnel and professionals. Ms. Donahue has not (and could not have) personally verified the accuracy of each such statement and representation, including, for example, statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses.

## NOTES PERTAINING TO ALL DEBTORS

1. **Basis of Presentation:**   For financial reporting purposes, before the Petition Date, the Debtors, along with certain non-Debtor affiliates, prepared consolidated financial statements that were audited annually.   Unlike the consolidated financial statements, these Schedules and Statements reflect the assets and liabilities of each separate Debtor, except if otherwise indicated. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.   Therefore, these Schedules and Statements do not purport to represent financial statements prepared in accordance with United States Generally Accepted Accounting Principles ("**GAAP**"), nor are they intended to fully reconcile with the Debtors' financial statements.

2. **Amendment:**   Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements.   Despite these efforts, inadvertent errors or omissions may exist. The Debtors reserve all rights to, but are not required to, amend or supplement, or both, the Schedules and Statements from time to time as is necessary and appropriate.

3. **Causes of Action:**   Despite their reasonable efforts, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets.   The Debtors reserve all of their rights for any claims, causes of action, or avoidance actions they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, causes of actions, or avoidance actions or in any way prejudice or impair the assertion of such claims.

4. **Recharacterization:**   The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate assets, liabilities, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.   However, due to the complexity and size of the Debtors' business and operations, the Debtors may have improperly characterized, classified, categorized, or designated certain items.   The Debtors thus reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements as necessary or appropriate as additional information becomes available.

5. **Claim Description:**   Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that the claim or amount is not "contingent," "unliquidated," or "disputed."   The Debtors reserve all of their rights to dispute, or to assert offsets or defenses to, any claim reflected on their Schedules or Statements on any grounds, including, without limitation, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed."   Moreover, the Debtors reserve all of their rights to, but are not required to, amend their Schedules and Statements as necessary and appropriate, including, modifying claim descriptions and designations.

6. **Undetermined Amounts:**   Claim amounts that could not readily be quantified by the Debtors are scheduled as "undetermined."   The description of an amount as "undetermined" is not intended to reflect upon the materiality of the amount.

7. **Payment of Prepetition Claims Pursuant to First Day Orders:**   Within the first two days of the Debtors' chapter 11 cases, the Bankruptcy Court entered orders (the "**First Day Orders**") authorizing, but not directing, the Debtors to, among other things, pay certain prepetition (a) claims of critical vendors, shippers, warehousemen, other lien claimants, and foreign creditors; (b) taxes; (c) employee wages, salaries, and other compensation and benefits; and (d) obligations related to the use of the Debtors' cash management system.   Where the Schedules and Statements list creditors and set forth the Debtors' scheduled amounts attributable to such claims, such schedules amounts reflect balances owed as of the Petition Date.   To the extent any adjustments are necessary for any payments made on account of such claims following the commencement of these chapter 11 cases pursuant to the authority granted to the Debtors by the Bankruptcy Court under the First Day Orders, such adjustments have been included in the Schedules and Statements unless otherwise noted on the applicable Schedule or Statement.   The Debtors reserve the right to update the Schedules and Statements to reflect payments made pursuant to the First Day Orders.

8. **Valuation:**   It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of their assets.   Accordingly, unless otherwise indicated, assets in the Schedules and Statements reflect net book values as of February 28, 2017.   Net book values may vary, sometimes materially, from market values.   Certain other assets, such as investments in subsidiaries, are listed at undetermined amounts, as the net book values may differ materially from fair market values or the amounts ultimately realized.   In addition, certain depreciable assets with a net book value of zero may be included for completeness.   The Debtors do not intend to amend these Schedules and Statements to reflect actual values.

9. **Excluded Assets and Liabilities:**   The Debtors believe that they have identified, but did not necessarily value, all material categories of assets and liabilities in the Schedules.   The Debtors have excluded the following items which may be included in their GAAP financial statements from the Schedules: certain accrued liabilities, including, without limitation, accrued salaries, employee benefit accruals, and certain other accruals, trusts, certain prepaid and other current assets considered to have no market value, and deferred gains.   Other immaterial assets and liabilities may also have been excluded.

10. **Liabilities:**   The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.   As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.   The Debtors reserve the right to, but are not required to, amend the Schedules and Statements as they deem appropriate to reflect this.

The liabilities listed on the Schedules and Statements do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code.   Accordingly, the Debtors reserve all rights to

dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's claim.

11. **Guarantees and Other Secondary Liability Claims:**    The Debtors have used reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, the "**Guarantees**") in their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements.    If Guarantees have been identified, they have been included in the relevant Schedules D, E/F, and H for the affected Debtor or Debtors.    However, the Debtors believe that certain Guarantees embedded in their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may be inadvertently omitted.    Thus, the Debtors reserve all of their rights to, but are not required to, amend the Schedules if additional Guarantees are identified.

12. **Leases:**    The Debtors have not included in the Schedules and Statements the future obligations of any capital or operating leases.    However, assets under a capital lease have been included in the Schedules and Statements.    Nothing in the Schedules and Statements is, or should be construed, as an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or financing arrangement), and the Debtors reserve all rights with respect thereto.

13. **Intellectual Property Rights:**    Exclusion of certain intellectual property shall not be construed to be an admission that those intellectual property rights have been sold, abandoned, or terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.    Conversely, inclusion of certain intellectual property shall not be construed to be an admission that those intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.    Accordingly, the Debtors reserve all of their rights as to the legal status of all intellectual property rights.

14. **Currency:**    Unless otherwise indicated, all amounts are reflected in U.S. dollars.

15. **Property and Equipment:**    Unless otherwise indicated, owned property and equipment are stated at net book value.    The Debtors may lease furniture, fixtures, and equipment from certain third party lessors.    Any such leases are in the Schedules and Statements.    Nothing in the Schedules and Statements is, or shall be construed as, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights.

16. **Claims of Third-Party Related Entities:**    Although the Debtors have made reasonable efforts to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities.

17. **Insiders:**   Certain Statements questions require the Debtors to disclose payments to "insiders."  Solely for purposes of these Statements questions, the Debtors include as "insiders:" (a) the Debtors' directors, (b) the Debtors' officers, (c) a person in control of the Debtors, and (d) any relatives of any of the foregoing (if known by the Debtors), each as determined as of the Petition Date.  Persons have been included in the Statements for informational purposes only, and the listing of an individual as an insider is not intended to be, and should not be construed as, a legal characterization of that person as an insider and does not act as an admission of any fact, claim, right, or defense, and all such rights, claims, and defenses are reserved.  For purposes of the Statements, the Debtors have further classified insiders into two subcategories: (i) persons who are not employed in executive management positions and do not exercise control over the Debtors but may otherwise meet the statutory criteria of an insider pursuant to section 101(31) of the Bankruptcy Code based on their position as a director or officer of a Debtor entity (the "**Statutory Insiders**"); and (ii) persons who could be construed to exercise control over the Debtors (the "**Executive Insiders**").

18. **Uncompleted Contract Accounting:** Costs and estimated earnings in excess of billings on uncompleted contracts (an asset) represent costs and estimated profit thereon in excess of related contract billings on contracts that are accounted for under the percentage-of-completion method and in progress at the balance sheet date.   Billings in excess of costs and estimated earnings on uncompleted contracts (a liability) represent billings on contracts in excess of related contract costs and estimated profit thereon at the balance sheet date.   Billings are generally based on the invoicing terms for contracts accounted for under the percentage-of-completion method and may have no direct relationship to the actual costs incurred at a given point in time.   The Debtors have listed uncompleted contracts on Schedule G, but have not reported an asset or liability due to an uncompleted contract on any of the other Schedules.

