**Presentment Date and Time: August 28, 2017 at 11:00 a.m. (Eastern Time)**
**Objection Deadline: August 25, 2017 at 4:00 p.m. (Eastern Time)**
**Hearing Date and Time (Only if Objection Filed): September 7, 2017 at 11:00 a.m. (Eastern Time)**

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Robert J. Lemons
Garrett A. Fail

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **WESTINGHOUSE ELECTRIC COMPANY** | : | **Case No. 17-10751 (MEW)** |
| **LLC,** *et al.*, | : | |
| | : | |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------- x

## NOTICE OF PRESENTMENT OF APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 328, FED. R. BANKR. P. 2014(a) AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 FOR AUTHORITY TO EMPLOY AND RETAIN DELOITTE FINANCIAL ADVISORY SERVICES LLP AS FINANCIAL ADVISORY SERVICES PROVIDER *NUNC PRO TUNC* TO THE PETITION DATE

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961). The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

PLEASE TAKE NOTICE that on **August 28, 2017** at **11:00 a.m. (Eastern Time)**, the undersigned will present the *Application of Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014(a) and 2016, and Local Rules 2014-1 and 2016-1 for Authority to Employ and Retain Deloitte Financial Advisory Services LLP as Financial Advisory Services Provider Nunc Pro Tunc to the Petition Date* (the "**Application**") to the Honorable Michael E. Wiles, United States Bankruptcy Judge, in Room 617 of the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, New York, New York, 10004 (the "**Bankruptcy Court**").

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Application must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, and shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and the *Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures* [ECF No. 101] so as to be received no later than **August 25, 2017 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Application, the Debtors may, on or after the Objection Deadline,

2

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Application, which order may be entered with no further notice or opportunity to be heard.

Dated: August 11, 2017
     New York, New York

             /s/ Robert J. Lemons
             Gary T. Holtzer
             Robert J. Lemons
             Garrett A. Fail
             WEIL, GOTSHAL & MANGES LLP
             767 Fifth Avenue
             New York, New York 10153
             Telephone: (212) 310-8000
             Facsimile: (212) 310-8007

             *Attorneys for Debtors*
             *and Debtors in Possession*

WEIL:\96185857\5\80768.0015

Presentment Date and Time: August 28, 2017 at 11:00 a.m. (Eastern Time)
Objection Deadline: August 25, 2017 at 4:00 p.m. (Eastern Time)
Hearing Date and Time (Only if Objection Filed): September 7, 2017 at 11:00 a.m. (Eastern Time)

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Robert J. Lemons
Garrett A. Fail

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **WESTINGHOUSE ELECTRIC COMPANY** | : | **Case No. 17-10751 (MEW)** |
| **LLC, *et al.*,** | : | |
| | : | |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------ x

# APPLICATION OF DEBTORS PURSUANT
## TO 11 U.S.C. §§ 327(a) AND 328, FED. R. BANKR. P. 2014(a) AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 FOR AUTHORITY TO EMPLOY AND RETAIN DELOITTE FINANCIAL ADVISORY SERVICES LLP AS FINANCIAL ADVISORY SERVICES PROVIDER *NUNC PRO TUNC* TO THE PETITION DATE

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961). The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

TO THE HONORABLE MICHAEL E. WILES,
UNITED STATES BANKRUPTCY JUDGE:

Westinghouse Electric Company LLC and certain debtor affiliates, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"),

respectfully represent as follows in support of this application (the "**Application**"):

## Background

1.      On March 29, 2017 (the "**Petition Date**"), each Debtor commenced with

this Court a voluntary case under chapter 11 of title 11 of the United States Code

(the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses

and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

2.      The Debtors' chapter 11 cases are being jointly administered for

procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**").

3.      On April 7, 2017, the United States Trustee for Region 2 appointed the

Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102 of the

Bankruptcy Code.

4.      Additional information regarding the Debtors' business, capital structure,

and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

*Declaration of Lisa J. Donahue Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the*

*Southern District of New York*, sworn to and filed on the Petition Date [ECF No. 4].

## Jurisdiction

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January

2

31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

6.      By this application, pursuant to sections 327(a) and 328 of title 11 of the

United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Debtors

request authority to retain and employ Deloitte Financial Advisory Services LLP ("**Deloitte**

**FAS**") to provide certain necessary financial advisory services to the Debtors in accordance with

the terms and conditions of that certain engagement letter dated as of March 11, 2016, including

any amendments and schedules thereto (the "**Engagement Letter**"), *nunc pro tunc* to the

Petition Date.

7.      A proposed form of order granting the relief requested herein on a final

basis is annexed hereto as **Exhibit A** (the "**Proposed Order**").

8.      In support of this Application, the Debtors submit the declaration of

Steven F. Stanton, a managing director of Deloitte FAS (the "**Stanton Declaration**") annexed

hereto as **Exhibit B**.

## Deloitte FAS's Qualifications

9.      The Debtors seek to employ and retain Deloitte FAS to provide necessary

financial advisory services to the Debtors because of its considerable experience in advising

debtors and creditor constituencies and providing a broad range of financial advisory services in

large and complex chapter 11 cases throughout the United States.

3

10.    Deloitte FAS has provided various professional services to the Debtors since approximately 2009.  In providing such prepetition professional services to the Debtors, Deloitte FAS has become familiar with the Debtors and their financial affairs, debt structure, business operations, and related matters.  Having worked with the Debtors' management, Deloitte FAS has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during the Chapter 11 Cases.  Accordingly, Deloitte FAS is both well-qualified and able to provide the services for the Debtors during the pendency of these chapter 11 cases (the "**Chapter 11 Cases**") in an efficient and timely manner and it is in the best interests of the Debtors' estates and creditors to employ and retain Deloitte FAS to provide necessary financial advisory services to the Debtors.  Deloitte FAS's services fulfill an important need and are not provided by any of the Debtors' other professionals of the type proposed hereunder and because of its knowledge about, and understanding of, the Debtors' businesses because of the work Deloitte FAS has performed for the Debtors in the past.

### Services Provided by Deloitte FAS

11.    Subject to the Court's approval of the Application, Deloitte FAS has agreed to provide professional services to the Debtors pursuant to the terms and conditions of the Engagement Letter.  These services will include reviewing and analyzing financial information and other data in connection with the purchase price adjustment between Westinghouse Electric Company ("**WEC**") and Chicago Bridge & Iron related to the acquisition of outstanding equity interests of CB&I Stone & Webster, Inc.

### Efforts to Avoid Duplication of Services

12.    The services performed by Deloitte FAS are intended to complement, not unnecessarily duplicate or overlap with, other services performed by any other professional

4

retained by the Debtors in these Chapter 11 Cases.[2]  As set forth in the Stanton Declaration,

Deloitte FAS understands that the Debtors have retained and may retain additional professionals

during the term of the Engagement Letter will use its reasonable efforts to work cooperatively

with the Debtors to avoid unnecessary duplication of services.

## Professional Compensation

13.    As set forth in the Stanton Declaration, and subject to Court approval, the

Debtors understand and have agreed that Deloitte FAS will apply to the Court for allowances of

compensation and reimbursement of expenses in accordance with General Order M-412 (Order

Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of

Professionals, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447

(Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New

York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)), and the U.S. Trustee Guidelines

for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 (Appendix A to 28 C.F.R. § 58) (collectively, the "**Fee Guidelines**"), the

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the *Order

Pursuant to 11 U.S.C. §§ 105(a), 330, 331, Fed R. Bankr. P. 2016, and Local Rule 2016-1

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals* [ECF No. 544] (the "**Interim Compensation Order**"), and any other applicable

orders of the Court, both in connection with the Application and the interim and final fee

applications to be filed by Deloitte in these Chapter 11 Cases, in accordance with the terms and

conditions of the Engagement Letters.  Moreover, the Debtors are advised that Deloitte FAS

---

[2]    Jeffrey Egertson, a retired partner of Deloitte & Touche LLP, is working with Deloitte FAS and providing
certain dispute consulting services for the Debtors.  Mr. Egertson has a separate agreement with the Debtors that
provides that he will bill them directly for any professional services rendered to the Debtors.

5

intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the Fee Guidelines.

14.     Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Fee Guidelines, the Debtors propose to compensate Deloitte FAS in accordance with the its customary terms and conditions of employment, including the proposed compensation agreements as set forth in the Engagement Letter.

15.     Pursuant to the terms of the Engagement Letter, Deloitte FAS agreed to charge the Debtors the applicable hourly billing rates by classification of personnel with respect to such services, set forth in the table below.

| Personnel Classification | Hourly Rates |
| --- | --- |
| Partner/Principal/Managing Director | $ 592 |
| Senior Manager | $ 513 |
| Manager | $ 473 |
| Senior Associate | $ 406 |
| Associate | $ 340 |

16.     Hourly rates are revised periodically in the ordinary course of Deloitte FAS's business.  Deloitte FAS shall advise the Debtors of any new rates should it institute a rate-change during the Chapter 11 Cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

17.     In addition to the rates set forth above, the Debtors propose to reimburse Deloitte FAS for all actual, reasonable and necessary expenses incurred by Deloitte FAS in connection with the professional services performed, including, but not limited to, expenses incurred on account of travel and lodging, data processing and storage, and communications charges, courier services, and other similar expenses incurred on behalf of the Debtors.

