**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **WESTINGHOUSE ELECTRIC** | : | |
| **COMPANY LLC**, *et al.*, | : | **Case No. 17-10751 (MEW)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

-------------------------------------------------------x

### AFFIDAVIT AND DISCLOSURE STATEMENT OF MITJA KUMAR,

### ON BEHALF OF DELOITTE SVETOVANJE D.O.O.

STATE OF: Republic of Slovenia

    Mitja Kumar, being duly sworn, upon his oath, deposes and says as follows:

    1.    I am a legal representative of Deloitte svetovanje d.o.o., located at Dunajska 165, 1000 Ljubljana, Republic of Slovenia (the "**Firm**").

    2.    Westinghouse Electric Company LLC and its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") have requested that the Firm provide tax advisory services in Slovenia to the Debtors, and the Firm has consented to provide such services (the "**Services**").

    3.    The Services include, but are not limited to, the following:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961). The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

- Performance of services as a Slovene tax representative for the Debtors. The tax representation is performed solely for VAT purposes and does not cover any representation in front of any other authorities in Slovenia. The Firm provides professional services for the Debtors in accordance with the terms and conditions set forth in the Engagement Agreement. The Engagement Agreement is attached hereto as Exhibit 1.

4.      The Firm may have performed services in the past and may perform services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties in interest in the Debtors' chapter 11 cases.  As part of its customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be claimants or employees of the Debtors, or other parties in interest in these chapter 11 cases. The Firm does not perform services for any such person in connection with these chapter 11 cases. In addition, the Firm does not have any relationship with any such person, such person's attorneys, or such person's accountants that would be adverse to the Debtors or their estates with respect to the matters on which the Firm is to be retained.

5.      Neither I, nor any principal of, or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than principals and regular employees of the Firm.

6.      Neither I nor any principal of, or professional employed by the Firm, insofar as I have been able to ascertain, holds or represents any interest materially adverse to the Debtors or their estates with respect to the matters on which the Firm is to be retained.

7.     As of the commencement of these chapter 11 cases, the Debtors owed the Firm $6,549 in respect of prepetition services rendered to the Debtors. The Invoice is attached hereto as Exhibit 2.

8.     The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of this inquiry, or at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Affidavit and Disclosure Statement was executed on ___22.08___, 2017, at ___Ljubljana___.

_____
Affiant Name

SWORN TO AND SUBSCRIBED before
Me this _22_ day of ___August___, 2017

_Please see confirmation on next page._
Notary Public



**Notar Bojan Podgoršek**          Opr. št. OV 1212/2017
Dalmatinova ulica 2
1000 Ljubljana

## POTRDILO O OVERITVI PODPISA

Pred overitvijo podpisa na tej listini sem notar navzočo stranko opozoril, da je za vsebino listine notar odgovoren le, če jo sestavi v obliki notarskega zapisa.------------------------------

Notar Bojan Podgoršek potrjujem, da je:------------------------------------------------------------

**Mitja Kumar**, kot direktor družbe **DELOITTE SVETOVANJE d.o.o.**, Dunajska cesta 165 (stopetinšestdeset), 1000 (tisoč) Ljubljana, z matično številko 5573092000 (pet-pet-sedem-tri-nič-devet-dve-nič-nič). ------------------------------------------------------------------------------

istovetnost imenovanega je bila ugotovljena na podlagi deponiranega podpisa 24/16; upravičenost za zastopanje je razvidna iz vpogleda v sodni register,------------------------

-------------------------------------------------------------------------------------------------------

- lastnoročno podpisal to listino.-----------------------------------------------------------
-------------------------------------------------------------------------------------------------------

Ljubljana, 22.08.2017 (dvaindvajsetega avgusta dvatisočsedemnajst)------------------------

Notar Bojan Podgoršek



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x

| | |
|---|---|
| **In re** : | |
| : | **Chapter 11** |
| **WESTINGHOUSE ELECTRIC** : | |
| **COMPANY LLC,** *et al.*, : | **Case No. 17-10751 (MEW)** |
| : | |
| **Debtors.**[2] : | **(Jointly Administered)** |

------------------------------------------------------x

## <u>RETENTION QUESTIONNAIRE</u>

TO BE COMPLETED BY PROFESSIONALS EMPLOYED by Westinghouse Electric Company LLC and its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**").

DO NOT FILE THIS QUESTIONNAIRE WITH THE COURT.
RETURN IT FOR FILING BY THE DEBTORS

> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, NY 10153
> Attn: Robert J. Lemons, Esq. & Stephanie N. Morrison, Esq.

All questions **must** be answered. Please use "none," "not applicable," or "N/A," as appropriate. If more space is needed, please complete on a separate page and attach.

1.    Name and Address of firm:

> **Deloitte svetovanje d.o.o.**
> **Dunajska cesta 165**
> **1000 Ljubljana**
> **Republic of Slovenia**

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961). The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

2.    Date of retention:  **22.8.2017**

3.    Type of services to be provided:

**Performance of services as a Slovene tax representative.**

4.    Brief description of services to be provided:

**Deloitte svetovanje d.o.o. is named as a Slovene tax representative of the Debtors. Such nomination is legally required in Slovenia, in order to obtain and hold the Slovene VAT ID number.**

5.    Arrangements for compensation (hourly, contingent, etc.):

Annually.

(a)    Average hourly rate (if applicable): **N/A**

(b)    Estimated average monthly compensation based on prepetition retention (if company was employed prepetition): **EUR500**

6.    Prepetition claims against the Debtors held by the company:

Amount of claim: **$6,549**

Date claim arose: **31 January 2017**

Nature of claim: **Invoice for rendered services.**

7.    Prepetition claims against the Debtors held individually by any member, associate, or professional employee of the company:

Name: **N/A**

Status: **N/A**

Amount of claim: **N/A**

Date claim arose: **N/A**

Nature of claim: **N/A**

8.    Disclose the nature and provide a brief description of any interest adverse to the Debtors or to their estates for the matters on which the company is to be employed:

_____N/A_____

_____

_____

_____

9.    Name and title of individual completing this form:

David Jež

_____

**Dated:** ___August 22,_____, **2017**

**ENGAGEMENT LETTER**
**FOR PROVISION OF FISCAL**
**REPRESENTATION SERVICES AND TAX**
**ADVISORY SERVICES**

Concluded between the following parties:

1. **DELOITTE Svetovanje d.o.o.**, Dunajska cesta 165, 1000 Ljubljana, a company registered under the laws of Slovenia, tax no: 15049027, represented by the President of the Board Yuri Sidorovich, hereinafter referred to as **"Deloitte"**

and

2. **WESTINGHOUSE ELECTRIC COMPANY LLC**, 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066, a company registered under the laws of the State of Delaware, USA, tax no: 52-2140933, represented by Daniel L. Roderick, hereinafter referred to as **"Client"**

Deloitte and the Client are hereinafter individually referred to as the "Party" and jointly referred to as the "Parties" have agreed to conclude this Engagement Letter on Provision of Professional Services (hereinafter as the "Engagement Letter").

