## <u>Exhibit F</u>

**Narrative Description of Services Provided**

## NARRATIVE SUMMARY OF SERVICES RENDERED

All of the professional services that K&L Gates LLP ("KLG") rendered as Special Counsel to the Debtors during the Compensation Period are segregated by matter pursuant to Local and U.S. Trustee Guidelines.  As described in the Application,[1] KLG was engaged as Special Counsel to continue representing the Debtors in a number of ongoing Special Matters. Although in the context of describing the Special Matters, the Narratives describe event that occurred prior to the Petition Date, the fees sought in this Application correspond exclusively to post-petition work.  A description of services performed appears below, by each matter.

### A.  E.U. Competition Counseling

1.      Among other services provided in this category during the Compensation Period, KLG assisted Westinghouse Electric Company, LLC ("WEC" or the "Company") in research and responding to requests for information ("RFIs") from the European Commission on Competition, in connection with the Commission's review of a proposed transaction between The EDF Group (a French nuclear electric power generation company) and Areva (a French multinational nuclear power and renewable energy group), pursuant to which the former acquired the latter's nuclear reactor business.  WEC supplies engineering support and fuel assemblies to EDF and was disclosed as an interested party by the merging companies.  KLG lawyers from its London and Brussels office reviewed the RFIs and relevant underlying technical data to provide the Company legal advice on how to appropriately respond to the government inquiries.

2.      A breakdown of the time expended and associated charges for **E.U. Competition Counseling** is as follows:

---

[1]  Capitalized terms not defined in this Exhibit shall have the meanings ascribed to them in the Application.

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Carloni, Francesco | 700.00 | 16.90 | $11,830.00 |
| Hristova, Katrin | 215.00 | 3.50 | $752.50 |
| Kocon, Michal | 370.00 | 5.70 | $2,109.00 |
| McLaughlin, Benjamin C. | 295.00 | 2.50 | $737.50 |
| Megregian, Scott S. | 700.00 | 29.90 | $20,930.00 |
| Romata, Zanda | 370.00 | 91.40 | $33,818.00 |
| Siakka, Tatiana | 370.00 | 5.50 | $2,035.00 |
| Total | | 155.40 | $72,212.00 |

## B. Subpoena Response

3.       KLG billed time in this Special Matter representing the Company in an investigation initiated by the staff of the Division of Enforcement of the U.S. Securities and Exchange Commission ("SEC" or the "Commission").  In the spring of 2016, the SEC initiated *In re Toshiba Corp.* (FL-3987) (referred to herein as the "SEC Investigation") and issued an administrative subpoena to WEC's ultimate parent company, Toshiba Corporation ("Toshiba").  Toshiba and its related domestic entities, including WEC, retained the law firm of White & Case LLP to represent them in the SEC Investigation.  KLG was also engaged by WEC initially to provide litigation support because of KLG's institutional knowledge of WEC and its operations and also because of the extensive experience of KLG's e-Discovery Analysis and Technology ("e-DAT") practice group with WEC's document management systems and related policies and procedures.

4.       The Company understood that the initial focus of the SEC Investigation related to the findings in a July 2015 report prepared by an Independent Investigative Committee convened by Toshiba to investigate various past accounting irregularities (the "IIC Report"), including, among other subsidiaries, treatment at the Toshiba level of percent-of-completion accounting for WEC's AP1000 projects.

3

5.     On March 10, 2017, the Company received a subpoena from the SEC (the "WEC Subpoena") seeking documents related to, among other things, various aspects of the Company's accounting and financial reporting, including, but not limited to, WEC's financial reporting on its AP1000 projects and attendant goodwill impairment testing from 2010 through the present.

6.     Upon receipt of the WEC Subpoena, the Company requested KLG to expand its engagement with respect to the SEC Investigation to become directly involved with the SEC staff as co-counsel with White & Case.  Moreover, as discussed below, KLG would be able to leverage the significant knowledge obtained during the course of the internal investigation in assisting in directly representing the Company in the SEC Investigation.  As of the Petition Date, KLG had provided advice to WEC as to the issuance of a document preservation notice.

