| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP** | **TOGUT, SEGAL & SEGAL LLP** |
| 767 Fifth Avenue | One Penn Plaza, Suite 3335 |
| New York, New York 10153 | New York, New York 10119 |
| Telephone: (212) 310-8000 | Telephone: (212) 594-5000 |
| Facsimile: (212) 310-8007 | Facsimile: (212) 967-4258 |
| Gary T. Holtzer | Albert Togut |
| Robert J. Lemons | Kyle J. Ortiz |
| Garrett A. Fail | Brian F. Moore |
| | |
| *Attorneys for Debtors* | *Attorneys for Debtor Toshiba* |
| *and Debtors in Possession* | *Nuclear Energy Holdings (UK) Limited* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **WESTINGHOUSE ELECTRIC COMPANY** | : | **Case No. 17-10751 (MEW)** |
| **LLC,** *et al.*, | : | |
| | : | |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------ x

**NOTICE OF MOTION OF**
**DEBTORS PURSUANT TO 11 U.S.C. § 1121(d),**
**FED. R. BANKR. P. 9006(b)(1), AND LOCAL RULE 9006-2**
**REQUESTING SECOND EXTENSION OF EXCLUSIVE PERIODS**

      **PLEASE TAKE NOTICE** that a hearing on the annexed Motion, dated

November 28, 2017 (the "**Motion**") of Westinghouse Electric Company LLC and certain of its

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961). The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), seeking entry of an order pursuant to 11 U.S.C. § 1121(d), Bankruptcy Rule 9006(b)(1), and Local Rule 9006-2 extending the Debtors' exclusive periods in which to file a chapter 11 plan and solicit acceptances thereof will be held before the Honorable Michael E. Wiles, United States Bankruptcy Judge, in Room 617 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**"), on **December 13, 2017 at 11:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

> **PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, and shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and the *Order Pursuant to 11 U.S.C. §105(a) and Fed. R. Bankr. P. 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures* [ECF No. 101] so as to be received no later than **December 6, 2017 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

> **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to Motion, the Debtors may, on or after the Objection Deadline, submit to the

Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard.

Dated: November 28, 2017
New York, New York

*/s/ Gary T. Holtzer*
Gary T. Holtzer
Robert J. Lemons
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors*
*and Debtors in Possession*

-and-

Albert Togut
Kyle J. Ortiz
Brian F. Moore
TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258

*Attorneys for Debtor Toshiba*
*Nuclear Energy Holdings (UK) Limited*

WEIL:\96341359\7\80768.0017

| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP** | **TOGUT, SEGAL & SEGAL LLP** |
| 767 Fifth Avenue | One Penn Plaza, Suite 3335 |
| New York, New York 10153 | New York, New York 10119 |
| Telephone: (212) 310-8000 | Telephone: (212) 594-5000 |
| Facsimile: (212) 310-8007 | Facsimile: (212) 967-4258 |
| Gary T. Holtzer | Albert Togut |
| Robert J. Lemons | Kyle J. Ortiz |
| Garrett A. Fail | Brian F. Moore |
| | |
| *Attorneys for Debtors* | *Attorneys for Debtor Toshiba* |
| *and Debtors in Possession* | *Nuclear Energy Holdings (UK) Limited* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **WESTINGHOUSE ELECTRIC COMPANY** | : | **Case No. 17-10751 (MEW)** |
| **LLC,** *et al.*, | : | |
| | : | |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------- x

## MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 1121(d), FED. R. BANKR. P. 9006(b)(1), AND LOCAL RULE 9006-2 REQUESTING SECOND EXTENSION OF EXCLUSIVITY PERIODS

TO THE HONORABLE MICHAEL E. WILES,
UNITED STATES BANKRUPTCY JUDGE:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961). The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

Westinghouse Electric Company LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases ("**Westinghouse**," or the "**Debtors**") respectfully represent as follows in support of this motion (the "**Motion**"):

### Preliminary Statement

1.      On September 5, 2017, the Court extended the Statutory Exclusivity Periods (as defined below) during which only the Debtors may propose chapter 11 plans and solicit acceptances thereof through and including December 6, 2017 and February 4, 2018, respectively (the "**First Exclusivity Period**").  The Debtors now seek to extend the exclusive period within which they may file a chapter 11 plan to March 13, 2018, and the related exclusive solicitation period to May 12, 2018 (the "**Second Exclusivity Period**").  The Debtors anticipate filing a chapter 11 plan and soliciting acceptances thereof during the Second Exclusivity Period.

