**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Robert J. Lemons
Garrett A. Fail

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **WESTINGHOUSE ELECTRIC COMPANY** | : | **Case No. 17-10751 (MEW)** |
| **LLC, *et al.*,** | : | |
| | : | |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------- x

### NOTICE OF HEARING AND MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO SELL CERTAIN NONESSENTIAL ASSETS PURSUANT TO THE PURCHASE AND SALE AGREEMENT WITH WESTMORELAND COUNTY INDUSTRIAL DEVELOPMENT CORPORATION

**PLEASE TAKE NOTICE** that a hearing on the annexed *Motion of Debtors For*

*Entry of an Order Authorizing Debtors to Sell Certain Nonessential Assets Pursuant to the*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961).  The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

*Purchase and Sale Agreement with Westmoreland County Industrial Development Corporation,* dated December 4, 2017 (the "**Motion**"), of Westinghouse Electric Company LLC and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), seeking entry of an order authorizing the Debtors to sell certain nonessential assets, will be held before the Honorable Michael E. Wiles, United States Bankruptcy Judge, in Room 617 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**"), on **December 13, 2017 at 11 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, and shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and the *Order Pursuant to 11 U.S.C. §105(a) and Fed. R. Bankr. P. 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures* [Docket No. 101] so as to be received no later than **December 11, 2017 at 2:00 p.m.** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to Motion, the Debtors may, on or after the Objection Deadline, submit to the

Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard.

Dated:  December 4, 2017
        New York, New York

*/s/ Robert J. Lemons*
Gary T. Holtzer
Robert J. Lemons
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors*
*and Debtors in Possession*

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Robert J. Lemons
Garrett A. Fail

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **WESTINGHOUSE ELECTRIC** | : | |
| **COMPANY LLC,** *et al.*, | : | **Case No. 17-10751 (MEW)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

-------------------------------------------------------x

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO SELL CERTAIN NONESSENTIAL ASSETS PURSUANT TO THE PURCHASE AND SALE AGREEMENT WITH WESTMORELAND COUNTY INDUSTRIAL DEVELOPMENT CORPORATION

TO THE HONORABLE MICHAEL E. WILES,
UNITED STATES BANKRUPTCY JUDGE:

Westinghouse Electric Company LLC ("**Westinghouse**") and certain debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961). The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

(collectively, the "**Debtors**") respectfully represent as follows in support of this motion (the "**Motion**"):

<u>**Background**</u>

1.      On March 29, 2017 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

2.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      On April 7, 2017, the United States Trustee for Region 2 appointed the Official Committee of Unsecured Creditors (the "**UCC**") pursuant to section 1102 of the Bankruptcy Code.  On October 2, 2017, the Trustee filed an amended notice of appointment [Docket No. 1431] removing South Carolina Electric & Gas Company from the list of unsecured creditors appointed to serve on the UCC.

4.      On June 28, 2017, the Court entered an order (the "**Bar Date Order**") establishing September 1, 2017 at 5:00 p.m. (Eastern Time) as the deadline (the "**Bar Date**") by which proofs of claim (each a "**Proof of Claim**"), other than those filed by a governmental unit, were required to be filed to assert claims (each a "**Claim**") in these chapter 11 cases [Docket No. 788].  Pursuant to the Bar Date Order, governmental units were required to assert their claims so that they were actually received on or before September 25, 2017 at 5:00 p.m. (Eastern Time).

5.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

*Declaration of Lisa J. Donahue Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York*, sworn to and filed on the Petition Date [Docket No. 4].

## Jurisdiction

6.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7.     By this Motion, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 2002, the Debtors requests entry of an order authorizing the Debtors to sell real property located in the Township of Sewickley, Westmoreland County, Pennsylvania, pursuant to that certain Purchase and Sale Agreement by and between Westinghouse Electric Company LLC and Westmoreland County Industrial Development Corporation ("**WCIDC**") dated September 8, 2014, as amended by the First Amendment to Real Estate Purchase and Sale Agreement, substantially in the form annexed hereto as **Exhibit A** (the "**Purchase Agreement**," and the transaction set forth therein, the "**Transaction**").

8.     The Debtors are seeking to dispose of real estate that is not material to their ongoing operations.  In addition, the Debtors believe that the terms and provisions of the Purchase Agreement are reasonable and that the consideration the Debtors are receiving in connection therewith represents a fair value for the Excess Land (as defined herein) they are selling.

9.     A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit B** (the "**Proposed Order**").

## The Transaction

10.     The Debtors propose to consummate the Transaction pursuant to the Purchase Agreement, a copy of which is annexed hereto as **Exhibit A**.  Westinghouse owns approximately 849 acres of land situated in Sewickley Township, Westmoreland County, Pennsylvania (the "**Waltz Mill Site**"), on which the Debtors' operations include engineering and support services for nuclear power plants.  Pursuant to the Purchase Agreement, Westinghouse will sell approximately 206 acres of excess land on the Waltz Mill Site (the "**Excess Land**") to WCIDC for $2 million.

11.     The Excess Land consists of undeveloped wetlands and watercourses.  The Excess Land is not material to the Debtors' ongoing operations or revenue-generating capacity.

12.     As additional consideration for the sale of the Excess Land, WCIDC has agreed to extend the Municipal Authority of Westmoreland County ("**MAWC**") sanitary sewer system to the Waltz Mill Site.  This extension has been publicly approved and is scheduled to be completed by October 2018.  This project will be funded by a state grant.

13.     Currently, Westinghouse owns and operates an onsite sanitary wastewater treatment plant, which allows for limited occupancy under the applicable sanitation code.  In order to improve occupancy without connecting to the MAWC sanitary sewer system, Westinghouse would have to upgrade its treatment plant at its own expense.  With the extension of MAWC's sanitary sewer system to the Waltz Mill Site, Westinghouse can shut down its treatment plant and connect to the public sewer system, thereby reducing operating costs and increasing and optimizing occupancy levels at the Waltz Mill Site as needed.

14.     Westinghouse was notified by WCIDC that in order to qualify for the state grant, WCIDC will need to submit a copy of an effective Purchase Agreement to the

Pennsylvania Department of Community and Economic Development ("**PADCED**") by December 19, 2017.

15.     The closing of the Transaction will be held on or before March 1, 2018, which date may be extended for up to sixty days upon the mutual agreement of the parties.

16.     Finally, following the sale of the Excess Land, the property taxes on the Waltz Mill Site will be reduced proportionately to the Debtors' smaller footprint.

