# **Exhibit F**

## **Narrative Description of Services Provided**

## NARRATIVE SUMMARY OF SERVICES RENDERED

All of the professional services that K&L Gates LLP ("<u>KLG</u>") rendered as Special

Counsel to the Debtors during the Compensation Period are segregated by matter pursuant to

Local and U.S. Trustee Guidelines.  As described in the Application,[1] KLG was engaged as

Special Counsel to continue representing the Debtors in a number of ongoing Special Matters.  In

the context of describing the Special Matters, the Narratives occasionally describe events that

occurred prior to the Petition Date and/or during a prior post-petition compensation period.  The

fees sought in this Application, however, correspond exclusively to post-petition work performed

during the Compensation Period.  A description of services performed appears below, by each

matter.

### A.  E.U. Competition Counseling

1.        Among other services provided in this category during the Compensation Period,

KLG advised Westinghouse Electric Company, LLC ("<u>WEC</u>" or the "<u>Company</u>") regarding a

published decision by the European Commission on Competition (the "<u>Commission</u>") regarding

the merger of the EDF Group (a French nuclear electric power generation company) and Areva

(a French multinational nuclear power and renewable energy group), pursuant to which the

former acquired the latter's nuclear reactor business.  Given the Company's interest in the

transaction (WEC supplies engineering support and fuel assemblies to ECF), KLG assisted the

Company in responding to the Commission's request for documents.

---

[1]  Capitalized terms not defined in this Exhibit shall have the meanings ascribed to them in the Application.

2.      A breakdown of the time expended and associated charges for **E.U. Competition Counseling** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Megregian, Scott S. | 700.00 | 0.50 | $350.00 |
| Romata, Zanda | 370.00 | 0.70 | $259.00 |
| Total | | 1.20 | $609.00 |

### B.  Subpoena Response

3.      During the Compensation Period, KLG continued to assist the Company in connection with an investigation initiated by the staff of the Division of Enforcement of the U.S. Securities and Exchange Commission ("SEC"), styled as *In re Toshiba Corp.* (FL-3987) (referred to herein as the "SEC Investigation").  As described in the First Interim Application, KLG was engaged by the Company to work on this Special Matter after the SEC issued an administrative subpoena to WEC's ultimate parent company, Toshiba Corporation ("Toshiba"), and its related U.S. entities, including WEC.  KLG was retained to provide litigation support because of KLG's institutional knowledge of WEC and its operations and also because of the extensive experience of KLG's e-Discovery Analysis and Technology ("e-DAT") practice group with WEC's document management systems and related policies and procedures.

4.      The initial focus of the SEC Investigation related to findings in a July 2015 report prepared by an Independent Investigative Committee convened by Toshiba to investigate various past accounting irregularities (the "IIC Report"), including, among other subsidiaries, treatment at the Toshiba level of percent-of-completion accounting for WEC's AP 1000 projects.  In the prior compensation period, KLG professionals spent significant time collecting, reviewing and producing documents in response to subpoenas received by the Company in March and June

3

2017 seeking documents related to, among other thing, WEC's financial reporting on its AP1000

projects and attendant goodwill impairment testing from 2010 through the present (the "WEC

Subpoenas").

5.    During this Compensation Period, KLG has been in frequent contact with the

SEC and its staff attorneys on behalf of the Company.  Cooperation in SEC investigations is an

important consideration by the SEC in determining how an investigation should be resolved.

KLG's work on this Special Matter has had a direct benefit on the Debtors' estates by, among

other things, limiting the impact of the investigation on the Company's ability to focus on its

restructuring in bankruptcy.

6.    During the Compensation Period, KLG helped prepare the third of three narrative

responses originally requested by the SEC.  The narrative provided a detailed discussion, with

citations, of issues surrounding the Company's financial accounting of the estimate to complete

("ETC") the respective US AP1000 projects, undertaken in accordance with the US Generally

Accepted Accounting Principles ("GAAP"), following the Company's December 31, 2015

acquisition of Stone & Webster, Inc. ("S&W"), the construction division of Chicago Bridge &

Iron Company ("CB&I") (the "S&W Acquisition").  The preparation of this narrative response

required substantial additional document searches and review to support the underlying relevant

emails and presentations.

7.    During the months of August, September, and October 2017, KLG continued to

review and produce documents in response to targeted requests from the SEC on discrete issues

related to the narrative process, thereby avoiding the potential significant expense to provide a

complete and full response to the WEC Subpoenas, as served.  Extensive reviews for relevance

and privileged proceeded these rolling productions, requiring a considerable time commitment

4

by a several KLG associates and e-DAT attorneys.  In all, KLG produced approximately 19,836 new pages to the SEC during the Compensation Period.

