DRINKER BIDDLE & REATH LLP
James H. Millar
Clay J. Pierce
Brian P. Morgan
1177 Avenue of the Americas
41st Floor
New York, NY 10036-2714
Tel: (212) 248-3140 (Main)
Fax: (212) 248-3141
E-mail: James.Millar@dbr.com
    Clay.Pierce@dbr.com
    Brian.Morgan@dbr.com

*Attorneys for Whitebox Advisors, LLC,*
*Whitebox Multi-Strategy Partners, LP*
*and Whitebox Asymmetric Partners, LP*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                                   :    **Chapter 11**
                                                            :
**WESTINGHOUSE ELECTRIC COMPANY**                           :    **Case No. 17-10751 (MEW)**
**LLC,** *et al.*,                                          :
                                                            :    **(Jointly Administered)**
        **Debtors.**[1]                                     :
------------------------------------------------------------x

**STATEMENT OF SUPPLEMENTAL AUTHORITY**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2250), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster, Inc. d/b/a WECTEC Global Project Services Inc. (8572), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961). The Debtors' principal offices are located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066.

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

    A.    Legal Authority..........................................................................................................2

    B.    The Recourse Provision Was Implied in Fact. .........................................................3

    C.    The Recourse Provision Was Implied in Law. ........................................................4

CONCLUSION..................................................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brushton–Moira Cent. School Dist. v. Thomas Assoc.*,
 91 N.Y.2d 256, 262 (N.Y. 1998) ...................................................................................5

*In re Lamarre*,
 34 B.R. 264 (Bankr. D. Me. 1983) ................................................................................3

*Morse v. Tillotson & Wolcott Co..*,
 253 F. 340 (2d Cir. 1918) ..............................................................................................2

*Process America, Inc. v. Cynergy Holdings, LLC*,
 839 F.3d 125, 141 (2d Cir. 2016) ..................................................................................4

*Raydon Exploration, Inc. v. Ladd*,
 902 F.2d 1496 (10th Cir. 1990) .....................................................................................2

*Shea v. Second National Bank of Washington*,
 133 F.2d 17 (D.C. Cir. 1942) ........................................................................................2

*Titan Group, Inc. v. Anne Arundel County, Dept. of Public Works*,
 588 F. Supp. 938 (D. Md. 1984), *judgment aff'd*, 749 F.2d 32 (4th Cir. 1984) ...........2

**STATUTES, RULES & REGULATIONS**

N.Y. C.P.L.R. 5001 ..............................................................................................................4

N.Y. C.P.L.R. 5004 ..............................................................................................................4

**OTHER AUTHORITIES**

Restatement (Second) of Contracts (1981) ......................................................................3, 4

Richard A. Lord, *Williston on Contracts* § 6:15 (4th ed. 2002) ............................. 1, 2, 3, 4

Whitebox Advisors LLC, Whitebox Multi-Strategy Partners, LP and Whitebox Asymmetric Partners, LP (collectively, "Whitebox"), by and through their undersigned counsel, respectfully submit this statement of supplemental authority as directed by the Court at the July 18, 2018 evidentiary hearing (the "Hearing"), and respectfully state as follows:

## PRELIMINARY STATEMENT

The evidence adduced at the Hearing demonstrates that on January 24, 2018, Dawn Bowers, on behalf of Landstar Global Logistics, Inc., Landstar Inway, Inc. and Landstar Express America, Inc. (collectively, "Landstar"), offered to sell their unsecured claims against Westinghouse to Whitebox at a 78% purchase rate, "subject to agreement of terms and execution of documentation." DX 2. The evidence also shows that James Belardo, of Seaport Global Holdings, LLC ("Seaport"), on behalf of Whitebox, accepted Landstar's offer that same day, "subject to" execution of documentation, due diligence, and agreement of terms, including Landstar providing recourse as to the notional amount of its claims, with any necessary repayment bearing 5% interest (the "Recourse Provision"). *See* DX 3. Your Honor has asked the parties to address and provide authority with respect to the question of whether the acceptance actually constituted a counteroffer because it included the "new term" of the Recourse Provision. Whitebox respectfully submits that, notwithstanding the reference to the Recourse Provision, the acceptance resulted in a binding, enforceable Type II contract because, as one of the foremost commentators in the area of contract law instructs, including a condition in an acceptance which "would otherwise be implied in fact or in law from the offer" does not preclude the formation of a contract. Richard A. Lord, *Williston on Contracts* § 6:15 (4th ed. 2002). Because a buyer's right to recourse in the event it does not get what it paid for is both

implied in fact and implied in law, reciting the Recourse Provision out of an abundance of caution in an acceptance does not convert that acceptance into a counteroffer.