19. **Intercompany Payables and Receivables:**   Prior to the Petition Date, the Debtors routinely engaged in intercompany transactions resulting in intercompany accounts payable and receivable. The intercompany accounts payable and receivable are reported on each of the Debtor's respective A/B or F Schedules based on the net due-to or due-from amounts using the following categories: (i) invoiced intercompany trade goods and services; (ii) intercompany loans; (iii) cash pooling intercompany balances; (iv) intercompany labor distributions and transfer pricing; and (v) other intercompany items including entries related to cash concentration accounting. The Debtors also use a set of intercompany accounts that hold legacy amounts from acquisitions and divestitures, foreign exchange gains and losses, currency translation entries, as well as account balancing entries which have not been reported in the Schedules and Statements.  For purposes of the Schedules, the Debtors have reported intercompany transactions to non-Debtor affiliates as contingent and unliquidated, and have listed such amounts as "undetermined."   The Debtors may supplement the Schedules and Statements with theses intercompany account balances at a later date.   Intercompany transactions reported on Schedule A/B and Schedule F relate to trade goods and services and are reported as of March 28, 2017.   All other intercompany assets and liabilities on Schedule A/B and elsewhere (if applicable) are reported as of March 31, 2017.

The listing by the Debtors of any account between a Debtor and another Debtor or between a Debtor and a non-Debtor affiliate is a statement of what appears in a particular Debtor's books and records and does not reflect any admission or conclusion of the Debtors regarding the

allowance, classification, characterization, validity, or priority of such account.   The Debtors take no position in these Schedules and Statements as to whether such accounts would be allowed as a claim, an interest, or not allowed at all.

20. **Confidentiality:**   There may be instances in the Schedules and Statements where the Debtors have deemed it necessary and appropriate to redact from the public record information such as names, addresses, or amounts.   Typically, the Debtors have used this approach because of an agreement between the Debtors and a third party, concerns of confidentiality, or concerns for the privacy of, or otherwise preserving the confidentiality of, personally identifiable information.

21. **Payments:**   The financial affairs and businesses of the Debtors are complex.   Before the Petition Date, the Debtors and non-Debtor affiliates participated in a consolidated cash management system through which certain payments were made by one entity on behalf of another.   As a result, certain payments in the Schedules and Statements may have been made prepetition by one entity on behalf of another entity through the operation of the consolidated cash management system.   A description of the Debtors' prepetition cash management system is set forth in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 345(b), 363(b), 363(c), 364(a), 503(b)(1) and 507 and Fed. R. Bankr. P. 6003 and 6004 for (I) Interim and Final Authority to (A) Continue Existing Cash Management System, (B) Continue Existing Intercompany Transactions, (C) Honor Certain Prepetition Obligations Related Thereto, and (C) Maintain Business Forms and Existing Bank Accounts; (II) An Extension of Time to Comply with 11 U.S.C. § 345(b); and (III) Related Relief* (the "**Cash Management Motion**") [ECF No. 6].

22. **Totals:**   All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "undetermined."   If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals.

23. **Specific Schedules Disclosures:**

   a. **Schedule A/B – Real and Personal Property:**   Asset values are reported as of February 28, 2017 unless otherwise noted herein.

      (i) **Summary of Assets and Liabilities:** The Debtors have only included open accounts payable that the Debtors have received as of the Petition Date.

      (ii) **Schedule A/B.3:**   The bank account balances listed are as of the Petition Date. For purposes of the Schedules, highly-liquid debt instruments with original maturities of 3 months or less are considered to be cash equivalents.   Cash and cash equivalents may at times exceed federally insured amounts for United States bank accounts.

      (iii) **Schedule A/B.11:**   Credit is regularly extended to customers for purchases made in the ordinary course of business based upon the Debtors' assessment of creditworthiness. Accordingly, there is a significant amount of accounts receivable owed to the Debtors as of the Petition Date which will be recouped or

reimbursed in the ordinary course of business. The balances listed include certain intercompany receivables to the Debtors as of the Petition Date. Receivables, including amounts relating to intercompany trade goods and services are reported as of March 28, 2017.

As part of the Debtors normal accounting practices, a valuation allowance is provided for those accounts for which collection is estimated as doubtful; uncollectible accounts are written off and charged against the allowance. Increases in the allowance are charged to marketing, administrative and general expenses in the Debtors' income statement. Accounts are judged to be delinquent principally based on contractual terms. In estimating the allowance, management considers, among other things, how recently and how frequently payments have been received and the financial position of the customer.

(iv)    **Schedule A/B.15:**  Equity interests in subsidiaries and affiliates primarily arise from common stock ownership or member or partnership interests. For purposes of these Schedules, the Debtors have listed an undetermined value for the equity interests of all of their subsidiaries and affiliates.

(v)    **Schedule A/B; Part 5:**  Inventories are stated at the lower of cost or market. Cost is determined on a first-in, first-out or average cost method depending on the nature of the inventory. Inventories are reported net of any related reserves. The elements of cost included in inventories are direct labor, direct material and certain overhead, including depreciation. Inventories, other than those related to long term contracts and uranium inventory available for sale, are generally sold within one year.

Uranium, held in various forms, is used in the nuclear fuel fabrication operations of the business. The Debtors maintain uranium working stock in order to ensure efficient manufacturing processes. The Debtors classify all uranium working stock as a noncurrent asset. The Debtors also hold an amount of surplus uranium inventory, for which it periodically enters into transactions to sell uranium when appropriate opportunities arise. Such sales depend on many factors, including market price conditions, availability of willing purchasers and projected internal needs for uranium. Surplus uranium inventory is stated at the lower of cost or market and included in inventories.

(vi)    **Schedule A/B; Part 7:**  Office furniture, fixtures, equipment, and collectibles are recorded at cost and depreciated on a straight-line basis over the estimated useful lives of the assets. The general estimated life used for depreciation purposes is 3 to 20 years.

When office furniture or computer equipment are sold or otherwise disposed of, the asset and related accumulated depreciation accounts are relieved, and any resulting gain or loss is reflected in earnings

(vii)    **Schedule A/B; Part 8:**  Machinery, equipment and vehicles are recorded at cost and depreciated on a straight-line basis over the estimated useful lives of the assets.   The general estimated life used for depreciation purposes is 3 to 20 years.

When machinery, equipment, and vehicles is sold or otherwise disposed of, the asset and related accumulated depreciation accounts are relieved and any resulting gain or loss is reflected in earnings.

The Schedules include asset retirement obligations ("**AROs**"), which are recognized decommissioning or other legal obligation associated with the retirement of long-lived assets that result from the acquisition, construction, development and/or normal use of the asset.  The Debtors have AROs to decontaminate and dispose of certain tools.  The Debtors recognize an ARO at its fair value in the period in which it is incurred, if a reasonable estimate of fair value can be made.  The present value of the initial obligation and subsequent updates are based on discounted cash flows, which include estimates regarding timing of future cash flows, selection of discount rates and cost escalation rates, among other factors.  The liability is adjusted for any revisions to the expected value of the ARO (with corresponding adjustments to the related asset) and for accretion of the liability due to passage of time.

(viii)    **Schedule A/B.47:**   The Debtors generally purchase or lease machinery through WEC LLC, but there may be instances when another Debtor is the lessor or owner of a specific piece of machinery.   It would be time consuming and an inefficient use of the Debtors' estate assets, or impracticable, to review and assign each interest in a vehicle or other piece of machinery to a specific Debtor. Consequently, Schedule A/B.47 of WEC LLC may list interests in machinery of other Debtors.