18.     The Debtors are advised that Deloitte FAS intends to file interim and final fee applications for the allowance of compensation for the services rendered and reimbursement

6

of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Bankruptcy Local Rules, and any applicable orders of the Court, including

the Interim Compensation Oder and the Order granting this application (to the extent compliance

is not waived), and/or any guidelines issued by the Office of the U.S. Trustee.

19.      The Debtors are advised that Deloitte FAS will maintain records in

support of any fees incurred in connection with the services it performs in the Chapter 11 Cases

by category and nature of the services rendered, and will provide reasonably detailed

descriptions of those services rendered on behalf of the Debtors, the time expended in provided

those services, and the individuals who provided professional services on behalf of the Debtors.

Deloitte FAS will present such records to the Court in its fee applications to the Court.  Deloitte

FAS requests that the invoices, after appropriate review, be paid in a manner consistent with the

payment of other retained professionals in this matter, consistent with any administrative orders,

if any, that would apply to interim payments.  All payments rendered pursuant to Deloitte FAS's

retention by the Debtors must be approved by an order of this Court and based upon the filing by

Deloitte FAS of appropriate interim and final applications for allowance of compensation and

reimbursement of expenses.

20.      The fee structure summarized above is consistent with Deloitte FAS's

customary billing practices for comparable engagements.   Moreover, the fee structure is

consistent with and typical of arrangements entered into by Deloitte FAS with the rendering of

comparable services to clients such as the Debtors.  The Debtors submit that the Fee Structure is

fair and reasonable and market-based under the standards set forth in section 328(a) of the

Bankruptcy Code.

WEIL:\96185857\5\80768.0015

21.    The Debtors propose that all compensation and expenses will be sought in accordance with section 328(a) of the Bankruptcy Code and will not be subject to any other standard of review, including section 330 of the Bankruptcy Code.  The Debtors also propose that, notwithstanding Deloitte FAS's retention under section 328(a), the U.S. Trustee will retain the right to object to the compensation to be paid to Deloitte FAS pursuant to the Engagement Letter based on the reasonableness standard provided for in section 330 of the Bankruptcy Code; provided that reasonableness for this purpose shall include, among other things, an evaluation by comparing the fees payable in this case to the fees paid to other comparable firms for comparable services in other chapter 11 cases and outside of chapter 11 cases, and shall not be evaluated primarily on the basis of time committed or the length of these cases.

22.    Deloitte FAS and Deloitte Transactions and Business Analytics LLP ("**DTBA**"), an affiliate of Deloitte FAS, provided prepetition services to the Debtors.  In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte FAS $2,291,566, including the application of retainer amounts, and DTBA $628,399.  As of the Petition Date, no amounts were outstanding with respect to the invoices issued by DTBA, and $196,978 was outstanding with respect to the invoices issued and/or work performed by Deloitte FAS.

23.    Prior to the Petition Date, Deloitte Consulting LLP ("**Deloitte Consulting**") and Deloitte Tax LLP ("**Deloitte Tax**"), affiliates of Deloitte FAS, each provided certain professional services to the Debtors.  In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte Tax $9,022 for services performed.  The Debtors did not make any payments to Deloitte Consulting during this period.  As of the Petition Date, no amounts were outstanding with respect to the invoices issued by Deloitte Consulting.  As of the Petition Date, $3,119 was outstanding with respect to the invoice(s) issued by Deloitte Tax.

8

24.     Some services incidental to the tasks to be performed by Deloitte FAS in the Chapter 11 Cases may be performed by personnel now employed by or associated with affiliates of Deloitte FAS, such as DTBA, Deloitte & Touche LLP, Deloitte Tax and Deloitte Consulting, and/or their respective subsidiaries, including subsidiaries located outside of the United States.

25.     The Debtors are advised that Deloitte FAS has received no promises regarding compensation in the Chapter 11 Cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration.  Deloitte FAS has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in the Chapter 11 Cases.

### Deloitte FAS's Disinterestedness

26.     As set forth in the Stanton Declaration, and upon review of its client database, Deloitte FAS has learned that it has, has had, or will have a business relationship with certain creditors of the Debtors, as well as various other parties potentially adverse to the Debtors in matters unrelated to the Chapter 11 Cases.  However, Deloitte FAS has represented to the Debtors that (a) neither Deloitte FAS, nor any partner, principal, or managing Director of Deloitte FAS that is anticipated to provide the services for which Deloitte FAS is to be retained (the "**Engagement Partners/Principals/Managing Directors**") holds any interest adverse to the Debtors; and (b) Deloitte FAS and the Engagement Partners/Principals/Managing Directors have no relationship to the Debtors, their significant creditors, certain other significant parties-in—interest, or to the attorneys that are known to be assisting the Debtors in the Chapter 11 Cases, except as set forth in the Stanton Declaration.  Moreover, to the extent the Application is granted, the Debtors have been advised that Deloitte FAS will not seek to recover amounts invoiced and owing for professional services rendered prior to the Petition Date.

9

27.     Accordingly, to the best of the Debtors' knowledge and except to the extent disclosed herein and in the Stanton Declaration:  (i) Deloitte FAS is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors' estates; and (ii) Deloitte FAS has no connection to the Debtors, their creditors, the U.S. Trustee, or any other party with a significant interest in the Debtors' cases or their attorneys or accountants except as may be disclosed in the Stanton Declaration.  To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of the Debtors' retention are discovered or arise, Deloitte FAS will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## **Basis for Relief Requested**

28.     The Debtors seek authority to employ and retain Deloitte FAS for financial advisory services under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtor] in carrying out the [Debtor's] duties under this title."  11 U.S.C. § 327(a).

29.     The Debtors seek approval of the fee structure and related compensation terms set forth in the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Accordingly, section

10

328 of the Bankruptcy Code permits the compensation of professionals, including tax service providers, on flexible terms that reflect the nature of their services and market conditions.

30.     The compensation arrangement set forth in the Engagement Letter sets forth reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.  The fee and expense structure adequately reflects: (i) the nature of the services to be provided by Deloitte FAS; and (ii) fee and expense structures typically utilized by Deloitte FAS and other leading financial advisory service providers.  In addition, as noted above, Deloitte FAS is "disinterested" and all of its fees and expenses are subject to approval of the Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines, and any applicable law or further orders of the Court.

31.     Accordingly, the Debtors submit that the relief requested in the Application is in the best interests of their estates, creditors, and all parties-in-interest in these chapter 11 cases, and the Court should approve the employment and retention of Deloitte FAS pursuant to the terms set forth in the Engagement Letter, *nunc pro tunc* to the Petition Date.

## **Notice**

32.     Notice of this Application will be provided to the Rule 2002 Parties set forth in the *Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures* [ECF No. 101].  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

33.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

11

WHEREFORE the Debtors respectfully request entry of the Proposed Order and

such other and further relief as the Court may deem just and appropriate.


Dated: August 11, 2017
        New York, New York


                                    WESTINGHOUSE ELECTRIC COMPANY, LLC
                                    (for itself and on behalf of its affiliates
                                    as Debtors and Debtors in Possession)

                                    /s/ Lisa J. Donahue
                                    NAME:  Lisa J. Donahue
                                    TITLE:  Chief Transition and Development Officer


                                    12

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **WESTINGHOUSE ELECTRIC COMPANY** | : | **Case No. 17-10751 (MEW)** |
| **LLC,** *et al.*, | : | |
| | : | |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

--------------------------------------------------------------- x

### ORDER PURSUANT TO 11 U.S.C. §§ 327(A) AND 328, FED. R. BANKR. P. 2014(A) AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 FOR AUTHORITY TO EMPLOY AND RETAIN DELOITTE FINANCIAL ADVISORY SERVICES LLP AS FINANCIAL ADVISORY SERVICES PROVIDER *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "**Application**"),[2] dated August 11, 2017 of

Westinghouse Electric Company LLC and certain debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to

sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"),

Rule 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")

and Rule 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**") for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961). The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

[2] Capitalized terms not otherwise defined herein shall have the definitions ascribed to them in the Application.

authority to employ and retain Deloitte Financial Advisory Services LLP ("**Deloitte FAS**") to provide certain necessary financial advisory services to the Debtors in accordance with the terms and conditions of that certain engagement letter dated as of March 11, 2016, including any amendments and schedules thereto (the "**Engagement Letter**"), *nunc pro tunc* to March 29, 2017 (the "**Petition Date**"), as more fully set forth in the Application and the Declaration of Steven F. Stanton (the "**Stanton Declaration**"); and the Court being satisfied, based on the representations made in the Application and in the Stanton Declaration, that Deloitte FAS is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and, as required by section 327(a) of the Bankruptcy Code and referenced by section 328 of the Bankruptcy Code, neither represents nor holds an interest adverse to the Debtors or their estates; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application having been given as provided in the Application, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice of the Application need be provided; and the Court having found and determined that the relief sought in the Application and granted herein is in the best interests of the Debtors, their respective estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

WEIL:\96185857\5\80768.0015

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, to retain and employ Deloitte FAS to provide certain necessary financial advisory services to the Debtors on an hourly basis, in accordance with the terms and conditions of the Engagement Letter, including without limitation, the compensation terms set forth therein, *nunc pro tunc* to the Petition Date, and to pay fees and reimburse expenses to Deloitte FAS on the terms set forth in the Engagement Letter, subject to the further limits set forth in the Application and in this Order.  For the avoidance of doubt, this Order approves the terms on which post-petition services are being provided but it does not authorize an assumption of any executory contracts.  Deloitte FAS shall not seek recovery of any unpaid professional fees owed to Deloitte FAS that accrued prior to the Petition Date.