**Article 1**
**Introductory Provision**

The Client wishes to engage Deloitte to provide the services as a Slovene tax representative in the meaning of second paragraph of Article 76 of the Slovene VAT Act.

The purpose of this Engagement Letter is to set out the terms and conditions, and procedural arrangements, whereby Deloitte provides services described in Article 2 (hereinafter "Services") of this Engagement Letter, based on source documents and information provided by the Client.

**Article 2**
**Services**

The Parties agree that according to the Slovene VAT Act Deloitte will perform the services as a Slovene tax representative for the Client. For this reason, the Client will appoint Deloitte as its Slovene tax representative and will grant Deloitte the power of attorney, which will enable Deloitte to register as the tax representative for the Client in the Slovene tax register. The tax representation is performed solely for VAT purposes and does not cover any representation in front of any other authorities in Slovenia.

The tax services offered by Deloitte in the Engagement Letter do not represent an audit or internal audit, accounting or bookkeeping services, representing the Client in tax and court procedures in tax matters, legal services or any other services which would in any way affect any items of the client's accounting statements and are not aimed at advising the client on the matters which affect or could affect their accounting statements.

**Article 3 Obligation**

**of Client**

The Client undertakes:
- to provide any relevant information requested by the Slovene Tax Authority. In the event of a potential tax audit or other actions requiring verification of the documents by tax authorities, the Client shall immediately provide Deloitte with the original of invoices and other documents that the tax authority may demand in the course of their activities.
- to indicate Deloitte's details (name, address and VAT ID number) as the Slovene tax representative on all invoices issued under its Slovene VAT ID number;
- to timely pay calculated monthly VAT obligation on the Slovene Tax Authority's bank account, and to provide Deloitte with an authorization for the access to the Client's account at the tax authority to verify if the VAT liability is settled by due date. Upon request the Client should provide a confirmation of payment that should clearly indicate the amount, date of transmitting and the bank account's number of the tax authority to which the funds were transferred.

On the basis of second paragraph Article 76 of the Slovene VAT Act Deloitte as the registered tax representative is the person liable for the payment of VAT. Notwithstanding the above provision, the Parties confirm that their intention is that Deloitte shall not be obliged to pay any taxes of the Client. The Client undertakes to guarantee that Deloitte is not obliged to pay any taxes of the Client. In particular, the Client undertakes to deliver all documents in time and to make the payments of all taxes together with any eventual interest due, if any.

**Article 4**
**Contact Person**

For the purposes of this Engagement Letter the contact person for Deloitte shall be:

Andreja Škofič Klanjšček,
Tax Director,
Dunajska cesta 165,
1000 Ljubljana,
Slovenia
e-mail:         askofic@deloitte.com
Phone: +386 (0)1 3072 841
Fax: +386 (0)1 3072 900

Deloitte may change the contact person or contact information. In such case Deloitte agrees to promptly inform the Client on any such change.

**Article 5**
**Fee**

The Parties agree that the fees for the services will be as follows.

- Acting as a tax representative; 6.000 EUR per annum.

Deloitte may identify additional issues, which may require the Parties to discuss a change in the above fees.

Other services, which are not specified within the scope of the Article 2, ordered by

the Client, will be charged on time spent basis according to the hourly rates specified below, unless otherwise agreed.

| Employee | Rate per hour |
|---|---|
| Director | EUR 470 |
| Senior Manager | EUR 375 |
| Manager | EUR 265 |
| Senior Consultant | EUR 195 |
| Consultant | EUR 130 |

The fees for the Services agreed in this Engagement Letter are exclusive VAT which shall be calculated in the invoice submitted by Deloitte in accordance with the applicable laws and out-of-pocket expenses (e.g. translation costs, currier services, etc.).

## Article 6
## Standard Terms and
## Conditions

The terms of Deloitte's engagement are set out in this Engagement Letter and the terms of the enclosed Master Services Agreement signed between Deloitte LLP and Westinghouse Electric Company LLC on the 21st of April 2011 (the *Business Terms*") which form a component part of this Engagement Letter (collectively the "Contract"). In case of a contradiction between this Engagement Letter and the *Business Terms*, the Engagement Letter shall prevail.

Amendments to the *Business Terms*:
- The term "Consultants" refers to Deloitte svetovanje d.o.o., Dunajska ulica 165, 1000 Ljubljana.
- Article 5 a) is amended so it reads:

"Deloitte's invoices are due and payable by the Client upon presentation. For invoices upon which payment is not received within forty-five (45) days of the invoice date. Without limiting its other rights or remedies, Deloitte shall have the right to suspend or terminate the Services entirely or in part if payment is not received within forty-five (45) days of the invoice date. Work will not be suspended or terminated until Client has been notified in writing and is given five (5) business days to submit past due payment.    The Client shall be responsible for all taxes, such as VAT, sales and use tax, gross receipts tax, withholding tax, and any similar tax, imposed on  or in connection with the Services, other than Deloitte's income and property taxes."

- Article 13 d) regarding insurance is deleted and does not apply to this engagement.
- Article 26 regarding Governing Law is amended so it reads:

"This Contract, including exhibits and all matters relating to it, shall be governed by,  and construed in accordance with, the laws of the Federal Republic of Germany (without giving effect to the choice of law principles thereof). All disputes arising out of or in connection with this Contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."

- New Article 28 (Data Protection) is added:

**"28. Data Protection**
(a)    Deloitte will process personal data, as defined under the applicable law,

(hereunder referred to as ´Client Personal Data´), provided by the Client in order to provide the Services. Deloitte is acting as a data processor for the Client and shall only process the Client Personal Data in accordance with the Contract, mutual agreement or the Client's instructions. The Client Personal Data shall be these related to the Client's employees, agents, directors, as well as personal information about the authorized representatives of the Client Group as required by the anti-money laundering regulations or any other applicable relevant regulations. The Client confirms hereby that it has obtained all the legally required authorizations to process and transfer the personal data to Deloitte, to instruct Deloitte to process the Client Personal Data in the agreed manner and undertakes to provide Deloitte only with accurate and up-to-date personal data.