7.     KLG and WEC's initial assessment of the response to the WEC Subpoena would require the collection, review and production of dozens of terabytes of information with the production costs alone exceeding millions of dollars and taking months, if not years, to complete.

8.     On March 31, 2017 (post-petition), KLG finalized an agreement with the SEC staff to narrow the initial scope of the WEC Subpoena.  This allowed WEC to provide a series of targeted document productions and factual narrative responses on certain issues that were of interest to the SEC staff, thereby, among other things, reducing the burden on the Debtors to comply the very broad WEC Subpoena as served.

9.     KLG used its e-DAT practice group to collect, review and produce the targeted productions, which included collecting, organizing and reviewing all of WEC's principal financial records dating back to 2010.  KLG's ability to obtain an initial narrowing agreement with the SEC staff on the scope of the WEC Subpoena and leverage the experience and expertise

4

of its e-DAT practice group resulted in significant cost savings to the Debtors, as well as demonstrating WEC's desire to cooperate with the SEC Investigation.

10.    On June 2, 2017, the SEC served a second subpoena on the Company (the "Second WEC Subpoena") (together with the WEC Subpoena, the "WEC Subpoenas") reflecting narrower document requests following up on the narrative responses prepared by KLG.

11.    KLG and its e-DAT group initiated additional document collection, including specifically the collection of custodian e-mails identified in the WEC Second Subpoena. KLG senior associates familiar with the matter created and tested search terms in consultation with the e-DAT practice group, pursuant to the scope of the WEC Second Subpoena. After the search terms were applied to the data collected, a team of approximately eight associates were trained regarding the responsiveness and privilege issues related to the review set and completed a review of approximately 7,500 documents over the course of approximately three weeks. Thereafter, KLG senior associates performed a quality control review of those documents identified as responsive prior to production to the SEC. KLG produced the responsive documents to the SEC on July 21, 2017.

12.    KLG is in the process of continuing to review and produce additional documents in response to the WEC Second Subpoena, which represents a much narrower universe of documents than initially requested by the SEC.

13.    Based on the facts developed to date and KLG's understanding of the SEC Investigation, the legal basis for any enforcement action involves complex accounting concepts and novel application of U.S. securities law. KLG leveraged the firm's extensive SEC experience to efficiently provide the Company legal advice on the relevant complex and novel issues, which has required extensive legal research and analysis.

301022338 v5

14.     In addition to the production of documents responsive to the WEC Second Subpoena, KLG partners and associates prepared two narrative responses during the Compensation Period.  The preparation of these narrative response required additional searches and document review to support the underlying relevant emails and presentations.  Further, KLG interviewed current and former WEC employees and routinely consulted on technical issues with members of the WEC Finance team.  Because of the production of these narrative responses, the SEC agreed to forego extensive document collection and production as contemplated by the WEC Subpoenas, resulting in initial cost savings for the Debtors.

15.     In addition to serving the WEC Subpoenas, the SEC also served subpoenas on at least six third-party consultants that WEC has retained over the course of recent years to support its various business operations and legal function.  KLG has spent significant time conferring with counsel for the various third-party subpoena recipients on the scope and nature of the respective responses.  KLG deployed a team to review certain third-party documents prior to production for responsiveness and privilege.

16.     It is our understanding that the SEC Investigation remains ongoing by the Division of Enforcement staff.  Accordingly, KLG expects that its representation of the Company in the SEC Investigation remains ongoing.  In fact, KLG currently has a team of nine associates reviewing documents for the next targeted production requested by the SEC staff.

17.     A breakdown of the time expended and associated charges for **Subpoena Response** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Bateman, Meredith D. M. | 370.00 | 25.40 | $9,398.00 |
| Baum, Els S. | 370.00 | 24.20 | $8,954.00 |
| Bronder,Sarah A. | 370.00 | 49.10 | $18,167.00 |
| Cashman, Amanda R. | 370.00 | 162.90 | $60,273.00 |