2.      During the Statutory Exclusivity Periods, the Debtors successfully stabilized their businesses following their chapter 11 filings, and completed their business plan and delivered it to their DIP Lenders (as defined below).  Since delivery of the business plan, the Debtors have worked to achieve the cost savings and revenue targets required by the plan.  The Debtors also focused during this time on resolving the future of their U.S. AP1000 Projects (as defined below).  The first extension of the Statutory Exclusivity Periods was sought by the Debtors because of, among other things, the size and complexity of these chapter 11 cases and the need for time to evaluate potential exit paths from chapter 11 and the thousands of claims filed against the Debtors.  The Debtors plan to use the second extension of the Statutory Exclusivity Periods to begin to execute on certain of those potential exit paths.

3.      During the First Exclusivity Period, the Debtors have continued to lay the groundwork that will allow them to formulate their exit strategy from these chapter 11 cases and file a chapter 11 plan.  Approximately $77.7 billion of claims were filed in these chapter 11 cases

2

by the Bar Date (as defined below) in September, and since that time the Debtors have been actively engaged in the claims reconciliation process. Westinghouse has also sought and received relief from this Court for procedures to aid the efficient resolution of claims. The Debtors are in the process of reconciling claims filed by the Bar Date against their books and records, have commenced filing omnibus claims objections, and are actively entering into claim settlements pursuant to procedures authorized by the Court.

4.    The Debtors have launched, and are mid-way through, a marketing process aimed at soliciting binding bids from parties interested in acquiring Westinghouse through a potential sale or restructuring transaction, and have kept key constituents in these chapter 11 cases, including the Committee (as defined below), apprised of their progress in this marketing process.

5.    The Debtors have successfully stemmed losses associated with the construction of Units 3 & 4 at the Alvin W. Vogtle Electric Generating Plant (the "**Vogtle Project**") by rejecting that certain *Engineering, Procurement and Construction Agreement*, dated as of April 8, 2008, (the "**Vogtle EPC Contract**") and entering into that certain *Services Agreement*, dated July 17, 2017, (the "**Services Agreement**"), shifting responsibility for construction and management of the Vogtle Project to Georgia Power Company and other joint-owners (the "**Vogtle Owners**").

6.    The Debtors also wound down their involvement in the construction of Units 2 & 3 at the Virgil C. Summer Nuclear Generating Station site (the "**VC Summer Project**," and together with the Vogtle Project, the "**U.S. AP1000 Projects**") by rejecting substantially all of their related executory subcontracts, vendor contracts, and purchase orders following the announcement by South Carolina Electric & Gas Company (together with South

Carolina Public Service Company LLC, the "**VC Summer Owners**") to cease construction of the project.  The Debtors further stabilized their businesses by revising their business plan following the decision of the VC Summer Owners to abandon construction of the VC Summer Project.  During the First Exclusivity Period, the Debtors also obtained authorization to continue and renew their surety bond program, implemented key employee incentive and retention programs and key employee salary adjustments following approval by this Court, and assumed most of their nonresidential real property leases, among other things.

7.      With respect to their global business operations, the Debtors took action to preserve and enhance the value of non-debtor subsidiaries that required immediate funding to maintain operations, make significant investments, and/or strengthen their balance sheets to avoid foreign insolvency requirements.  The Debtors did so by negotiating with their lenders (the "**DIP Lenders**") to expand the size and scope of certain "permitted investment baskets" to provide urgently needed funding under their existing $800 million postpetition secured financing facility (the "**DIP Facility**").  By providing access to funding for their non-debtor affiliates, the Debtors were able to preserve and enhance the value of their businesses, particularly with respect to key customer relationships.