<u>**Relief Requested Should Be Granted**</u>

17.     For the reasons set forth herein, this Court should approve the Transaction.

**I.     Approval of the Transaction Is Warranted**

**A.     The Transaction Is an Exercise of the Debtors' Sound Business Judgment**

18.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   In order to approve the sale of property outside the ordinary course of business, a Bankruptcy Court must "find from the evidence presented before him at the hearing a good business reason to grant such an application."   *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also In re MF Glob. Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) ("The business judgment of a trustee is entitled to great deference."); *In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) ("a debtor often satisfies the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'") (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992)); *In re Chateaugay Corp.*, 973 F.2d 141, 144–45 (2d Cir. 1992) (affirming that

the Bankruptcy Court correctly approved an asset sale under 363(b) using the "good business

reason" standard).

19.     Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he

court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105(a).

20.     The Debtors' decision to enter into the Purchase Agreement and

consummate the Transaction is an exercise of sound business judgment.  As discussed, the

Excess Land to be sold is not a core business asset and is not material to the Debtors' ongoing

business operations.  The Transaction is the result of an arm's length negotiation between

WCIDC and the Debtors.  Moreover, consummating the Transaction will allow the Debtors to

connect to the MAWC sanitary sewer system, optimize their occupancy level at the Waltz Mill

Site, and lower their property taxes.  Therefore, there is a good business reason to approve the

Transaction as the Debtors acted on an informed basis, in good faith, and with the honest belief

that the sale of the Excess Land is in the best interests of the estate.

**B.      The Private Sale of Property Is Warranted Under the Circumstances**

21.     Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary

course of business may be by private sale or by public auction."  Courts allow chapter 11 debtors

to sell assets outside the ordinary course of business by private sale when the debtors

demonstrate that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code.  *See,*

*e.g.*, *In re Dewey & Leboeuf LLP*, No. 12-12321 MG, 2012 WL 5386276, at *6 (Bankr. S.D.N.Y.

Nov. 1, 2012) (holding that "the Debtor has established a good business reason," pursuant to

section 363(b), to sell its artwork through a private auction to save costs, reduce delay, and

maximize the sale price); *In re MF Glob. Ltd.*, 535 B.R. at 605-06, 608 (approving the private

sale to a buyer already familiar with the debtors' assets as an exercise of "sound business judgment" under section 363(b)).

22.     The Debtors' decision to pursue a private sale of the Excess Land represents a sound exercise of their business judgment.  As stated, the Debtors have negotiated in good faith and at arm's length with WCIDC, and the Debtors believe that the terms are fair and the consideration they are receiving for the Excess Land is fair and reasonable.  Further, a public auction would not be practical in these circumstances given that the Excess Land is being sold to WCIDC for the benefit of connecting to the MAWC sanitary sewer system, the extension of which to the Waltz Mill Site could only be approved with the sale of the Excess Land to WCIDC.  Therefore, there is a good business reason to sell the Excess Land through a private sale to WCIDC rather than a public auction.

### C.     WCIDC Should Be Entitled to the Protections of Section 363(m)

23.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  The Second Circuit has observed, "[a]lthough the Bankruptcy Code does not define the meaning of 'good-faith purchaser,' . . . most courts have adopted a traditional equitable definition:  'one who purchases the assets for value, in good faith and without notice of adverse claims.'"  *Licensing by Paolo v. Sinatra* (*In re Gucci*), 126 F.3d 380, 390 (2d Cir. 1997) (internal citations omitted).  Moreover, "[a] purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair

advantage of other bidders.'" *Id.* The Debtors believe that WCIDC is a good faith purchaser for value and, as such, is entitled to the protections afforded to such purchaser under section 363(m) of the Bankruptcy Code and has otherwise acted in good faith in connection with the Transaction. Specifically, (a) WCIDC is not an "insider" of the Debtors, as that term is defined in the Bankruptcy Code, (b) the Purchase Agreement was negotiated at arm's length and in good faith, and at all times each of WCIDC and the Debtors were represented by competent counsel of their choosing, (c) WCIDC did not in any way induce or cause the filing of the Debtors' chapter 11 cases, (d) the consideration to be paid by WCIDC pursuant to the Purchase Agreement is fair and reasonable, and (e) the Purchase Agreement is not the result of fraud or collusion. Neither the Debtors nor WCIDC have engaged in any conduct that would cause or permit the Transaction to be avoided or result in the imposition of any costs or damages under section 363(n) of the Bankruptcy Code. Accordingly, the Debtors believe WCIDC is entitled to the protections of Section 363(m) of the Bankruptcy Code.

### Waiver of Bankruptcy Rules 6004(h)

24. To implement the requested relief successfully, the Debtors seek a waiver of the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As stated above, in order to qualify for the state grant necessary to construct the extension of the MAWC sanitary sewer system to the Waltz Mill Site, WCIDC will need to submit an executed and effective Purchase Agreement to the PADCED by December 19, 2017, in order to qualify for the grant. Pursuant to the Purchase Agreement, the sale of the Excess Land is only effective upon the entry of this Court's final order authorizing Westinghouse's entry into the Purchase Agreement.

25.     Consequently, the Debtors believe that waiver of the fourteen (14) day stay period pursuant to Bankruptcy Rule 6004(h) is warranted to ensure that WCIDC has sufficient time to submit an executed and effective Purchase Agreement to the PADCED.

### Notice

26.     Notice of this Motion will be provided in accordance with the *Order Pursuant to 11 U.S.C. §105(a) and Fed. R. Bankr. P. 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures* [Docket No. 101]. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

27.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 4, 2017
        New York, New York

/s/ *Robert J. Lemons*
Gary T. Holtzer
Robert J. Lemons
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors*
*and Debtors in Possession*

## Exhibit A

**Purchase Agreement**

EXECUTION COPY

## REAL ESTATE
## PURCHASE AND SALE AGREEMENT

This REAL ESTATE PURCHASE AND SALE AGREEMENT (hereinafter called this "Agreement") dated the _8ᵗʰ_ day of _September_, 2014, is entered into by and between the following parties with the effective date being the _8ᵗʰ_ day of _September_ 2014 (the "Effective Date"):

| NAME | ADDRESS |
|---|---|
| WESTINGHOUSE ELECTRIC COMPANY, LLC (the "Seller") Tax ID # 52-2140933 | 1000 Westinghouse Drive Cranberry Township, PA  16066 |
| Westmoreland County Industrial Development Corporation. (the "Buyer") Tax ID #25-1457592 | Fifth Floor, Suite 520 40 N. Pennsylvania Avenue Greensburg, PA 15601 |

### 1.    Purchase and Sale

Seller agrees to sell and convey to Buyer, and Buyer agrees to purchase from Seller, upon the terms and conditions contained in this Real Estate Purchase and Sale Agreement approximately 150 acres of real property located in Township of Sewickley, Westmoreland County, Pennsylvania (the "Land"), being part of Westmoreland County Tax Map Parcel No. 58-16-00-0-094 which became vested in the Seller by virtue of that Deed from CBS/Westinghouse of PA, Inc. dated September 1, 2010 and recorded in the Office of the Recorder of Deeds of Westmoreland County, Pennsylvania at Instrument No. 201009150032660. A copy of the tax map specifically delineating the Land to be subdivided from the property to be retained by the Seller (the "Retained Property") which the Land is part thereof is labeled Exhibit "A" attached hereto and made a part hereof.