8.      In October, the SEC indicated that it was prepared to move forward with testimony of certain current and former Company employees and noticed such testimony to start that the end of November 2017.  KLG created materials for the preparation of three witnesses to testify, which required, among other things, extensive document review with the assistance of KLG's e-DAT attorneys and several associates.

9.      Simultaneously with the witness preparation, KLG prepared for a November meeting with the SEC to discuss the investigation and began negotiating a tolling agreement that would reschedule the witness depositions.  In anticipation of this meeting, KLG prepared a comprehensive presentation for the SEC summarizing in detail the relevant facts and applicable legal theories, which the SEC has expressed an interest during the course of that investigation.  That presentation involved an in-person meeting in Miami, Florida and extensive coordination with Toshiba's counsel.

10.     Ultimately, KLG was able to work with the SEC to secure an agreement to defer testimony by the Debtors' witnesses to at least April of 2018, in recognition of the competing demands on such witnesses from the ongoing complex bankruptcy process.

11.     It is our understanding that the SEC investigation remains in the fact-gathering stage and will continue in 2018.  Accordingly, KLG expects that its representation of the Company in this Special Matter will continue.

301358626 v6                                                                                      01/02/2018

12.    A breakdown of the time expended and associated charges for **Subpoena**

**Response** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Baum, Elsie S. | 370.00 | 59.20 | $21,904.00 |
| Bell, Christopher, H. | 370.00 | 18.10 | $6,697.00 |
| Bronder, Sarah A. | 370.00 | 12.90 | $4,773.00 |
| Cashman, Amanda R. | 370.00 | 140.30 | $51,911.00 |
| Chiccarino, J. A. | 370.00 | 25.80 | $9,546.00 |
| Czypinski, S. M. | 370.00 | 61.90 | $22,903.00 |
| Diersen, Leslie A. | 250.00 | 11.00 | $2,750.00 |
| Field, C. T. | 250.00 | 6.40 | $1,600.00 |
| Gafner, Katherine M. | 370.00 | 41.20 | $15,244.00 |
| Georges, J. A. | 250.00 | 12.50 | $3,125.00 |
| Glover, E. J. | 370.00 | 49.20 | $18,204.00 |
| Gracey, T. M. | 250.00 | 2.30 | $575.00 |
| Jay, Jeffrey A. | 370.00 | 84.00 | $31,080.00 |
| Kenney, N. J. | 175.00 | 17.00 | $2,975.00 |
| Kephart, J. A. | 370.00 | 25.10 | $9,287.00 |
| Komo, Michael R. | 370.00 | 52.80 | $19,536.00 |
| Kornobis, T. L. | 370.00 | 18.00 | $6,660.00 |
| Lambrakopoulos, S. E. | 700.00 | 149.90 | $104,930.00 |
| Manosa, Robert W. | 370.00 | 17.20 | $6,364.00 |
| Martinez, Vincent L. | 700.00 | 287.50 | $201,250.00 |
| McCullough, A. E. | 370.00 | 37.40 | $13,838.00 |
| Paine, Adam | 370.00 | 17.60 | $6,512.00 |
| Phillips, E. D. | 370.00 | 47.60 | $17,612.00 |
| Prichard, W. A. | 370.00 | 28.50 | $10,545.00 |
| Ray, G. R. | 175.00 | 20.60 | $3,605.00 |
| Rush, M. A. | 700.00 | 14.10 | $9,870.00 |
| Ryan, Thomas C. | 700.00 | 142.00 | $99,400.00 |
| Scott, F. J. | 175.00 | 9.00 | $1,575.00 |
| Slavik, K. R. | 250.00 | 4.00 | $1,000.00 |
| Smith, Isaac T. R. | 370.00 | 51.30 | $18,981.00 |
| Stockey, Nicole | 370.00 | 23.40 | $8,658.00 |
| Thibadeau, Mary L. | 370.00 | 16.90 | $6,253.00 |
| Treglia, R. P. | 250.00 | 7.60 | $1,900.00 |
| Veintimilla, D. J. | 370.00 | 68.40 | $25,308.00 |
| Waddell, Justin | 370.00 | 48.20 | $17,834.00 |

| | | | |
|---|---|---|---|
| Yammine, R. E. | 370.00 | 16.10 | $5,957.00 |
| | Total | 1,645.00 | $790,162.00 |

### C.  Non-Adverse Compliance and Insurance Advice

13.     K&L incurred time in this matter responding to certain discrete general corporate matters.  Similar to the time incurred during the First Interim Application Period, KLG was called upon to respond to a request from WEC's outside auditors that required review and consideration of a number of significant sensitive engagements undertaken in the last fiscal year. In addition, KLG spent time in this category advising the Company on an immigration-related matter.