A.  **Legal Authority**

Whitebox provides the following authority relevant to the Court's inquiry:

- Richard A. Lord, *Williston on Contracts* § 6:15 (4th ed. 2002), "Apparent conditions which do not qualify offer," provides, in pertinent part:

  "Occasionally an offeree, out of ignorance or an abundance of caution, will insert a condition in an acceptance which merely expresses what would otherwise be implied in fact or in law from the offer. Because such a condition involves no qualification of the offeree's assent to the terms of the offer, it is not in truth a conditional acceptance, and it does not preclude the formation of a contract. Among the most common examples of this type of apparently conditional acceptance is the offer to sell land which is accepted subject to the condition that the title is good, for unless such an offer expressly specifies that the offeree must take its chances with respect to the validity of the title, the offer is generally understood as meaning that good title will be conveyed. Likewise, where custom or the parties' understanding makes clear that an abstract of title is to be provided by the offeror, a request or requirement by the offeree that the abstract be sent and otherwise making clear that an acceptance will follow examination of the abstract will often operate as an acceptance. Similarly, a requirement imposed by the offeree that is in conformity with a trade usage will not invalidate an acceptance."

- *Morse v. Tillotson & Wolcott Co.*, 253 F. 340 (2d Cir. 1918) (holding that an offer to sell implies that title is valid, and stating that "it hardly seems that the words 'subject to the title being found good' import any new term into the acceptance, so as to prevent a meeting of the minds upon the offer as made").

- *Raydon Exploration, Inc. v. Ladd*, 902 F.2d 1496, 1500 (10th Cir. 1990) (holding that "an acceptance must receive a reasonable construction" and that "the mere addition of a collateral or immaterial matters will not prevent the formation of a contract").

- *Shea v. Second National Bank of Washington*, 133 F.2d 17, 18 (D.C. Cir. 1942) ("The general rule is that an acceptance is not inoperative as such merely because it imposes a condition, if the requirement of the condition would be implied from the offer, though not expressed therein.").

- *Titan Group, Inc. v. Anne Arundel County, Dept. of Public Works*, 588 F. Supp. 938 (D. Md. 1984), *judgment aff'd*, 749 F.2d 32 (4th Cir. 1984) (where defendant offered to arbitrate and plaintiff responded that it would arbitrate subject to the parties conducting full discovery and the arbitration being held in a neutral location, the plaintiff's response

constituted an acceptance, not a counteroffer, because the location provision was implied "in law or fact").

- *In re Lamarre*, 34 B.R. 264, 266 (Bankr. D. Me. 1983) (conditioning debtor's acceptance of offer to buy property of the estate on bankruptcy court approval did not prevent the formation of an unconditional contract because such a term is implied in law).

B.   **The Recourse Provision Was Implied in Fact.**

A contract may be formed notwithstanding the offeree's insertion of a condition or additional term in an acceptance if the condition or term "merely expresses what would otherwise be implied in fact" from the offer. Richard A. Lord, *Williston on Contracts* § 6:15 (4th ed. 2002). Here, Landstar's offer expressly contemplated the existence of terms in addition to amount and price that the parties would have to negotiate. *See* DX 2 ("This offer shall be subject to *agreement of terms* and execution of documentation by both Buyer and Landstar.") (emphasis added). The fact that Seaport raised or highlighted certain terms for negotiation, including the Recourse Provision, as part of the acceptance is not inconsistent with the parties' reaching a binding agreement to negotiate in good faith toward final documentation. Indeed, they necessarily understood that more "agreement of terms" was to come and would be the subject of final documentation. Moreover, Ms. Bowers testified at the hearing that she believed the parties had "an agreement on price" following the acceptance on January 24, 2018, and then she turned the matter over to Landstar's legal department. Subsequent correspondence from Landstar's Assistant General Counsel confirmed that Landstar was not seeking to "reinvent the wheel," but merely "memorialize it in paper." DX 10.