(ix)    **Schedule A/B; Part 9:**  Real Property is recorded at cost and depreciated on a straight-line basis over the estimated useful lives of the assets.  Leasehold improvements are depreciated over the shorter of the remaining expected lease term or the estimated useful lives of the assets.   The general estimated life used for depreciation of buildings and improvements is 15 to 45 years.   As a result of certain transactions and consistent with normal accounting practices, the Debtors have adjusted the net book value of certain fixed assets to account for the implied fair market value of such assets.   The Debtors have accounted for these changes with journal entry adjustments as opposed to revaluing each individual asset. Due to the voluminous number of individual assets, it would be unduly burdensome for the Debtors to re-value each individual asset.   Schedule A/B.55 line items 36 and 37 reflect such adjustments.

Costs of improvements and renewals are capitalized, while costs of normal maintenance and repairs are charged to expense as incurred.  When property is sold or otherwise disposed of, the asset and related accumulated depreciation accounts are relieved and any resulting gain or loss is reflected in earnings.

The Debtors recognize an ARO at its fair value in the period in which it is incurred, if a reasonable estimate of fair value can be made. The present value of the initial obligation and subsequent updates are based on discounted cash flows, which include estimates regarding timing of future cash flows, selection of discount rates and cost escalation rates, among other factors. The liability is adjusted for any revisions to the expected value of the ARO (with corresponding adjustments to the related asset) and for accretion of the liability due to passage of time.

(x)     **Schedule A/B.55**:   The Debtors generally purchase or lease real property related to office and plant locations through WEC LLC, but there may be instances when another Debtor is the lessor or owner of a specific office or plant location. It would be time consuming and an inefficient use of the Debtors' estate assets, or impracticable, to review and assign each interest in real property relating to office and plant locations to a specific Debtor. Consequently, Schedule A/B.55 of WEC LLC may list interests in real property relating to office or plant locations of other Debtors.

(xi)    **Schedule A/B; Part 10:**   Goodwill consists of the cost in excess of the fair value of the identifiable net assets of entities acquired in business combinations. Goodwill is not amortized but is tested annually for impairment, with more frequent tests required if indications of impairment exist. Goodwill is then recorded at cost subject to historical impairments, if any. Intangibles, net of goodwill, have specific book balances that relate to the date Toshiba acquired an indirect ownership interest in the Debtors. These values have not been updated in the current market. Patents that exist on the books are only those that were purchased through a merger or acquisition after Toshiba's acquisition of the Debtors. Patents in the normal course of business are typically expensed. Under purchase accounting, property, equipment, intangible assets other than goodwill and other assets and liabilities were recorded at fair value at that time. The excess of the amount paid to acquire the Debtors at the time of the transaction over the fair values of these net assets represented the intrinsic value of the Debtors beyond their tangible and identifiable intangible net assets and was assigned to goodwill.

(xii)   **Schedule A/B.74**: Despite exercising their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules including, but not limited to, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets. Unless otherwise noted on specific responses, items reported on Schedule A/B are reported from the Debtors' book and records as of the Petition Date. The Debtors reserve all of their rights with respect to any claims and causes of action they may have. Neither these Global Notes nor the Schedules shall be deemed a waiver of any such claims or causes of action or to prejudice or impair the assertion thereof in any way.

(xiii)  **Schedule A/B.75**:  In the ordinary course of business, the Debtors may have accrued, or may in the future accrue, certain rights to counter-claims, cross-claims, setoffs, and/or refunds with Debtors' customers and suppliers, or potential warranty claims against their suppliers.  Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant.  Because such claims are unknown to the Debtors and not quantifiable as of the Petition Date, they are not listed on Schedule A/B.75.

(xiv)  **Schedule A/B.77**: Intercompany accounts receivable amounts are reported as of March 31, 2017 and based on the net due-from amount from the following categories: (i) intercompany loans; (ii) cash pooling intercompany balances; (iii) intercompany labor distributions and transfer pricing; and (iv) other intercompany items including entries related to cash concentration accounting. Amounts on account of intercompany trade goods and services are reported in Schedule A/B.11.

b.  **Schedule D – Creditors Holding Secured Claims:**   The claims listed on Schedule D arose and were incurred on various dates; a determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive.   Accordingly, not all such dates are included for each claim.   Except as otherwise agreed pursuant to a stipulation, agreed order, or general order entered by the Bankruptcy Court, the Debtors reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor.   Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such claim.   The descriptions provided on Schedule D only are intended to be a summary.   Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor for a scheduled claim of another Debtor, and no claim on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.  Except as specifically stated herein, real property lessors, utility companies, and other parties that may hold security deposits have not been listed on Schedule D.   Moreover, certain contracts listed on Schedule G may be secured by assets of the Debtors.   The Debtors believe it would be unduly burdensome and costly to attempt to identify and list all such agreements on Schedule D.

**Schedule E/F – Creditors Holding Unsecured Claims:**   The Debtors have exercised their reasonable efforts to list all liabilities on Schedule E/F of each applicable Debtor.   Claims listed on Schedule E/F arose or were incurred on various dates.   In certain instances, the date on which a claim arose is an open issue of fact.   Although reasonable efforts have been made to list the date that each claim arose, determination of each date upon which such claim

in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F.

As discussed above, the Bankruptcy Court entered, or the Debtors have sought authority under, a number of First Day Orders granting authority to pay certain prepetition claims. Claims against the Debtors for prepetition amounts that have not been paid and for which authority has been received may be included in Schedule E/F.   Accordingly, the Debtors reserve their rights to object to any listed claims on the ground that, among other things, they have already been satisfied.   Listing a claim on Schedule E/F as priority does not constitute an admission by the Debtors of the claimant's legal rights or a waiver of the Debtors' right to recharacterize or reclassify the claim or contract.

Schedule E/F contains information regarding pending litigation involving the Debtors. Certain litigation and environmental actions reflected as claims against WEC LLC may relate to any of the other Debtors.   In certain instances, the identity of the Debtors that are the subject of the litigation is unclear or undetermined.   However, if litigation involving a particular Debtor has been identified, that information is contained in the Schedule for that Debtor.   The inclusion of any litigation in these Schedules and Statements does not constitute an admission by the Debtors of liability, the validity of any action, the availability of insurance coverage, or the amount or treatment of any claims, defenses, counterclaims, or cross-claims or the amount or treatment of any potential claim resulting from any current or future litigation.   For the avoidance of doubt, the Debtors preserve all defenses with respect to any lawsuit listed on Schedule E/F, including, but not limited to, the right to dispute that any of the lawsuits listed were not properly filed or that Debtors were not properly served a complaint in accordance with applicable state or federal laws.   The Debtors have generally excluded internal grievance claims to protect the privacy interests of the grieving party and because the majority of such claims generally will not result in actual litigation.   In addition, certain litigation or claims covered by insurance policies maintained by the Debtors may be excluded from Schedule F.

In the ordinary course of business, the Debtors generally receive invoices for goods and services after the delivery of such goods or services.   As of the filing of the Schedules and Statements, the Debtors had not received all invoices for payables, expenses, or liabilities that may have accrued before the Petition Date.   Accordingly, the information contained in Schedules E/F may be incomplete.   The Debtors reserve the right, but are not required, to amend Schedules E/F if and as they receive such invoices.   The claims of individual creditors are generally listed at the amounts recorded on the Debtors' books and records and may not reflect credits or allowances due from the creditor.   The Debtors reserve all of their rights concerning credits or allowances.