3.      Except as set forth herein, the terms of the Engagement Letter are reasonable terms and conditions of employment and are approved.

4.      Deloitte FAS shall file interim and final fee applications for allowance of compensation for services rendered and reimbursement of expenses incurred (including, without limitation, the reasonable fees, and other charges of Deloitte FAS's counsel, which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise) in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable law and any applicable orders of this Court.

5.      Notwithstanding anything to the contrary contained herein, the U.S. Trustee retains all rights to respond or object to Deloitte FAS's interim and final applications for

WEIL:\96185857\5\80768.0015

compensation and reimbursement of out-of-pocket expenses based on the reasonableness standard in section 330 of the Bankruptcy Code.

6. Deloitte FAS shall include in its fee applications, among other things, time records setting forth, in summary format, a description of the services rendered by each professional, and the time expended on each date by each such individual in rendering services on behalf of the Debtors in one-tenth hour increments.

7. Prior to increasing any rates set forth in the Engagement Letter or the Application, Deloitte FAS shall file a supplemental declaration with the Court and give ten (10) business days' notice to the Debtors, and the U.S. Trustee, which supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and indicate whether the Debtors have received notice of and approved the proposed rate increase.

8. The indemnification provisions set forth in the General Business Terms Appendix to the Engagement Letter are approved subject to the following modifications with respect to the services performed thereunder after the Petition Date and prior to the effective date of any plan of reorganization of the Debtors:

      a. All requests for payment of indemnity, contribution, or otherwise pursuant to the Indemnification Provisions shall be made by means of a final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Indemnification Provisions, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and other orders of this Court and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall an indemnified party be indemnified or receive contribution to the extent that any claim arose or expense has resulted for any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the breach of contract, gross negligence, willful misconduct, or fraud of any indemnified parties;

4

b.      In no event shall any indemnified parties be indemnified or receive contribution or other payment under the Indemnification Provisions if the Debtors or a representative of the Debtors' estates asserts a claim for, and a court determines by a final order that such claims primarily arose out of, such person's breach of contract, gross negligence, willful misconduct, or fraud of any Indemnified Parties;

c.      In the event an indemnified party seeks reimbursement of attorneys' fees from the Debtors pursuant to the indemnification provisions, the invoices and supporting time records from such attorneys shall be attached to Deloitte FAS's own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee guidelines and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

d.      Any provision of the Engagement Letter or General Business Terms that purports to limit the amount of liability of Deloitte FAS, or that purports to limit the types of damages that may be awarded in an action against Deloitte FAS shall be of no effect and shall be deemed to have been deleted.

e.      Any provision of the Engagement Letter or General Business Terms relating to expense policies and reimbursements shall be subject to the applicable Guidelines set forth in the Local Rules and General Orders of this Court.

9.      The Engagement Letter is modified as follows with respect to services performed thereunder for the Debtors after the Petition Date and through the effective date of any plan of reorganization:

a.      Paragraph 8 of the General Business Terms shall be deemed deleted and replaced with the following:

Nothing contained in the Engagement Letter shall alter in any way the duties imposed by law on Advisor in respect of the Services provided hereunder. It is understood and agreed that, with respect to the relationship between Advisor, on the one hand, and Company, on the other hand, each party hereto is an independent contractor and neither party is nor shall be considered to be, nor

5

shall purport to act as, the other's agent, distributor, partner, joint venturer, or representative.

b.    If Deloitte FAS must respond to subpoenas or other legal process seeking documents or information it shall do so at its own expense. Any provision of the Engagement Letter that authorizes Deloitte FAS to seek payment for its professional time and expenses in connection with such requests, including out-of-pocket attorney fees, is not approved and shall not apply.

10.    To the extent there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, this Order shall govern.

11.    Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

12.    Nothing contained in this Order, nor any payment made pursuant to this Order, shall be dispositive with respect to any future allocation of responsibility between and among Debtors and non-Debtors for such payment, and all rights with respect thereto are expressly reserved by the UCC.

13.    The Debtors are authorized to take all action necessary to carry out this Order.

6

14.     Notwithstanding anything in the Application or the Engagement Letter to the contrary, during the pendency of the chapter 11 cases, this Court retains exclusive jurisdiction over all matters arising out of and/or pertaining to Deloitte FAS's engagement.  Any provision of the Engagement Letter that provides for mediation or arbitration or for jurisdiction in a different court shall not be applicable unless this Court lacks jurisdiction pursuant to the previous sentence.

Dated: _____, 2017
      New York, New York

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

7

## Exhibit B

**Stanton Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- x

In re:                                                    :        **Chapter 11**
                                                          :
**WESTINGHOUSE ELECTRIC COMPANY**        :        **Case No. 17-10751 (MEW)**
**LLC**, *et al.*,                                        :
                                                          :
                                                          :
               Debtors.[1]                                :        **(Jointly Administered)**
                                                          :

--------------------------------------------------------------- x

**DECLARATION OF STEVEN F. STANTON IN SUPPORT OF THE APPLICATION OF
DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 328, FED. R. BANKR. P. 2014(a)
AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 FOR AUTHORITY TO EMPLOY
AND RETAIN DELOITTE FINANCIAL ADVISORY SERVICES LLP FOR
FINANCIAL ADVISORY SERVICES *NUNC PRO TUNC* TO THE PETITION DATE**

I, Steven F. Stanton, under penalty of perjury, declares as follows:

1.  I am a managing director of the firm of Deloitte Financial Advisory Services LLP

("**Deloitte FAS**"), which has an office at 555 12th Street NW, Suite 400, Washington, D.C.

20004.  I am duly authorized to make and submit this declaration (the "**Declaration**") on behalf

of Deloitte FAS as financial service provider to Westinghouse Electric Company LLC and

certain  above-captioned debtors and debtors in possession (collectively, the "**Debtors**") in

support of the *Application of Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed. R.*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961).  The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

*Bankr. P. 2014(a) and 2016, and Local Rules 2014-1 and 2016-1 for Authority to Employ and*

*Retain Deloitte Financial Advisory Services LLP for Financial Advisory Services Nunc Pro Tunc*

*to the Petition Date* (the "**Application**").[2]

2.      The Debtors seek to retain Deloitte FAS pursuant to the terms and conditions set forth in the parties' engagement letter, dated March 11, 2016 (the "**Engagement Letter**"), a copy of which is annexed to the Application as **Exhibit C**.

3.      The statements set forth in this Declaration are based upon my personal knowledge, information and belief, the declaration of Keith Adams (the "**Adams Declaration**") submitted in connection with the Debtors' application to retain Deloitte Transactions and Business Analytics LLP ("**DTBA**"), an affiliate of Deloitte FAS, and client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte FAS or its affiliates.

### Deloitte FAS's Qualifications

4.      Deloitte FAS has considerable experience advising debtors and creditor constituencies and providing a broad range of financial advisory services in large and complex chapter 11 cases throughout the United States.  Such experience renders Deloitte FAS well-qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases (the "**Chapter 11 Cases**") in a cost-effective, efficient, and timely manner.  Deloitte FAS's services fulfill an important need and are not provided by any of the Debtors' other professionals.

5.      It is my understanding that Deloitte FAS has provided various professional

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

2

services to the Debtors since approximately 2009.  In providing such prepetition professional services to the Debtors, Deloitte FAS has become familiar with the Debtors and their financial affairs, debt structure, business operations, and related matters.  Having worked with the Debtors' management, Deloitte FAS has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during the Chapter 11 Cases.  Accordingly, Deloitte FAS is both well-qualified and able to provide the services for the Debtors during the Chapter 11 Cases in an efficient and timely manner.

### **Disinterestedness**

6.      Subject to the foregoing, except as set forth herein and in the attachments hereto, to the best of my information, knowledge, and belief based on reasonable inquiry:  (a) neither I, Deloitte FAS, nor any partner, principal, or managing director of Deloitte FAS that is anticipated to provide the services for which Deloitte FAS is to be retained (the "**Engagement Partners/Principals/Managing Directors**") holds any interest adverse to the Debtors; and (b) Deloitte FAS and the Engagement Partners/Principals/Managing Directors have no relationship to the Debtors, their significant creditors, certain other significant parties-in-interest, or to the attorneys that are known to be assisting the Debtors in the Chapter 11 Cases, except as stated herein or in any attachment hereto.

7.       From time to time, Deloitte FAS and its affiliates have provided or may currently provide services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to the Chapter 11 Cases, except as set forth herein or in the attachments hereto.

8.      As discussed in the Adams Declaration, in connection with its proposed retention by the Debtors, DTBA undertook a search to determine and to disclose whether it or its affiliates,

3

including Deloitte FAS, is or has been employed by, or have any relationships with the entities (the "**Potential Parties-in-Interest**"), whose specific names were provided to DTBA by the Debtors.  To check upon and disclose possible relationships with significant Potential Parties-in-Interest in the Chapter 11 Cases, DTBA researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with the Debtors or the significant Potential Parties-in-Interest.

9.       Deloitte FAS and its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtors or other parties-in-interest.  Accordingly, Deloitte FAS and/or its affiliates have had, currently have and/or may have in the future banking or other relationships with such parties, or provided, may currently provide, and/or may provide in the future professional services to certain of these parties in matters unrelated to the Chapter 11 Cases.  Additionally, certain significant Potential Parties-in-Interest have or may have provided goods or services, may currently provide goods or services, and/or may in the future provide goods or services to Deloitte FAS and/or its affiliates and the Engagement Partners/Principals/Managing Directors in matters unrelated to the Chapter 11 Cases.  A listing of such parties is attached to this Declaration as **Schedule 1**.