(b)       The Client hereby instructs Deloitte to process the Client Personal Data for the purpose of the Contract and/or mutual agreement, and for the purpose of complying with the anti-money laundering regulations or any other applicable regulations. Without limitation of the foregoing, the Client hereby in particular instructs Deloitte to process the following Client Personal Data to the extent required by the scope of the Engagement Letter: (i) last name, first/middle name, date of birth or unique individual ID number (if obtained), place of residence or stay, citizenship, ID document and number and position of management board members, proxies and representatives of the Client for the purpose of identifying the individuals authorized to represent the Client; (ii) last name, first/middle name, position, organizational unit, telephone number and e-mail address of members of the project team based on the Client's authorization, other individuals designated by the Client to cooperate with Deloitte as well as individuals authorized by the Client to accept and approve the Services and their Deliverables for the purpose of performing the obligations relating to coordination and cooperation with Deloitte under the Engagement Letter, (iii) last name, first/middle name, tax ID, parents' names, place of work, date of birth, profession, birthplace, education, place of residence or stay, ID series and number, a unique individual ID number (if obtained), telephone number, position, organizational unit, remuneration, grade and bank account number of any individual for the purpose of the performance of the Services under the Engagement Letter by exchange of written declarations of will of such individual or by signing of an appendix to the Engagement Letter. The Client acknowledges hereby that it is solely the Client who is responsible for informing Deloitte on the appropriate measures that the Client requires in order to protect the Client's Personal Data, unless such information is obtained from the Client, the Client instructs Deloitte hereby that Client Personal Data will be processed in the Client's locations in a traditional manner and in the Deloitte's locations using Deloitte IT systems. The Client Personal Data will only be used, accessed, managed, transferred, disclosed to the third parties or otherwise processed to fulfill the purpose(s) for which the Client Personal Data were made available and in accordance with the Client instructions. Deloitte shall keep the Client's Personal Data secured and confidential as provided for under the articles on Confidentiality here above. Deloitte shall take the technical, organizational and personal measures appropriate to the nature of the processing and as instructed by the Client. Deloitte will not be responsible for the security of the Client Personal Data during e-mail, authorized transmission over commercial internet and voice over transmission via public telecommunication facilities or services and for security arranged in accordance with the Client instruction. The Client's Personal Data will only be accessed by authorized individuals within the Deloitte' team and by authorized IT experts, who are responsible to keep secured the electronic system hosting the Client's Personal Data.

(c)       Cross Border Data Flows. The Client acknowledges that Deloitte may transfer, including transfers to DTTL member firms and Subcontractors, any Client Personal Data across a provincial, territorial or country border, including outside the territory of the European Union, if Deloitte reasonably considers such transfer appropriate or useful for Deloitte's performance of the Services and if in accordance with applicable law.

(d)       Return of Personal Data. Upon the expiry or termination of the Contract, Deloitte will return all the Client personal data and the Client will return all Deloitte personal data, if provided, unless (1) the data have been previously returned or

destroyed in accordance with the Contract, (2) advised or agreed otherwise by the parties to this Contract, or (3) required otherwise by law."
- Work order as it is attached to *Business Terms* is superseded by this Engagement Letter.

### Article 7
### Agreement Period and Cancellation

This Engagement Letter is concluded for an indefinite period.

However, Deloitte may terminate the Engagement Letter without keeping any termination period, if:
(i)        The Client violates the terms and/or conditions of the Engagement Letter and fails to take the necessary steps to rectify the situation after receiving a written notification of the violation by Deloitte, or
(ii)       The Client does not pay timely the agreed fees or other amounts due arising out of this Engagement Letter, this especially refers to the payment of the client's realized VAT liability in Slovenia to the Slovene tax authority.

This Engagement Letter may be terminated by either party at any time upon giving written notice to the other party not less than thirty (30) days before the effective date of termination;

In the cases indicated above the Termination Date shall be the date of other party receiving appropriate notice terminating the Engagement Letter.

On or after the termination date Deloitte shall inform the competent authorities that Deloitte is no longer a tax representative of the Client and is not responsible for the Client's tax liabilities any more. Starting from the Termination Date, Deloitte shall cease rendering the Services specified under this Engagement Letter (including but not limited to submitting the VAT returns to the tax authority). In such a situation, Deloitte shall not be liable for any penalties and/or interest imposed on the Client in connection with failure to observe the time limits for submitting the required VAT returns or other requested documents to the relevant tax authority.

**Article 8**
**Final Provision**

This Engagement Letter shall enter into force on the day of signing by both Parties.

The Engagement Letter, including all its enclosures, is executed in three equal copies. The Client shall retain one and Deloitte two copies.

The Parties represent that they have signed this Engagement Letter freely, seriously and without error, it was not signed in duress or under conspicuously onerous conditions, they read the Engagement Letter, understood its content in witness whereof they attach their signatures.

**Enclosures:**

1. Master Services Agreement between Deloitte LLP and Westinghouse Electric Company LLC dated 21st of April 2011

For Deloitte:
Yuri Sidorovich,
President of the Board

(signature)

Date: 12. 10. 2015

For the Client:
Rene Williamson,

Supplier Relations Manager

(signature)