6

| Name | Rate | Hours | Amount |
|---|---|---|---|
| Chiccarino, J. A. | 370.00 | 1.00 | $370.00 |
| DeJarnett, Simone N. | 370.00 | 8.00 | $2,960.00 |
| Diersen, Leslie A. | 200.00 | 1.20 | $240.00 |
| Diersen, Leslie A. | 250.00 | 31.80 | $7,950.00 |
| ESI Processors | | | $24,693.78 |
| Flanigan, Kelly M. | 370.00 | 13.50 | $4,995.00 |
| Gafner, Katherine M. | 370.00 | 16.00 | $5,920.00 |
| Gehm, Lacey A. | 370.00 | 8.90 | $3,293.00 |
| Georges, J. A. | 250.00 | 10.90 | $2,725.00 |
| Gracey, T. M. | 250.00 | 0.60 | $150.00 |
| Hastings, Shanda N. | 700.00 | 19.80 | $13,860.00 |
| Hosking, R. W. | 700.00 | 3.40 | $2,380.00 |
| Jay, Jeffrey A. | 370.00 | 40.20 | $14,874.00 |
| Kelch, David | 370.00 | 7.10 | $2,627.00 |
| Komo, Michael R. | 370.00 | 7.20 | $2,664.00 |
| Kuffel, C. M. | 250.00 | 0.70 | $175.00 |
| Lambrakopoulos, S. E. | 700.00 | 90.70 | $63,490.00 |
| Manosa, Robert W. | 370.00 | 96.60 | $35,742.00 |
| Martinez, Vincent L. | 700.00 | 366.40 | $256,480.00 |
| Morrison, Jake D. | 370.00 | 7.00 | $2,590.00 |
| Reger, Samuel P. | 370.00 | 93.90 | $34,743.00 |
| Rinaldi, Emilia | 370.00 | 25.70 | $9,509.00 |
| Ryan, Thomas C. | 700.00 | 70.50 | $49,350.00 |
| Slavik, K. R. | 250.00 | 1.20 | $300.00 |
| Stecko, D. L. | 250.00 | 0.60 | $150.00 |
| Stockey, Nicole | 370.00 | 46.30 | $17,131.00 |
| Thibadeau, Mary L. | 370.00 | 28.30 | $10,471.00 |
| Waddell, Justin | 370.00 | 7.70 | $2,849.00 |
| **Total** | | 1,266.80 | $669,473.78 |

### C. Non-Adverse Compliance and Insurance Advice

18.    K&L incurred time in this matter responding to discrete general corporate matters. For example, KLG was called upon to respond to a request from WEC's outside auditors that required review and consideration of a number of significant sensitive engagements undertaken in the last fiscal year.  By way of example, KLG was able to draw upon the experience of one its California partners and provide WEC legal advice regarding a discrete legal issue arising under

7

California consumer protection law.

19.    A breakdown of the time expended and associated charges for **Non-Adverse**

**Compliance and Insurance Advice** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Hosking, R. W. | 700.00 | 13.30 | $9,310.00 |
| Sweeney, P. W. | 700.00 | 0.90 | $630.00 |
| | Total | 14.20 | $9,940.00 |

### D.  Internal Investigation

20.    KLG incurred billed time in this matter conducting an independent investigation

related to the facts surrounding the Company's financial accounting of the estimate to complete

("ETC") the respective US AP1000 projects, undertaken in accordance with the US Generally

Accepted Accounting Principles ("GAAP"), following the Company's December 31, 2015

acquisition of Stone & Webster, Inc. ("S&W"), the construction division of Chicago Bridge &

Iron Company ("CB&I") (the "S&W Acquisition").

21.    Pursuant to applicable GAAP standards, WEC had a twelve-month period to

conduct a fair value assessment of the assets acquired in the S&W Acquisition, which primarily

consisted of the two construction contracts that were CB&I's responsibility as part of a

consortium with WEC to build four domestic AP1000 nuclear reactors, two in South Carolina for

SCANA Corporation and two in Georgia for Georgia Power Company c/o Southern Nuclear

Operating Company (collectively, the "US AP1000 projects").

22.    In December 2016, WEC reported to Toshiba that the ETC variance for the US

AP1000 projects exceeded estimates by billions of dollars.  The Toshiba Audit Committee

retained the Japanese law firm of Nishimura & Asahi ("N&A") to conduct an independent

investigation into the facts surrounding the ETC variance.