8.      The Debtors have begun formulating the terms of a chapter 11 plan with key constituencies in these chapter 11 cases, and anticipate being able to file a plan during the proposed Second Exclusivity Period.  Based on this case trajectory and the significant progress made to date, the Debtors request a second 90-day extension of the Exclusive Filing Period (as defined below) through and including March 13, 2018, and the Exclusive Solicitation Period (as defined below) through and including May 12, 2018.[2]  An extension of the Statutory Exclusivity

---

[2] The 90-day extension requested herein is measured from December 13, 2017, the date the hearing on this Motion has been scheduled.

WEIL:\96341359\7\80768.0017

Periods is essential in the context of the Debtors' chapter 11 cases. Allowing a plan of reorganization that is not supported by the Debtors to be filed at this crucial juncture would delay and disrupt the Debtors' reorganization process, destabilize their global businesses, and potentially create a chaotic situation that will be litigious and costly, to the detriment of all parties in interest.

9.    Ample cause exists to grant the Debtors such relief because, *inter alia*, (i) the Debtors' cases are large and complex; (ii) substantial good faith progress toward a chapter 11 plan has been demonstrated; (iii) the Debtors are making and will continue to make required postpetition administrative expense payments as they become due; and (iv) the Debtors are not seeking to use exclusivity to pressure creditors into accepting a plan they find unacceptable. No creditor will be prejudiced by the requested extensions.

## Background

10.    On March 29, 2017 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

11.    The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

12.    On April 7, 2017, the United States Trustee for Region 2 appointed the Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code. On October 2, 2017, the Trustee filed an amended notice of appointment removing South Carolina Electric & Gas Company from the Committee [ECF No. 1431].

13.    On June 28, 2017, the Court entered an order (the "**Bar Date Order**") establishing September 1, 2017 at 5:00 p.m. (Eastern Time) as the deadline by which proofs of claim, other than those filed by a governmental unit, were required to be filed to assert claims in these chapter 11 cases [Docket No. 788].  Pursuant to the Bar Date Order, governmental units were required to assert their claims so that they were actually received on or before September 25, 2017 at 5:00 p.m. (Eastern Time).

14.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Lisa J. Donahue Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York*, sworn to and filed on the Petition Date [ECF No. 4].

## Jurisdiction

15.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

16.    Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**").  Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has an exclusive period of 180 days after the commencement of the chapter 11 case to obtain acceptances of its plan (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Statutory Exclusivity Periods**").  Pursuant to section 1121(d) of the Bankruptcy Code, where the initial 120-day and 180-day exclusive periods provided for in

the Bankruptcy Code prove to be an unrealistic time frame for proposal and solicitation of a plan, the Court may extend these periods for cause.

17.    By order dated September 5, 2017 [ECF No. 1305], the Court extended the Debtors' Exclusive Filing Period through and including December 6, 2017, and the Exclusive Solicitation Period through and including February 4, 2018.

18.    By this Motion, the Debtors request a second extension of the Statutory Exclusivity Periods pursuant to section 1121(d) of the Bankruptcy Code, Bankruptcy Rule 9006(b)(1), and Rule 9006-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), without prejudice to the Debtors' right to seek additional extensions of such periods.  Specifically, the Debtors seek to extend the Exclusive Filing Period through and including March 13, 2018, and the Exclusive Solicitation Period through and including May 12, 2018.  The requested 90-day extension of these Statutory Exclusivity Periods is measured from December 13, 2017, the date of the hearing on the Motion.

19.    A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

### Basis for Relief Requested

20.    Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Statutory Exclusivity Periods for cause.  *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").

21.    The Statutory Exclusivity Periods established by Congress were incorporated in the Bankruptcy Code to afford a full and fair opportunity for a debtor to propose a chapter 11 plan and solicit acceptances of the plan without interference from creditors and

7

other interests. *See In re Texaco Inc.*, 81 B.R. 806, 809 (Bankr. S.D.N.Y. 1988) (citing H.R. Rep. No. 595, 95th Cong., 2d Sess. 221-222 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787). Extending the Exclusive Filing Period, as requested, will provide the Debtors with a full and fair opportunity to accomplish this objective.