In addition to the sale of the Land, this Agreement shall also contemplate the sale by the Seller to the Buyer of the following, but only to the extent the same relate exclusively to the Land: (i) all related rights, easements, tenements, licenses, permits, approvals, privileges, benefits, appurtenances, and claims of Seller, of every kind, character and description now existing or existing at Closing (as defined herein); (ii) all right, title and interest in and to any streets, roads, alleys or other public ways adjoining and benefiting said Land, including, without limitation, any land lying in the bed of any street, road, alley or other public way, opened or closed, and any strips and rights-of-way adjoining said Land; (iii) all certificates, permits and approvals relating to the occupancy, maintenance or operation of the Land or any part thereof, including but not limited to any and all certificates, permits or approvals relating to the surface water emanating from the Land, and (iv) all warranties, representations and covenants of Seller set forth herein (collectively, and together with the Land depicted and designated on Exhibit "A", which also displays the Retained Property).

Notwithstanding anything to the contrary contained in this Agreement, in no event shall this Agreement, or the conveyance of the Land, include Seller's interest in, and the Seller retains and reserves unto itself and its successors and assigns, any mineral or other subsurface rights, or interests, associated with the Land, including, without limitation, coal, gas, oil, and/or other mineral rights (excluding the timber) and their collection and removal from under the surface of the Land and, including without limitation any oil and gas leases and the right to receive royalties and other payments thereunder; provided, however, Seller, its successors and assigns shall have no surface rights with respect to the Retained Property.

2.   **Purchase Price**

(a) The total purchase price for the Land shall be **TWO MILLION AND 00/100 ($2,000,000.00) DOLLARS** (the "Purchase Price") payable as follows:

(i) On the Effective Date, Buyer shall deliver to a reputable title insurance company of the Buyer's choosing licensed to do business in the Commonwealth of Pennsylvania (the "Title Company") in immediately available funds by certified check or wire transfer to be held in accordance with Section 2(b) hereof, the sum of **FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00)** in hand money (said deposit together with interest, if any, earned thereon, hereinafter called the "Down Payment") which shall be held in escrow by the Title Company; and

(ii) The balance of the Purchase Price over and above the Down Payment shall be paid to Seller in immediately available funds by certified check or wire transfer on the Closing Date, net of all prorations and other credits provided for in this Agreement.

(b) The Down Payment shall be held by the Title Company on the terms and conditions hereinafter set forth:

(i) The Title Company will hold the Down Payment in a federally insured account or accounts such that the full amount of the Down Payment theretofore paid to the Title Company shall at all times be fully insured.

(ii) The Title Company will retain the Down Payment or deliver the Down Payment to Buyer or Seller, as the case may be, in accordance with the terms of this Agreement.

(iii) Seller, Buyer and the Title Company shall not be responsible for any interest, nor shall Seller, Buyer or the Title Company be responsible for the loss of any interest, arising from the closing of any account or the sale of any certificate of deposit or other instrument prior to maturity.

2

3.    **Representations, Warranties and Covenants of Seller and Buyer**

(a)    As a material inducement to cause Buyer to enter into this Agreement, Seller represents, warrants and covenants to Buyer and which will be again represented, warranted and covenanted at the Closing that:

(i)    Seller will cause to be conveyed and transferred to Buyer at Closing good and marketable title to the Land free and clear of any tenancies, liens, encumbrances, licenses, mortgages, tax liens, warrants, federal tax assessments, security interests, covenants, conditions, restrictions, judgments, rights-of-way, easements, encroachments, except for the Permitted Exceptions, and insurable at regular rates by the Title Company;

(ii)    Seller has received no notice that any proceeding for condemnation or other taking by eminent domain of the Land or any part thereof has been commenced or is pending, threatened or contemplated; and Seller shall promptly forward to Buyer any notice of such proceeding or taking received by Seller;

(iii)    Seller has received no notice that any claim, action or proceeding, legal or administrative, has been commenced or is pending; and to Seller's knowledge none have been threatened in writing which would adversely affect or prohibit the consummation of the transactions contemplated herein; Seller shall promptly forward to Buyer any notice of such claim, action or proceeding received by Seller.

(iv)    Seller has received no written notice that the Land is in violation of any federal, state, or local laws, ordinances, or regulations.

(v)    Seller has received no written notice that a default or breach exists under any covenants, conditions, restrictions, rights-of-way or easements affecting the Land or any portion thereof;

(vi)    Seller has the legal right, power and authority to enter into the Contract and to consummate the transactions contemplated therein.

(vii)    To Seller's knowledge, the execution and performance of this Agreement by the Seller shall not require the consent of any third-party, conflict with any contract of which Seller is a party, or result in a breach of any contract, covenant or agreement of which the Seller or the Land is bound.

(viii)    Seller has not received any written notice that the Land or Retained Property violates any applicable environmental laws with respect to hazardous substances.

(ix)    Seller has not received any written notice from any County, Township or governmental authority that the existing vehicular and/or pedestrian

3

access to the Land from adjoining and contiguous public or private streets or ways will be terminated or modified.

(x)   Seller has not received any written notice from any Township, County or State governmental authority of any pending special assessments or zoning changes affecting the Land.

(xi)  Seller will not timber the Land, or perform any other activity on the Land which would adversely affect or devalue the Land.

(b)  Except as specifically set forth herein, Seller hereby expressly disclaims any and all warranties, express or implied, relating in any way to or regarding the Land, including, without limitation, any warranty provided for under statutory or common law or the uniform commercial code, including but not limited to warranties of merchantability and fitness for a particular purpose.  Both Buyer and Seller are acting at arm's length to protect their own interests, and both buyer and Seller shall use their own independent business judgment concerning the sale and purchase of the Land.  Buyer acknowledges that it agrees to accept conveyance of the Land at Closing in its "AS-IS, WHERE-IS"  condition as of the Closing Date, solely based upon Buyer's reliance on its own investigations, inspections and judgment, including, without limitation, as to any oil or gas wells located on the Land and Buyer shall be responsible for any costs and expenses associated therewith.