14.     A breakdown of the time expended and associated charges for **Non-Adverse Compliance and Insurance Advice** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Hosking, R. W. | 700.00 | 24.40 | $17,080.00 |

### D.  Internal Investigation

15.     As described in the First Interim Fee Application, the Company retained KLG to assist it in conducting an independent investigation related to the facts surrounding the Company's financial accounting of ETCs for US AP1000 projects, following the S&W Acquisition.  With WEC's approval, KLG and WEC jointly engaged Ankura Consulting Group ("Ankura") to assist KLG by providing forensic and technical accounting support (collectively with KLG, the "Team").

16.     As of the Petition Date, KLG (with the assistance of its e-DAT group) was in the process of completing the third and most recently expanded scope of its engagement in the investigation (the "Scope 3 Investigation"), which focused on ethical, cultural, or compliance

7

issues related to WEC's financial reporting and internal controls. During the course of the Scope 3 Investigation, the Team became aware of technical accounting issues that warranted further investigation into issues related to its Scope 1 Investigation (discussed in the Exhibit F Narratives to the First Interim Fee Application). The Team developed additional procedures to examine certain issues related to the timing of WEC's recognition of the accounting impacts of the ETC various on the US AP1000 projects (the "Scope 1A Investigation").

17.    In August and September 2017, KLG coordinated with PricewaterhouseCoopers LLP in implementing quality control procedures which would allow the outside auditor to rely upon KLG's investigation. As part of its quality control procedures, the external auditor requested KLG conduct additional review of a statistically-significant sample of several thousands of emails.

18.    KLG completed the Scope 1A and Scope 3 Investigation work on October 6, 2017. KLG's investigation assisted the Company in obtaining an audited balance sheet from its external auditors in October.

19.    Since the completion of the internal investigation, KLG has coordinated with the Company's primary bankruptcy counsel, Weil, Gotshal & Manges LLP ("WGM"), regarding the investigations in general and as well as specific documents and other evidence useful to WGM and the Company in determining the Company's best strategies in the bankruptcy. KLG has also spent significant time coordinating with the Creditors' Committee regarding the investigations.

8

20.    A breakdown of the time expended and associated charges for **Internal**

**Investigation** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Baum, Elsie S. | 370.00 | 28.00 | $10,360.00 |
| Bronder,Sarah A. | 370.00 | 1.30 | $481.00 |
| Burdette, Allison L. | 370.00 | 3.90 | $1,443.00 |
| Cashman, Amanda R. | 370.00 | 91.10 | $33,707.00 |
| Chiccarino, J. A. | 370.00 | 10.50 | $3,885.00 |
| Czypinski, S. M. | 370.00 | 7.60 | $2,812.00 |
| Diersen, Leslie A. | 250.00 | 35.00 | $8,750.00 |
| Gafner, Katherine M. | 370.00 | 27.80 | $10,286.00 |
| Georges, J. A. | 250.00 | 13.70 | $3,425.00 |
| Gracey, T. M. | 250.00 | 0.80 | $200.00 |
| Ioki, S. | 370.00 | 3.30 | $1,221.00 |
| Jay, Jeffrey A. | 370.00 | 35.80 | $13,246.00 |
| Kephart, J. A. | 370.00 | 3.40 | $1,258.00 |
| Komo, Michael R. | 370.00 | 15.90 | $5,883.00 |
| Martinez, Vincent L. | 700.00 | 1.60 | $1,120.00 |
| Miller, D. R. | 700.00 | 1.60 | $1,120.00 |
| Milne, T. S. | 250.00 | 1.60 | $400.00 |
| Phillips, E. D. | 370.00 | 20.10 | $7,437.00 |
| Ream, A. K. | 370.00 | 3.40 | $1,258.00 |
| Rush, M. A. | 700.00 | 32.50 | $22,750.00 |
| Ryan, Thomas C. | 700.00 | 163.40 | $114,380.00 |
| Sako, Yuki | 370.00 | 1.30 | $481.00 |
| Slavik, K. R. | 250.00 | 2.10 | $525.00 |
| Smith, Isaac T. R. | 370.00 | 10.00 | $3,700.00 |
| Stockey, Nicole | 370.00 | 6.00 | $2,220.00 |
| Treglia, R. P. | 250.00 | 12.70 | $3,175.00 |
| Wada, N. | 370.00 | 1.00 | $370.00 |
| Waddell, Justin | 370.00 | 15.50 | $5,735.00 |
| Yamahara, Eiji | 700.00 | 1.40 | $980.00 |
| Total | | 552.30 | $262,608.00 |

9

### E.  Non-Adverse Corporate Matters

21.      During the Compensation Period, KLG incurred time (i) drafting, revising, and filing the *First Interim Fee Application of K&L Gates LLP, as Special Counsel to the Debtors, for Allowance and Payment of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from March 29, 2017 Through July 31, 2017*, which it filed on September 14, 2017, (ii) preparing and filing Monthly Statements for July, August, September, and October in accordance with the Interim Compensation Order, and (iii) drafting and filing a supplemental application to expand KLG's role as counsel to the Debtors to include serving as Conflicts Counsel for matters where WGM had a conflict.  In addition, KLG attorneys conversed with the United States Trustee regarding its comments on the First Interim Fee Application.