Williston also states that "where custom or the parties' understanding makes clear that an abstract of title is to be provided by the offeror, a request or requirement by the offeree that the abstract be sent and otherwise making clear that an acceptance will follow examination of the

- 3 -

abstract will often operate as an acceptance." Richard A. Lord, *Williston on Contracts* § 6:15 (4th ed. 2002). The Restatement (Second) of Contracts provides the following illustration:

> A makes a written offer to B to sell him Blackacre. By usage the offer is understood as promising a marketable title. B replies, "I accept your offer if you can convey me a marketable title." There is a contract.

Restatement (Second) of Contracts § 59 (1981). In this case, the contract in question was for the sale of bankruptcy claims. Landstar cannot plausibly claim that an additional term was included by Mr. Belardo when Landstar knew it would have to provide a representation as to the size of the claims, or repay some portion of the sale price to Whitebox if the notional value of the claims turned out to be less than what was represented.

Similarly, "a requirement imposed by the offeree that is in conformity with a trade usage will not invalidate an acceptance." Richard A. Lord, *Williston on Contracts* § 6:15 (4th ed. 2002). It is the uncontroverted testimony of Peter Lupoff, Whitebox's expert witness, and James Belardo, Seaport's representative, that it is standard practice in the bankruptcy claims trading industry to include terms similar to the Recourse Provision. Thus, for that reason as well, the inclusion of the Recourse Provision by Mr. Belardo does not transform an acceptance into a counteroffer.

Thus, because the Recourse Provision was consistent with the parties' understanding that there would be additional terms to negotiate, self-evident given the nature of the transaction, and customary in the bankruptcy claims trading industry, it constitutes an "implied in fact" condition that does not preclude the formation of a contract.

### C.    The Recourse Provision Was Implied in Law.

The offeree's inclusion of a condition otherwise "implied in law" in an acceptance does not render it a counteroffer, or otherwise prevent the formation of a contract. Richard A. Lord, *Williston on Contracts* § 6:15 (4th ed. 2002). At its essence, the Recourse Provision simply

- 4 -

provides that if the notional value of Landstar's claims is less than Landstar represents, Whitebox will receive damages plus interest. It is black letter law that if a seller delivers to the buyer something other than what it sold, the buyer is entitled to damages. *See, e.g., Process America, Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016) (citations omitted). Further, under New York law, the statutory interest rate of 9% per annum for breach of contract claims actually exceeds the rate proposed by the Recourse Provision. *See* N.Y. C.P.L.R. 5001, 5004; *see also Brushton–Moira Cent. School Dist. v. Thomas Assoc.*, 91 N.Y.2d 256, 262 (N.Y. 1998). Therefore, because the Recourse Provision merely expresses the applicable law for contracts of this nature, in general terms, its inclusion did not transform the acceptance into a counteroffer. Of course, consistent with their Type II agreement, the parties were free (and in fact obligated) to negotiate this term.

**CONCLUSION**

For the foregoing reasons, Whitebox respectfully requests that the Court (a) find that the parties became bound, as of January 24, 2018, to negotiate and work in good faith toward the execution of documentation memorializing the sale of Landstar's proofs of claim to Whitebox, and (b) grant to Whitebox such other and further relief deemed just and proper.

Dated: New York, New York  
June 26, 2018

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By:   /s/ James H. Millar  
James H. Millar  
Clay J. Pierce  
Brian P. Morgan  
1177 Avenue of the Americas  
41st Floor  
New York, NY 10036-2714  
Tel: (212) 248-3140 (Main)  
Fax: (212) 248-3141  
E-mail: James.Millar@dbr.com  
           Clay.Pierce@dbr.com  
           Brian.Morgan@dbr.com

*Attorneys for Whitebox Advisors LLC, Whitebox Multi-Strategy Partners, LP and Whitebox Asymmetric Partners, LP*