The Debtors provide various warranties on its products and contracts for specific periods of time and have warranty claims filed against them in the ordinary course.   Warranties vary depending upon the nature of the product or contract and other factors. The liability for warranties is based upon future product performance and durability and is estimated largely based upon historical experience. Adjustments are made to accruals as claim data and historical experience warrant.

c.  **Schedule G – Executory Contracts:**    The business of the Debtors is large and complex. Although reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, or overinclusion may have occurred.   Nothing herein shall be construed as a concession or evidence that any of the contracts, agreements, and leases identified on Schedule G: (i) constitute an executory contract within the meaning of section 365 of the Bankruptcy Code and other applicable law; or (ii) have not expired or been terminated or otherwise are not currently in full force and effect.   Moreover, omission of a contract or lease from Schedule G does not constitute an admission that the contract or lease is not an executory contract or unexpired lease.   The Debtors reserve all of their rights, including their right to seek a later determination of these issues and their right to dispute the validity, status, characterization, or enforceability of any contract or lease in Schedule G.

Certain of these contracts or leases may have been modified, amended, or supplemented by various amendments, restatements, statement of works, waivers, estoppel certificates, letters, improvement initiatives, notices to proceed, field directives, side letters, commitment letters, and other documents, instruments, and agreements that may not be listed, but are nonetheless incorporated by this reference.

In some cases, the same supplier or provider appears multiple times in Schedule G.   This multiple listing may reflect distinct agreements between the applicable Debtor and the supplier or provider.   Multiple purchase orders, repair orders, or agreements with the same supplier or provider may be summarized and may not be listed on Schedule G individually.

The Debtors may have entered into various agreements in the ordinary course of their business, such as easements, rights of way, subordinations, nondisturbance and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements, non-disclosure agreements, confidentiality agreements, and similar such agreements.   These documents also may not be listed on Schedule G.

The presence of a contract or agreement on Schedule G does not constitute an admission that the contract or agreement is an executory contract or unexpired lease.   The Debtors reserve all of their rights to dispute or challenge the characterization of the structure of any transaction, or any document or instrument (including, without limitation, any intercompany agreement) related to a creditor's claim.   Certain of the contracts and leases listed on Schedule G may have been entered into by more than one of the Debtors.   Finally, certain of the contracts and leases listed on Schedule G may not have been memorialized or fully executed and could be subject to dispute.

Terms and conditions governing purchase orders, sales orders, and similar agreements may be referenced in an ancillary master services agreement ("**MSA**") or other governing document.   Schedule G includes certain of such MSAs or other governing documents. By their inclusion in this Schedule, the Debtors do not submit that any MSA is executory.   The Debtors reserve all rights with respect to such MSAs, including, but not limited to, the right to argue that they are executory.

d. **<u>Schedule H – Co-Debtors:</u>**    Although the Debtors have made every effort to ensure the accuracy of Schedule H, inadvertent errors, omissions, or inclusions may have occurred. The Debtors hereby reserve all rights to dispute the validity, status, and enforceability of any obligations set forth on Schedule H and to further amend or supplement such Schedule as necessary.    Due to the voluminous nature of debts listed in the Schedules, and to avoid unnecessary duplication, the Debtors have not listed debts that more than one Debtor may be liable if such debt is also listed on Schedules E/F or G for the respective co-Debtor liable for such debt.

The Debtors further reserve all rights, claims, and causes of action with respect to the obligations listed on Schedule H, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim.    The listing of a contract, guarantee, or other obligation on Schedule H shall not be deemed an admission that such obligation is binding, valid, or enforceable.

In the ordinary course of their business, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their business.    These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counterclaims against other parties.    Because such claims are listed elsewhere in the Statements and Schedules, they have not been set forth individually on Schedule H.

Schedule H also reflects guarantees by various Debtors.    The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, debt instruments, and other such agreements.    Further, the Debtors believe that certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable.    Thus, the Debtors reserve their right, but shall not be required, to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or are unenforceable.

24. **Specific Statements Disclosures:**

a. **Statements – Question 1 – Gross Revenues from Business:**   The gross revenue from business is listed through March 31, 2017, rather than through the Petition Date.

The Debtors' products are generally sold based upon purchase orders or contracts with customers that do not include right of return provisions or other significant post-delivery obligations, beyond warranty obligations.   Products are manufactured by a standard production process, even if manufactured to customers' specifications.   Revenue is recognized from product sales when title passes to the customer, the customer assumes risks and rewards of ownership, and collectability is reasonably assured.   Revenue from contracts to provide construction, engineering, design or other services is reported on the percentage-of-completion method of accounting.   In almost all instances, the Debtors base their estimate of the degree of completion of the contract by reviewing the relationship of costs incurred to date to the expected total costs that will be incurred on the project.   In the case of modifications to the contract, revenue is recognized when the change order has been agreed to by the customer and approval is probable, but generally no margin is recognized until a final executed change order is obtained.

Estimated contract earnings are reviewed and revised periodically as the work progresses, and the cumulative effect of any change in estimate is recognized in the period in which the change is identified.   Estimated losses are charged against earnings in the period such losses are identified.   The Debtors recognize revenue, but not profit, arising from contract claims either as income or as an offset against a potential loss only when the amount of the claim can be estimated reliably, realization is probable and there is a legal basis of the claim. Revenue is recorded only to the extent that costs associated with claims or unapproved change orders have been incurred.

b. **Statements – Question 2 – Non-Business Revenue:**   Non-business revenue is listed through March 31, 2017, rather than through the Petition Date.

c. **Statements – Question 3 - 90 Day Payments:**   The dates in the date of payment column relate to one of the following:   (i) the date of a wire transfer; (ii) the date of an ACH payment; or (iii) the clearance or issuance date for a check or money order.   Although the Debtors have attempted to remove unfunded and rejected payments, there may be items in process; therefore, certain payments reflected in Question 3 may not have been paid, and those amounts may also appear as unsecured non-priority claims in Schedule F as amounts owed to the same entities.   Payments or transfers made within the 90 days before the Petition Date to non-employee directors and/or insiders are included in Question 4, and not listed on Question 3.

d. **Statements – Question 4 – Payments to or for the Benefit of Insiders:**

(i)  <u>General</u>.    Payments, distributions and withdrawals credited or given to insiders listed under this question include: (i) transfers and payments to insiders made within 90 days of the Petition Date; and (ii) transfers and payments that benefited any insider made within one year of the Petition Date that would otherwise be included in Question 30 herein. Certain amounts paid to insiders are listed under Debtor WEC LLC, even though the individual payees may be insiders of another Debtor, because such payees are paid through WEC LLC.

(ii)  <u>Payments to Statutory Insiders</u>.    Detailed compensation data and payment information for the Statutory Insiders listed for Debtor WEC LLC have been provided to the Official Committee of Unsecured Creditors contemporaneously herewith. The aggregate amount of payments to the 35 Statutory Insiders listed for Debtor WEC LLC during the one-year period prior to the Petition Date is $12,662,221.    The aggregate amount of payments to the 35 Statutory Insiders listed for Debtor WEC LLC in the 90-day period prior to the Petition Date is $2,684,678.    The average amount of the payments made to the 35 Statutory Insiders listed for Debtor WEC LLC during the one-year period prior to the Petition Date is $361,778.