10.      Deloitte FAS believes that the relationships described herein or reflected on Schedule 1 have no bearing on the services for which Deloitte FAS's retention is being sought by the Debtors in the Chapter 11 Cases.  Furthermore, such relationships do not impair Deloitte FAS's disinterestedness, and Deloitte FAS does not represent an adverse interest in connection with the Chapter 11 Cases.

11.      Despite the efforts described above to identify and disclose Deloitte FAS's connections with the significant Potential Parties-in-Interest in the Chapter 11 Cases, because

4

Deloitte FAS is a nationwide firm with many employees, Deloitte FAS is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if Deloitte FAS discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

12.    To the best of my knowledge, based on the internal search discussed above, Deloitte FAS has determined that certain relationships should be disclosed as follows:

(i)    Deloitte FAS and/or its affiliates provide services in matters unrelated to the Chapter 11 Cases to certain of the Debtors' largest unsecured creditors and other Potential Parties-in-Interest or their affiliates listed on Schedule 1.

(ii)    Law firms identified on Schedule 1, including Jones Day LLP; Kilpatrick Townsend & Stockton LLP; Latham & Watkins LLP; Ogletree, Deakins, Nash, Smoak & Stewart, P.C.; Parker, Poe, Adams & Bernstein LLP; Paul, Weiss, Rifkind & Garrison LLP; Proskauer Rose LLP; Reed Smith LLP; Seyfarth Shaw LLP; Rinaldi, Finkelstein & Franklin, LLC; Shearman & Sterling LLP; Skadden, Arps, Slate, Meagher & Flom LLP; Wachtell, Lipton, Rosen & Katz LLP; and Weil, Gotshal & Manges LLP, have provided, currently provide and may in the future provide legal services to Deloitte FAS or its affiliates in matters unrelated to the Chapter 11 Cases, and/or Deloitte FAS or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

(iii)    In the ordinary course of its business, Deloitte FAS and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be Potential Parties-in-Interest in the Chapter 11 Cases.  For example, from time to time, Deloitte FAS and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

(iv)    Certain financial institutions or their respective affiliates (including AIG; Allianz Global Corporate & Specialty SE; Citibank, N.A.; ING Bank N.V.; JPMorgan Chase Bank, N.A.; Insurance Company of the State of Pennsylvania; Lloyd's Syndicate; MB Financial Bank, N.A.; Metropolitan Life Insurance Co.; National Union Fire Insurance, *et al.*; Teachers Insurance and Annuity Association of America; U.S. Bank; and Wells Fargo Bank, N.A.) listed on Schedule 1 (i) are lenders to an affiliate of Deloitte FAS (Deloitte FAS is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte FAS and its affiliates.

(v)    Certain Potential Parties-in-Interest may be adverse to and/or involved in

5

litigation matters with Deloitte FAS or its affiliates in connection with matters unrelated to the Chapter 11 Cases.

(vi) Certain firms around the world, including affiliates of Deloitte FAS, are members of Deloitte Touche Tohmatsu Limited ("**DTTL**"), a United Kingdom company limited by guaranty. Certain of the non-US member firms of DTTL or their affiliates (the "**DTT Member Firms**") have provided, currently provide or may in the future provide professional services to certain of the Debtors or their affiliates.[3] In particular, the DTT Member Firm in India ("**Deloitte India**") performed tax services for certain of the Debtors.

(vii) I understand that the DTT Member Firm in Japan and/or its affiliates ("**Deloitte Japan**") has in the past provided, is currently providing and is expected in the future to provide, services for Toshiba Corporation ("**Toshiba**"), the parent entity of the Debtors, in matters unrelated to these chapter 11 cases. In addition, prior to the Petition Date, I understand that Deloitte Japan provided services for Toshiba related to a potential restructuring of the Debtors; however, these services were completed prior to the Petition Date.

(viii) Deloitte FAS and/or its affiliates have provided and currently provide services to Toshiba and its affiliates in matters unrelated to these Chapter 11 Cases.

(ix) Deloitte FAS and/or its affiliates have provided and continue to provide services to SCANA Corporation ("**SCANA**") and Southern Company Services, Inc. ("**Southern**"), who are members of the official committee of unsecured creditors, in matters unrelated to these chapter 11 cases, including, in the case of Deloitte & Touche LLP ("**Deloitte & Touche**"), an affiliate of Deloitte FAS, acting as their independent auditor. However, in its capacity as independent auditor, Deloitte & Touche is providing ordinary course accounting advice and conducting typical audit procedures arising from SCANA's and Southern's contractual arrangement with the Debtors.

(x) Deloitte & Touche has provided and continues to provide audit services to certain clients and/or their affiliates in matters unrelated to these Chapter 11 Cases. In its capacity as independent auditor, Deloitte & Touche also provides such clients with ordinary course auditing services and conducts typical audit procedures that may arise from such clients' business arrangements with the Debtors.

(xi) Deloitte FAS and/or its affiliates have provided royalty compliance services for a client assessing amounts that the Debtors may owe under a license

---

[3] Each of the DTT Member firms is a separate and independent legal entity. It is not Deloitte FAS's practice to undertake conflicts checks with DTT Member Firms for the purpose of identifying relationships that they may have with the Debtors and other parties-in-interest and Deloitte FAS does not maintain a database for the purpose of identifying all such relationships.

6

arrangement; however, these services were completed prior to the Petition Date.

(xii) Deloitte FAS and certain of its affiliates, including Deloitte Tax LLP ("**Deloitte Tax**") and Deloitte & Touche, have provided, continue to provide and may in the future provide services to Apollo Global Management, LLC and certain of its subsidiaries (collectively, "**Apollo**") in matters unrelated to these cases. Certain funds managed by Apollo are the DIP lender to the Debtors, and Deloitte & Touche and certain of its affiliates may provide ordinary course accounting or tax services for Apollo that may have a relationship to certain of their managed funds' investments respecting the Debtors. Also, among other services, Deloitte & Touche acts as the independent auditor for a number of entities either currently or formerly owned by funds managed by Apollo or its principals.

(xiii) Deloitte FAS and/or certain of its affiliates have performed and continue to perform services for Chicago Bridge & Iron ("**CB&I**") in matters unrelated to the Chapter 11 Cases. In 2012 and 2013, Deloitte FAS and its affiliates also provided due diligence services in connection with Chicago Bridge & Iron's acquisition of Shaw Group, Inc., including valuation services performed in connection with certain construction contracts, including those that were subsequently sold or otherwise transferred to the Debtors, as such related to the purchase price allocation reflected in CB&I's post-acquisition balance sheet.

(xiv) In connection with a prospective engagement that did not go forward, personnel of DTBA provided some preliminary thoughts on how the team would approach such an engagement, which related to matters that would have involved the Debtors had the engagement been undertaken.

(xv) Deloitte & Touche was approved as independent auditors for Energy Future Holdings Corp. and certain of its affiliates in their chapter 11 cases, in matters unrelated to these Chapter 11 Cases.

(xvi) Deloitte FAS and/or certain of its affiliates provides financial advisory services to the Pension Benefit Guaranty Corporation (the "**PBGC**"). The Debtors and their pension plans are not the subject of these services for the PBGC.

(xvii) Deloitte Consulting LLP ("**Deloitte Consulting**"), an affiliate of Deloitte FAS, and certain of its affiliates, have provided and will continue to provide services to the Executive Office of the United States Trustee in matters unrelated to the Chapter 11 Cases.

13. Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte FAS or its affiliates who are anticipated to provide services to

7

the Debtors and the United States Bankruptcy Judge presiding in the Chapter 11 Cases, the U.S. Trustee, the Assistant United States Trustee for the Southern District of New York, and the attorney therefor assigned to the Chapter 11 Cases.

14.    Except as may be disclosed herein, to the best of my knowledge, information, and belief, Deloitte FAS and the Engagement Partners/Principals/Managing Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte FAS and the Engagement Partners/Principals/Managing Directors are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

**Scope of Services**

15.    Subject to this Court's approval of the Application, Deloitte FAS has agreed to perform financial advisory services for the Debtors in accordance with the terms and conditions set forth in the Engagement Letter, as requested by the Debtors.  As further described in the Engagement Letter, Deloitte FAS shall assist the Debtors in reviewing and analyzing financial information and other data in connection with the purchase price adjustment between Westinghouse Electric Company LLC and Chicago Bridge & Iron related to the acquisition of outstanding equity interests of CB&I Stone & Webster, Inc.

**Efforts to Avoid Duplication of Services**

16.    The services performed by Deloitte FAS will not unnecessarily duplicate or overlap with the other services performed by the Debtors' other retained consultants and advisors.[4]  Deloitte FAS understands that the Debtors have retained and may retain additional

---

[4]    Jeffrey Egertson, a retired partner of Deloitte & Touche LLP, is working with Deloitte FAS and providing certain dispute consulting services for the Debtors.  It is my understanding that Mr. Egertson has a separate agreement with the Debtors that provides that he will bill them directly for any professional services rendered to the Debtors.

8

professionals during the term of the Engagement Letter, and Deloitte FAS agrees to work cooperatively with the Debtors to avoid unnecessary duplication of services.