Date: 10/12/15

# Deloitte.

DELOITTE SVETOVANJE D.O.O.
Ljubljana, Slovenija        1

**BUSINESS TERMS OF DELOITTE D.O.O.**

**1.**    **Contract and Parties**

(a)    The provisions of the Engagement Letter and/or the Work Order and any appendices other than these Business Terms ("Engagement Letter") issued by Deloitte d.o.o. ("Deloitte") and addressed to the entity identified in the Engagement Letter ("Client"), and these Business Terms (together the "Contract") constitute the whole agreement between the Client and Deloitte in relation to the services, deliverables and work product described in the respective Engagement Letter and/or the Work Order to be provided by Deloitte (including the Advice as defined below) and Deloitte's responsibilities for them (the "Services"). Capitalized terms not defined in the Business Terms shall have the meaning given to them in the Engagement Letter.
(b)    For the purposes of the Contract, the term "Client" shall mean the entity which signed the Engagement Letter and/or the member(s) of the Client Group being a party to or being identified in the respective Engagement Letter. Client represents and warrants that it has the power and authority to (a) sign the Contract and (b) to bind itself and the members of the Client Group as identified in the Engagement Letter.
(c)    Deloitte may subcontract any Services under this Contract to any other Deloitte Entity and/or any other third party (collectively "Subcontractor"). Client's relationship is solely with Deloitte as the entity contracting to provide the Services. Each party is an independent contractor and neither party is, nor shall be considered to be, the other's agent, distributor, employer, partner, fiduciary, joint venturer, co-owner, or representative.
(d)    Deloitte remains responsible to the Client for all of the Services performed or to be performed under this Contract, including Services performed by its Subcontractors. Accordingly, to the fullest extent possible under applicable law, a) none of the Deloitte Entities (except Deloitte) will have any liability to the Client Group; b) the Client will not bring, any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities (except Deloitte); and c) the Client will also ensure that no other member of the Client Group which is not a party to the Contract brings any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities. Notwithstanding the fact that the Services under this Contract are to be provided in the name of Deloitte by individual parsons (e.g. partners, employees or contractors working with Deloitte based on a civil contract for provision of services), no such individual person intends to assume responsibility (including responsibility in any personal capacity) for the provision of Services under this Contract. The Client agrees that it will not bring any claim against any of such individual person as Deloitte remains responsible and liable to the Client for the acts or omissions in relation to the provision of Services under the terms of this Contract.
(e)    "Deloitte Entities" means Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its member firms, and their respective subsidiaries and affiliates (including Deloitte), their predecessors, successors and assignees, and all partners principals, members, owners, directors, employees, subcontractors (including the Subcontractors) and agents of all such entities. Neither DTTL nor, except as expressly provided herein, any member firm of DTTL has any liability for each other's acts or omissions. Each member firm of DTTL is a separate and independent legal entity operating under the names "Deloitte", "Deloitte & Touche", "Deloitte Touche Tohmatsu", or other related names; and services are provided by member firms or their subsidiaries or affiliates and not by DTTL. "Deloitte Central Europe" refers to the regional organization of entities organized under the umbrella of Deloitte Central Europe Holdings Limited, the member firm in Central Europe of Deloitte Touche Tohmatsu Limited. Services are provided by the subsidiaries and affiliates of Deloitte Central Europe Holdings Limited, which are separate and independent legal entities.

**2.**    **Responsibilities of the Client and of Deloitte**

(a)    Responsibilities of the Client
(i)    The Client shall cooperate with Deloitte and its Subcontractors in connection with the performance of the Services, including, without limitation, providing Deloitte and its Subcontractors with reasonable facilities and timely access to data, information and personnel of the Client Group or other persons whose cooperation is necessary for the provision of the Services. The Client shall be responsible for the performance of its personnel and agents, for the timeliness, accuracy and

completeness of all data and information (including all financial information and statements) provided to Deloitte and its Subcontractors by or on behalf of the Client Group and for the implementation of any advice, opinions, reports or other work product in any form provided by or on behalf of Deloitte and/or its Subcontractors as part of the Services ("Advice"). Deloitte and its Subcontractors may use and rely on information and data furnished by the Client or by others identified by the Client without verification. The performance of the Services is dependent upon the timely performance of the Client's responsibilities under the Contract and timely decisions and approvals of the Client in connection with the Services. Deloitte and its Subcontractors shall be entitled to rely on all decisions and approvals of the Client. The Client agrees that all data, information and documentation necessary for the provision of the Services must be provided directly to Deloitte's personnel performing the Services even if such data, information and documentation have already been provided to other Deloitte personnel in the course of a different engagement.

(ii)      The Client shall be solely responsible for, among other things: (A) making all management decisions and performing all management functions; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for the implementation of the results of the Services and other further course of action carried out on the basis of the results of the Services; and (E) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities.

(b)      Responsibilities of Deloitte

(i)      The Services provided are not binding on tax or other governmental or regulatory authorities or the courts and do not constitute a representation, warranty, or guarantee that tax or other governmental or regulatory authorities or the courts will concur with any Advice. Any Services provided by or on behalf of Deloitte will be based upon the law, regulations, cases, rulings, and other authority in effect at the time the specific Services are provided. Subsequent changes in or to the foregoing (for which Deloitte shall have no responsibility to advise Client) may result in the Services provided by or on behalf of Deloitte being rendered invalid.

(ii)      In formulating any Advice as part of the Services, Deloitte may discuss ideas with the Client orally or show the Client drafts of such Advice. To the extent that the content of drafts or oral Advice are expected to be finalized and confirmed to the Client in writing (including via e-mail), such confirmed Advice shall supersede any previous drafts or oral Advice. Deloitte shall not be responsible if the Client or others choose to rely on, act or refrain from acting on the basis of any drafts or oral Advice.

(iii)      In the event of an inspection carried out by tax or other governmental or regulatory authorities, whether or not as a consequence of the Services provided, the Client agrees that any assistance of Deloitte relating to such inspection does not form a part of the Services except as otherwise provided in the Engagement Letter.

(iv)      Deloitte shall have no responsibility to monitor events occurring after the date of the Services, nor to update any Advice unless the parties have agreed otherwise in writing explicitly.

**3.      Payment of Invoices**

Deloitte's invoices are due and payable by the Client upon presentation. If payment of an invoice is not received within 30 days of the invoice date, Deloitte reserves the right to charge interest at (i) the highest rate mandated or allowable by law with a minimum of 1½% per month, or (ii) the rate specified by mandatory laws that cannot be modified by the agreement of the parties, in each case compounded monthly to the extent allowable by law. Without limiting its other rights or remedies, Deloitte shall have the right to suspend or terminate the Services entirely or in part if payment is not received within 30 days of the invoice date. In case there is any dispute over the invoiced amount, the undisputed amount shall be paid by the Client. The Client shall be responsible for all taxes, such as VAT, sales and use tax, gross receipts tax, withholding tax, and any similar tax, imposed on or in connection with the Services, other than Deloitte's income and property taxes.

Any estimate of the total fees for the Services, if so explicitly agreed in the Engagement Letter, will be based upon Deloitte's assessment of the work, taking into account of any assumptions set out in the Engagement Letter. Such estimated fees may be adjusted, for example, if the Services prove more complex or time consuming than expected, whereas in such situation, Deloitte shall inform the Client about such expected adjustment as soon as possible and the parties shall agree on such adjustments.

4.    **Term**

This Contract may be terminated by either party at any time, with or without cause, by giving written notice to the other party not less than 30 days before the effective date of termination, provided that any notice of termination for cause shall not be effective if the breaching party cures the breach within the notice period where the breach is capable of remedy. Deloitte may terminate this Contract, in whole or in part, with immediate effect upon written notice to the Client if Deloitte determines that (a) a governmental, regulatory, or professional entity, or other entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte's performance of any part of the Contract illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change (including, without limitation, changes in ownership of the Client or any of its Affiliates being any company, partnership or other legal entity (other than a natural person) which from time to time is directly or indirectly controls, is controlled by or is under the common control with, Client ("Affiliate")) such that Deloitte's performance of any part of the Contract would be illegal or otherwise unlawful or in conflict with independence or professional rules. Upon termination of the Contract for any reason, the Client will compensate Deloitte in accordance with the terms of the Contract for the Services performed and expenses incurred through the effective date of termination.