23.     WEC retained KLG on December 29, 2016, to assist N&A in conducting the

investigation into WEC's calculation of the ETCs for its US AP1000 projects following the

S&W Acquisition.  Specifically, KLG was retained to develop and report to WEC, the Toshiba

Audit Committee, and N&A the factual circumstances surrounding WEC's identification of the

need to substantially increase its ETCs, particularly including facts evidencing when WEC first

learned of the magnitude of the potential cost of the variance, such that the Toshiba Audit

Committee could conclude whether the increase was reported in the appropriate financial quarter

("Scope 1 Investigation").

24.     On January 6, 2017, WEC received a formal allegation of retaliation from an

employee ("Claimant") involved in the ETC process.  Claimant alleged that WEC senior

management removed Claimant from Claimant's position on one of the US AP1000 projects in

retaliation for Claimant's objections during WEC's December 2016 ETC review meetings to

certain ETC variance reductions proposed by WEC and Toshiba senior management.

25.     Thereafter, in coordination with the Toshiba Audit Committee, WEC expanded

the scope of KLG's engagement to include an investigation into Claimant's allegations (the

"Scope 2 Investigation").

26.     Based on the facts developed during the Scope 2 Investigation, WEC further

expanded the scope of the KLG engagement (the "Scope 3 Investigation") in February 2017 to

conduct a "tone at the top" investigation regarding, among other things, whether "tone at the top"

deficiencies or issues exist within WEC more broadly than related to the calculation of the ETC

variance at-issue in the Scope 2 Investigation.  Specifically, during the Scope 3 Investigation,

KLG focused on ethical, cultural, or compliance issues related to WEC's financial reporting and

internal controls.  With WEC's approval, KLG and WEC jointly engaged Ankura Consulting

Group ("Ankura") to assist KLG in the Scope 3 Investigation by, among other things, provide

forensic and technical accounting support (collectively with KLG, the "Team").

27.     As of the Petition Date, KLG was in the process of completing its Scope 3

Investigation.  After March 29, 2017, the Team continued to interview WEC and third-party

personnel familiar with the issues under investigation.  The KLG Japanese review team also

continued to review documents.  The Team also collected forensic cell phone data from certain

identified custodians and reviewed the text message history for communications relevant to the

various scopes of the Investigation.

28.     Further, during the course of the Scope 3 Investigation, the Team became aware

of technical accounting issues in March 2017 that warranted further investigation into issues

related to its Scope 1 Investigation.  The Team, working with WEC, developed additional

procedures to examine certain issues related to the timing of WEC's recognition of the

accounting impacts of the ETC variance on the US AP1000 projects ("Scope 1A Investigation"),

specifically relating to the financial reporting for the S&W Acquisition.  A significant portion of

this highly technical investigation occurred around or after the Petition Date.  The various scopes

are collectively referred to herein as the "Investigations."

29.     As part of the Investigations, KLG coordinated closely with WEC, the Toshiba

Audit Committee, and N&A, and communicated regularly with WEC's outside auditing firm,

PricewaterhouseCoopers LLP ("PwC").

30.     During the course of the Investigations, KLG conducted more than 50 interviews.

Supported by its e-DAT practice group, KLG collected approximately 2.7 terabytes of electronic

data from more than 35 custodians, and a team of approximately fifteen lawyers, representing a

combination of e-DAT reviewers and associates, reviewed more than 100,000 emails and

10

attachments that were responsive to one or more of the 70 search terms used to focus the investigations.  KLG was able to leverage its international platform resulting in cost savings to WEC by internally conducting a foreign-language review of Japanese and Italian-language documents.

31.    Throughout April and May 2017, KLG associates conducted additional research related to various legal issues that arose during the Investigations.  The Team also continued to coordinate with PwC regarding the status of the Investigations, and specifically, responding to follow-up questions as to the Scope 2, Scope 3 and Scope 1A Investigations.  Significantly, the Team conducted additional, limited document review and interviews of WEC personnel related to a specific claims accounting issue from a prior fiscal year beginning April and continuing through June 2017.  Because the issue related to a date range outside of the initial document collection, KLG and WEC coordinated the collection and review of additional documents for the relevant prior time periods.  The Team also conducted additional interviews of both current and former WEC personnel who had knowledge regarding these issues.