22.     The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension of the Statutory Exclusivity Periods. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

23.     In exercising its broad discretion, a bankruptcy court may consider a variety of factors to assess the totality of circumstances in each case and to determine the existence of "cause" under section 1121(d) of the Bankruptcy Code. *See In re Borders Grp., Inc.*, 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying factors used by courts to determine whether cause exists to extend exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997)

8

(same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same).  These

factors (the "***Adelphia* Factors**") are not exclusive and include, without limitation:

(a)    the size and complexity of the debtor's case;

(b)    the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(c)    the existence of good faith progress towards reorganization;

(d)    the fact that the debtor is paying its bills as they become due;

(e)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f)    whether the debtor has made progress in negotiations with its creditors;

(g)    the amount of time which has elapsed in the case;

(h)    whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(i)    whether an unresolved contingency exists.

*In re Adelphia Commc'ns Corp.*, 352 B.R. at 587 (noting that the nine factors listed above are

"objective factors which courts historically have considered in making determinations of this

character"); *see also In re Borders Grp., Inc.*, 460 B.R. at 822-28 (evaluating the nine factors set

forth in *Adelphia* to hold that debtor established cause to extend exclusivity); *In re McLean

Indus., Inc.*, 87 B.R. at 834; *In re Express One Int'l, Inc.*, 194 B.R. at 100 (identifying all of the

nine factors as relevant in determining whether cause exists to extend exclusivity); *In re United

Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that debtor showed cause to

extend exclusive period based upon certain of the nine factors).

### <u>Cause Exists for Extending the Statutory Exclusivity Periods</u>

24.    The application of the *Adelphia* Factors to the facts and circumstances of

these chapter 11 cases demonstrates that the second requested extensions are both appropriate

and necessary to afford the Debtors adequate time to exit these cases in accordance with their chapter 11 goals in a manner that will maximize value for all parties in interest.

## A. The Debtors' Chapter 11 Cases Are Large and Complex, and the Debtors Have Made Substantial Good Faith Progress in These Chapter 11 Cases

25.    The Debtors' chapter 11 cases are unquestionably large and complex. The Debtors operate five different business lines that serve more than half of the nuclear power plants in the world. To support these operations, the Debtors rely on thousands of vendors and subcontractors to perform services and provide goods pursuant to tens of thousands of purchase orders and master service agreements. The Debtors have a complex corporate organizational structure comprised of two sibling chains of entities located in numerous jurisdictions around the world. This complexity is corroborated by the estimated amount of claims filed and scheduled against the Debtors by the Bar Date of $77.7 billion, which the Debtors are in the process of reconciling.

26.    To add to the complexity of these cases, the Debtors have been engaged in extensive negotiations with the Vogtle Project Owners and VC Summer Project Owners (together, the "**Project Owners**") over multi-billion dollar nuclear construction projects in South Carolina and Georgia since the commencement of these chapter 11 cases. This required the Debtors to delineate their go forward obligations to support the Vogtle Project, commence the wind-down of their involvement with the VC Summer Project, and evaluate tens of thousands of contracts, subcontracts and purchase orders related to both projects.

27.    The Debtors also had to negotiate an amendment to their DIP Facility to provide urgently needed funding to certain non-debtor affiliates in order to stabilize their global businesses, requiring close coordination with foreign affiliates.

10

28.     Despite the various layers of complexity in these cases, the Debtors have transitioned their focus on expeditiously emerging from chapter 11.  To that end, the Debtors have successfully launched a marketing process and are currently engaged in extensive due diligence sessions with multiple parties that have expressed an interest in acquiring their businesses.

29.     The Debtors are also in the process of formulating a chapter 11 plan and are engaging the major constituents in their chapter 11 cases to solicit their support for the Debtors proposed exit path.