(c)  Seller agrees from the Effective Date of this Agreement not to enter into any leasing, developing, exploring or granting rights to others concerning any surface activities relating to oil, gas or coal or any other mineral development and production while this Agreement remains in effect.

(d)  For the purposes of the representations and warranties of the Seller set forth in this Agreement, the words "Seller's knowledge" shall be limited to being the actual knowledge and information (as distinguished from, and to exclude, what is exclusively constructive knowledge or receipt of constructive  notice) of those persons responsible for the current management and operation of the Land and should not include any information which the Seller or its agents, counsel, directors, officers or employees, management companies or leasing agents, as a reasonably prudent person, should reasonably have known.

(e)  As a material inducement to cause Seller to enter into this Agreement, Buyer represents, warrants and covenants to Seller and which will be again represented, warranted and covenanted at the Closing that:

(i)   The Buyer is a Pennsylvania non-profit corporation duly organized, validly existing and in good standing in the Commonwealth of Pennsylvania.  The Buyer has the power and authority to execute and deliver this Agreement, to consummate the transactions contemplated hereby and to perform its obligations hereunder, and all such actions have been authorized by all necessary corporate proceedings on its part.

4

1932965.v5

(ii) This Agreement has been duly and validly executed and delivered by the Buyer and constitutes a legal, valid and binding obligation of the Buyer enforceable against the Buyer in accordance with its terms.

(iii) The execution and delivery of this Agreement by the Buyer, the consummation of the transactions contemplated hereby and the performance by the Buyer of its obligations hereunder do not and will not: (i) violate the Buyer's organizational documents or bylaws; (ii) cause a breach or default by the Buyer under any agreement, document or instrument to which the Buyer is a party or by which the Buyer or any of its properties or assets are bound; or (iii) breach or otherwise violate any court order which names the Buyer or is directed to the Buyer or any of its properties or assets. The execution and delivery of this Agreement by the Buyer, the consummation of the transactions contemplated hereby and the performance by the Buyer of its obligations hereunder are not prohibited by, and do not and will not subject the Buyer to any fine, penalty or similar sanction under, any law.

4.    **Closing Provisions**

(a) Transfer of title to the Land and all other transactions contemplated by this Agreement (collectively, the "Closing") shall be held at a site mutually agreed upon between Seller and Buyer on or before thirty (30) days after the expiration of the Due Diligence Period (as defined herein), the Financing Contingency Period (as defined herein) and other contingencies all of which shall be defined as requirements in Paragraph 6 below (the "Closing Date").

(b) Seller shall deliver to Buyer at the Closing, at Seller's sole cost and expense, the following:

(i) Special Warranty Deed (the "Deed") for the Land, duly executed and acknowledged by Seller and in proper form for recording;

(ii) executed and acknowledged affidavits reasonably required by the Title Company, in a form reasonably acceptable to the Seller;

(iii) a completed and fully executed and acknowledged Non-Foreign Affidavit pursuant to Paragraph 1445 of the Internal Revenue Code; and

(iv) such other documents and certifications which Title Company may reasonably request.

(c) At Closing, Buyer shall tender the Purchase Price, subject to any credits or adjustments due on account of any other provisions in this Agreement.

(d) Buyer shall be responsible at Closing for the following at its sole cost and expense:

(i) All title abstracting fees and title insurance premiums in connection with procuring a title insurance policy for the Land. Buyer shall also be responsible for the costs of recording the Deed for the Land and other

5

Closing instruments, if any, excepting any recording costs necessary to file instruments of record, satisfying, releasing or discharging of record, any Liens or objectionable exceptions filed against the Land, which Seller has agreed to remove pursuant to Paragraph 10 below.

(ii) The preparation, submission and approval of the Plan of Subdivision for the Land from the Retained Property of the Seller since subdivision approval will be required prior to conveyance of the Land by the Seller to the Buyer, which Plan of Subdivision is subject to the review and approval of the Seller, which shall not be unreasonably withheld or delayed.

(iii) Any environmental, soils analysis, engineering or other tests or reports required by Buyer as the same may relate to the Land as required to determine the full utilization of the Land as a rail served industrial park.

(e) The expense and cost of all state, and local documentary or revenue stamps, transfer, sales and other taxes, if any, relating to the sale of the Land shall be divided equally by Buyer and Seller at Closing.

5.   **Information to be made available by the Seller to the Buyer within twenty (20) days after the Effective Date of this Agreement**

The following shall be made available to the Buyer, provided that such items are within the possession or reasonable control of the Seller:

(a) All existing studies, tests and reports, citations, notice of violations, notice of investigations (including utility, engineering, environmental, hazardous substances; soil boring and other physical tests) along with any closure letter; no further action letter and any other documentation relating to any and all environmental conditions, either past, present or in the future prior to Closing, of the Land and the Retained Property adjoining the Land which may affect the Land.

(b) All findings and/or determinations of the existence or location of all wetlands as to the Land.

(c) All existing title reports, title policies and/or legal opinions concerning the marketability and quality of legal title to the Land in the name of the Seller.

(d) All existing surveys of the Land or any portion of the Land.

(e) All existing oil and gas leases and/or coal mining leases which have not been terminated or surrendered.

(f) Copies of all special use permits or variances.

(g) Copies of all currently applicable licenses, permits, authorizations and approvals relating to ownership, use and occupancy of the Land .

6

1932965.v5

(h) Copies of all documents relating to any pending or potential liens and law suits or condemnation.

The parties agree that the foregoing will be provided for general informational purposes only and the Seller makes no representation or warranty as to the accuracy and/or completeness of any of the information, documents and/or other items provided to Buyer pursuant to this Agreement.

6.    **Due Diligence Provisions**

During the Due Diligence Period (as defined in Paragraph 7) Buyer shall have the right to conduct all the necessary tests, and seek approvals from all governmental (Federal, State and Local) Agencies, political subdivisions and authorities and grants supporting acquisition and development for the full use of the Property as a rail served industrial park which must be satisfied prior to the Buyer being obligated to close on the purchase of the Land (collectively, the "Due Diligence").

(a) Such Due Diligence may include, without limitation, the following:

(i) Obtaining grants in an amount sufficient to cover the full cost and expense of securing, constructing and dedicating a public sewage line extension to service the Land with public sewage.