22.      KLG also spent a significant amount of time in this matter researching and preparing memoranda discussing issues of European corporate, insolvency, and tax law with respect to an Italian non-debtor affiliate that was experiencing liquidity issues.  KLG was able to leverage its global platform in addressing these issues, utilizing attorneys within its Italian office with expertise in corporate and insolvency law.  The efforts to address the Italian affiliates' liquidity problems began in August and extended into September.  This matter is discussed further at "Project M", below.  Ultimately, KLG was able to assist the Company in negotiating a transaction for the affiliate.

23.      KLG also spent time under this matter drafting an audit response letter, responding to an employment law issue arising under Pennsylvania law, and opining on choice of law provisions in non-disclosure agreements.

01/02/2018

24.     A breakdown of the time expended and associated charges for **Non-Adverse**

**Corporate Matters** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Beltrami, Maria | 370.00 | 5.40 | $1,998.00 |
| Campana, A. | 370.00 | 16.90 | $6,253.00 |
| Carloni, Francesco | 700.00 | 0.40 | $280.00 |
| Dale, Charles A. | 700.00 | 1.60 | $1,120.00 |
| Fallon, Rebecca M. | 250.00 | 113.70 | $28,425.00 |
| Georges, J. A. | 250.00 | 2.60 | $650.00 |
| Germani, S. | 370.00 | 21.70 | $8,029.00 |
| Hosking, R. W. | 700.00 | 19.60 | $13,720.00 |
| Jones, Sean Michael | 700.00 | 2.00 | $1,400.00 |
| Marini, P. | 700.00 | 21.70 | $15,190.00 |
| Mawhinney, David A. | 370.00 | 31.10 | $11,507.00 |
| Paine, Adam | 370.00 | 83.40 | $30,858.00 |
| Parker, A. J. | 370.00 | 12.00 | $4,440.00 |
| Pavlick, M. A. | 700.00 | 4.30 | $3,010.00 |
| Phillips, E. D. | 370.00 | 4.50 | $1,665.00 |
| Ryan, Thomas C. | 700.00 | 30.70 | $21,490.00 |
| Salvadori di Wiesenhoff, V. | 700.00 | 9.30 | $6,510.00 |
| Stockey, Nicole | 370.00 | 2.70 | $999.00 |
| Wright III, J. A. | 700.00 | 22.80 | $15,960.00 |
| | Total | 406.40 | $173,504.00 |

**F.  DOJ Third Party Subpoena**

25.     This new matter arose in June 2017, subsequent to KLG's retention in these

Chapter 11 Cases.  WEC received a third-party subpoena issued by the United States Court of

Federal Claims in the matter *Alabama Power Company and Georgia Power Company v. United

States*, Nos. 14-167; 14-168, dated May 23, 2017 (the "Subpoena") seeking documentation

related to services the Company provided at two electric generating plants owned by the

plaintiffs.  During the Compensation Period, KLG has continued to assist the Company in

preparing a discrete document production in response to the Subpoena.  The Company has received no further requests since that production.

26.    A breakdown of the time expended and associated charges for **DOJ Third Party Subpoena** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Chiccarino, J. A. | 370.00 | 0.70 | $259.00 |
| Cashman, Amanda R. | 370.00 | 2.60 | $962.00 |
| | Total | 3.30 | $1,221.00 |

### G.  UCC Litigation

27.    On August 18, 2017, counsel for the Creditors' Committee served document requests pursuant to Fed. R. Bankr. P. 2004 ("2004 Requests") on the Debtors.

28.    During the Compensation Period, KLG assisted WGM in responding to discovery requests propounded by the Creditors' Committee.  Specifically, KLG provided e-discovery support to WGM in gathering and reviewing documents in response to the Creditors' Committee's discovery requests.

29.    KLG, and specifically its e-DAT Group, worked closely with the Company to efficiently collect over 3TB of data, including electronic copies of prior litigation productions, in multiple stages.  The data also included PST files of both former and current Company personnel, as well as Company network shared folders.  KLG associates coordinated the collection, review, and production of documents from the Company, working closely with WGM to develop a privilege review protocol and chain of custody tracking of electronically-stored information.

30.    Upon receipt of the data from the Company, KLG e-DAT analysts conducted a

preliminary assessment of the data collected and processed it through e-discovery tools to index,

search, analyze and de-duplicate the data.  After testing search terms subject to negotiations

between WGM and counsel for the Creditors' Committee, KLG's e-DAT group isolated the data

for review and production.