(iii)  <u>Payments to Relatives</u>.    The Debtors have identified five individuals that could meet the statutory criteria of an insider pursuant to section 101(31) of the Bankruptcy Code based on their relationship as a family member to either an Executive Insider or Statutory Insider, however, are not employed in managerial or executive positions and do not exercise control over the Debtors. The Debtors represent that such individuals are compensated at normal market rates based on their position and level of responsibility. The Debtors have provided detailed information regarding payments to such individuals to the U.S. Trustee as well as to the professional advisors to the Official Committee of Unsecured Creditors contemporaneously with the filing of the Schedules and Statements, but have not listed such payment amounts on the Schedules and Statements.

(iv)  <u>Intercompany Transactions</u>.    Certain intercompany transactions are included in Question 3.    The Debtors routinely make cash transfers to intercompany entities and affiliates in the ordinary course of business as it relates to the movement of cash to and from the concentration accounts.    WEC LLC is the primary entity who makes such payments on behalf of other Debtors and non-Debtor affiliates.    These types of intercompany cash transfers are consistent with the ordinary course of business in the Debtors' industry and can be particularly voluminous, making it unduly burdensome and costly for the Debtors to list all of the normal payments and cash transfers. However, the Debtors have listed certain intercompany trade and interest payments made between Debtor entities and non-Debtor affiliates.

e. **Statements – Question 6 – Setoffs:**   The Debtors routinely incur setoffs and net payments in the ordinary course of business.   Such setoffs and nettings may occur due to a variety of transactions or disputes including, but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, rebates, returns, warranties, refunds, negotiations, or disputes between Debtors and their customers regarding regulatory or governmental imposition costs incurred by Debtors, and other disputes between the Debtors and their customers or suppliers.   These ordinary course setoffs and nettings are common to the industry.   Due to the voluminous nature of setoffs and nettings, it would be unduly burdensome and costly for the Debtors to list each such transaction. Therefore, ordinary course set-offs are excluded from the Debtors' responses to Question 6 of the Statements. Moreover, Debtors do not have any non-ordinary course set-offs to report in Question 6.

f. **Statements – Question 7: Legal Actions or Assignments:**   The Debtors are involved in various litigation matters in the ordinary course of business.   Reserves are included in the balance sheet for issues when a negative outcome is probable and the amount is reasonably estimable.   In the opinion of management, while it is possible that certain outcomes could be unfavorable to the Debtors, the ultimate resolution of such matters will not result in judgments that, in the aggregate, would materially affect the Debtors' financial position or results of operations.   During the ordinary course of business the Debtors also undergo routine audits and inspections which have not been listed.

As of the Petition Date, several matters were in the litigation and dispute resolution process. The Debtors reserve all of their rights and defenses with respect to any and all listed lawsuits and administrative proceedings.   The listing of any such suits and proceedings shall not constitute an admission by the Debtors of any liabilities or that the actions or proceedings were correctly filed against the Debtors or any affiliates of the Debtors.   The Debtors also reserve their rights to assert that neither the Debtors nor any affiliate of the Debtors is an appropriate party to such actions or proceedings.

g. **Statements – Question 9: Charitable Contributions**:   The donations and/or charitable contributions listed in response to Question 9 represent payments made to third parties during the applicable timeframe that were recorded as such within the Debtors' books and records.

h. **Statements – Question 10 – Certain Losses:** The losses listed may exclude those incurred in the ordinary course of business, those where the amount is *de minimis*, or where the loss is less than the amount of the insurance deductible.   Amounts listed may include the value of property or estimated claim amounts for damage as well as other amounts.

i. **Statements – Question 11 – Payments Related to Bankruptcy:**   All disbursements listed in Statement 11 were initiated and disbursed by WEC LLC, but were for the benefit of all Debtors.   The Debtors believe it would be an inefficient use of the Debtors' estates to allocate these payments on a Debtor-by-Debtor basis.    The response to Question 11 on each Debtor's Statements thus refers to WEC LLC's answer to Question 11 except for Debtor Toshiba Nuclear Energy Holdings (UK) Limited's answer, which also reflects the payment of a legal retainer solely for the benefit of Toshiba Nuclear Energy Holdings (UK) Limited.

j.  **Statements – Question 21 – Property Held for Another Person:**  Pursuant to various agreements including warranty, repair and other customer obligations, the Debtors regularly hold property undergoing repair or warranty related work on behalf of its customers in the ordinary course.   The Debtors have not included such amounts in their responses to Question 21.   To the extent the Debtors hold property on behalf of other persons which could be considered outside of the ordinary course, the Debtors have made their best efforts to include herein.

k.  **Statements – Questions 22–24 – Environmental:**   The Debtors have historically maintained property and operations in many locations.   At some of these locations, the Debtors no longer have any operations, and, as of the Petition Date, may no longer maintain relevant records, or the records may no longer be complete or reasonably accessible and reviewable.   Individuals who once possessed responsive information may no longer be employed by the Debtors.   For all of these reasons, it is not reasonably possible to identify and supply the requested information for every site and proceeding responsive to Question 22–24.   Nonetheless, the Debtors have devoted substantial internal and external resources to identifying and providing the requested information for as many responsive sites and proceedings as reasonably possible.   The Debtors reserve all of their rights to, but are not required to, supplement or amend this response if additional information becomes available.

If a site identified in Question 23 or 24 is the subject of multiple notices, or notices that preceded and were related to proceedings listed in the response to Question 22, all such notices may not be listed.

The response to Question 24 (concerning notices by the Debtors of releases) does not list routine reports and submissions, if they exist, concerning discharges resulting from normal operations if the reports and submissions were made in compliance with regulatory requirements, such as discharge monitoring reports, toxic release inventory submissions, or submissions concerning air emissions.

Environmental expenditures that do not extend the service lives of assets or otherwise benefit future years are expensed.   Environmental expenditures related to operations that generate current or future revenues are expensed or capitalized, as appropriate.   The Debtors record liabilities when environmental assessments or remedial efforts are probable and the costs can be reasonably estimated. Such estimates are adjusted, if necessary, as new remediation requirements are defined or as additional information becomes available.   Compliance with federal, state and local laws and regulations relating to the discharge of pollutants into the environment, the disposal of hazardous wastes and other related activities affecting the environment have had and will continue to have an impact on the Debtors.

l. **<u>Statements – Question 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders:</u>** The Debtors believe that Question 30 was answered by the Debtors' response to Question 4 and have therefore not listed any payments, distributions, or withdrawals to insiders under this section.

m. **<u>Statements – Question 31 – Consolidated Group for Tax Purposes:</u>**  Certain of the Debtors file a U.S. consolidated income tax return and other state and non-U.S. jurisdictional income tax returns as required.   Income taxes are not recorded on undistributed earnings of foreign subsidiaries that have been or are intended to be reinvested indefinitely. Upon distribution, those earnings may be subject to income taxes and withholding taxes payable to various foreign countries. A determination of the amount of unrecognized deferred tax liability for temporary differences related to investments in foreign subsidiaries is not practical. Also, the Debtors presently cannot estimate the amount of unrecognized withholding taxes that may result.

**Toshiba Nuclear Energy Holdings (UK) Limited**                    **Case Number: 17-10750 (MEW)**

## Schedule A/B: Assets — Real and Personal Property

| Part 1: | Cash and cash equivalents |
|---|---|

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No. Go to Part 2.
   ☑ Yes. Fill in the information below.

| General description | Type of account (if applicable) | Last 4 digits of account # (if applicable) | Current value of debtor's interest |
|---|---|---|---|
| 2. **Cash on hand** | | | |
| 2.1    NONE | | | $0 |
| 3. **Checking, savings, money market, or financial brokerage accounts (Identify all)** | | | |
| 3.1    SUMITOMO MITSUI BANKING CORPORATION | CHECKING | 1348 | $0 |
| 3.2    SUMITOMO MITSUI BANKING CORPORATION | CHECKING | 6836 | $1,000,000 |
| 3.3    SUMITOMO MITSUI BANKING CORPORATION | CHECKING | 1351 | $369,422 |
| 3.4    SUMITOMO MITSUI BANKING CORPORATION | CHECKING | 1350 | $0 |
| 3.5    SUMITOMO MITSUI BANKING CORPORATION | CHECKING | 1349 | $2,310,970 |
| 4. **Other cash equivalents (Identify all)** | | | |
| 4.1    NONE | | | $0 |

5. **Total of Part 1.**

   Add lines 2 through 4. Copy the total to line 80.