**<u>Professional Compensation</u>**

17.     Deloitte FAS's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements, set forth in the Engagement Letter.

18.     Pursuant to the terms of the Engagement Letter, Deloitte FAS agreed to charge the Debtors the applicable hourly billing rates by classification of personnel with respect to such services, set forth in the table below.

| Personnel Classification | Hourly Rates |
|---|---|
| Partner/Principal/Managing Director | $ 592 |
| Senior Manager | $ 513 |
| Manager | $ 473 |
| Senior Associate | $ 406 |
| Associate | $ 340 |

19.     Hourly rates are revised periodically in the ordinary course of Deloitte FAS's business.  Deloitte FAS shall advise the Debtors of any new rates should it institute a rate-change during the Chapter 11 Cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

20.     In addition to the rates set forth above, the Debtors shall reimburse Deloitte FAS for all actual, reasonable and necessary expenses incurred by Deloitte FAS in connection with the professional services performed, including, but not limited to, expenses incurred on account of travel and lodging, data processing and storage, and communications charges, courier services, and other similar expenses incurred on behalf of the Debtors.

21.     Deloitte FAS intends to file interim and final fee applications for the allowance of compensation for the services rendered and reimbursement of expenses incurred in accordance

with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any applicable orders of the Court, including the Interim Compensation Order and the Order granting this application (to the extent compliance is not waived), and/or any guidelines issued by the Office of the U.S. Trustee.

22.     Deloitte FAS will maintain records in support of any fees incurred in connection with the services it performs in the Chapter 11 Cases by category and nature of the services rendered, and will provide reasonably detailed descriptions of those services rendered on behalf of the Debtors, the time expended in provided those services, and the individuals who provided professional services on behalf of the Debtors.  Deloitte FAS will present such records to the Court in its fee applications to the Court.  Deloitte FAS requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders, if any, that would apply to interim payments.  I understand that all payments rendered pursuant to Deloitte FAS's retention by the Debtors must be approved by an order of this Court and based upon the filing by Deloitte FAS of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

23.     The fee structure summarized above is consistent with Deloitte FAS's customary billing practices for comparable engagements.  Moreover, the fee structure is consistent with and typical of arrangements entered into by Deloitte FAS with the rendering of comparable services to clients such as the Debtors.

24.     Deloitte FAS and DTBA provided prepetition services to the Debtors.  In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte FAS $2,291,566, including the application of retainer amounts, and DTBA $628,399.  As of the Petition Date, no amounts

10

were outstanding with respect to the invoices issued by DTBA, and $196,978 was outstanding with respect to the invoices issued and/or work performed by Deloitte FAS. Deloitte FAS will not seek any recovery with respect to such invoiced amounts.

25.    Prior to the Petition Date, Deloitte Consulting and Deloitte Tax each provided certain professional services to the Debtors. In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte Tax $9,022 for services performed. The Debtors did not make any payments to Deloitte Consulting during this period. As of the Petition Date, no amounts were outstanding with respect to the invoices issued by Deloitte Consulting. As of the Petition Date, $3,119 was outstanding with respect to the invoice(s) issued by Deloitte Tax.

26.    Some services incidental to the tasks to be performed by Deloitte FAS in the Chapter 11 Cases may be performed by personnel now employed by or associated with affiliates of Deloitte FAS, such as DTBA, Deloitte & Touche, Deloitte Tax and Deloitte Consulting, and/or their respective subsidiaries, including subsidiaries located outside of the United States.

27.    Deloitte FAS has received no promises regarding compensation in the Chapter 11 Cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. Deloitte FAS has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in the Chapter 11 Cases.

28.    Deloitte FAS respectfully requests that its retention be made effective *nunc pro tunc* to the Petition Date so that Deloitte FAS may be compensated for the professional services it has provided before the Application is heard by the Court. Deloitte FAS has provided services to the Debtors in advance of approval of this Application in anticipation that its retention would be approved *nunc pro tunc* to the Petition Date. Deloitte FAS submits that these circumstances are of a nature warranting retroactive approval.

11

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  August 11, 2017

/s/ Steven F. Stanton
Steven F. Stanton
Managing Director
Deloitte Financial Advisory Services LLP

12

## Schedule 1

Potential parties-in-interest or their affiliates for whom Deloitte FAS or its affiliates has provided or is currently providing services in matters unrelated to the Chapter 11 Cases, except as set forth above, or with whom such parties have other relationships, including banking relationships.

| |
|---|
| 1st Constitution Bank |
| ABB AB |
| Accenture LLP |
| ACE |
| ACE/Westchester |
| Aecon Industrial |
| Aetna Inc. |
| AIG |
| Air Products & Chemicals Inc. |
| Airgas Inc. |
| Alabama Power Company |
| Alabama, State of |
| Alaska, State of - Corporations Business & Professional Licensing |
| ALCOSAN |
| AlixPartners, LLP |
| Allegheny Power |
| Allianz Global Corporate & Specialty SE |
| Allied Waste Services |
| Alvarez & Marsal Holdings, LLC |
| Amec Foster Wheeler Nuclear UK Ltd. |
| Amec Foster Wheeler PLC |
| Ameren Missouri |
| American Casualty Co. of Reading |
| American Electric Power |
| American Equipment Co. |
| American Home Assurance Co. |
| American Nuclear Insurers (ANI) |
| Amlin Corporate Insurance |
| Amundi Absolute Return Apollo Fund PLC |
| Ansaldo |
| AON Hewitt |
| Apollo Investment Corporation |
| AREVA |
| Ariba, Inc. |

| |
|---|
| Aricent US, Inc. |
| Arizona Public Service Company |
| Arizona, State of |
| Arkansas, State of |
| Armstrong |
| AT&T |
| ATI Specialty Alloys Components |
| Atkins |
| Avaya |
| AXIS Insurance Company |
| Babcock & Wilcox Nuclear Energy Inc. |
| Backoffice Associates |
| Baker Concrete Construction Inc. |
| Banco Santander |
| Bank of China |
| Bank of Taiwan |
| Bank of Tokyo-Mitsubishi UFJ, Ltd. |
| Basler Electric |
| Battelle Memorial Institute |
| Bayerische Hypo- und Vereinsbank AG |
| BC&I Stone & Webster, Inc. |
| Beacon Health Options |
| Ben Franklin Design & Mfg. Co. Inc. |
| Berkeley Research Group, LLC (Toshiba Advisors) |
| Bishop, James E. |
| Blackbox |
| Blanchard Machinery Co. |
| BMO Harris Bank N.A. |
| BNP Paribas |
| Board of Water, Light and Sinking Fund Commissioners |
| BP Energy CO. |
| Brenntag |
| Bruce Power |
| Burns, John W. |
| BWXT Nog Technologies Inc. |
| Cable USA Inc. |
| California, State of |
| Cameco Corporation |
| Cameron Measurement Systems |

2

| |
|---|
| Canberra Industries Inc. |
| Cartus Formally Cendant Mobility |
| Cascade Natural Gas |
| CA-The Concourse Limited Partnership |
| CB&I Contractors, Inc. |
| CBS Corporation |
| CDW Computer Centers, Inc. |
| Century Link - Voice - Ogden |
| Ceradyne Inc. |
| CEZ, A. S. |
| CH2MHill Plateau Remediation Company |
| Chattanooga Gas |
| Chicago Bridge & Iron Company (Delaware) |
| Chicago Bridge & Iron Company, N.V. |
| China Telecom Beijing Co. |
| China Unicom Beijing Co. |
| Chromalox |
| Cigna Corp. |
| Citibank, N.A. |
| Citizens of Georgia Power |
| City of Aurora, Tax Licensing Division |
| City of Chicago Department of Finance |
| City of Dalton, Georgia, The |
| City of Mobile Alabama Tax Collector |
| City of New Orleans - Sales Tax Division |
| Clean Harbors Environmental Svcs. |
| CNA Surety |
| Colorado Department of Revenue |
| Comcast Corporation |
| ComEd |
| Computershare Inc. |
| ConEd (Consolidated Edison) |
| Connecticut Secretary of State Document Review |
| Consolidated Communications |
| Constellation Energy Nuclear Group |
| Santee Cooper |
| Corey, Nina A. |
| Crane Nuclear Inc. |
| Crawford & Co. |

3

| |
|---|
| CSC Computer Sciences Corp. |
| CSC Consulting Inc. |
| Curtiss Wright |
| Cvc Nominees Ltd. |
| CVS Caremark |
| Daikin Applied Americas Inc. |
| Delaware Dept. of State |
| Department of Energy |
| Deutsche Bank AG |
| DHI.DHW Group Co. LTD |
| DirecTv |
| DirecTv Sports Net Pittsburgh LLC |
| Dominion |
| Doosan Babcock Ltd |
| DRS Consolidated Controls Inc. |
| Ducera Partners (SCANA Advisors) |
| Duke Energy |
| Duquesne Light Company |
| E.ON Generation GmbH |
| Eagle Technologies Group |
| Earthlink Business |
| Eaton Corporation |
| EDF - Ceidre |
| Emerson Industrial |
| Emirates Nuclear Energy Corporation |
| EnBW Energie Baden-W?rttemberg AG |
| Energy & Process Corporation |
| Energy Northwest |
| Energy Solutions Government Group, Inc. |
| Energy Steel & Co. |
| Energy Steel And Supply Co |
| Enersys Delaware Inc. |
| ENGIE |
| Entergy |
| EPM - Fisher Controls Intl Inc. |
| EPRI (Electric Power Research Institute) |
| Erie Insurance |
| ESKOM |
| EvapTech |