5.    **Ownership of Deloitte Property & Advice**

(a)       To the extent that any Deloitte Entity uses or develops any of its property (whether tangible or intangible) in connection with this Contract, such property, including work papers, shall remain the property of the relevant Deloitte Entity. Subject to payment of all of Deloitte's fees due in connection with the Services and this Contract, the Client shall only obtain a non-exclusive, non-transferable license to use the Advice for the purpose set out in the Contract or in the Advice and in compliance with the other provisions of the Contract. The fee agreed in the Engagement Letter includes the license fee unless specifically excluded. The fee agreed in the Engagement Letter is net of any potential withholding tax that may be imposed on Deloitte's invoice(s) to the Client. Deloitte shall have ownership (including, without limitation, copyright and other intellectual property ownership) of the Advice and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall ensure that the Client Group does not assert or cause to be asserted against any Deloitte Entity or its personnel any prohibition or restraint from so doing. Any intellectual property and other proprietary rights in materials and data provided by the Client Group for performing the Services shall remain the property of the Client Group.
(b)       Notwithstanding anything to the contrary in the Contract, the Client acknowledges that Deloitte and its Subcontractors, in connection with performing the Services, may develop or acquire general experience, skills, knowledge, and ideas that are retained in the memory of their personnel. The Client agrees that any Deloitte Entity may use and disclose such experience, skills, knowledge and ideas without restriction.
(c)       The Client shall also be entitled to have access to and use of those Deloitte Technologies supplied solely for the purposes of receiving the Services and for no other purposes in accordance with and subject to agreement by the Client with the provisions of the licenses applicable to such Deloitte Technologies as notified by Deloitte .As between the Client and Deloitte, Deloitte will own and retain ownership of all intellectual property rights and other proprietary rights of any kind in the Deloitte Technologies that are used or developed in connection with this Contract.
(d)       "Deloitte Technologies" means all know-how and software, system interfaces, templates, methodologies, ideas, concepts, techniques, tools, processes, and technologies, including web-based technologies and algorithms owned by, licensed to or developed by any Deloitte Entity and used by Deloitte and its Subcontractors in performing the Services or other obligations.

6.    **Limitations on Damages**

(a)       Deloitte shall not be liable to the Client Group for any claims, liabilities, losses, damages, costs or expenses arising under or in connection with the Contract regardless of the legal basis ("Claims") for an aggregate amount in excess of fifty thousand euro or, if greater, the fees paid under the Contract by the Client to Deloitte for that part of the Services giving rise to the Claim up to a maximum liability of two hundred fifty thousand euro except to the extent it is finally judicially determined to have resulted primarily from the intentional misconduct of Deloitte or any Subcontractor.

(b)      In no event shall any Deloitte Entity (including Deloitte and its Subcontractors) be liable for any loss of use, contracts, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense arising under or in connection with the Contract.

(c)      In circumstances where all or any portion of the provisions of this Section 6 are finally judicially determined to be unenforceable, the aggregate liability of Deloitte and any other Deloitte Entity for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(d)      Deloitte's responsibility for the Services is solely towards the members of the Client Group identified in the Contract or Advice to be entitled to rely on the Services, and not towards any other members of the Client Group. If more than one member of the Client Group is identified in the Engagement Letter, Deloitte's responsibility is solely towards the members for whose benefit the Services were provided.

(e)      Section 6(a) applies in aggregate to each and all Claims which from time to time arise under or in connection with the Contract and the Services, whether such Claims are made at the same or different times or by one or more members of the Client Group and/or other persons. The cap in Section 6(a) also applies to any and all Claims against any other Deloitte Entities, including the Subcontractors, if and only to the extent that it is judicially determined that any of them have any liability under or in connection with the Contract or the Services.

(f)      If the liability exclusion for other Deloitte Entities contained in Section 1(d) is for any reason not effective, then the limitations on liability provided for in this Section 6 shall apply to the other Deloitte Entities as if they were named therein.

(g)      The provisions of Section 6 shall not apply to any liability which by the governing law of the Contract is unlawful to limit or exclude.

## 7.      Warranties

This is a services agreement. Deloitte warrants that it shall perform the Services in good faith and with due professional care and skill. To the fullest extent permitted by law, Deloitte disclaims all other warranties, either express or implied.

## 8.      Force Majeure

Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), fire or other casualty, act of God, epidemic, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

If either party is prevented from meeting its obligations due to circumstances of force majeure, it shall notify the other party accordingly and the other party shall, if possible, grant a reasonable extension for the performance of this Contract. If the circumstances of force majeure last for more than 6 months, either party may terminate the Contract in accordance with Section 4 above.

## 9.      Limitation on Actions

No action, regardless of form, relating to the Contract or the Services, may be brought by either party more than two years after the cause of action has accrued under applicable law, unless a mandatory period applies which by the governing law of the Contract cannot be limited.

## 10.      Confidentiality

(a)      To the extent that, in connection with this Contract, Deloitte comes into possession of any tax or other information related to the Services, trade secrets or other proprietary information relating to the Client Group which is either designated by the disclosing party as confidential or is by its nature clearly confidential ("Confidential Information"), Deloitte shall not disclose such Confidential Information to any third party without the Client's consent. The Client hereby consents to Deloitte disclosing such Confidential Information (i) to any Deloitte Entity (including any Subcontractors) and their personnel and(ii) to legal advisors, auditors and insurers or as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with

potential or actual mediation, arbitration or litigation. The obligation of confidentiality shall not apply to the extent such Confidential Information (A) is or becomes publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of the default of Deloitte, (B) becomes available to any Deloitte Entity on a non-confidential basis from a source other than the Client Group which Deloitte believes is not prohibited from disclosing such Confidential Information to Deloitte by an obligation of confidentiality to the Client Group, or (C) is known by any Deloitte Entity prior to receipt from the Client Group without any obligation of confidentiality, or to any information which is developed by any Deloitte Entity independently of Confidential Information disclosed by the Client Group.