32.    In June 2017, KLG prepared a formal oral report to the WEC Audit Committee regarding the status of the Investigations, providing substantive updates on the status and findings of its Investigation.  Two KLG partners and three associates dedicated significant hours to organizing and analyzing the facts gathered during the course of the investigation in preparation for the report to the WEC Audit Committee.

33.    KLG is in the process of conducting quality control procedures in coordination with WEC and PwC to close out the investigation.  These processes included e-DAT creating and formatting the metadata in various technical forms for the approximately 1.4 million documents in KLG's investigation database, which was necessary to allow PwC to conduct

11

certain quality control procedures allowing the outside auditor to rely upon KLG's investigation.

34.    A breakdown of the time expended and associated charges for **Internal**

**Investigation** is as follows:

| Timekeeper | Rate | Hours | Amount |
|------------|------|-------|--------|
| Bateman, Meredith D. M. | 370.00 | 17.20 | $6,364.00 |
| Baum, Els S. | 370.00 | 13.30 | $4,921.00 |
| Bell, Christopher, H. | 370.00 | 19.50 | $7,215.00 |
| Bittle, Emily C. | 370.00 | 7.80 | $2,886.00 |
| Bronder,Sarah A. | 370.00 | 201.40 | $74,518.00 |
| Cashman, Amanda R. | 370.00 | 233.40 | $86,358.00 |
| Chiccarino, J. A. | 370.00 | 9.80 | $3,626.00 |
| Diersen, Leslie A. | 250.00 | 16.60 | $4,150.00 |
| ESI Processors | | | $7,240.66 |
| Fogg, A. L. (Allison Burdette) | 370.00 | 7.60 | $2,812.00 |
| Georges, J. A. | 250.00 | 2.30 | $575.00 |
| Gracey, T. M. | 250.00 | 2.50 | $625.00 |
| Gwost, S. D. | 250.00 | 18.40 | $4,600.00 |
| Hastings, Shanda N. | 700.00 | 12.90 | $9,030.00 |
| Hosking, R. W. | 700.00 | 5.90 | $4,130.00 |
| Jay, Jeffrey A. | 370.00 | 26.80 | $9,916.00 |
| Kephart, Jared A. | 370.00 | 29.10 | $10,767.00 |
| Komo, Michael R. | 370.00 | 2.50 | $925.00 |
| Kuffel, C. M. | 250.00 | 0.10 | $25.00 |
| Lacy, Stefanie M. | 370.00 | 6.30 | $2,331.00 |
| Lambrakopoulos, S. E. | 700.00 | 3.20 | $2,240.00 |
| Lanpher, Lawrence C. | 700.00 | 1.60 | $1,120.00 |
| Manosa, Robert W. | 370.00 | 15.30 | $5,661.00 |
| Martinez, Vincent L. | 700.00 | 18.20 | $12,740.00 |
| Miller, D. R. | 700.00 | 19.30 | $13,510.00 |
| Nemoto, Ayuko | 370.00 | 2.80 | $1,036.00 |
| Reger, Samuel P. | 370.00 | 116.90 | $43,253.00 |
| Rush, M. A. | 700.00 | 125.10 | $87,570.00 |
| Ryan, Thomas C. | 700.00 | 643.10 | $450,170.00 |
| Sako, Yuki | 370.00 | 24.60 | $9,102.00 |
| Saulnier, B. F. | 700.00 | 27.60 | $19,320.00 |
| Slavik, K. R. | 250.00 | 1.20 | $300.00 |
| Smith, Isaac T. R. | 370.00 | 13.30 | $5,614.00 |

301022338 v5

| | | | |
|---|---|---|---|
| Smith, T. J. | 700.00 | 1.40 | $980.00 |
| Stockey, Nicole | 370.00 | 12.00 | $4,440.00 |
| Treglia, R. P. | 250.00 | 2.80 | $700.00 |
| Waddell, Justin | 370.00 | 11.90 | $4,403.00 |
| Yamahara, Eiji | 700.00 | 1.50 | $1,050.00 |
| | Total | 1,675.20 | $906,223.66 |

### E.  T&E Audit Investigation

35.     This matter involved a compliance-related investigation following an internal audit that identified certain irregularities at one of WEC's subsidiaries related to management's use and approval primarily of travel and entertainment expenses ("T&E expenses").  KLG conducted an in-depth review of select T&E expenses followed up with targeted on-site, in-person interviews.  KLG provided WEC's internal audit staff its investigative findings as well as provide recommendations for WEC to improve policies and procedures related to T&E expenses on a going forward basis.