30.     Undoubtedly, the Debtors have made substantial progress to date warranting a second extension of the Statutory Exclusivity Periods.  In addition to the day-to-day operations of the company, the Debtors' management and advisors devoted substantial time and effort to advance the Debtors' restructuring efforts, including:

(a)     finalizing and beginning to implement a business plan that lays the foundation for reorganizing the Debtors' business around its core competencies;

(b)     entering into the Services Agreement with the Vogtle Project Owners and assuming and amending or assuming and assigning thousands of subcontracts and purchase orders necessary to complete the Vogtle Project [ECF Nos. 954, 1187];

(c)     rejecting the Vogtle EPC Contract as well as other subcontracts and purchase orders related to the construction of the Vogtle Project that no longer provided value to the estates [ECF Nos. 954, 1301, 1664];

(d)     rejecting substantially all of the subcontracts, vendor contracts, and purchase orders related to the construction of the VC Summer Project [ECF Nos. 1321, 1664, 1771] and seeking authority to assume and assign a warehouse lease used to store construction equipment to the VC Summer Owners [ECF No. 1692];

(e)     amending the DIP Facility to allow for urgently needed funding to certain non-debtor subsidiaries, thereby preserving and enhancing the value of the Debtors' businesses [ECF No. 1637];

11

(f)     obtaining approval of key employee retention and incentive programs, and implementing key employee salary adjustments [ECF Nos. 1349, 1609];

(g)     obtaining authorization to continue and renew the Debtors' prepetition surety bond program and to obtain new surety bonds postpetition [ECF No. 1606];

(h)     receiving authority to file omnibus claims objections and developing procedures for the settlement of certain claims [ECF No. 1761] and payment of 503(b)(9) claims [ECF No. 1759];

(i)     evaluating approximately $77.7 billion in claims, filing omnibus claims objections and entering into claim settlements;

(j)     launching a marketing process of the Debtors' businesses and providing diligence to potential buyers; and

(k)     commencing preliminary chapter 11 plan negotiations with key stakeholders in these cases.

31.     The foregoing demonstrates that there can be no doubt that the Debtors have acted diligently to make progress on a number of fronts during the first eight months of these chapter 11 cases.   The Debtors, therefore, submit that their significant progress has demonstrated ample cause to extend the Statutory Exclusivity Periods for an additional 90-days under *Adelphia* Factors (a), (c), (e), and (f).

**B.  The Debtors Are Making and Will Continue to Make Required Postpetition Administrative Expense Payments as They Come Due**

32.     Courts considering an extension of the Statutory Exclusivity Periods may also assess a debtor's liquidity and solvency.  *See In re Adelphia Commc'ns*, 352 B.R. at 587-88. Here, the Debtors have obtained an $800 million DIP facility, are current on payment of their postpetition obligations, and have sufficient liquidity to pay their undisputed administrative expenses in the ordinary course.   As such, the requested second extension of the Statutory Exclusivity Periods will not generally prejudice the legitimate interests of creditors, and this

factor weighs in favor of allowing the Debtors to further extend the Statutory Exclusivity Periods.

**C.  The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands**

33.    The requested extension is reasonable given the Debtors' progress to date and the current posture of these chapter 11 cases.  The Debtors are not seeking the extension of the Statutory Exclusivity Periods as a negotiation tactic, to artificially delay the conclusion of these chapter 11 cases, or to hold creditors hostage to an unsatisfactory plan proposal.  To the contrary, this request is intended to maintain a framework conducive to an orderly, efficient, and cost-effective process.  The Debtors are already engaging key constituencies to negotiate the proposed terms of a chapter 11 plan in an effort to achieve consensus.  The Debtors have also kept these parties apprised of the ongoing marketing process.  Further extending the Statutory Exclusivity Periods allows the Debtors and their professionals to continue to work towards exiting these cases consensually without their efforts being disrupted by having to allocate resources towards focusing on competing plans.

34.    Furthermore, the Debtors have kept sight of the need to deal with all parties in interest in these cases, including the Committee, the DIP Lenders, the Project Owners, the Debtors' foreign non-debtor affiliates and the Debtors' corporate parent, Toshiba.  The Debtors and their professionals have consistently conferred with these constituencies on all major substantive and administrative matters in these cases to date.  The Debtors have no intention of discontinuing this dialogue if this Motion is granted.