(ii) Obtaining Act 537 Sewage Facilities Planning approval from the Pennsylvania Department of Environmental Protection, the Township of Sewickley (Sewickley), Township of Hempfield (Hempfield), The Hempfield Township Municipal Authority (THTMA) and the Municipal Sewage Authority of the Township of Sewickley (MSATS).

(iii) Obtaining an intergovernmental agreement between Hempfield, Sewickley, THTMA and MSATS for the approval, inspection and acceptance of the sewage line extension and treatment of the sewage serving the Land at Buyer's sole cost and expense.

(iv) At Buyer's sole cost and expense, obtaining approval of the subdivision from the Township of Sewickley and Westmoreland County for the separation of the Land from other property owned by the Seller permitting the conveyance of the Land by the Seller to the Buyer subsequent to the review and approval of the subdivision by the Seller and Buyer with the review and approval by the Seller not to be unreasonably denied or delayed. Provided that Seller approves the subdivision, Seller agrees to sign the approved subdivision as owner.

(v) Obtaining site and development approval from Sewickley for a rail served industrial development.

(vi) Completing an Environmental Site Assessment verifying the absence of all environmental hazards and/or wetlands which would impede or

7

adversely affect the development of the entire Land for a rail served industrial park.

(vii) [Intentionally Omitted.]

(viii) Reviewing of all documents provided by the Seller to the Buyer set forth in Paragraph 5 above to verify that no impediment exists that would prohibit the development of the entire Land for a rail served industrial park.

(ix) Completing a title search and obtaining a Title Commitment as further set forth in Paragraph 10 below.

(x) Obtaining a right of way into the Land for a railroad corridor from the existing rail line owned by the Buyer through and along property or right of way owned by West Penn Power Company and the Pennsylvania Department of Transportation.

(xi) Obtaining all governmental permits, approvals, consents, and/or certifications necessary for the Seller to convey the Land to the Buyer in accordance with this Agreement.

(b) The Seller must provide those necessary rights of way through its existing Retained Property to be retained for the necessary extension and installation of all utility lines to service the Land with the location of same to be mutually agreeable to the Seller and Buyer.

(c) The parties agree to negotiate in good faith a Protective Covenants and Building Restrictions Agreement (the "Restrictive Agreement") within sixty (60) days of the Effective Date of this Agreement which will, among other things, (i) limit certain uses on the Land and place certain additional restrictions on the Land; and (ii) contemplate different zones throughout the Land, with different restrictions placed upon the uses permitted in each zone.

(d) Buyer may terminate this Agreement, at its sole option, at any time prior to the expiration of the Due Diligence Period if any information discloses any condition that would affect the Buyer to develop the Land for a rail served industrial development as developed through the due diligence periods or not all the contingencies are satisfied. If this right to terminate the Agreement is executed by the Buyer, the Down Payment and any other funds paid to the Seller by the Buyer must be released to the Buyer and all parties will be released from any further obligation to perform under the Agreement, subject to any representations, warranties or covenants contained herein that specifically survive termination. At Closing, the Seller agrees to execute any document reasonably required by the Buyer's Title Company to Release the Land to the Buyer.

7.    **Period of Due Diligence**

8

The Buyer shall have a period of one hundred eighty (180) days from the Effective Date of this Agreement (the "Due Diligence Period") to conduct the Due Diligence, which Due Diligence Period can be extended by the Buyer (i) for an additional period of one hundred eighty (180) days at the sole discretion of the Buyer upon written notice provided to the Seller no later than thirty (30) days prior to expiration of the initial one hundred eighty (180) day period; and (ii) thereafter, for a period of ninety (90) days upon written notice from the Buyer certifying to the Seller that Buyer has otherwise completed its Due Diligence review and requires such ninety (90) day extension for the purpose of obtaining permits for the Sewage Improvements only, which permits Buyers are diligently pursuing.

8.    **Financing Contingency Period**

Buyer shall have one (1) year from the Effective Date to obtain commitments for funds necessary for the completion of the Sewage Improvements (the "Financing Contingency Period"), which Financing Contingency Period can be extended by the Buyer for an additional period of ninety (90) days upon written notice from the Buyer no later than thirty (30) days prior to expiration of the initial one (1) year period.

9.    **Access to Land**

During the Due Diligence Period, the Buyer shall have the right to access the Land during normal business hours and upon one (1) day oral or written notice to perform any inspections of the Land and other Due Diligence activities as permitted by this Agreement. This right also includes the Buyer's engineer and contractors hired by the Buyer. The Buyer, and all such engineers and contractors retained by the Buyer to conduct Due Diligence activities hereunder shall keep the Land free and clear of all liens arising out of activities conducted on the Land and shall promptly repair any damage to the Land caused by Buyer or any such person's entry upon the Land and/or inspection of the Land and shall indemnify, defend and hold the Seller harmless from and against any and all claims, damages, losses, liabilities, costs and expenses (including without limitation reasonable attorneys' fees and court costs) arising out of or in connection with any such entry upon, inspection, or testing of the Land. The parties agree that the foregoing indemnification obligations shall survive Closing or the earlier termination of this Agreement. Notwithstanding anything herein to the contrary, neither Buyer, nor any of Buyer's engineers or other contractors or agents hired by the Buyer, shall be permitted to conduct intrusive testing including, without limitation, the collection of soil samples or any other testing or procedure involving drilling or altering the Land in any way without the Seller's express prior written consent.

10.    **Permitted Exceptions**

It is contemplated that Buyer shall obtain (at no cost or expense to Seller) a preliminarily title commitment for title insurance with respect to the Land (the "Title Commitment"). Within ten (10) days of receipt of the Title Commitment, Buyer shall give Seller notice of any title exceptions which adversely affect the

9

Land in any material respect, and as to which, Buyer reasonably objects. Within twenty (20) days of receipt of notice of the objectionable items, Seller shall inform Buyer as to those items which Seller is willing and able to remove prior to the Closing.  If Buyer fails to object to any exceptions which Seller is unable or unwilling to remove prior to Closing within ten (10) days from date of receipt of Seller's information, then Buyer's objections to the remaining items shall be deemed to be waived; in which event, the Deed shall be subject to the items and which items shall be considered the "Permitted Exceptions" herein.

11. **Sewage Facility**

(a) The Pennsylvania Sewage Facilities Act of January 24, 1966, No. 537 of 1966, as amended, requires that there be a statement regarding the availability of a community sewage system, as follows:

(b) Buyer is hereby advised that there is no currently existing community sewage system available to the Land and that Buyer will be responsible to construct a sewage line extension to service the Land.

(c) As a material inducement to Seller's executing this Agreement, Buyer hereby covenants and agrees to construct or cause to be constructed, at the Buyer's sole cost and expense, a public sewage line extension across the length of the Seller's Retained Property to service both the Retained Property and the Land (the "Sewage Improvements").  The Sewage Improvements shall be completed within one (1) year following Closing.

(d) The Buyer's obligations hereunder with respect to the Sewage Improvements shall survive the Closing and shall be specifically enforceable by Seller and Seller's successors and/or assigns.

12. **Default**

(a) If Seller shall default hereunder, then Buyer may, in Buyer's sole and absolute discretion, (a) terminate this Agreement by notice to Seller, whereafter the Title Company shall return the Down Payment and any additional Deposits made by the Buyer to the Title Company, and thereafter Buyer shall be reimbursed for all actual, out of pocket expenses incurred during the Due Diligence Period, not to exceed $50,000; or (b) bring an action for specific performance of the terms of this Agreement, the foregoing being Buyer's exclusive remedies hereunder.

(b) If Buyer shall default hereunder, then Seller may, in Seller's sole and absolute discretion, terminate this Agreement and retain the Down Payment. Additionally, if the Buyer and Seller consummate the Closing, the Seller may, in Seller's sole and absolute discretion, thereafter bring an action for specific performance and the associated costs of such action for Buyer's failure to perform Buyer's obligations under Paragraph 11 with respect to the Sewage Improvements.

10

(c) Buyer shall be responsible for reimbursing Seller for any costs of repair or maintenance suffered to the Land or the Retained Property during Buyer's inspections of the Land and/or such other Due Diligence conducted under this Agreement. Additionally, upon Buyer's default, the Buyer must promptly provide copies of any reports and findings or any other written results of Due Diligence to the Seller.

13.    **Damage, Destruction or Condemnation**

The risk of loss or damage to the Land shall remain with Seller until the Closing. In the event of major loss or in the event of condemnation, the obligation of Buyer to complete purchase of the Land shall continue and not terminate, and in which event, Buyer shall be entitled to receive all resulting proceeds from insurance or resulting proceeds or damages from said condemnation.

14.    **Notices**

(a) All notices and other documents required or permitted to be given hereunder shall be in writing and shall be delivered or addressed to the parties by the following means at their respective addresses set forth in subsection 13 (b) below or at such other address which the parties shall have given notice as herein provided:

(i)   personal service;

(ii)  registered or certified mail, return receipt requested;

(iii) national overnight courier service such as United Parcel Service (U.P.S.), Federal Express or Airborne Express provided such courier obtains a written receipt upon delivery; or

(iv)  receipted telefacsimile;

(b) All such notices and other documents shall be deemed to have been sufficiently delivered and effective on the date of the receipt or refusal thereof, whichever the case may be or upon confirmation of complete receipt if given by telefacsimile or in the alternative, notice and documentation may be given to the Seller's legal counsel or Buyer's legal counsel set forth below:

If to Seller:    WESTINGHOUSE ELECTRIC COMPANY, LLC
1000 Westinghouse Drive
Cranberry Township, PA 16066
Attn: Richard Fruehauf, Assistant General Counsel
Telephone #: (412) 374-6776
Fax#: (724) 940-8508
E-mail: fruehar@westinghouse.com

11

1932965.v5

With copy to:     WESTINGHOUSE ELECTRIC COMPANY, LLC
                  1000 Westinghouse Drive
                  Cranberry Township, PA 16066
                  Attn: Real Estate Department
                  Telephone #: _____
                  Fax#: (___) ___-____
                  E-mail: _____

With copy to:     William R. Taxay, Esq.
                  Cohen & Grigsby, P.C.
                  625 Liberty Avenue, 5th Floor
                  Pittsburgh, PA 15222
                  Telephone #: (412) 297-4925
                  Fax #: (412) 209-1941
                  E-mail: wtaxay@cohenlaw.com

If to Buyer:      Westmoreland County Industrial Development Corporation
                  Attn: Jason W. Rigone, Executive Director
                  Fifth Floor, Suite 520
                  40 N. Pennsylvania Avenue
                  Greensburg, PA 15601
                  Telephone#: (724) 830-3601
                  Fax #; (724) 830-3611
                  E-mail: jrigone@co.westmoreland.pa.us

With copy to:     John N. Ward, Esquire
                  Ward & Christner, P.C.
                  15 North Main Street
                  Greensburg, PA 15601
                  Phone: (724) 834-2102
                  Fax: (724) 834-3813
                  Email: wardchristner@verizon.et

## 15.    Coal Notice

NOTICE -- THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984, as amended, and is not intended as notice of unrecorded instruments, if any.)

12

Unless the foregoing notice is stricken, the deed shall contain the notice as above set forth and shall also contain, and the Buyer shall sign, the notice specified in the Bituminous Mine Subsidence and Land Conservation Act of 1966.

16.    **Further Assurances**

At the request of one of the parties hereto from time to time, the other party will execute and deliver such other documents and will take such other further action as reasonably requested by the requesting party to more effectively consummate the transactions contemplated by this Agreement.   This Paragraph 16 shall survive the Closing Date.

17.    **Waiver of Tender**

Formal tender of the Deed and of the Purchase Price are hereby waived by the parties.

18.    **Covenant Not to Record**

Buyer shall not record this Agreement without the prior written consent of Seller, which consent may be withheld in Seller's sole and absolute discretion, and any such recording shall constitute a default by the Buyer hereunder.

19.    **Miscellaneous**

(a) This Agreement contains the entire and complete understanding between Buyer and Seller with respect to the transactions contemplated herein and all prior or contemporaneous agreements, understandings, representations and statements, oral or written, are merged into this Agreement.

(b) This Agreement and any provision hereof may not be modified, amended, or terminated except by a written agreement executed by Buyer and Seller and then only to the extent set forth in such agreement.  A waiver by Buyer of any Condition shall not constitute a waiver of any other term, condition, covenant, representation or warranty contained herein, or any other right or claim unless specifically waived by Buyer;

(c) This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one Agreement, and facsimile signatures shall be deemed binding on each of the parties hereto;

(d) Seller and Buyer both covenant and warrant that neither has entered into any brokerage, sales or agency agreements with any real estate broker or agent and each agree to hold harmless and indemnify the other against any liability resulting from a claimed brokerage commission.

13

1932965.v5

(e) The captions in this Agreement are inserted for convenience of reference only and should not be construed to define, describe or limit the scope or intent of this Agreement or any of the provisions contained herein.

(f) If any term or provision of this Agreement is found to be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby.

(g) The period of time during which either party is prevented or delayed in fulfilling any obligation under this Agreement due to unavoidable delays caused by fire, catastrophe, strike, civil commotion, acts of God, governmental prohibitions or regulations or inability to obtain materials by reason thereof, or any other causes beyond such parties reasonable control shall be added to such parties time for performance and such party shall have no liability by reason of such delay.

(h) This Agreement shall inure to the benefit of and bind the parties hereto and their respective legal representatives, successors and assigns.  In this regard, it is contemplated that Buyer may (prior to Closing) assign its rights hereunder unto a partnership or limited liability company, which is specifically consented to by Seller.

(i) This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania without regard to any applicable choice of law provisions.

(j) TIME IS OF THE ESSENCE as to the performance of the obligations of Buyer and Seller under this Agreement.

[SIGNATURE PAGE FOLLOWS]

14

1932965.v5

IN WITNESS WHEREOF, the parties have executed this Agreement in duplicate as the day and year first above written.

Seller:  WESTINGHOUSE ELECTRIC COMPANY, LLC

By: _____
Name:    Michael T. Sweeney
Title:    Secretary

Buyer:  WESTMORELAND COUNTY INDUSTRIAL
         DEVELOPMENT CORPORATION

By: _____
Name: Charles W. Anderson
Title:   Chairman

By: _____
Name: R. Tyler Courtney
Title:  Vice Chairman

By: _____
Name: Ted Kopas
Title:   Secretary

15

Exhibit "A"

Legal Description

(See Attached.)



**EXHIBIT A**
Tax Parcel 58-16-00-0-094

N

| 0 | 375 | 750 | 1,500 |

Feet

Data Source: PASDA, Westmoreland County GIS

## FIRST AMENDMENT TO REAL ESTATE PURCHASE AND SALE AGREEMENT

THIS FIRST AMENDMENT TO REAL ESTATE PURCHASE AND SALE AGREEMENT (this "**Amendment**") is made as of the ____ day of _____, 2017, by and between Westinghouse Electric Company, LLC ("**Seller**"), and Westmoreland County Industrial Development Corporation ("**Buyer**").

### RECITALS:

WHEREAS, Seller and Buyer are parties to that certain Real Estate Purchase and Sale Agreement dated September 8, 2014 (the "**Agreement**"), pursuant to which Seller agreed to sell to Buyer, and Buyer agreed to purchase from Seller, the Land; and

WHEREAS, Seller and Buyer wish to amend the Agreement as set forth herein.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Seller and Buyer agree as follows:

1.  **Recitals; Certain Defined Terms**.  The Recitals set forth above are incorporated herein by reference thereto.  Capitalized words, terms and phrases used but not otherwise defined in this Amendment shall have the meanings ascribed to them in the Agreement.

2.  **Land**.  The parties hereby agree that from and after the date hereof, the Land shall be deemed to be approximately two hundred and six (206) acres of real property as described on <u>Exhibit A</u>, which is attached hereto and incorporated herein. The parties hereby agree further that the Retained Property shall be the real property described on <u>Exhibit B</u>, which is attached hereto and incorporated herein.

3.  **Closing**.  Section 4(a) of the Agreement is hereby deleted and replaced in its entirety with the following:

    (a)(i) The Agreement and this Amendment shall be effective only upon the occurrence of the following as conditions precedent: (1) the execution of the Agreement and this Amendment by the Seller and Buyer; AND (2) entry and effectiveness of an order of the United States Bankruptcy Court for the Southern District of New York pursuant to section 363 of the Bankruptcy Code authorizing the Seller to sell the Land to the Buyer pursuant to the Agreement and this Amendment (the "**Effective Date**").

    (a)(ii) The conveyance of the Land pursuant to the Agreement and this Amendment, transfer of title to the Land and all other transactions contemplated by this Agreement (collectively, "**Closing**") shall be held at a site mutually agreed upon between Seller and Buyer on or before March 1, 2018, provided such date may be extended for up to sixty (60) days upon the mutual agreement of the parties (the "**Closing Date**").

4.  **Section 5**.  Section 5 of the Agreement is hereby deleted.

5.    **Section 6**.

    a.    Sections 6(a)(i-viii) are hereby deleted.

    b.    For the avoidance of doubt, Sections 6(a)(ix-x) shall remain in effect until the Closing Date, but only pending the release of: (i) surface rights presently possessed or retained by oil and gas companies under recorded oil and gas leases; and (ii) the acquisition of railroad right-of-way property.

    c.    Section 6(a)(xi) is hereby deleted.

    d.    Section 6(c) is hereby amended and restated as follows:

        The parties have been and will continue to negotiate in good faith a Protective Covenants and Building Restrictions Agreement (the "**Restrictive Agreement**"), which will include certain easements to be finalized prior to the Closing. The Restrictive Agreement will be recorded simultaneously with the conveyance of the Land by the Seller to the Buyer.

    e.    Section 6 shall be modified by adding the following new subpart (e):

        Buyer shall apply for and use its best efforts to receive the necessary state funding from the Pennsylvania Department of Community and Economic Development for the purchase and development of the Land.

    f.    THE TRANSACTION CONTEMPLATED BY THE AGREEMENT AND THIS AMENDMENT HAS BEEN NEGOTIATED BETWEEN SELLER AND BUYER, THIS AMENDMENT REFLECTS THE MUTUAL AGREEMENT OF SELLER AND BUYER, AND BUYER HAS CONDUCTED ITS OWN INDEPENDENT EXAMINATION OF THE LAND AND RELATED MATTERS, INCLUDING BUT NOT LIMITED TO THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AND HAS COMPLETED ITS DUE DILIGENCE AND SATISFIED ITSELF AS TO THE SAME.

6.    **Section 7**. Section 7 of the Agreement is hereby deleted.

7.    **Section 8**. Section 8 of the Agreement is hereby deleted.

8.    **Section 9**. Section 9 of the Agreement is hereby deleted.

9.    **Section 10**. Section 10 of this Agreement is hereby deleted in its entirety and replaced with the following:

    a.    Transfer of title to the Land shall be subject only to the Permitted Exceptions as set forth on <u>Exhibit C</u> to the First Amendment, which is attached hereto and incorporated herein and represents the title search secured by the Buyer at the Buyer's sole cost and expense. Additionally, the Buyer, at its sole cost and

expense, must secure the release of all surface rights from the existing owners of the oil and gas rights under those existing oil and gas leases.

10.    **Miscellaneous**.    This Amendment shall be binding upon the parties hereto and their respective successors and assigns.  Except as expressly modified herein, all other terms, provisions and conditions of the Agreement shall remain in full force and effect.  This Amendment may be executed by electronic transmission and in counterparts, in which case such electronically transmitted signatures shall be deemed originals and all such counterparts, when taken together, shall be deemed a single instrument.  In the event of a conflict between the provisions of the Agreement and the provisions of this Amendment, the provisions of this Amendment shall govern and control.


IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written.


**Westmoreland County**
**Industrial Development Corporation**

By:_____
        Jason W. Rigone, Executive Director


**Westmoreland County**
**Industrial Development Corporation**

By:_____
        Gina Cerilli, Chairman

By:_____
        Ted Kopas, Vice Chairman

By:_____
        Charles W. Anderson, Secretary


**Westinghouse Electric Company, LLC**

By:_____
        A. Ron Lewis III, Director
        Global Real Estate & Facilities

2667804.v3

## EXHIBIT A

### Land

[See attached.]

2667804.v3

# **EXHIBIT B**

## **Retained Property**

[See attached.]

2667804.v3

# EXHIBIT C

## Permitted Exceptions

[See attached.]

WESTINGHOUSE WALTZ MILL – SALE OF PROPERTY to WCIDC                    December 4, 2017



Area: 206.04 ac
Perimeter: 13,996.77 ft

Location of Abandoned Natural Gas Well

Westinghouse proposes that 206 acres are included in the sale to WCIDC for $2,000,000.

Per Subsection 3.0, Paragraph (b) of the original PSA, WCIDC will assume the liability for the abandoned gas well that is within the 206 acres of property.

As previously agreed, WEC retains all of the subsurface mineral rights to the property.



## WETLAND DISTURBANCE

| LOT | WETLAND NO. | AREA OF WETLAND DISTURBANCE |
|-----|-------------|------------------------------|
| 1 | 5 | 0.0587 ACRES |
| | TOTAL | 0.0587 ACRES |
| 4 | 18 | 0.2153 ACRES |
| | 20 | 0.3009 ACRES |
| | 21 | 0.1869 ACRES |
| | 22 | 0.1529 ACRES |
| | 23 | 0.0786 ACRES |
| | 24 | 0.3623 ACRES |
| | TOTAL | 1.2969 ACRES |

100 YR FLOOD PLAIN LIMIT

LOT 7
APPROX BLDG=278,700 SF

LOT 6
APPROX BLDG=176,000 SF

LOT 3
(WITHIN FLOOD BOUNDARY)

LOT 4
APPROX BLDG=475,000 SF

LOT 5
APPROX BLDG=157,000 SF

100 YR FLOOD
PLAIN LIMIT

WALTZ MILL FLATS ROAD

WALTZ MILL RD 088

LOT 2
APPROX
BLDG=60,000 SF

LOT 1
APPROX BLDG=36,100 SF

HUNKER ROAD

INTERSTATE 70

150'  75'  0'      150'      300'

SCALE: 1" = 150'

H.F. LENZ
COMPANY
1407 Scalp Avenue
Johnstown, PA 15904
Phone: 814-269-9000

cadd@hflenz.com

H.F. Lenz Company
Conneaut, Ohio 44030
H.F. Lenz Company
Pittsburgh, PA 15220
Engineers
Planners
Surveyors
Energy Consultants

WCDC
WALTZ MILL INDUSTRIAL PARK
OVERALL PARK PLAN

NOTED

OA-1

## Exhibit B

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

In re                                    :
                                         :    **Chapter 11**
**WESTINGHOUSE ELECTRIC**                :
**COMPANY LLC**, *et al.*,               :    **Case No. 17-10751 (MEW)**
                                         :
            **Debtors.**[1]              :    **(Jointly Administered)**

------------------------------------------------------x

### ORDER AUTHORIZING DEBTORS TO SELL CERTAIN NONESSENTIAL ASSETS PURSUANT TO THE PURCHASE AND SALE AGREEMENT WITH WESTMORELAND COUNTY INDUSTRIAL DEVELOPMENT CORPORATION

Upon the motion (the "**Motion**"),[2] dated December 4, 2017, of Westinghouse Electric Company LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 2002, for an order authorizing the Debtors to sell real property located in the Township of Sewickley, Westmoreland County, Pennsylvania, pursuant to that certain Purchase and Sale Agreement by and between Westinghouse Electric Company LLC and Westmoreland County Industrial Development Corporation ("**WCIDC**") dated September 8, 2014, as amended by the First Amendment to Real Estate Purchase and Sale

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961).  The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

Agreement, substantially in the form annexed hereto as **Exhibit A** (the "**Purchase Agreement**," and the transaction set forth therein, the "**Transaction**"), [Docket No. ___]; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and the Court having reviewed the Motion; and the Court having held a hearing on December 13, 2017; and all objections to the Motion, if any, having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is,

### IT IS HEREBY ORDERED THAT:

ORDERED that the Motion is granted as set forth herein; and it is further

ORDERED that the Debtors are authorized to enter into the Transaction and take all reasonable and necessary steps to consummate the Transaction on the terms and conditions set forth in the Purchase Agreement; and it is further

ORDERED that the counterparties to the Transaction shall be entitled to the protections of section 363(m) of the Bankruptcy Code; and it is further

ORDERED that with respect to the Transaction consummated pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to any particular

2

purchaser, and the Transaction consummated pursuant to this Order shall be binding upon and

shall govern the acts of all persons and entities who may be required by operation of law, the

duties of their office, or contract, to accept, file, register, or otherwise record or release any

documents or instruments, or who may be required to report or insure any title or state of title in

or to any of the property sold pursuant to this Order, including, without limitation, all filing

agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds,

administrative agencies, governmental departments, secretaries of state, and federal, state, and

local officials, and each of such persons and entities is hereby directed to accept this Order as

sole and sufficient evidence of such transfer of title and shall rely upon this Order in

consummating the Transaction; and it is further

ORDERED that notwithstanding Bankruptcy Rule 6004(h), this Order shall be

immediately effective and enforceable upon its entry; and it is further

ORDERED that the Debtors are authorized to take all action necessary to the

relief granted in this Order; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation, and/or enforcement of this

Order.

Dated: _____, 2017
     New York, New York

                                   _____
                                   HONORABLE MICHAEL E. WILES
                                   UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Purchase Agreement**