31.    Working jointly with WGM, KLG trained a team of approximately ten review

attorneys to review thousands of documents that required special attention to privilege and

responsiveness issues.  KLG associates managed the review team during the review, which

began in late September 2017 and continues to the present, and coordinated with debtor's

counsel regarding issues related to responsiveness and privilege.

32.    As of November 30, 2017, KLG's attorneys reviewed approximately 64,000

documents to determine responsiveness and privilege.  The KLG team further coordinated a

quality control review by WGM and performed additional quality control testing of the data

before production.

33.    As of November 30, 2017, KLG has assisted the Company in producing 43,704

documents, totaling approximately 236,837 pages, in response to the 2004 Requests.

34.    A breakdown of the time expended and associated charges for **UCC Litigation** is

as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Arai, L. H. | 175.00 | 110.30 | $19,302.50 |
| Baum, Elsie S. | 370.00 | 43.80 | $16,206.00 |
| Bittle, Emily C. | 370.00 | 24.00 | $8,880.00 |
| Bortmes, J. B. | 175.00 | 41.70 | $7,297.50 |
| Bronder,Sarah A. | 370.00 | 0.90 | $333.00 |
| Brown, C. L. | 175.00 | 11.30 | $1,977.50 |
| Burdette, Allison L. | 370.00 | 2.40 | $888.00 |
| Cashman, Amanda R. | 370.00 | 239.90 | $88,763.00 |

| Name | | | |
|---|---|---|---|
| Chiccarino, J. A. | 370.00 | 278.50 | $103,045.00 |
| Crabtree, N. | 175.00 | 87.50 | $15,312.50 |
| Diersen, Leslie A. | 250.00 | 124.40 | $31,100.00 |
| ESI Processors | | | $76,032.60 |
| Field, C. T. | 250.00 | 21.90 | $5,475.00 |
| Flanigan, K. M. | 370.00 | 38.30 | $14,171.00 |
| Gafner, Katherine M. | 370.00 | 102.00 | $37,740.00 |
| Georges, J. A. | 250.00 | 32.90 | $8,225.00 |
| Gracey, T. M. | 250.00 | 5.10 | $1,275.00 |
| Herrett, A. R. | 250.00 | 4.00 | $1,000.00 |
| Hill, C. | 175.00 | 86.40 | $15,120.00 |
| Jay, Jeffrey A. | 370.00 | 93.00 | $34,410.00 |
| Kang, D. M. | 175.00 | 29.80 | $5,215.00 |
| Kenney, N. J. | 175.00 | 97.40 | $17,045.00 |
| Komo, Michael R. | 370.00 | 9.20 | $3,404.00 |
| Kuffel, C. M. | 250.00 | 0.50 | $125.00 |
| Levine, R. E. | 175.00 | 40.30 | $7,052.50 |
| Milne, T. S. | 250.00 | 1.50 | $375.00 |
| Phillips, E. D. | 370.00 | 7.40 | $2,738.00 |
| Rawlings, K. J. | 250.00 | 1.20 | $300.00 |
| Ray, G. R. | 175.00 | 165.30 | $28,927.50 |
| Rush, M. A. | 700.00 | 13.80 | $9,660.00 |
| Ryan, Thomas C. | 700.00 | 21.00 | $14,700.00 |
| Scott, F. J. | 175.00 | 172.80 | $30,240.00 |
| Slavik, K. R. | 250.00 | 125.50 | $31,375.00 |
| Smith, Isaac T. R. | 370.00 | 28.60 | $10,582.00 |
| Smith, T. J. | 700.00 | 18.70 | $13,090.00 |
| Swain, E. W. | 175.00 | 88.60 | $15,505.00 |
| Tessaro, T. D. | 175.00 | 6.30 | $1,102.50 |
| Ting, K. T. | 175.00 | 10.40 | $1,820.00 |
| Treglia, R. P. | 250.00 | 91.30 | $22,825.00 |
| Wyatt, M. A. | 175.00 | 62.00 | $10,850.00 |
| Total | | 2,339.90 | $713,485.10 |

301358626 v6    01/02/2018

### H. AIG Bankruptcy Motion

35.     During the Compensation Period, KLG represented the Debtors as conflicts

counsel in connection with a motion for relief from stay filed by American Home Assurance

Company and certain of its affiliates (collectively, "AIG").

36.     On August 16, 2017, the Debtors filed the *Motion of Debtors Pursuant to 11*

*U.S.C. §§ 363 and 364 and Fed. R. Bankr. P. 4001 and 6003 for Authority to Continue and*

*Renew their Surety Bond Program* [ECF No. 1162] (the "Surety Bond Program Motion"),

pursuant to which the Debtors sought authority to continue and renew their surety bond program.

In response, on August 22, 2017, AIG filed the *Motion of American Home Assurance Company,*

*the Insurance Company of the State of Pennsylvania, and National Union Fire Insurance*

*Company of Pittsburgh, P.A. for an Order Granting them: (I) Relief from the Automatic Stay, for*

*"Cause", Pursuant to 11 U.S.C. § 362(d) to Cancel Certain Pre-Petition Surety Bonds and*

*Waiving the Stay of Fed. R. Bankr. P. 4001(a)(3); and (II) Such Other or Further Relief as May*

*be Appropriate* [ECF No. 1211] (the "AIG Lift Stay Motion"), pursuant to which AIG sought

relief from the automatic stay to cancel certain surety bonds it issued to certain third parties to

secure and guaranty the payment and/or performance of certain obligations and contracts relating

to the Debtors' operations.  Maintaining the surety bonds at issue was necessary for the Debtors

to comply with ongoing contractual commitments and/or State laws, and the termination of these

bonds would have resulted in a major disruption to the Debtors' businesses.

37.     In connection with the Debtors' opposition to the AIG Lift Stay Motion, KLG:

(i) analyzed the surety bonds issued by AIG and the various underlying obligations/projects

bonded by AIG; (ii) analyzed AIG's legal arguments and case law in opposition thereto;

(iii) drafted a substantial brief in opposition to the AIG Lift Stay Motion; and (iv) prepared

stipulations adjourning the AIG Lift Stay Motion from time to time. KLG's services were
necessary to maintain the Debtors' negotiating position with respect to its surety bond program.
Ultimately, after substantial negotiations, AIG withdrew the AIG Lift Stay Motion and the
Surety Bond Program Motion was approved on a consensual basis pursuant to an order entered
on October 24, 2017 [ECF No. 1602].

38.    A breakdown of the time expended and associated charges for **AIG Bankruptcy
Motion** is as follows:

| Timekeeper | Rate | Hours | Amount |
|------------|------|-------|--------|
| Bell, Christopher, H. | 370.00 | 23.80 | $8,806.00 |
| Dale, Charles A. | 700.00 | 10.40 | $7,280.00 |
| Fallon, Rebecca M. | 250.00 | 2.60 | $650.00 |
| Hosking, R. W. | 700.00 | 5.30 | $3,710.00 |
| Mather, E. | 370.00 | 14.40 | $5,328.00 |
| Mawhinney, David A. | 370.00 | 1.90 | $703.00 |
| Nylen, Sven T. | 700.00 | 61.70 | $43,190.00 |
| Peterson, B. T. | 370.00 | 47.60 | $17,612.00 |
| Wright III, J. A. | 700.00 | 4.60 | $3,220.00 |
| | Total | 172.30 | $90,499.00 |

## I.  Churchill Property

39.    In late August 2017, news publications in the local Pittsburgh area mentioned a
civil enforcement and potential criminal investigation of a third-party contractor related to the
alleged improper abatement of asbestos-containing materials at a former location in or near
Churchill, Pennsylvania (the "Churchill Property").

40.    The Company is not aware of any allegation of misconduct during the time it
occupied the property. Nonetheless, several employees inquired about the Churchill Property.

41.    Counsel for the Company consulted with lawyers from KLG with extensive

16

experience with asbestos-related issues in order to respond to those inquiries.

42.    A breakdown of the time expended and associated charges for **Churchill Property** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Hosking, R. W. | 700.00 | 3.90 | $2,730.00 |
| Insco, J. B. | 700.00 | 8.30 | $5,810.00 |
| | Total | 12.20 | $8,540.00 |

### J.  South Carolina State Law Advice

43.    During the Compensation Period, KLG advised the Company regarding matters related to two nuclear power plant construction projects in South Carolina and Georgia, respectively.

44.    As of the Petition Date, WEC was party to an *Engineering, Procurement and Construction Agreement* (the "EPC Agreement") dated as of April 8, 2008, with the South Carolina Electric & Gas Company for itself and as agent for South Carolina Public Service Company LLC (the "VC Summer Owners") concerning an AP1000 nuclear plant at the Virgil C. Summer Nuclear Station near Columbia, South Carolina (the "VC Summer Project").  WEC and the VC Summer Owners entered into an *Interim Assessment Agreement* whereby WEC agreed to continue to perform under the EPC Agreement while the parties attempted to negotiate a longer-term agreement with respect to the VC Summer Project's future.

45.    On July 31, 2017, the VC Summer Owners announced publicly that they were ceasing construction of the VC Summer Project and provided WEC with a notice of termination

of the Interim Assessment Agreement.[2]  WEC employees were subsequently required to leave

the VC Summer Project site.  See *Omnibus Motion of Debtors Pursuant to 11 U.S.C. §§ 365(a)*

*and 105(a) for Entry of Order Authorizing Debtors to Reject Certain Executory Contracts*

*Related to the VC Summer Project* [Docket No. 1099].

46.     Following the VC Summer Project's cancellation, both South Carolina's House of

Representatives and Senate formed special committees to review the consequences of the VC

Summer Owners' decision to abandon the VC Summer Project and any considerations of

liability with respect to the utility owners.  One of the VC Summer Owner's, South Carolina

Electric & Gas Company, is forty-five percent (45%) owned by Santee Cooper, which is South

Carolina's publically-owned electric and water utility.

47.     KLG has monitored the House and Senate proceedings on behalf of WEC,

including attending certain hearings where appropriate, and provided the Debtors with advice

regarding the VC Summer Project.

48.     As part of this advice, KLG (with the assistance of its e-DAT group) has assisted

the Company in preserving and, where appropriate, reviewing documents and other materials

related to the VC Summer Project.  As noted above, WEC was required to leave the VC Summer

Project site earlier in these chapter 11 cases.  KLG has advised the Company and worked with

WGM to establish a plan to provide for presrvation of materials at the VC Summer Project site.

---

[2] The construction of the plant in Georgia has not been cancelled and has continued to progress.

49.    A breakdown of the time expended and associated charges for **South Carolina**

**State Law Advice** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Bittle, Emily C. | 370.00 | 144.40 | $53,428.00 |
| Bortmes, J. B. | 175.00 | 29.60 | $5,180.00 |
| Brown, C. L. | 175.00 | 24.50 | $4,287.50 |
| Cashman, Amanda R. | 370.00 | 5.90 | $2,183.00 |
| Chiccarino, J. A. | 370.00 | 32.30 | $11,951.00 |
| Coleman, J. Walker | 700.00 | 70.50 | $49,350.00 |
| Crabtree, N. | 175.00 | 22.20 | $3,885.00 |
| Diersen, Leslie A. | 250.00 | 3.60 | $900.00 |
| ESI Processors | | | $1,153.10 |
| Field, C. T. | 250.00 | 3.40 | $850.00 |
| Gafner, Katherine M. | 370.00 | 6.30 | $2,331.00 |
| Gelernter, M. A. | 370.00 | 4.50 | $1,665.00 |
| Georges, J. A. | 250.00 | 205.90 | $51,475.00 |
| Graham, W. F. | 700.00 | 4.80 | $3,360.00 |
| Gwost, S. D. | 250.00 | 2.60 | $650.00 |
| Herrett, A. R. | 250.00 | 0.80 | $200.00 |
| Hill, C. | 175.00 | 0.80 | $140.00 |
| Hubbell, M. R. | 700.00 | 12.70 | $8,890.00 |
| Jay, Jeffrey A. | 370.00 | 143.20 | $52,984.00 |
| Jones, Sean Michael | 700.00 | 0.40 | $280.00 |
| Kelch, D. I. | 370.00 | 197.20 | $72,964.00 |
| Kenney, N. J. | 175.00 | 35.10 | $6,142.50 |
| Klein, K. C. | 370.00 | 6.20 | $2,294.00 |
| Komo, Michael R. | 370.00 | 102.00 | $37,740.00 |
| Martinez, Vincent L. | 700.00 | 182.60 | $127,820.00 |
| Phillips, E. D. | 370.00 | 173.90 | $64,343.00 |
| Prichard, W. A. | 370.00 | 28.60 | $10,582.00 |
| Rawlings, K. J. | 250.00 | 1.80 | $450.00 |
| Ray, G. R. | 175.00 | 66.20 | $11,585.00 |
| Rush, M. A. | 700.00 | 20.80 | $14,560.00 |
| Ryan, Thomas C. | 700.00 | 67.90 | $47,530.00 |
| Sawyer, M. E. | 370.00 | 203.30 | $75,221.00 |
| Scott, F. J. | 175.00 | 47.10 | $8,242.50 |
| Slavik, K. R. | 250.00 | 1.30 | $325.00 |

19

| | | | |
|---|---|---|---|
| Stockey, Nicole | 370.00 | 129.80 | $48,026.00 |
| Swain, E. W. | 175.00 | 14.10 | $2,467.50 |
| Taylor, K. B. | 250.00 | 88.90 | $22,225.00 |
| Treglia, R. P. | 250.00 | 4.30 | $1,075.00 |
| Veintimilla, D. J. | 370.00 | 44.60 | $16,502.00 |
| Yammine, R. E. | 370.00 | 2.00 | $740.00 |
| | Total | 2,136.10 | $825,977.10 |

## K.  Renegotiation of License Agreements

50.    During the Compensation Period, KLG advised the Company as conflicts counsel regarding certain claims and agreements between the Debtors and CBS Corporation ("CBS").[3]

51.    The Debtors were formed as part of a 1999 transaction in which CBS sold the Debtors to entities controlled by British Nuclear Fuels Limited ("BNFL").  As part of that transaction, CBS and WEC entered into a variety of complex and, in some cases, voluminous agreements.  Despite the passage of 18 years, CBS and the Debtors (principally WEC) continue to have material obligations to each other under agreements dating back to 1999.  The remaining agreements and obligations cover a variety of areas, including pension and other employee benefits, environmental liabilities, real estate, and intellectual property.

52.    During the compensation period, KLG worked extensively with the Debtors to review their remaining agreements with CBS to diligence those remaining obligations and analyze the Debtors' legal alternatives.  This process required KLG to engage in a wide-ranging review of the agreements themselves and the material developments since 1999 between WEC and CBS.  KLG also worked with the Debtors to determine the best approach for the estates regarding CBS, including working with WGM to coordinate regarding the Debtors' ongoing

---

[3]  This matter was one of several for which KLG sought to expand its retention in these Chapter 11 Cases pursuant to the *Supplemental Application by Debtors Related to the Scope of Retention of K&L Gates LLP* [Docket No. 1418].  The Court approved the supplemental retention by order entered on October 10, 2017 [Docket No. 1499].

sales process on issues related to the CBS agreements.

53.     A breakdown of the time expended and associated charges for **Renegotiation of License Agreements** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Bicks, J. A. | 700.00 | 9.20 | $6,440.00 |
| Byer, D. J. | 700.00 | 0.70 | $490.00 |
| Dale, Charles A. | 700.00 | 0.70 | $490.00 |
| Georges, J. A. | 250.00 | 3.10 | $775.00 |
| Hefferman, S. B. | 370.00 | 13.20 | $4,884.00 |
| Prager, E. A. | 700.00 | 2.40 | $1,680.00 |
| Roozen, T. A. | 370.00 | 13.10 | $4,847.00 |
| Rush, M. A. | 700.00 | 0.80 | $560.00 |
| Ryan, Thomas C. | 700.00 | 8.30 | $5,810.00 |
| Wright III, J. A. | 700.00 | 46.90 | $32,830.00 |
| Total | | 98.40 | $58,806.00 |

## L.  Project M

54.     As referenced above regarding "Non-Adverse Corporate Matters", which contains the initial time entries with respect to this matter, KLG professionals advised the Company during the Compensation Period regarding issues of European corporate, insolvency, and tax law regarding an Italian non-debtor affiliate (the "Affiliate").  KLG was able to leverage its global platform in addressing these issues, utilizing attorneys within its Italian office with expertise in corporate and insolvency law.

55.     Specifically, KLG attorneys in the Milan office assisted WGM in negotiating and drafting the necessary amendments to the Debtors' debtor-in-possession ("DIP") financing to allow WEC to transfer DIP funds to the Affiliate to address liquidity issues.

56.     In addition, attorneys in KLG's Milan office negotiated and advised upon a

21

transaction between WEC and Toshiba pursuant to which Toshiba conveyed its equity interests

in the Affiliate to WEC.  In connection with this transaction, KLG professionals: (i) attended

meetings of the shareholders of Affiliate; (ii) drafted and negotiated the stock purchase

agreement; (iii) negotiated with Toshiba's counsel; (iv) advised on various Italian corporate law

matters; (v) provided tax advice in connection with the structuring of the transaction; and (vi)

assisted in the closing of the transaction.

57.    A breakdown of the time expended and associated charges for **Project M** is as

follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Beltrami, Maria | 370.00 | 2.40 | $888.00 |
| Campana, A. | 370.00 | 9.70 | $3,589.00 |
| Germani, S. | 370.00 | 12.80 | $4,736.00 |
| Hosking, R. W. | 700.00 | 8.00 | $5,600.00 |
| Marini, P. | 700.00 | 71.30 | $49,910.00 |
| Salvadori di Wiesenhoff, V. | 700.00 | 65.60 | $45,920.00 |
| | Total | 169.80 | $110,643.00 |

### M. DOL Claim

58.    This Special Matter arose in November 2017, after an employee filed a complaint

with the Department of Labor ("DOL") asserting retaliation claims under the Sarbanes-Oxley

Act of 2002, 18 U.S.C. § 1514A and the Energy Reorganization Act, 42 U.S.C. § 5851.  KLG

professionals reviewed the claim, interviewed witnesses, and researched the legal issues in

connection therewith.  KLG attorneys spent time on this matter reviewing relevant documents

and drafting a factual narrative for use in witness interviews.  KLG assisted the Debtors in

drafting a formal response to the complaint on December 4, 2017.  WEC expects to receive a

response from the DOL in early 2018.

59.    A breakdown of the time expended and associated charges for **DOL Claim** is as

follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Parker, A. J. | 370.00 | 78.60 | $29,082.00 |
| Pavlick, M. A. | 700.00 | 17.70 | $12,390.00 |
| Ryan, Thomas C. | 700.00 | 25.50 | $17,850.00 |
| Stockey, Nicole | 370.00 | 9.30 | $3,441.00 |
| Total | | 131.10 | $62,763.00 |

23