   **$3,680,392**

**Toshiba Nuclear Energy Holdings (UK) Limited**    **Case Number: 17-10750 (MEW)**

## Schedule A/B: Assets — Real and Personal Property

| Part 2: | Deposits and prepayments |
|---|---|

6.  **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.

☐ Yes. Fill in the information below.

| General description | Current value of debtor's interest |
|---|---|

7.  **Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

7.1 _____    _____

8.  **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
Description, including name of holder of prepayment

8.1 _____    _____

9.  **Total of Part 2**

Add lines 7 through 8. Copy the total to line 81.

**Toshiba Nuclear Energy Holdings (UK) Limited**                    Case Number: 17-10750 (MEW)

## Schedule A/B: Assets — Real and Personal Property

| Part 3: | Accounts receivable |
|---|---|

10. **Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.

☐ Yes. Fill in the information below.

| General description | Face or requested amount | Doubtful or uncollectable | Current value of debtor's interest |
|---|---|---|---|
| 11.   Accounts receivable | | | |
| 11a. 90 days old or less: | _____ - | _____ = | _____ |
| 11b. Over 90 days old: | _____ - | _____ = | _____ |
| 11c. All accounts receivable: | _____ - | _____ = | _____ |

12. **Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

**Toshiba Nuclear Energy Holdings (UK) Limited**                    **Case Number: 17-10750 (MEW)**

## Schedule A/B: Assets — Real and Personal Property

| Part 4: | Investments |
|---------|-------------|

13. **Does the debtor own any investments?**

☐ No. Go to Part 5.

☑ Yes. Fill in the information below.

| General description | Valuation method used for current value | Current value of debtor's interest |
|---------------------|----------------------------------------|------------------------------------|

14. **Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

14.1

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:

15.1    SEE EXHIBIT IN FOLLOWING PAGES                    NONE                    UNDETERMINED

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1

17. **Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.

$0

# Organizational Chart
### as of May 19, 2017

| KEY | |
|---|---|
| ☐ | Debtor |
| ⬚ | Non-Debtor Affiliate |
| ⬭ | Non-Debtor Joint Venture |

*Percentage Ownership Interests Not Specified

TOSHIBA CORPORATION

NATIONAL ATOMIC COMPANY KAZATOMPROM

TOSHIBA NUCLEAR ENERGY HOLDINGS (US) INC.

TOSHIBA NUCLEAR ENERGY HOLDINGS (UK) LIMITED

TSB NUCLEAR ENERGY USA GROUP INC.

WESTINGHOUSE ELECTRIC UK HOLDINGS LIMITED

TSB NUCLEAR ENERGY SERVICES INC.

EMEA ENTITIES

WESTINGHOUSE ELECTRIC COMPANY LLC

KW NUCLEAR COMPONENTS CO., LTD.

WESTRON

WUHAN HUIXIN ENGINEERING TECHNOLOGY CO. LTD.

WESTINGHOUSE TECHNOLOGY LICENSING COMPANY LLC

WESTINGHOUSE INTERNATIONAL TECHNOLOGY LLC

FAUSKE AND ASSOCIATES LLC

CE NUCLEAR POWER INTERNATIONAL, INC.

WEC SPECIALTY LLC

WECTEC LLC

PAR NUCLEAR HOLDING CO., INC.

WEC ENGINEERING SERVICES INC.

PAR NUCLEAR, INC.

WESDYNE INTERNATIONAL LLC

NUCRANE MANUFACTURING, LLC

WESTINGHOUSE ENERGY SYSTEMS LLC

WECTEC STAFFING SERVICES LLC

WECTEC GLOBAL PROJECT SERVICES INC.

WESTINGHOUSE GOVERNMENT SERVICES LLC

NUCLEAR TECHNOLOGY SOLUTIONS LLC

FLUOR|WESTINGHOUSE LIQUID WASTE SERVICES, LLC

WESTINGHOUSE INDUSTRY PRODUCTS INTERNATIONAL COMPANY LLC

FIELD SERVICES, LLC

SHAW GLOBAL SERVICES, LLC

MID-AMERICA CONVERSION SERVICES, LLC

STONE & WEBSTER INTERNATIONAL INC.

WEC WELDING AND MACHINING, LLC

SHAW NUCLEAR SERVICES, INC.

STONE & WEBSTER SERVICES LLC

WEC EQUIPMENT & MACHINING SOLUTIONS, LLC

WEC CAROLINA ENERGY SOLUTIONS, LLC

PCI ENERGY SERVICES LLC

STONE & WEBSTER CONSTRUCTION INC.

WEC CAROLINA ENERGY SOLUTIONS, INC.

STONE & WEBSTER ASIA INC.

WECTEC CONTRACTORS INC. fka CB&I Contractors, Inc.

**Toshiba Nuclear Energy Holdings (UK) Limited**                                                    **Case Number:  17-10750 (MEW)**

## Schedule A/B: Assets — Real and Personal Property

| **Part 5:** | **Inventory, excluding agriculture assets** |

18.   **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.

☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19.   **Raw materials** | | | | |
| 19.1 _____ | _____ | _____ | _____ | _____ |
| 20.   **Work in progress** | | | | |
| 20.1 _____ | _____ | _____ | _____ | _____ |
| 21.   **Finished goods, including goods held for resale** | | | | |
| 21.1 _____ | _____ | _____ | _____ | _____ |
| 22.   **Other Inventory or supplies** | | | | |
| 22.1 _____ | _____ | _____ | _____ | _____ |

23.   **Total of Part 5.**

Add lines 19 through 22. Copy the total to line 84.                    _____

24.   **Is any of the property listed in Part 5 perishable?**

☐ No

☐ Yes

25.   **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes.    Book Value _____    Valuation method _____    Current value _____

26.   **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No

☐ Yes

Toshiba Nuclear Energy Holdings (UK) Limited                    Case Number:  17-10750 (MEW)

## Schedule A/B: Assets — Real and Personal Property

**Part 6:**    Farming and fishing-related assets (other than titled motor vehicles and land)

27.  **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28.  **Crops—either planted or harvested** | | | |
| 28.1 | | | |
| 29.  **Farm animals** Examples: Livestock, poultry, farm-raised fish | | | |
| 29.1 | | | |
| 30.  **Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| 30.1 | | | |
| 31.  **Farm and fishing supplies, chemicals, and feed** | | | |
| 31.1 | | | |
| 32.  **Other farming and fishing-related property not already listed in Part 6** | | | |
| 32.1 | | | |

33.  **Total of Part 6.**

Add lines 28 through 32. Copy the total to line 85.                    _____

34.  **Is the debtor a member of an agricultural cooperative?**

☐ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

☐ No

☐ Yes

35.  **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes.    Book Value _____    Valuation method _____    Current value _____

36.  **Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No

☐ Yes

37.  **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No

☐ Yes

Toshiba Nuclear Energy Holdings (UK) Limited                    Case Number: 17-10750 (MEW)

## Schedule A/B: Assets — Real and Personal Property

**Part 7:**    Office furniture, fixtures, and equipment; and collectibles

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No. Go to Part 8.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

39. **Office furniture**

39.1 _____

40. **Office fixtures**

40.1 _____

41. **Office equipment, including all computer equipment and communication systems equipment and software**

41.1 _____

42. **Collectibles**

42.1 _____

43. **Total of Part 7**

Add lines 39 through 42. Copy the total to line 86.

_____

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

☐ No

☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☐ No

☐ Yes

**Toshiba Nuclear Energy Holdings (UK) Limited**                    Case Number:  17-10750 (MEW)

## Schedule A/B: Assets — Real and Personal Property

| Part 8: | Machinery, equipment, and vehicles |
|---------|-------------------------------------|

46.   **Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---------------------|-------------------------------------------------------|------------------------------------------|-------------------------------------|

47.   **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

47.1  _____     _____     _____     _____

48.   **Watercraft, trailers, motors, and related accessories**
      Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

48.1  _____     _____     _____     _____

49.   **Aircraft and accessories**

49.1  _____     _____     _____     _____

50.   **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

50.1  _____     _____     _____     _____

51.   **Total of Part 8**

      Add lines 47 through 50. Copy the total to line 87.

      _____

52.   **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No

☐ Yes

53.   **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☐ No

☐ Yes

Toshiba Nuclear Energy Holdings (UK) Limited                          Case Number: 17-10750 (MEW)

## Schedule A/B: Assets — Real and Personal Property

**Part 9:**     **Real property - detail**

54.  **Does the debtor own or lease any real property?**

☑ No. Go to Part 10.

☐ Yes. Fill in the information below.

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

55.  **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| 55.1 | NONE | | | | $0 |
|---|---|---|---|---|---|

56.  **Total of Part 9**                                                                                       **$0**

Add the current value on all Question 55 lines and entries from any additional sheets. Copy the total to line 88.

57.  **Is a depreciation schedule available for any of the property listed in Part 9?**

☑ No

☐ Yes

58.  **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No

☐ Yes

Toshiba Nuclear Energy Holdings (UK) Limited                                    Case Number:  17-10750 (MEW)

## Schedule A/B: Assets — Real and Personal Property

| Part 10: | Intangibles and intellectual property |
|---|---|

59.  **Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

60.  **Patents, copyrights, trademarks, and trade secrets**

60.1 _____    _____    _____    _____

61.  **Internet domain names and websites**

61.1 _____    _____    _____    _____

62.  **Licenses, franchises, and royalties**

62.1 _____    _____    _____    _____

63.  **Customer lists, mailing lists, or other compilations**

63.1 _____    _____    _____    _____

64.  **Other intangibles, or intellectual property**

64.1 _____    _____    _____    _____

65.  **Goodwill**

65.1 _____    _____    _____    _____

66.  **Total of Part 10**

Add lines 60 through 65. Copy the total to line 89.                     _____

67.  **Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. §§ 101(41A) and 107)?**

☐ No

☐ Yes

68.  **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☐ No

☐ Yes

69.  **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☐ No

☐ Yes

Toshiba Nuclear Energy Holdings (UK) Limited                    Case Number:  17-10750 (MEW)

## Schedule A/B: Assets — Real and Personal Property

| Part 11: | All other assets |
|---|---|

70.  **Does the debtor own any other assets that have not yet been reported on this form? Include all interests in executory contracts and unexpired leases not previously reported on this form.**

☐ No. Go to Part 12.

☑ Yes. Fill in the information below.

| General description | Current value of debtor's interest |
|---|---|

71.  **Notes receivable**
     Description (include name of obligor)

71.1 _____ _____

72.  **Tax refunds and unused net operating losses (NOLs)**
     Description (for example, federal, state, local)

72.1 _____ _____

73.  **Interests in insurance policies or annuities**

73.1 _____ _____

74.  **Causes of action against third parties (whether or not a lawsuit has been filed)**

74.1 _____ _____

75.  **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

75.1 _____ _____

76.  **Trusts, equitable or future interests in property**

76.1 _____ _____

77.  **Other property of any kind not already listed Examples: Season tickets, country club membership**
     Examples: Season tickets, country club membership

77.1  Intercompany Loan Receivable - Due from Non-Debtor Affiliates (TSB (Investments Europe) Ltd.)          Undetermined

**Toshiba Nuclear Energy Holdings (UK) Limited**                    Case Number:  17-10750 (MEW)

## Schedule A/B: Assets — Real and Personal Property

| Part 11: | All other assets |
|----------|------------------|

| General description | Current value of debtor's interest |
|---------------------|-----------------------------------|

77.  **Other property of any kind not already listed Examples: Season tickets, country club membership**
     Examples: Season tickets, country club membership

    77.2   Intercompany Loan Receivable - Due from Non-Debtor Affiliates (Uranium Asset Management Limited)     Undetermined

    77.3   Intercompany Loan Receivable - Due from Non-Debtor Affiliates (Westinghouse Electric UK Holdings Ltd)     Undetermined

78.  **Total of Part 11**
     Add lines 71 through 77. Copy the total to line 90.                                     **Undetermined**

79.  **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
     ☑ No
     ☐ Yes

**Toshiba Nuclear Energy Holdings (UK) Limited**                    Case Number: **17-10750 (MEW)**

## Schedule A/B: Assets — Real and Personal Property

**Part 12:**    **Summary**

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property | Total of all property |
|---|---|---|---|
| 80.  Cash, cash equivalents, and financial assets. Copy line 5, Part 1. | $3,680,392 | | |
| 81.  Deposits and prepayments. Copy line 9, Part 2. | $0 | | |
| 82.  Accounts receivable. Copy line 12, Part 3. | $0 | | |
| 83.  Investments. Copy line 17, Part 4. | $0 | | |
| 84.  Inventory. Copy line 23, Part 5. | $0 | | |
| 85.  Farming and fishing-related assets. Copy line 33, Part 6. | $0 | | |
| 86.  Office furniture, fixtures, and equipment; and collectibles. Copy line 43, Part 7. | $0 | | |
| 87.  Machinery, equipment, and vehicles. Copy line 51, Part 8. | $0 | | |
| 88.  Real property. Copy line 56, Part 9. | | $0 | |
| 89.  Intangibles and intellectual property. Copy line 66, Part 10. | $0 | | |
| 90.  All other assets. Copy line 78, Part 11. | $0 | | |
| 91.  Total. Add lines 80 through 90 for each column. | a. $3,680,392 | b. $0 | |

92.  **Total of all property on Schedule A/B. Lines 91a + 91b = 92.**          | $3,680,392 |

**Toshiba Nuclear Energy Holdings (UK) Limited**                                    **Case Number: 17-10750 (MEW)**

## Schedule D: Creditors Who Have Claims Secured by Property

1. **Do any creditors have claims secured by debtor's property?**

   ☑ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

   ☐ Yes. Fill in all of the information below.

| **Part 1:** | **List Creditors Who Have Secured Claims** |
| --- | --- |

2. **List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.**

| Creditor's Name and Mailing Address, E-mail Address & An Account Number | Co-Interest | Insider | Co-Debtor | Date Claim was Incurred, Property Description, Lien & Co-Interest Creditor | C | U | D | Amount of Claim | Value of Collateral |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| **2.** | ☐ | ☐ | ☐ | | ☐ | ☐ | ☐ | $0 | UNDETERMINED |

**Total:**          **$0**

**Toshiba Nuclear Energy Holdings (UK) Limited**                                    **Case Number: 17-10750 (MEW)**

## Schedule D: Creditors Who Have Claims Secured by Property

                                                                        **Amount of Claim**

3.  **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**                        **$0**

**Toshiba Nuclear Energy Holdings (UK) Limited**                    **Case Number:  17-10750 (MEW)**

## Schedule D: Creditors Who Have Claims Secured by Property

| Part 2: | List Others to Be Notified for a Debt Already Listed in Part 1 |
|---|---|

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

| Name and Mailing Address | Part 1 Line on which the Related Creditor was Listed | Last 4 Digits of Account Number for this Entity |
|---|---|---|
| NONE | | |

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

**Toshiba Nuclear Energy Holdings (UK) Limited**

**Case Number:  17-10750 (MEW)**

**SPECIFIC NOTES REGARDING SCHEDULE EF**

**Specific Notes Regarding Schedule EF**

Schedule F for TNEH (UK) includes a line item for a dividend that was declared by TNEH (UK), but not paid by TNEH (UK) to its majority shareholder, Toshiba Corporation.  The dividend was declared in September 2016 for fiscal year 2015.  Under applicable UK law, a declared but unpaid dividend may be argued to be a debt obligation under certain circumstances, and, thus, the claim listed based on this declared but unpaid dividend is listed as disputed, as well as contingent and unliquidated.

**Toshiba Nuclear Energy Holdings (UK) Limited**                    Case Number: **17-10750 (MEW)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 1:** | **List All Creditors with PRIORITY Unsecured Claims** |
|---|---|

1.  **Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).**

    ☐ No. Go to Part 2.

    ☑ Yes. Go to line 2.

2.  **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Offset | Total Claim | Priority Amount |
|---|---|---|---|---|---|---|---|
| **Taxes and certain other debts owed to the government 507(a)(8)** | | | | | | | |
| **2.1** CUSTOMER RELATIONS MANAGER LARGE BUSINESS (WEST MIDLAND) 50987 NEW CASTLE NE98 1ZZ | UNKNOWN<br><br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☐ | ☐ | $0 | $0 |
| | **Taxes and certain other debts owed to the government 507(a)(8) Total:** | | | | | | $0 | $0 |

**Toshiba Nuclear Energy Holdings (UK) Limited**                                      **Case Number: 17-10750 (MEW)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 1:**    **List All Creditors with PRIORITY Unsecured Claims**

| | | |
|---|---|---|
| **Total: All Creditors with PRIORITY Unsecured Claims** | **$0** | **$0** |

**Toshiba Nuclear Energy Holdings (UK) Limited**                    Case Number: **17-10750 (MEW)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

3.    List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Intercompany Loans** | | | | | | | |
| 3.1    TOSHIBA OF EUROPE LTD.<br>3 FURZEGROUND WAY, 1ST FLOOR<br>UXBRIDGE, MX UB11 1EZ<br>UNITED KINGDOM | 11/1/2016<br><br>ACCOUNT NO.:<br>NOT<br>AVAILABLE | ☑ | ☑ | ☐ | Intercompany Loan | ☐ | UNDETERMINED |
| 3.2    TOSHIBA NUCLEAR ENERGY HOLDINGS (US) INC.<br>1251 AVENUE OF THE AMERICAS<br>SUITE 4110<br>NEW YORK, NY 10020 | 3/24/2016<br><br>ACCOUNT NO.:<br>NOT<br>AVAILABLE | ☑ | ☑ | ☐ | Intercompany Loan | ☐ | UNDETERMINED |
| | | | | Intercompany Loans Total: | | | **UNDETERMINED** |

**Toshiba Nuclear Energy Holdings (UK) Limited**                    **Case Number: 17-10750 (MEW)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Other Unsecured Debt** | | | | | | | |
| 3.3    TOSHIBA CORPORATION<br>ATTN: GENERAL MANAGER<br>LEGAL AFFAIRS DIVISION POWER SYSTEM COMPANY ACCOUNT NO.:<br>72-34, HORIKAWA-CHO<br>SAIWAI-KU, KAWASAKI<br>JAPAN | 9/29/2016<br><br>NOT<br>AVAILABLE | ☑ | ☑ | ☑ | Dividend | ☐ | UNDETERMINED |
| | | | | | Other Unsecured Debt Total: | | **UNDETERMINED** |

**Toshiba Nuclear Energy Holdings (UK) Limited**                    **Case Number: 17-10750 (MEW)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

Total: All Creditors with NONPRIORITY Unsecured Claims                    **UNDETERMINED**

**Toshiba Nuclear Energy Holdings (UK) Limited**                              Case Number: **17-10750 (MEW)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 3: | List Others to Be Notified About Unsecured Claims |
|---|---|

4.   List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed
     are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

| Creditor's Name, Mailing Address Including Zip Code | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **4.1** NONE | | |

**Toshiba Nuclear Energy Holdings (UK) Limited**                    Case Number:  17-10750 (MEW)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 4:**    Total Amounts of the Priority and Nonpriority Unsecured Claims

5.    **Add the amounts of priority and nonpriority unsecured claims.**

<u>Total of claim amounts</u>

| | | | |
|---|---|---|---|
| 5a. | **Total claims from Part 1** | 5a. | $0 |
| 5b. | **Total claims from Part 2** | 5b.    **+** | $0 |
| 5c. | **Total of Parts 1 and 2** | 5c. | $0 |
| | Lines 5a + 5b = 5c. | | |

**Toshiba Nuclear Energy Holdings (UK) Limited**                                         **Case Number: 17-10750 (MEW)**

## Schedule G: Executory Contracts and Unexpired Leases

1.  **Does the debtor have any executory contracts or unexpired leases?**

    ☐  No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

    ☑  Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

2.  **List all contracts and unexpired leases**

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|

### Engagement Letters

| | | | | | |
|---|---|---|---|---|---|
| 2. 1   PWC TAX CONSULTATION SERVICES | | ENGLT 051 | ☑ | PRICEWATERHOUSECOOPERS LLP | 300 MADISON AVE FL 24 NEW YORK, NY 10017 |

**Toshiba Nuclear Energy Holdings (UK) Limited**                                                    **Case Number:  17-10750 (MEW)**

## Schedule G: Executory Contracts and Unexpired Leases

**TOTAL NUMBER OF CONTRACTS:  1**

**Toshiba Nuclear Energy Holdings (UK) Limited**                    **Case Number: 17-10750 (MEW)**

## Schedule H: Codebtors

1. **Does the debtor have any codebtors?**

   ☑ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

   ☐ Yes

2. **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.**

   Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1 | Column 2 | Applicable Schedule | | |
|---|---|---|---|---|
| **Codebtor Name and Mailing Address** | **Creditor Name** | **D** | **E/F** | **G** |
| 2. 1 | | ☐ | ☐ | ☐ |

**Total Number of Co-Debtor / Creditor rows: 0**

| Fill in this information to identify the case and this filing: |
|---|
| Debtor Name: Toshiba Nuclear Energy Holdings (UK) Limited |
| United States Bankruptcy Court for the: Southern District of New York |
| Case Number (if known): 17-10750 (MEW) |

## Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors          **12/15**

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**Warning -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### ▮      Declaration and Signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- [X] Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)

- [X] Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)

- [X] Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

- [X] Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)

- [X] Schedule H: Codebtors (Official Form (206H)

- [X] Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)

- [ ] Amended Schedule _____

- [ ] Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

**Executed on:**      May 26, 2017                    **Signature:**  /s/ Lisa J. Donahue

                                          Lisa J. Donahue, Chief Transition and Development Officer
                                          **Name and Title**