4

| |
|---|
| Eversource |
| Exelon Business Services Co. |
| Fairbanks Morse Engine, a division of Coltec Industries, Inc. |
| Fairpoint Communications |
| Federal Communications Commission |
| Federal Insurance Company (CHUBB) |
| Fifth Third Equipment Finance Company |
| First Communications |
| FirstEnergy |
| Fisher & Phillips, LLP |
| Fleet Bank-NH |
| Florida Department of Revenue |
| Florida Power & Light Company (FPL) |
| Florida, State of - Department of Revenue |
| Flowserve |
| Fluor Corp. |
| FPL Energy Point Beach, LLC |
| Fragomen, Del Rey, Bernsen, & Loewy |
| Framatome |
| Freedom Specialty |
| Frontier Communications |
| Frontier Technology Corp |
| Fujitsu Services Limited |
| GE Canada |
| GE Hitachi Nuclear Energy |
| Gemeinschaftskraftwerk Weser GmbH & Co. |
| General Cable Industries Inc. |
| General Electric Company |
| Georgia Power Company |
| Georgia, State of |
| Georgia, State of - Department of Revenue |
| Gerdau Ameristeel US Inc. |
| Global Nuclear Fuel - Japan Co. Ltd. |
| Gowlings/Marsh Canada Limited |
| Graftech International Holdings, Inc. |
| Granite Properties |
| Graver Technologies LLC |
| Gray Plant Mooty |
| Graybar Electric Co Inc. |

5

| |
|---|
| Great America Financial Services Corporation |
| Gregg Protection Services |
| Gutor Electronics, LLC |
| Hagemeyer North America, Inc. |
| Hawaii State of, - Department of Taxation |
| Hendrickx |
| Hitachi-GE Nuclear Energy Ltd. |
| Honeywell Inc. |
| Hudson Americas LLC |
| Iberdrola Generacion S.A.U. |
| IBM Credit LLC |
| Idaho Secretary of State Business Registration Division |
| IHI Corporation |
| Illinois Secretary of State |
| Indiana Michigan Power Company |
| Indiana Secretary of State |
| ING Bank N.V. |
| Insurance Company of the State of Pennsylvania, The |
| Intergraph |
| International SOS Travel Assistance |
| Intertek Iberica Spain SLU |
| Iowa Department of Revenue |
| ITT Cannon Veam Italia S.R.L. |
| Ivy Apollo Multi Asset Income Fund |
| IX WR 3735 Glen Lake Drive, L.P. |
| JBG/Commercial Management, L.L.C. |
| Jones Day LLP |
| Jones Lang LaSalle Americas, Inc. |
| JPMorgan Chase Bank, N.A. |
| Kansai Electric Power Company, Inc., The |
| Kansas City Power & Light Company |
| Kansas Gas and Electric Company |
| Kansas Secretary of State |
| Kema-Powertest LLC |
| Kennametal Deutschland GmbH |
| Kentucky Secretary of State, Office of |
| KEPCO |
| Kernkraftwerk Brokdorf GmbH & Co. oHG |
| Kilpatrick Townsend & Stockton, LLP |

6

| |
|---|
| KSB Aktiengesellschaft |
| Kurtzman Carson Consultants LLC |
| Larsen & Toubro |
| Latham & Watkins LLP |
| Lazard |
| Leidos Engineering LLC |
| Level 3 Communications LLC |
| Lewis, Mark B. |
| Liberty Mutual Insurance Company |
| Lincoln Electric Company |
| Lloyd's Syndicate |
| LMT Div. Curtiss-Wright Flow Control |
| Louisiana Secretary of State |
| Louisiana, State of - Department of Revenue |
| Lynx Technology Partners Inc. |
| Maine Depart. of the Secretary of State –Div. of Corporations Reporting & Information Section |
| Marsh GmbH |
| Martin Marietta Aggregates |
| Maryland, State of |
| Maryland, State of - Comptroller |
| Massachusetts Department of Revenue |
| MB Financial Bank, N.A. |
| Mecklenburg County Tax Collector (NC) |
| Meggitt France |
| Memphis (TN), City of, Treasurer |
| Merrill Lynch |
| Metal Improvement Co. LLC |
| Metropolitan Council |
| Metropolitan District, The |
| Metropolitan Life Insurance Co. |
| Michigan Department of Natural Resources (MDNR) |
| Michigan Department of Treasury |
| Michigan, State of |
| Midcap Financial Trust |
| Milbank, Tweed, Hadley & McCloy LLP |
| Ministerio De Hacienda Y Administraciones Publicas |
| Ministry of Economy, UAE |
| Minnesota Life Insurance Company |

WEIL:\96185857\5\80768.0015

| |
|---|
| Minnesota, State of – Dept. of Revenue |
| Mirion Technologies |
| Missouri Department of Natural Resources |
| Mistras Group Inc. |
| Mitsubishi Corporation |
| Mitsui |
| Mizuho (USA) Leasing & Finance Corporation |
| Montana Secretary of State's Office |
| Munich Re |
| NASA |
| National Union Fire Insurance Company (AIG) |
| National Union Fire Insurance, *et. al* |
| Navitas Lease Corp. |
| Nebraska Public Power District |
| Nebraska Secretary of State |
| Nevada Secretary of State Commercial Recordings Division |
| New Hampshire Secretary of State |
| New Jersey State of - Department of the Treasury, Division of Taxation |
| New Mexico Secretary of State, Office of |
| New York State Department of State |
| Newport News Industrial Corp. |
| Nextera Energy Point Beach, LLC |
| Nextira One LLC d/b/a Black Box |
| Nichols, Daniel |
| Nicor Gas |
| North Carolina Department of Revenue |
| North Carolina Mecklenburg County |
| North Carolina, State of |
| Northeast Utilities Service Company |
| Northern States Power Company |
| Nova Machine Products Corp. |
| Nuclear Fuel Services Inc. |
| Nuclear Management Company, LLC |
| Nuclear Power Institute of China |
| Nuclear Regulatory Commission (NRC) |
| NuGen |
| NYC Department of Finance |
| Obayashi Corp. |
| Oglethorpe Power Company |

8

| |
|---|
| Ogletree, Deakins, Nash, Smoak & Stewart, PC |
| Ohio Department of Taxation |
| OKG AB |
| Oklahoma Secretary of State |
| Omaha Public Power District |
| OneBeacon Insurance Company |
| Ontario Power Generation (OPG) |
| Oracle |
| Oregon, State of |
| Pacific Gas and Electric Company (PG&E) |
| Pall Gmbh |
| Palmetto Health |
| Parker Hannifin AB |
| Parker Poe Adams & Bernstein LLP |
| Paul, Weiss Rifkind & Garrison LLP |
| PCC Structurals |
| PCI Energy Services LLC |
| Peerless Manufacturing Co |
| Penn Power (Firstenergy of PA) |
| Pennsylvania Power and Light Company |
| Pennsylvania, Commonwealth of |
| Pension Benefit Guaranty Corporation |
| Peoples Natural Gas |
| Personal Communications |
| PJT Partners Inc. |
| Plumbers & Pipefitters 562 |
| PNC Bank, National Association |
| PreussenElektra GmbH - Kernkraftwerk Brokdorf |
| Pricewaterhouse Coopers LLP |
| Princeton Credit Corporation |
| Progress Energy Carolinas, Inc. |
| Proskauer Rose LLP |
| PSEG Nuclear LLC |
| Public Service and Gas Company |
| Putzmeister America Inc. |
| PWR Owner's Group |
| Questar Gas |
| Ramsey County (MN) |
| Reed Smith LLP |

9

| |
|---|
| Republic Services |
| Rhode Island Department of State -Secretary of State |
| Rinaldi, Finkelstein & Franklin, LLC |
| Rio Tinto Uranium |
| Rocky Mountain Power |
| Rolls Royce |
| Rosemount Analytical Inc. |
| Rothschild & Co. |
| Royal and Sun Alliance Insurance PLC |
| Royal Bank of Scotland PLC (the) |
| RSCC Wire & Cable LLC |
| RWE |
| Ryerson |
| San Diego Gas & Electric Company |
| Sandvik SMT EMEA AB |
| Santa Clara County Tax Collector |
| SAP America Inc. |
| Sargent & Lundy |
| SC State Ports Authority |
| Scana Energy Marketing |
| Scientech, a Business Unit of Curtiss |
| Seyfarth Shaw LLP |
| SGL Carbon Gmbh |
| Shaw Constructors Group, Inc. |
| Shearman & Sterling LLP |
| Siemens AB |
| Skadden, Arps, Slate, Meagher & Flom LLP (Toshiba Advisors) |
| Skandinaviska Enskilda Banken AB (publ) |
| SKODA JS A.S. |
| SMBC |
| Solvay Fluorides LLC |
| Sompo Japan Insurance Company of America |
| South Carolina Department of Health and Environment Control |
| South Carolina Electric & Gas Company |
| South Dakota Secretary of State |
| South Texas Nuclear Operating Company |
| Southern California Edison Company |
| Southern Company Services, Inc. |
| Southern Nuclear Company |

10

| |
|---|
| Spok Inc. |
| Sprint |
| SPX Corp Copes Vulcan Operation |
| St. Charles Parish School Board Sales and Use Tax Department (Louisiana) |
| STARS Alliance |
| Starwood Capital |
| State Power Investment Corporation |
| Steadfast Insurance Company |
| Sulzer Chemtech Ltd. |
| Sumitomo Corporation Europe Limited |
| SWAGELOK |
| System Energy Resources, Inc. |
| TV Saarland Bildung |
| Taff, Michael S. |
| Teachers Insurance and Annuity Association of America |
| Tengizchevroil |
| Tennessee Valley Authority |
| Tennessee, State Board of Equalization |
| Texas Comptroller of Public Accounts |
| Texas Utilities Electric Company |
| Time Warner |
| T-Mobile |
| Toshiba Corporation |
| Toshiba Corporation Power Systems Company |
| Transcanada |
| Transport Logistics International |
| Tronox Speciality Alkali Corp. |
| Turner Construction Company |
| TXU Electric |
| U S Customs |
| U.S Fish & Wildlife Service |
| U.S. Army Corps of Engineers |
| U.S. Bank |
| U.S. Coast Guard |
| U.S. Customs and Border Protection |
| U.S. Department of Energy |
| U.S. Department of Health & Human Services |
| U.S. Department of Transportation |
| U.S. Environmental Protection Agency |

11

| |
|---|
| U.S. Federal Aviation Administration |
| U.S. Nuclear Regulatory Commission |
| U.S. Specialty Insurance Company (HCC) |
| Ultra Electronics Limited |
| UniCredit |
| Uniper Anlagenservice GmbH |
| United Rentals |
| United States - Department of the Treasury – IRS |
| United States Attorney's Office for the District of Delaware |
| United States Attorney's Office for the Southern District of New York |
| United States Department of Energy (DOE) |
| United States Enrichment Corporation |
| Unitil |
| Uranium One Inc. |
| US - Department of Defense (DOD) |
| US - Department of Health and Human Services (HHS) |
| US - Department of Transportation (DOT) |
| US - Environmental Protection Agency (EPA) |
| US - Internal Revenue Service |
| US - Occupational Safety and Health Administration (OSHA) |
| US Bank Transportation Solutions |
| US Ecology Idaho, Inc. |
| US Security Associates Inc. |
| Utah, State of |
| UT-Battelle, LLC |
| Vattenfall AB |
| Verizon |
| Vermont Secretary of State |
| Vigor |
| Virginia Electric & Power Company, d/b/a Dominion Virginia Power |
| Virginia State Corporation Commission |
| Vistra Energy (Luminant) |
| Wachs Energy Services Company |
| Wachtell, Lipton, Rosen & Katz |
| Walter Davis |
| Washington, State of |
| Waste Management North |
| Watlow Electric Mfg Co. |
| Weed Instrument d/b/a Ultra Electronics |

12

| |
|---|
| Weil, Gotshal & Manges LLP |
| Wells Fargo Bank, N.A. |
| Western Surety Company |
| Westinghouse Electric Company (Delaware) LLC |
| Williams Scotsman Inc. |
| Wisconsin Electric Power Company |
| Wisconsin Public Service Corporation |
| Wolf Creek Nuclear |
| Wyoming Secretary of State |
| Xcel Energy |
| Zetec Inc. (FR) – Struers |
| ZionSolutions |
| Zurich American Insurance Company |

13

WEIL:\96185857\5\80768.0015

**<u>Exhibit C</u>**

**Engagement Letter**

WEIL:\96185857\5\80768.0015



Deloitte Financial Advisory Services LLP
JPMorgan Chase Tower
2200 Ross Avenue, Suite 1600
Dallas, TX 75201-6778
USA

Tel:  +1 214 840 7000
www.deloitte.com

March 11, 2016

**PRIVILEGED & CONFIDENTIAL**
**WORK PRODUCT PREPARED**
**FOR COUNSEL**

Rick Swanson, Esquire
Westinghouse Electric Company LLC
1000 Westinghouse Drive
Suite 572A
Cranberry Township, PA 16066

Re:   Services in connection with the purchase price adjustment between Westinghouse Electric
      Company LLC and Chicago Bridge & Iron related to the acquisition of outstanding equity interests
      of CB&I Stone & Webster, Inc. (the "Transaction")

Dear Mr. Swanson:

### _UNDERSTANDING OF ROLE_

This letter sets forth the agreement between Westinghouse Electric Company LLC and its subsidiaries
(the "Company"), acting through its Office of General Counsel ("Counsel"), and Deloitte Advisory[1]
("Advisor"), effective as of March 11, 2016, whereby Advisor personnel will provide to the Company the
services described herein (this "Engagement"). We understand that such services are being requested by
Counsel in connection with the above-entitled matter and related matters. The services to be performed by
Advisor personnel will be as a nontestifying consultant.

We understand that it is Counsel's intention and the position of Counsel that our work for it will be
covered by the attorney work-product privilege and other applicable privileges.  Accordingly, it is agreed
that all working papers and other documents prepared or received by us pursuant to this Engagement will
be maintained by us as confidential material in accordance with the terms hereof.

Counsel will advise Advisor in a timely manner of any applicable legal requirements concerning the
services to be provided by Advisor, including, without limitation, the identification of any reports to be
provided by Advisor, the formats of, and filing deadlines for, such reports, and the legal requirements, if
any, concerning the retention of our notes, draft reports, or other work product.  Advisor does not, in
advance of obtaining sufficient relevant information and completing its analyses, provide any assurance
that it will be able to support any position.

Advisor is prepared to provide assistance in reading the financial information and other data relevant to
this matter in order to assist the Company in its evaluation of the purchase price adjustment for the
Transaction. The specific procedures to be performed by Advisor will be mutually established based on

---

[1] As used in this engagement letter, "Deloitte Advisory" means Deloitte Financial Advisory Services LLP.

Rick Swanson, Esq.
Westinghouse Electric Company LLC
March 11, 2016
Page 2

discussions with you as the Engagement progresses and additional information is obtained during the
course of the Engagement. Advisor is also prepared to provide mutually agreeable assistance in any other
areas that may be identified during the course of this Engagement.

The Company agrees that, without Advisor's prior written permission, any reports, schedules, documents,
or other materials provided by Advisor ("Advisor Work Product") are not to be used, in whole or in part,
by the Company for any purpose other than in connection with the resolution or disposition of the
disputed matters or controversies that are the subject of this Engagement (the "Dispute"), and are not to
be disclosed, quoted or referenced, in whole or in part, to any other person or entity ("third party"). This
Engagement shall not create privity between Advisor and any third party. Neither the Advisor Work
Product nor the services provided hereunder are intended for the express or implied benefit of any third
party.

### CONFLICTS

We performed an internal search for any potential client conflicts (the "Conflicts Search") based upon the
names of the parties that you have provided (the "Involved Parties"). Nothing has come to our attention
that, in our judgment, would impair our ability to objectively provide the services hereunder. Except for
the Conflicts Search, we have not undertaken any process to identify any other relationships with the
Involved Parties. The Company agrees that it will inform us promptly of additional parties to this matter
or of name changes for those parties whose names were provided by the Company.

Chicago Bridge & Iron is a client of Advisor and its affiliates. In the event Counsel desires to engage
Advisor personnel to testify as an expert witness, acceptance of engagement by Advisor will be subject to
evaluation of potential conflicts with Chicago Bridge & Iron at the time such request is made by Counsel

As you know, Advisor and its affiliates have many clients and we are engaged by new clients every day.
Therefore, we cannot assure that, following the completion of our Conflicts Search, an engagement
relating to one or more of the Involved Parties will not be accepted. Should any potential conflict come to
the attention of our Engagement Director, we will endeavor to resolve such potential conflict in
accordance with applicable professional standards.

Any counsel representing parties involved in this matter may have in the past engaged, represented or
opposed, and may currently or in the future engage, represent or oppose, Advisor, its affiliates or their
respective personnel in connection with matters unrelated to this Engagement. Also, any insurance carrier
providing coverage to parties involved in this matter may have provided, may currently be providing, or
may in the future provide coverage to a party, or may itself be a party, involved in a matter unrelated to
this Engagement where Advisor and/or its affiliates have provided, are currently providing, or may in the
future provide consultation or other services, or where Advisor or its affiliates may be a party.

### ENGAGEMENT STAFFING AND FEES

I will participate as Engagement Director, maintaining overall responsibility for the engagement on behalf
of Advisor. Technical support may also be provided by other professionals who will be identified during
the course of the Engagement.

We bill on a time and expense basis, with our fees determined by the tasks required and the related time
spent. Our per-hour billing rates are as follows:

Rick Swanson, Esq.
Westinghouse Electric Company LLC
March 11, 2016
Page 3

| | |
|---|---|
| Partner, Principal, Director | $592 |
| Senior Manager | 513 |
| Manager | 473 |
| Senior Associate | 406 |
| Associate | 340 |

Our hourly rates are adjusted from time to time; we will advise you promptly if a rate adjustment is being made by Advisor. Engagement related expenses, such as travel costs, including airfare, lodging and meals, will be billed in addition to the fees. Expenses will be stated separately on the invoices.

The scope of our services, as well as the complexity and duration of this Engagement, can vary greatly due to circumstances which may not be anticipated. Our fees and expenses are not contingent upon the final resolution of the matters that are the subject of this Engagement.

In addition, we will be compensated for any time and expenses (including, without limitation, reasonable legal fees and expenses) that we may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings (including, without limitation, those unrelated to the matters that are the subject of this Engagement) as a result of Advisor's performance of these services.

This engagement letter incorporates the General Business Terms attached as Appendix A hereto. Westinghouse Electric Company LLC represents and warrants that it has the power and authority to execute this letter on behalf of, and to bind, itself and its subsidiaries to the terms of this Engagement.

Rick Swanson, Esq.
Westinghouse Electric Company LLC
March 11, 2016
Page 4

If you agree to the terms of this letter and the attached General Business Terms, please sign the enclosed copy of this letter in the space provided and return it to me. If you have any questions, please call me at 214-840-7996. We appreciate the opportunity to work for you and look forward to your prompt response.

Very truly yours,

***DELOITTE FINANCIAL ADVISORY SERVICES LLP***

By:

Joshua A. Johnston, Director

Encl.

Accepted by:   Westinghouse Electric Company LLC on behalf of itself and its subsidiaries

**By:**

**Title:** SENIOR V.P. AND GENERAL COUNSEL

**Date:**   3/19/16

Rick Swanson, Esq.
Westinghouse Electric Company LLC
March 11, 2016

# APPENDIX A:  GENERAL BUSINESS TERMS

**1.    Services.**

a)      The services provided by Deloitte Advisory (the "Services") under the engagement letter to which these terms are attached (the "Engagement Letter") will be performed under the Standards for Consulting Services of the American Institute of Certified Public Accountants.  The Services may include advice and recommendations, but Advisor will not make any decisions on behalf of Company in connection with the implementation of such advice and recommendations.

b)      The Services may include, for purposes of gathering information, access to the work of other public accountants or to financial statements or financial information reported on by other public accountants; however, access is not for the purpose of affirming or evaluating the auditing procedures or related professional standards used by such other public accountants.

c)      Company acknowledges that draft or tentative reports, findings, conclusions or advice that are provided to Company, whether written or oral, may be subject to further revision by Advisor.

**2.      Payment of Invoices.** Company will compensate Advisor under the terms of the Engagement Letter for the Services performed and expenses incurred, through the term or effective date of termination of this engagement.  Advisor's invoices are due upon receipt.   If payment is not received within thirty (30) days of the receipt of an invoice (i) such invoice shall accrue a late charge equal to the lesser of (a) 1½% per month or (b) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law, and (ii) Advisor may also suspend or terminate the Services.  Company shall be responsible for any taxes imposed on the Services or on this engagement, other than taxes imposed by employment withholding for Advisor's personnel or on Advisor's income or property.

**3.      Term.**  Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of the Services.  This engagement may be terminated by Company or Advisor at any time on the delivery of written notice of termination to the other.

**4.      Deliverables and Working Papers.**

a)      Advisor has rights in, and may, in connection with the performance of the Services, use create, modify, or  acquire rights in, works of authorship, materials, information, and other intellectual property (collectively, the "Advisor Technology").

b)      Upon full payment to Advisor hereunder, and subject to the terms and conditions contained herein, (i) the tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") shall become the property of Company, and (ii) Advisor hereby grants Company a royalty-free, fully paid-up, worldwide, non-exclusive license to use the Advisor Technology contained in the Deliverables in connection with the use of such Deliverables.  Except for the foregoing license grant, Advisor or its licensors retain all rights in and to all Advisor Technology.

c)      To the extent that any Advisor Technology provided to Company hereunder constitutes inventory within the meaning of section 471 of the Internal Revenue Code, such Advisor Technology is licensed to Company by Advisor as agent for Deloitte FAS Products Company LLC on the terms and conditions contained herein. The rights granted in this Section 4 do not apply to any Advisor Technology that is subject to a separate license agreement between Company and any third party (including, Advisor's affiliates).

d)      Working Papers.  The working papers created by Advisor during this engagement are the property of Advisor.  Company understands that Advisor does not retain working papers indefinitely.

**5.      Limitation on Damages and Actions.**

a)      Advisor, its subsidiaries and subcontractors, and their respective personnel shall not be liable to Company for any claims, liabilities, or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by Company to Advisor pursuant to this engagement, except to the extent resulting from the recklessness, bad faith or intentional misconduct of Advisor or its subcontractors.  In no event shall Advisor, its subsidiaries or subcontractors, or their respective personnel be liable to Company for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense relating to this engagement.

b)      In circumstances where any limitation on damages provision hereunder is unavailable, the aggregate liability of Advisor, its subsidiaries and subcontractors, and their respective personnel for any Claim shall not exceed an amount that is proportional to the relative fault that the conduct of Advisor and its subcontractors bears to all other conduct giving rise to such Claim.

c)      No action, regardless of form, relating to this engagement, may be brought by any party more than one year after the cause of action has accrued, except that an action for non-payment may be brought by a party not later than one year following the due date of the last payment owing to the party bringing such action.

**6.      Company Responsibilities.**  Company shall cooperate with Advisor in the performance of the Services, including, providing Advisor with reasonable facilities and timely access to data, information and personnel of Company.  If Advisor is provided with access to or use of Company's facilities outside of the United States for the purpose of performing the Services such facilities may not be dedicated solely for Advisor's use, and Advisor will not be deemed a tenant of Company with respect to such facilities.  Company shall be solely responsible for, among other things, (a) the performance of its personnel and agents, (b) the accuracy and completeness of all data and information provided to Advisor for purposes of the performance of the Services, (c) making all management decisions, performing all management functions, and assuming all management responsibilities, (d) designating a competent management member to oversee the Services, (e) evaluating the adequacy and results of the Services, (f) accepting responsibility for the results of the Services, and (g) establishing and maintaining internal controls, including monitoring ongoing activities. With respect to the data and information provided by Client to Advisor or its subcontractors for the performance of the Services, Client shall have all rights required to provide such data and information, and shall do

Rick Swanson, Esq.
Westinghouse Electric Company LLC
March 11, 2016
Page 2

so only in accordance with applicable law and with any procedures agreed upon in writing.  Advisor's performance is dependent upon the timely and effective satisfaction of Company's responsibilities hereunder and timely decisions and approvals of Company in connection with the Services.  Advisor shall be entitled to rely on all decisions and approvals of Company.

**7.      Force Majeure**.  Neither Company nor Advisor shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

**8.      Independent Contractor**.  It is understood and agreed that, with respect to the relationship between Advisor, on the one hand, and Company, on the other hand, each party hereto is an independent contractor and neither party is nor shall be considered to be, nor shall purport to act as, the other's agent, partner, fiduciary, joint venturer, or representative.

**9.      Confidentiality**.  To the extent that, in connection with this engagement, either Advisor or Company (each the "receiving party") comes into possession of any confidential information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care.  The disclosing party hereby consents to the receiving party disclosing such information: (a) as expressly permitted in the Engagement Letter; (b) to contractors providing administrative, infrastructure and other support services to the receiving party and subcontractors providing services in connection with this engagement, in each case, whether located within or outside of the United States, provided that such contractors and subcontractors have agreed to be bound by confidentiality obligations similar to those in this Section 9; (c) as may be required by law or regulation, tor to respond to governmental inquiries, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (d) to the extent such information (1) is or becomes publicly available other than as the result of a disclosure in breach hereof, (2) becomes available to the receiving party on a nonconfidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (3) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (4) is developed by the receiving party independently of any disclosures made to the receiving party hereunder. Nothing in this Section 9 shall alter Company's obligations under the Engagement Letter. Advisor, however, may use and disclose any knowledge and ideas acquired in connection with the Services to the extent they are retained in the unaided memory of its personnel.

**10.      Professional and Regulatory Actions**.  Without limiting any other right to terminate this engagement that Advisor may have under the Engagement Letter, these terms or law, Advisor may terminate this engagement upon written notice to Company if Advisor determines that the performance of any part of the Services would be in conflict with law, or independence or professional rules.

**11.      Survival and Interpretation**.  All provisions which are intended by their nature to survive performance of the Services shall survive such performance, or the expiration or termination of this engagement.  For purposes of these terms and the Engagement Letter, "Deloitte Advisory" or "Advisor" means Deloitte Financial Advisory Services LLP.  No affiliated or related entity of Advisor, or such entities' personnel, shall have any liability hereunder to Company and Company will not bring any action against any such affiliated or related entity or such entity's personnel in connection with this engagement. Without limiting the foregoing, such affiliated and related entities are intended third-party beneficiaries of these terms, and may in their own right enforce such terms. **Each of the provisions of these terms shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**  Any references herein to the term "including" shall be deemed to be followed by "without limitation".

**12.      Assignment and Subcontracting**.  Except as provided below, none of the parties may assign any of its rights or obligations (including interests or Claims) relating to this engagement without the prior written consent of the other parties.  Company hereby consents to Advisor assigning or subcontracting any portion of the Services to any affiliate or related entity whether located within or outside of the United States. Services performed hereunder by Advisor's subcontractors shall be invoiced as professional fees on the same basis as Services performed by Advisor personnel, unless otherwise agreed.

**13.      Waiver of Jury Trial. ADVISOR AND COMPANY HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.**

**14.      Entire Agreement, Amendment and Notices**.  These terms and the Engagement Letter, including attachments, constitute the entire agreement between Advisor and Company with respect to this engagement, supersede all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by a written agreement signed by the parties. In the event of any conflict or ambiguity between these terms and the Engagement Letter, these terms shall control.  All notices hereunder shall be (a) in writing, (b) delivered to the representatives of the parties at the addresses set forth in the Engagement Letter, unless changed by any party by notice to the other parties, and (c) effective upon receipt.

**15.      Governing Law, Jurisdiction and Venue, and Severability**.  These terms, the Engagement Letter, including, attachments, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action based on or arising out of this engagement or the Services shall be brought and maintained exclusively in any state or federal court, in each case located in New York County, the State of New York. Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum.  If any provision of these terms or the Engagement Letter is unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.