(b)    The Client shall not disclose to any third party any Advice without the prior express written consent of Deloitte, except (i) disclosure may be made to the extent applicable mandatory laws, regulations, rules and professional obligations prohibit limitations on disclosure; (ii) if the Client or its Affiliates have securities registered with the United States Securities and Exchange Commission and any Deloitte Entity is the auditor of the Client or any of its Affiliates, in which case no restrictions or limitations are placed by Deloitte on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Contract and the Client acknowledges that none of its other advisers has or will impose restrictions or limitations with such tax treatment or tax structure or (iii) to the extent the United States Internal Revenue Code and applicable Internal Revenue Service guidance relating to confidential tax shelters (or comparable law or guidance from other taxing authorities in other jurisdictions) apply, in which case there are no restrictions or limitations on the disclosure of the Advice and (iv) the Client may disclose the Advice on a need to know basis to any Affiliates that are not identified in the Engagement Letter or the Work Order for information purposes only, provided that the Client guarantees that the recipient undertakes to keep such Advice confidential and not to bring any claim of any kind against any Deloitte Entity in relation to the Advice or the Services.

(c)    The Client shall use the Advice solely for the purposes specified in the Contract or Advice and, without limitation, shall not, without the prior written consent (including via e-mail) of Deloitte, use any Advice in connection with business decisions of any third party or for advertisement purposes. All Services are only intended for the benefit of the members of the Client Group identified in the Contract or Advice as being entitled to rely on the Advice. The mere receipt of any Advice by any other persons is not intended to create any duty of care, professional relationship or any present or future liability of any kind between those persons and Deloitte. As a consequence, if copies of any Advice (or any information derived therefrom) are provided to others under the exclusions referred to in the above Section, it is on the basis that Deloitte owes no duty of care or has any liability of any kind to them, or any other persons who subsequently receive the same.

## 11.    Survival and Interpretation

(a)    Any provisions of the Contract which either expressly or by their nature extend beyond the expiration or termination of this Contract shall survive such expiration or termination.

(b)    If any provision of this Contract is found by a court of competent jurisdiction or other competent authorities to be unenforceable in whole or in part, such provision or the relevant part shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein. All provisions shall apply to the fullest extent of the law, whether in contract, statute, tort (including without limitation negligence), or otherwise, notwithstanding the failure of the essential purpose of any remedy.

(c)    Deloitte Entities other than Deloitte are intended third-party beneficiaries of the Contract. Each such Deloitte Entity, including any Subcontractor, may in its own right enforce the provisions of the Contract.

## 12.    Assignment

Neither party may assign or otherwise transfer this Contract without the prior express written consent (including via e-mail) of the other, except that Deloitte may assign any of its rights or obligations hereunder to any other Deloitte Entity and to any successor to its business. Neither party will directly or indirectly agree to assign or transfer to a third party any Claim against the other party arising out of this Contract.

**13.    Indemnification**

The Client shall indemnify and hold harmless Deloitte and any other Deloitte Entity from all third party Claims (as defined in Section 6 above), except to the extent finally judicially determined to have resulted primarily from the intentional misconduct of Deloitte or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this Section are finally judicially determined to be unavailable, the aggregate liability of Deloitte and all other Deloitte Entities (including their respective personnel and Subcontractors) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

**14.    Electronic Communications**

(a)    Except as instructed otherwise in writing, Deloitte Entities and the Client Group are authorized to use properly addressed faxes, email and voicemail communication for both sensitive and non-sensitive documents and other communications concerning this Contract, as well as other means of communication used or accepted by the other. Deloitte Entities may also communicate electronically with the tax and other authorities.

(b)    It is recognized that the internet is inherently insecure and that data can become corrupted, communications are not always delivered promptly (or at all), and that other methods of communication may be appropriate. Electronic communications are also prone to contamination by viruses. Each party will be responsible for protecting its own systems and interests and, to the fullest extent permitted by law, will not be responsible to the other on any basis (contract, tort or otherwise) for any loss, damage or omission in any way arising from the use of the Internet or from access by any Deloitte Entity personnel to networks, applications, electronic data or other systems of the Client Group.

**15.    Entire Agreement, Modification and Effectiveness**

Nothing discussed prior to execution of the Contract induced, nor forms part of, the Contract except to the extent repeated in this Contract. This Contract supersedes any previous agreement, understanding or communication, written (including via e-mail) or oral, relating to its subject matter. No variation to the Contract shall be effective unless it is documented in writing and signed by authorized representatives of both parties, provided, however, that the scope of the Services may be changed by agreement of the parties in writing, including by e-mail or facsimile. If Deloitte has already started work (e.g., by gathering information, project planning or giving initial advice) at the request of the Client then the Client agrees that this Contract is effective as of the start of such work, either by retrospective effect allowable by applicable laws or by acknowledging that this entire Contract constitutes the written confirmation of the oral agreement concluded between the parties at the start of such work.

**16.    Other Clients**

Nothing in this Contract will prevent or restrict any Deloitte Entity, including Deloitte, from providing services to other clients (including services which are the same or similar to the Services) or using or sharing for any purpose any knowledge, experience or skills used in, gained or arising from performing the Services (subject to the obligations of confidentiality set out in Section 10) even if those other clients' interests are in competition with the Client Group. Also, to the extent that Deloitte possesses information obtained under an obligation of confidentiality to another client or other third party, Deloitte is not obliged to disclose it to any member of the Client Group, or use it for the benefit of the Client Group, however relevant it may be to the Services.

**17.    Staff**

The Client agrees not to directly or indirectly solicit, employ or engage any personnel of Deloitte who within 6 months of such action has been involved directly with the provision of the Services under this Contract, except where an individual responds directly to a general recruitment campaign. Both parties claim and confirm that the above restrictions are kept on minimal level and they are adequate considering particular Services and by agreeing the above restrictions parties are not able to limit economic competition on a substantial part of the relevant market. The above restrictions are limited to

the duration of the Contract and 6 months after its termination/expiration and to the territory of Slovenia and there is no possibility to extend such mutual agreement on any future projects.

### 18.    Destruction of Working Papers

Deloitte may retain copies of documents and files provided by the Client Group in connection with the Services for purposes of compliance with applicable laws, professional standards and internal retention policies. Any documents and files retained by Deloitte on completion of the Services (including documents legally belonging to the Client Group) may routinely be destroyed in accordance with Deloitte's policies applying from time to time.

### 19.    Marketing and Use of Name

Neither Deloitte Entities nor Client Group shall use the other's trademarks, service marks, logos, and/or branding in external publicity material without such other party's prior written (including via e-mail) consent. However, Deloitte Entities may refer to the names of the Client Group and the performance of the Services in a) marketing, publicity materials and proposals as an indication of its experience, and b) internal data systems.

### 20.    Spreadsheets, models and tools

In the course of providing the Services, Deloitte may make reference to spreadsheets, models or tools (together "Models") that the Client provides to Deloitte or requests Deloitte to rely upon ("Client Models") or that Deloitte otherwise uses in connection with the Services ("Deloitte Models"). All Models have limitations and may not produce valid results for all possible combinations of input data with the result that actual and potential errors are not detected. Unless otherwise expressly agreed in the Contract: (i)Deloitte will not be responsible for reviewing, testing or detecting any errors in any Client Models; (ii) no Deloitte Model will be provided or treated as Advice; and (iii) where Deloitte provides any Deloitte Model by way of explanation or illustration of any Advice, Deloitte makes no representation, warranty or undertaking (express or implied) of any kind about the accuracy, suitability or adequacy of any such Deloitte Model for the Client's own needs.

### 21.    Data Protection

(a)    Deloitte may collect, use, transfer, store or otherwise process (collectively, "Process") information provided by the Client that can be linked to specific individuals ("Personal Data") as defined under the applicable law. Deloitte will Process the Personal Data in accordance with applicable laws and professional regulations. Deloitte shall Process Personal Data in various jurisdictions in which Deloitte operates (listed at: http://www.deloitte.com/view/en_GX/global/locations/index.htm) and thus Deloitte is entitled to transfer Personal Data and other confidential information provided by the Client, including transfers to its subcontractors, across country border (including outside the territory of the European Union) providing that the legal obligations for such transfer are fulfilled and the technical, organizational and personal security measures are maintained on the same level as required by the applicable law.

(b)    The Client warrants that is has the authority to provide the Personal Data to Deloitte in connection with the performance of the Services (as defined in the Contract) and that the Personal Data has been collected and Processed in accordance with applicable law. The Client is obliged to provide Deloitte with all the necessary instructions for Processing and with accurate and up-to-date Personal Data and Deloitte shall take the technical, organizational and personal measures to protect the Personal Data as instructed.

(c)    Furthermore Deloitte may Process contact Personal Data (name, surname, e-mail address and phone number) in a special database serving for commercial communication and other marketing purposes, until revoked. For such purposes Deloitte may transfer the contact Personal Data to its affiliates and related Deloitte Entities within Central Europe region (see: http://www.deloitte.com/view/en_SK/sk/about/deloitteincentraleurope.htm?lgtog=lgtog) under the conditions of local applicable laws regulating data protection and use of personal data for marketing and direct mailing purposes. To review and/or update the respective Personal Data as well as revoke the consent at any time, the Client and the affected individual may contact Deloitte pursuant to procedure agreed in the Contract.

(d)     The Client agrees that Deloitte may transfer the engagement documentation including the Personal Data and other confidential data for storage purposes to its regional server managed by the subcontracting firm or one of its affiliates and/or Subcontractors, provided that the technical, organizational and personal measures are maintained on the same level. The engagement documentation and the Personal Data shall be retained for the period of 10 years following the expiration of the contractual relationship based on this Contract or as required by the relevant anti-money laundering regulations or any other applicable regulations.

## 22.     Counterparts and language

This Contract may be signed in any number of counterparts (whether such counterparts are original or facsimile or in the form of a .pdf attachment to an email). Each signed counterpart shall be deemed to be an original thereof, but all the counterparts shall together constitute one and the same instrument. Where there are versions of the Contract in the English language and another language, in the event of any discrepancies between versions, the English language version shall prevail.

## 23.     Dispute Resolution

The parties agree to attempt in good faith to resolve any dispute or claim (including Claims for set off, Claims related in any invoice or invoiced amount and counterclaims) arising out of or in connection with the Contract promptly through negotiations between senior management.
If the matter is not resolved through negotiation within 60 days of a request being discussed by senior management, then legal proceedings may be commenced in respect of the matter. Nothing in this clause will prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy.

## 24.     Governing Law and Submission to Jurisdiction

This Contract, and all matters relating to it (including non-contractual obligations) shall be governed by, and construed in accordance with, the laws of Slovenia (without giving effect to the choice of law principles thereof). Any action or proceeding arising out of or relating to this Contract or the Services shall be brought and maintained exclusively by the court territorially appropriate for the Deloitte registered office in Ljubljana. Subject to Section 23, the parties hereby expressly and irrevocably (i) submit to the exclusive jurisdiction of such courts for the purposes of any such action or proceeding and (ii) waive, to the fullest extent permitted by law, any defense of inconvenient forum to the venue and maintenance of such action in any such courts.

## 25.     Work Orders

(a)     The Services, or part thereof, shall be performed on the basis of an instruction containing the description of the requested Services delivered by the Client to Deloitte (hereinafter "Work Order"). The Work Order may be made in writing, through fax, e-mail or verbally.
(b)     The Work Order is accepted and confirmed by the earlier of the following events: (i) by Deloitte delivering the confirmation of the Work Order to the Client or (ii) by Deloitte providing the Services requested in the Work Order. Deloitte may decline to accept the Work Order. The declination of the Work Order may be made in writing, through fax, e-mail or verbally. Deloitte is, however, not allowed to do so without a reason and is obliged to state the reason in writing, through fax, e-mail or verbally to the Client.
(c)     The Client can only cancel the Work Order in writing, through fax or e-mail. The Client shall compensate Deloitte for the Services performed and expenses incurred through the effective date of cancellation of the Work Order.

## 26.     Fees

(a)     The determination of the fees for the Services and the Client's obligation to pay the fees for the Services are not conditioned by the conclusions or the result of the Services. The fee determined in foreign currency shall be paid as specified in the invoice denominated in the currency in which the fee has been determined and to the Deloitte's bank account.

(b)      The fees for the Services are charged on the basis of the time spent by providing the Services combined with the hourly rate of the person performing the Services (including Services provided by the Subcontractor), level of effort and the applied technology and know-how. The hourly rates shall also apply to the Services provided by the Subcontractors, but not to Services provided by other Deloitte Entities. The Client acknowledges that the fee for the services provided by Deloitte Entities will be charged at their prevailing rates. Deloitte reserves the right to adapt the standard hourly rates on the basis of economic circumstances such as, but not limited to, market trends, inflation level or currency fluctuations. Deloitte will inform the Client when the standard hourly rates determined in euro are increased on average by 10% or more.

(c)      The fee for the provision of the Services does not include the expenses incurred by Deloitte in connection with the provision of the Services. Reasonable expenses incurred by Deloitte, including travel and subsistence, and goods and services purchased in connection with the provision of the Services will be charged in addition to the fee for the provision of the Services.

(d)      Deloitte reserves the right to invoice the provided Services on an ongoing basis (including progress invoicing) in accordance with the amount of Services performed or to request an advance payment before the Services are rendered. Deloitte reserves the right to ask advance payment of expenses to be made on behalf of the Client.

(e)      In order to compensate any fee payable, Deloitte is entitled to offset any of its receivables from the Client against any receivables the Client may have from Deloitte.

(f)      For VAT purposes, the Services are supplied continuously unless the parties agree otherwise. Each supply shall be regarded as having been rendered on the date the related invoice is issued, unless applicable mandatory laws stipulate otherwise.

### 27.    Conflict of Interest

Deloitte checks possible conflicts of interest to a reasonable extent before rendering the Services to the Client. Nevertheless, since Deloitte provides many different professional services to many clients it cannot identify all situations where there may be a conflict with the Client's interests. The Client shall therefore without undue delay notify Deloitte of any potential conflict of interests affecting the Services provided to the Client. If a potential conflict of interest is identified by Deloitte or the Client and Deloitte supposes that the Client's interests can be properly safeguarded by the implementation of appropriate procedures, Deloitte will discuss and agree such procedures with the Client.

### 28.    Closing Provisions

These Business Terms are valid and effective as of 1 October 2012. This version supersedes any previously existing version notwithstanding any other terms or conditions contained in any proposals or similar documents. Deloitte reserves the right to update the Business Terms from time to time and/or to supplement them with additional terms or conditions specific to individual advisory Services. Any Work Order delivered by the Client to Deloitte following the prior and timely delivery of the updated Business Terms shall be considered as the confirmation of and the consent with the changes of the Business Terms by the Client.

# Deloitte.

Deloitte d.o.o.
Dunajska cesta 165
1000 Ljubljana, Slovenija
Registered at the Municipal
Court
v Ljubljani 1/15919/00
ID Number: 5573092
VAT No.: SI15049027
Basic Capital: 22.356,00 EUR
www.deloitteCE.com
Contact: Yuri Sidorovich

Westinghouse Electric Company LCC
Westinghouse Drive 1000
16066   Cranberry Township
United States of America
VAT No.:
Attn.: George Yesenosky

| | |
|---|---|
| Invoice Number: | SI01-910145 |
| Date of sale: | 3.5.2017 |
| Invoice date: | 3.5.2017 |
| Due date for payment: | 2.6.2017 |
| Payment terms: | Within 30 Days of Invoice Date |
| Place of performing: | Ljubljana |
| Client No.: | 52224 |
| Project No.: | 52224-01 |
| Partner: | Andreja Škofič Klanjšček |
| Manager: | Alenka Gorenčič |
| Contact: | Alenka Gorenčič |

# Credit Memo

EUR

**Tax representation services 15/16**
Fees                                                              -6.000,00

| | |
|---|---|
| Base Amount: | -6.000,00 |
| Exempt VAT: | 0,00 |
| **Total Value EUR** | **-6.000,00** |

Services not performed in the United States of America.

Credit note for the invoice SI01-909630.

VAT reverse charge according to article 25(1) of the Slovene VAT Act.

Place of payment:
BKS Bank AG
Verovškova ulica 55a
1000 Ljubljana, Slovenija
IBAN: SI56 3500 1000 1175 358
SWIFT Code: BFKKSI22
01910145

# Deloitte.

DELOITTE SVETOVANJE d.o.o.
Chairman of the Board Yuri Sidorovich
Ljubljana, Slovenija
Signature

Deloitte refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee, and its network of
member firms, each of which is a legally separate and independent entity. Please see www.deloitte.com/about for a detailed description
of the legal structure of Deloitte Touche Tohmatsu Limited and its member firms.

# Deloitte.

Deloitte d.o.o.
Dunajska cesta 165
1000 Ljubljana, Slovenija
Registered at the Municipal
Court
v Ljubljani 1/15919/00
ID Number: 5573092
VAT No.: SI15049027
Basic Capital: 22.356,00 EUR
www.deloitteCE.com
Contact: Yuri Sidorovich

Westinghouse Electric Company LCC
Westinghouse Drive 1000
16066  Cranberry Township
United States of America
VAT No.:
Attn.: George Yesenosky

| | |
|---|---|
| Invoice Number: | SI01-910147 |
| Date of sale: | 1.7.2016-30.6.2017 |
| Invoice date: | 3.5.2017 |
| Due date for payment: | 2.6.2017 |
| Payment terms: | Within 30 Days of Invoice Date |
| Place of performing: | Ljubljana |
| Client No.: | 52224 |
| Project No.: | 52224-01 |
| Partner: | Andreja Škofič Klanjšček |
| Manager: | Alenka Gorenčič |
| Contact: | Alenka Gorenčič |

# Invoice Exempt VAT

|  | USD |
|---|---|
| **Tax representation services 15/16** | |
| Fees | 6.549,00 |
| | |
| Base Amount: | 6.549,00 |
| Exempt VAT: | 0,00 |
| **Total Value USD** | **6.549,00** |

Services not performed in the United States of America.

Tax services provided according to the attached specification, PO number 9300125484.

VAT reverse charge according to article 25(1) of the Slovene VAT Act.

Place of payment:
UniCredit Banka Slovenija d.d.
Šmartinska 140
1000 Ljubljana, Slovenija
IBAN: SI56 2900 0000 3297 469
SWIFT Code: BACXSI22
01910147

# Deloitte.

DELOITTE SVETOVANJE D.O.O.
Chairman of Slovenija Yuri Sidorovich
Signature

Deloitte refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee, and its network of member firms, each of which is a legally separate and independent entity. Please see www.deloitte.com/about for a detailed description of the legal structure of Deloitte Touche Tohmatsu Limited and its member firms.

**Client:**    Westinghouse Electric Co LLC
1000 Westinghouse Drive
Cranberry Township, PA 16066
United States

Company Tax ID: 522140933

**PO number:**    9300125484

**Client code/Engagement code no.:**    52224-01

Specification of performed services

| Date | Service | Person | Hours | Rate | Total |
|---|---|---|---|---|---|
| 1.7.2016 - 30.6.2017 | Annual fee for fiscal representation services in Slovenia (1.7.2016 - 30.6.2017) | Deloitte Slovenia - VAT team | | agreed fee | 6.000,00 € |
| | | Total in EUR | | | 6.000,00 € |
| | | Exchange rate applied (EUR/USD as at 2.5.2017) | | | 1,0915 |
| | | **Total in USD** | | | **$6.549,00** |

Purchase Order no. 9300125484

**Send Invoice To:**
Westinghouse Electric Co.
P.O.Box 3700
Pittsburgh, PA 15230
United States