36.     A breakdown of the time expended and associated charges for **T&E Audit Investigation** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Beer, Caitlin P. | 370.00 | 2.10 | $777.00 |
| Diersen, Leslie A. | 200.00 | 0.30 | $60.00 |
| Georges, J. A. | 250.00 | 0.30 | $75.00 |
| Komo, Michael R. | 370.00 | 114.30 | $42,291.00 |
| Semins, W. D. | 700.00 | 80.90 | $56,630.00 |
| Stockey, Nicole | 370.00 | 216.20 | $79,994.00 |
| | Total | 414.10 | $179,827.00 |

### F.  Non-Adverse Corporate Matters

37.     During the Compensation Period, KLG incurred time drafting, revising, and filing the retention application to serve as Special Counsel for the Debtors.  KLG also spent a

301022338 v5

significant amount of time preparing and filing Monthly Statements in accordance with the Interim Compensation Order.  KLG's bankruptcy professionals were engaged during the Compensation Period for the limited purpose of the firm's retention, requests for compensation and reimbursement, and monitoring the progress of the Chapter 11 Cases to provide KLG's nonbankruptcy lawyers updates on case developments.

38.     In addition to retention and fee application work in these Chapter 11 Cases, KLG professionals billed time in this category analyzing (at the request of lead bankruptcy counsel) the enforceability of indemnity agreements related to the Debtors' cash pooling arrangements and the rights of the Debtors to reject a sublease to real property under Pennsylvania law and remove the sub-lessee.  KLG also billed time in this category preparing a formal response to an audit inquiry by the Debtors' accountants.

39.     A breakdown of the time expended and associated charges for **Non-Adverse Corporate Matters** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Campana, Andrea | 370.00 | 5.90 | $2,183.00 |
| Dale, Charles A. | 700.00 | 1.10 | $770.00 |
| Fallon, Rebecca M. | 250.00 | 62.40 | $15,600.00 |
| Garraux, Lauren J. | 370.00 | 39.50 | $14,615.00 |
| Honeywell, R. T. | 700.00 | 6.10 | $4,270.00 |
| Mawhinney, David A. | 370.00 | 26.10 | $9,657.00 |
| Morrison, Jake D. | 370.00 | 10.90 | $4,033.00 |
| Nylen, Sven T. | 700.00 | 3.60 | $2,520.00 |
| Paine, Adam | 370.00 | 26.00 | $9,620.00 |
| Ryan, Thomas C. | 700.00 | 8.30 | $5,810.00 |
| Thibadeau, Mary L. | 370.00 | 0.70 | $259.00 |
| Total | | 190.60 | $69,337.00 |

14

### G. DOJ Third Party Subpoena

40.     This new matter arose in June 2017, subsequent to KLG's retention in these Chapter 11 Cases.  WEC received a third-party subpoena issued by the United States Court of Federal Claims in the matter *Alabama Power Company and Georgia Power Company v. United States*, Nos. 14-167; 14-168, dated May 23, 2017 (the "Subpoena").  The Subpoena requested documentation related to the use of a nozzleless handling tool at two electric generating plants owned by the plaintiffs.  KLG coordinated with the U.S. Department of Justice ("DOJ") trial attorney in successfully negotiating a narrower scope of the subpoena, including the elimination of the need to collect and review email communications spanning multiple years, and assisted WEC in identifying, collecting, and reviewing relevant documents.

41.     A breakdown of the time expended and associated charges for **DOJ Third Party Subpoena** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Cashman, Amanda R. | 370.00 | 4.30 | $1,591.00 |
| Hosking, R. W. | 700.00 | 4.80 | $3,360.00 |
| | Total | 9.10 | $4,951.00 |

301022338 v5