35.    The extensions of the Statutory Exclusivity Periods as requested herein will not prejudice any party in interest, but rather will afford the Debtors an opportunity to propose a realistic and viable chapter 11 plan.  Failure to extend the Statutory Exclusivity

13

Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code – *i.e.*, to afford the debtor a meaningful and reasonable opportunity to negotiate with creditors and propose a confirmable chapter 11 plan. The termination of the Statutory Exclusivity Periods and the threat of multiple plans would likely lead to unnecessary adversarial situations and confrontations that would cause deterioration of the Debtors' assets.

### D. The Automatic Extension of the Exclusive Filing Period

36. The Exclusive Filing Period is set to expire on December 6, 2017, but Local Bankruptcy Rule 9006-2 provides that if a motion to extend time to take an action is filed prior to the expiration of such period, with a return date that is no later than 14 days after the date of the filing of the motion, the applicable deadline shall automatically be extended "until the Court resolves the motion to extend the time." A hearing on this Motion has been scheduled for December 13, 2017, which is within 14 days of the date the Motion was filed. Accordingly, Local Bankruptcy Rule 9006-2 automatically extends the current Exclusive Filing Period to December 13, 2017.

37. In light of the foregoing, the Debtors respectfully request that the Court approve the requested second extensions of the Statutory Exclusivity Periods pursuant to section 1121(d) of the Bankruptcy Code.

### Notice

38. Notice of this Motion will be provided in accordance with the *Order Pursuant to 11 U.S.C. §105(a) and Fed. R. Bankr. P. 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures* [ECF No. 101]. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

14

39.    No previous request for the relief sought by this Motion has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order and such other and further relief as the Court may deem just and appropriate.

Dated: November 28, 2017
New York, New York

*/s/ Gary T. Holtzer*
Gary T. Holtzer
Robert J. Lemons
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors*
*and Debtors in Possession*

-and-

Albert Togut
Kyle J. Ortiz
Brian F. Moore
TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258

*Attorneys for Debtor Toshiba*
*Nuclear Energy Holdings (UK) Limited*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
In re                                        :
                                             :        **Chapter 11**
**WESTINGHOUSE ELECTRIC**                    :
**COMPANY LLC,** *et al.*,                   :        **Case No. 17-10751 (MEW)**
                                             :
            Debtors.[1]                       :        **(Jointly Administered)**
-------------------------------------------------------x

**ORDER PURSUANT TO**
**11 U.S.C. § 1121(d), FED. R. BANKR. P. 9006(b)(1),**
**AND LOCAL RULE 9006-2 EXTENDING EXCLUSIVITY PERIODS**

Upon the motion (the "**Motion**"), dated November 28, 2017, [ECF No. [●]] of

Westinghouse Electric Company LLC and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to

section 1121(d) of the Bankruptcy Code, Bankruptcy Rule 9006(b)(1), and Local Rule 9006-2,

for entry of an order extending the Debtors' exclusivity periods, all as more fully described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference

M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested

relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961). The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and such notice having been adequate and appropriate under the circumstances, and the Court having reviewed the Motion; and the Court having held a hearing on December 13, 2017 to consider the relief requested in the Motion (the "**Hearing**"); and upon the Donahue Declaration [ECF No. [●]], filed contemporaneously with the Motion; and the record of Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth herein.

2.      Pursuant to section 1121(d) of the Bankruptcy Code, the period of time during which the Debtors have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") is extended through and including March 13, 2018.

3.      Pursuant to section 1121(d) of the Bankruptcy Code, the exclusive period of time to obtain acceptances of the Debtors' plan (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**") is extended through and including May 12, 2018.

4.      The extensions of the Exclusive Periods granted herein are without prejudice to such further requests that may be made by the Debtors or any party in interest, for cause shown, upon notice and a hearing.

5.    This Court shall retain jurisdiction to hear and determine all matters

arising from or related to this Order.

Dated: December ____, 2017
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE