## Exhibit E

**Narrative Description of Services Provided**

## <u>NARRATIVE SUMMARY OF SERVICES RENDERED</u>

All of the professional services that K&L Gates LLP ("<u>KLG</u>") rendered as Special Counsel to the Debtors during the Compensation Period are segregated by matter pursuant to Local and U.S. Trustee Guidelines. As described in the Application,[1] KLG was engaged as Special Counsel to continue representing the Debtors in a number of ongoing Special Matters. Although in the context of describing some of the Special Matters, the Narratives describe events that occurred prior to the Petition Date, the fees sought in this Application correspond exclusively to post-petition work. A description of services performed appears below, by each matter.

### A.  E.U. Competition Counseling

1.      Among other services provided in this category during the Compensation Period, KLG assisted Westinghouse Electric Company, LLC ("<u>WEC</u>" or the "<u>Company</u>") in researching and responding to requests for information ("<u>RFIs</u>") from the European Commission on Competition, in connection with the Commission's review of a proposed transaction between The EDF Group (a French nuclear electric power generation company) and Areva (a French multinational nuclear power and renewable energy group), pursuant to which the former acquired the latter's nuclear reactor business. WEC supplies engineering support and fuel assemblies to EDF and was disclosed as an interested party by the merging companies. KLG lawyers from its London and Brussels office reviewed the RFIs and relevant underlying technical data to provide the Company legal advice on how to appropriately respond to the government inquiries.

2.      A breakdown of the time expended and associated charges for **E.U. Competition**

---

[1] Capitalized terms not defined in this Exhibit shall have the meanings ascribed to them in the Application.

**Counseling** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Baylis, N. A. | 700.00 | 0.90 | $630.00 |
| Carloni, Francesco | 700.00 | 16.90 | $11,830.00 |
| Hristova, Katrin | 215.00 | 3.50 | $752.50 |
| Kocon, Michal | 370.00 | 5.70 | $2,109.00 |
| McLaughlin, Benjamin C. | 295.00 | 2.50 | $737.50 |
| Megregian, Scott S. | 700.00 | 30.40 | $21,280.00 |
| Romata, Zanda | 370.00 | 93.70 | $34,669.00 |
| Siakka, Tatiana | 370.00 | 5.50 | $2,035.00 |
| | | 159.10 | $74,043.00 |

### B.  Subpoena Response

3.      KLG billed time in this Special Matter representing the Company in an investigation initiated by the staff of the Division of Enforcement of the U.S. Securities and Exchange Commission ("SEC" or the "Commission").  In the spring of 2016, the SEC initiated *In re Toshiba Corp.* (FL-3987) (referred to herein as the "SEC Investigation") and issued an administrative subpoena to WEC's ultimate parent company, Toshiba Corporation ("Toshiba").  Toshiba and its related domestic entities, including WEC, retained the law firm of White & Case LLP to represent them in the SEC Investigation.  KLG was also engaged by WEC initially to provide litigation support because of KLG's institutional knowledge of WEC and its operations and also because of the extensive experience of KLG's e-Discovery Analysis and Technology ("e-DAT") practice group with WEC's document management systems and related policies and procedures.  In assisting the Company in responding to the SEC Investigation, KLG leveraged the firm's extensive SEC experience to efficiently provide the Company legal advice on the relevant complex and novel issues, which required extensive legal research and analysis.

4.      The Company understood that the initial focus of the SEC Investigation related to the findings in a July 2015 report prepared by an Independent Investigative Committee convened by Toshiba to investigate various past accounting irregularities (the "IIC Report"), including, among other subsidiaries, treatment at the Toshiba level of percent-of-completion accounting for WEC's AP1000 projects.

5.      On March 10, 2017, the Company received a subpoena from the SEC (the "WEC Subpoena") seeking documents related to, among other things, various aspects of the Company's accounting and financial reporting, including, but not limited to, WEC's financial reporting on its AP1000 projects and attendant goodwill impairment testing from 2010 through the present. Upon receipt of the WEC Subpoena, the Company requested KLG to expand its engagement with respect to the SEC Investigation to become directly involved with the SEC staff as co-counsel with White & Case.

6.      On March 31, 2017 (post-petition), KLG finalized an agreement with the SEC staff to narrow the initial scope of the WEC Subpoena. This allowed WEC to provide a series of targeted document productions and factual narrative responses on certain issues that were of interest to the SEC staff, thereby, among other things, reducing the burden on the Debtors to comply the very broad WEC Subpoena as served.

7.      KLG used its e-DAT practice group to collect, review and produce the targeted productions, which included collecting, organizing and reviewing all of WEC's principal financial records dating back to 2010. KLG's ability to obtain an initial narrowing agreement with the SEC staff on the scope of the WEC Subpoena, and utilize its experienced e-DAT practice group resulted in significant cost savings to the Debtors, as well as demonstrating WEC's desire to cooperate with the SEC Investigation.

4

8.      On June 2, 2017, the SEC served a second subpoena on the Company (the "Second WEC Subpoena") (together with the WEC Subpoena, the "WEC Subpoenas") reflecting narrower document requests following up on the narrative responses prepared by KLG.  KLG and its e-DAT group initiated additional document collection, including specifically the collection of custodian e-mails identified in the WEC Second Subpoena.  KLG senior associates familiar with the matter created and tested search terms in consultation with the e-DAT practice group, pursuant to the scope of the WEC Second Subpoena.  After the search terms were applied to the data collected, a team of approximately eight associates were trained regarding the responsiveness and privilege issues related to the review set and completed a review of approximately 7,500 documents over the course of approximately three weeks.  Thereafter, KLG senior associates performed a quality control review of those documents identified as responsive prior to production to the SEC.  KLG produced the responsive documents to the SEC on July 21, 2017.

9.      In addition, KLG partners and associates assisted the Company in preparing three narrative responses to SEC requests, which provided detailed discussions on the issues surrounding the Company's financial accounting of the estimate to complete the respective US AP1000 projects (defined below).  The preparation of these narrative response required additional searches and document review to support the underlying relevant emails and presentations.  Further, KLG interviewed current and former WEC employees and routinely consulted on technical issues with members of the WEC Finance team.  Because of the production of these narrative responses, the SEC agreed to forego extensive document collection and production as contemplated by the WEC Subpoenas, resulting in initial cost savings for the Debtors.

10.     In addition to serving the WEC Subpoenas, the SEC also served subpoenas on at least six third-party consultants that WEC has retained over the course of recent years to support its various business operations and legal function.  KLG spent significant time conferring with counsel for the various third-party subpoena recipients on the scope and nature of the respective responses and reviewing third-party documents prior to production for responsiveness and privilege.

11.     In October 2017, the SEC indicated that it was prepared to move forward with testimony of certain current and former Company employees and noticed such testimony to start that the end of November 2017.  KLG created materials for the preparation of three witnesses to testify, which required, among other things, extensive document review with the assistance of KLG's e-DAT attorneys and several associates.

12.     Simultaneously with the witness preparation, KLG prepared for a November 2017 meeting with the SEC to discuss the investigation and began negotiating a tolling agreement that would reschedule the witness depositions.  In anticipation of this meeting, KLG prepared a comprehensive presentation for the SEC summarizing in detail the relevant facts and applicable legal theories, which the SEC has expressed an interest during the course of that investigation. That presentation involved an in-person meeting in Miami, Florida and extensive coordination with Toshiba's counsel.

13.     In late 2017, KLG assisted WEC in negotiating an agreement with the SEC to postpone testimony by WEC witnesses until after the expected confirmation of the Plan in these cases.  Following confirmation of the Plan in March 2018, KLG advised WEC in preparing for testimony to the SEC by various WEC witnesses. KLG also assisted WEC in negotiations with the SEC to conclude its investigation.

6

14.    The SEC ultimately sent a declination letter regarding the investigation in June 2018 and withdrew its proof of claim against WEC.

15.    A breakdown of the time expended and associated charges for **Subpoena Response** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Bateman, Meredith D. M. | 370.00 | 25.40 | $9,398.00 |
| Baum, Els S. | 370.00 | 83.40 | $30,858.00 |
| Bell, Christopher, H. | 370.00 | 27.80 | $10,286.00 |
| Bronder, Sarah A. | 370.00 | 84.40 | $31,228.00 |
| Burdette, Allison L. | 370.00 | 2.20 | $814.00 |
| Cashman, Amanda R. | 370.00 | 315.10 | $116,587.00 |
| Chiccarino, J. A. | 370.00 | 29.10 | $10,767.00 |
| Czypinski, S. M. | 370.00 | 106.70 | $39,479.00 |
| DeJarnett, Simone N. | 370.00 | 8.00 | $2,960.00 |
| Diersen, Leslie A. | 200.00 | 1.20 | $240.00 |
| Diersen, Leslie A. | 250.00 | 49.80 | $12,450.00 |
| ESI Processors | | | $25,081.27 |
| Field, C. T. | 250.00 | 9.20 | $2,300.00 |
| Flanigan, K. M. | 370.00 | 98.00 | $36,260.00 |
| Flinn, M. E. | 370.00 | 12.70 | $4,699.00 |
| Gafner, Katherine M. | 370.00 | 64.60 | $23,902.00 |
| Gehm, Lacey A. | 370.00 | 8.90 | $3,293.00 |
| Georges, J. A. | 250.00 | 41.60 | $10,400.00 |
| Glover, E. J. | 370.00 | 50.80 | $18,796.00 |
| Gracey, T. M. | 250.00 | 3.80 | $950.00 |
| Hastings, Shanda N. | 700.00 | 19.80 | $13,860.00 |
| Hosking, R. W. | 700.00 | 3.40 | $2,380.00 |
| Jay, Jeffrey A. | 370.00 | 248.70 | $92,019.00 |
| Kelch, David | 370.00 | 7.10 | $2,627.00 |
| Kenney, N. J. | 175.00 | 17.00 | $2,975.00 |
| Kephart, J. A. | 370.00 | 59.80 | $22,126.00 |
| Komo, Michael R. | 370.00 | 60.00 | $22,200.00 |
| Kornobis, T. L. | 370.00 | 139.20 | $51,504.00 |
| Kuffel, C. M. | 250.00 | 0.70 | $175.00 |
| Lambrakopoulos, S. E. | 700.00 | 581.00 | $406,700.00 |
| Manosa, Robert W. | 370.00 | 113.80 | $42,106.00 |
| Martinez, Vincent L. | 700.00 | 912.00 | $638,400.00 |

7

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| McCullough, A. E. | 370.00 | 103.20 | $38,184.00 |
| Morrison, Jake D. | 370.00 | 7.00 | $2,590.00 |
| Nichols, D. M. Jr. | 370.00 | 127.80 | $47,286.00 |
| Paine, Adam | 370.00 | 17.60 | $6,512.00 |
| Phillips, E. D. | 370.00 | 67.00 | $24,790 |
| Prichard, W. A. | 370.00 | 28.50 | $10,545.00 |
| Prichard, W. A. | 370.00 | 1.30 | $481.00 |
| Ray, G. R. | 175.00 | 20.60 | $3,605.00 |
| Reger, Samuel P. | 370.00 | 93.90 | $34,743.00 |
| Rinaldi, Emilia | 370.00 | 25.70 | $9,509.00 |
| Rush, M. A. | 700.00 | 41.30 | $28,910.00 |
| Ryan, Thomas C. | 700.00 | 407.10 | $284,970.00 |
| Scott, F. J. | 175.00 | 9.00 | $1,575.00 |
| Slavik, K. R. | 250.00 | 8.80 | $2,200.00 |
| Smith, Isaac T. R. | 370.00 | 51.30 | $18,981.00 |
| Stecko, D. L. | 250.00 | 0.60 | $150.00 |
| Stockey, Nicole | 370.00 | 73.50 | $27,195.00 |
| Tausend, R. M. | 700.00 | 0.20 | $140.00 |
| Thibadeau, Mary L. | 370.00 | 45.20 | $16,724.00 |
| Treglia, R. P. | 250.00 | 8.40 | $2,100.00 |
| Veintimilla, D. J. | 370.00 | 98.20 | $36,334.00 |
| Waddell, Justin | 370.00 | 55.90 | $20,683.00 |
| Wright III, J. A. | 700.00 | 1.10 | $770.00 |
| Yammine, R. E. | 370.00 | 16.10 | $5,957.00 |
| | | 4494.50 | $2,312,754.27 |

## C.  D&O Insurance Matters

16.    K&L incurred time in this matter assisting the Company in reviewing issues arising under its directors & officers insurance program.

17.    A breakdown of the time expended and associated charges for **D&O Insurance Matters** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Reiter, T.M. | 700.00 | 6.40 | $4,480.00 |
| Total | | 6.40 | $4,480.00 |

8

### D.  Moore Employment Claim

18.     K&L incurred time in this matter responding to an employment-related claim against the Debtors, which included responding to a settlement offer.

19.     A breakdown of the time expended and associated charges for **Moore Employment Claim** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Burris, E.K. | 250.00 | 0.50 | $125.00 |
| Coleman, J.W. | 700.00 | 4.60 | $3,220.00 |
| Sawyer, M.E. | 370.00 | 1.00 | $370.00 |
| Total | | 6.10 | $3,715.00 |

### E.  Non-Adverse Compliance and Insurance Advice

20.     K&L incurred time in this matter responding to discrete general corporate matters, including (i) a request from WEC's outside auditors that required review and consideration of a number of significant sensitive engagements undertaken in the last fiscal year, (ii) providing advice regarding a discrete legal issue arising under California consumer protection law, and (iii) advising on an immigration-related matter.

21.     A breakdown of the time expended and associated charges for **Non-Adverse Compliance and Insurance Advice** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Hosking, R. W. | 700.00 | 71.0 | $49,700.00 |
| Sweeney, P. W. | 700.00 | 0.90 | $630.00 |
| Total | | 71.90 | $50,330.00 |

302438436 v2                                                            09/13/2018

### F.  Internal Investigation

22.     KLG incurred billed time in this matter conducting an independent investigation related to the facts surrounding the Company's financial accounting of the estimate to complete ("ETC") the respective US AP1000 projects, undertaken in accordance with the US Generally Accepted Accounting Principles ("GAAP"), following the Company's December 31, 2015 acquisition of Stone & Webster, Inc. ("S&W"), the construction division of Chicago Bridge & Iron Company ("CB&I") (the "S&W Acquisition").

23.     Pursuant to applicable GAAP standards, WEC had a twelve-month period to conduct a fair value assessment of the assets acquired in the S&W Acquisition, which primarily consisted of the two construction contracts that were CB&I's responsibility as part of a consortium with WEC to build four domestic AP1000 nuclear reactors, two in South Carolina for SCANA Corporation and two in Georgia for Georgia Power Company c/o Southern Nuclear Operating Company (collectively, the "US AP1000 projects").

24.     In December 2016, WEC reported to Toshiba that the ETC variance for the US AP1000 projects exceeded estimates by billions of dollars.  The Toshiba Audit Committee retained the Japanese law firm of Nishimura & Asahi ("N&A") to conduct an independent investigation into the facts surrounding the ETC variance.

25.     WEC retained KLG on December 29, 2016, to assist N&A in conducting the investigation into WEC's calculation of the ETCs for its US AP1000 projects following the S&W Acquisition.  Specifically, KLG was retained to develop and report to WEC, the Toshiba Audit Committee, and N&A the factual circumstances surrounding WEC's identification of the need to substantially increase its ETCs, particularly including facts evidencing when WEC first learned of the magnitude of the potential cost of the variance, such that the Toshiba Audit

Committee could conclude whether the increase was reported in the appropriate financial quarter ("Scope 1 Investigation").

26.    On January 6, 2017, WEC received a formal allegation of retaliation from an employee ("Claimant") involved in the ETC process.  Claimant alleged that WEC senior management removed Claimant from Claimant's position on one of the US AP1000 projects in retaliation for Claimant's objections during WEC's December 2016 ETC review meetings to certain ETC variance reductions proposed by WEC and Toshiba senior management.  Thereafter, in coordination with the Toshiba Audit Committee, WEC expanded the scope of KLG's engagement to include an investigation into Claimant's allegations (the "Scope 2 Investigation").

27.    In February 2017, and based on the facts developed during the Scope 2 Investigation, WEC further expanded the scope of the KLG engagement (the "Scope 3 Investigation") to conduct a "tone at the top" investigation regarding, among other things, whether "tone at the top" deficiencies or issues exist within WEC more broadly than related to the calculation of the ETC variance at-issue in the Scope 2 Investigation.  Specifically, during the Scope 3 Investigation, KLG focused on ethical, cultural, or compliance issues related to WEC's financial reporting and internal controls.  With WEC's approval, KLG and WEC jointly engaged Ankura Consulting Group ("Ankura") to assist KLG in the Scope 3 Investigation by, among other things, provide forensic and technical accounting support (collectively with KLG, the "Team").

28.    As of the Petition Date, KLG was in the process of completing its Scope 3 Investigation.  The Team continued to interview WEC and third-party personnel familiar with the issues under investigation.  The KLG Japanese review team also continued to review documents.  The Team also collected forensic cell phone data from certain identified custodians

09/13/2018

and reviewed the text message history for communications relevant to the various scopes of the
Investigation.

29.     Further, during the course of the Scope 3 Investigation, the Team became aware
of technical accounting issues in March 2017 that warranted further investigation into issues
related to its Scope 1 Investigation.  The Team, working with WEC, developed additional
procedures to examine certain issues related to the timing of WEC's recognition of the
accounting impacts of the ETC variance on the US AP1000 projects ("Scope 1A Investigation"),
specifically relating to the financial reporting for the S&W Acquisition.  A significant portion of
this highly technical investigation occurred around or after the Petition Date.  The various scopes
are collectively referred to herein as the "Investigations."  As part of the Investigations, KLG
coordinated closely with WEC, the Toshiba Audit Committee, and N&A, and communicated
regularly with WEC's outside auditing firm, PricewaterhouseCoopers LLP ("PwC").

30.     During the course of the Investigations, KLG conducted more than 50 interviews.
Supported by its e-DAT practice group, KLG collected approximately 2.7 terabytes of electronic
data from more than 35 custodians, and a team of approximately fifteen lawyers, representing a
combination of e-DAT reviewers and associates, reviewed more than 100,000 emails and
attachments that were responsive to one or more of the 70 search terms used to focus the
investigations.  KLG was able to leverage its international platform resulting in cost savings to
WEC by internally conducting a foreign-language review of Japanese and Italian-language
documents.

31.     Throughout April and May 2017, KLG associates conducted additional research
related to various legal issues that arose during the Investigations.  The Team also continued to
coordinate with PwC regarding the status of the Investigations, and specifically, responding to

follow-up questions as to the Scope 2, Scope 3 and Scope 1A Investigations.  Significantly, the

Team conducted additional, limited document review and interviews of WEC personnel related

to a specific claims accounting issue from a prior fiscal year beginning April and continuing

through June 2017.  Because the issue related to a date range outside of the initial document

collection, KLG and WEC coordinated the collection and review of additional documents for the

relevant prior time periods.  The Team also conducted additional interviews of both current and

former WEC personnel who had knowledge regarding these issues.

32.    In June 2017, KLG prepared a formal oral report to the WEC Audit Committee

regarding the status of the Investigations, providing substantive updates on the status and

findings of its Investigation.  Two KLG partners and three associates dedicated significant hours

to organizing and analyzing the facts gathered during the course of the investigation in

preparation for the report to the WEC Audit Committee.

33.    In August and September 2017, KLG coordinated with PricewaterhouseCoopers

LLP in implementing quality control procedures which would allow the outside auditor to rely

upon KLG's investigation.  As part of its quality control procedures, the external auditor

requested KLG conduct additional review of a statistically-significant sample of several

thousands of emails.

34.    KLG completed the Scope 1A and Scope 3 Investigation work on October 6,

2017.  KLG's investigation assisted the Company in obtaining an audited balance sheet from its

external auditors in October.

35.    After completing the internal investigation, KLG coordinated with the Company's

primary bankruptcy counsel, Weil, Gotshal & Manges LLP ("WGM"), regarding the

investigations in general and as well as specific documents and other evidence useful to WGM

and the Company in determining the Company's best strategies in the bankruptcy.  KLG also

spent significant time coordinating with the Creditors' Committee regarding the investigations.

36.    A breakdown of the time expended and associated charges for **Internal**

**Investigation** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Bateman, Meredith D. M. | 370.00 | 17.20 | $6,364.00 |
| Baum, Els S. | 370.00 | 41.30 | $15,281.00 |
| Bell, Christopher, H. | 370.00 | 19.50 | $7,215.00 |
| Bittle, Emily C. | 370.00 | 7.80 | $2,886.00 |
| Bronder,Sarah A. | 370.00 | 202.70 | $74,999.00 |
| Burdette, Allison L. | 370.00 | 3.90 | $1,443.00 |
| Cashman, Amanda R. | 370.00 | 327.70 | $121,249.00 |
| Chiccarino, J. A. | 370.00 | 20.30 | $7,511.00 |
| Czypinski, S. M. | 370.00 | 7.60 | $2,812.00 |
| Diersen, Leslie A. | 250.00 | 51.60 | $12,900.00 |
| ESI Processors | | | $7,240.66 |
| Fogg, A. L. (Allison Burdette) | 370.00 | 7.60 | $2,812.00 |
| Gafner, Katherine M. | 370.00 | 27.80 | $10,286.00 |
| Georges, J. A. | 250.00 | 16.00 | $4,000.00 |
| Gracey, T. M. | 250.00 | 3.30 | $825.00 |
| Gwost, S. D. | 250.00 | 18.40 | $4,600.00 |
| Hastings, Shanda N. | 700.00 | 12.90 | $9,030.00 |
| Hosking, R. W. | 700.00 | 5.90 | $4,130.00 |
| Ioki, S. | 370.00 | 3.30 | $1,221.00 |
| Jay, Jeffrey A. | 370.00 | 62.60 | $23,162.00 |
| Kephart, J. A. | 370.00 | 32.50 | $12,025.00 |
| Komo, Michael R. | 370.00 | 18.40 | $6,808.00 |
| Kuffel, C. M. | 250.00 | 0.10 | $25.00 |
| Lacy, Stefanie M. | 370.00 | 6.30 | $2,331.00 |
| Lambrakopoulos, S. E. | 700.00 | 3.20 | $2,240.00 |
| Lanpher, Lawrence C. | 700.00 | 1.60 | $1,120.00 |
| Manosa, Robert W. | 370.00 | 15.30 | $5,661.00 |
| Martinez, Vincent L. | 700.00 | 19.80 | $13,860.00 |
| Miller, D. R. | 700.00 | 20.90 | $14,630.00 |
| Milne, T. S. | 250.00 | 1.60 | $400.00 |
| Nemoto, Ayuko | 370.00 | 2.80 | $1,036.00 |
| Phillips, E. D. | 370.00 | 20.10 | $7,437.00 |

14

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Ream, A. K. | 370.00 | 3.40 | $1,258.00 |
| Reger, Samuel P. | 370.00 | 116.90 | $43,253.00 |
| Rush, M. A. | 700.00 | 157.60 | $110,320.00 |
| Ryan, Thomas C. | 700.00 | 820.90 | $574,630.00 |
| Sako, Yuki | 370.00 | 25.90 | $9,583.00 |
| Saulnier, B. F. | 700.00 | 27.60 | $19,320.00 |
| Slavik, K. R. | 250.00 | 3.90 | $975.00 |
| Smith, Isaac T. R. | 370.00 | 23.30 | $9,314.00 |
| Smith, T. J. | 700.00 | 1.40 | $980.00 |
| Stockey, Nicole | 370.00 | 18.00 | $6,660.00 |
| Treglia, R. P. | 250.00 | 24.10 | $6,025.00 |
| Wada, N. | 370.00 | 1.00 | $370.00 |
| Waddell, Justin | 370.00 | 27.40 | $10,138.00 |
| Yamahara, Eiji | 700.00 | 2.90 | $2,030.00 |
| | | 2254.30 | $1,182,395.66 |

### G.  T&E Audit Investigation

37.     This matter involved a compliance-related investigation following an internal audit that identified certain irregularities at one of WEC's subsidiaries related to management's use and approval primarily of travel and entertainment expenses ("T&E expenses").  KLG conducted an in-depth review of select T&E expenses followed up with targeted on-site, in-person interviews.  KLG provided WEC's internal audit staff its investigative findings as well as provide recommendations for WEC to improve policies and procedures related to T&E expenses on a going forward basis.

38.     A breakdown of the time expended and associated charges for **T&E Audit Investigation** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Beer, Caitlin P. | 370.00 | 2.10 | $777.00 |
| Diersen, Leslie A. | 200.00 | 0.30 | $60.00 |
| Georges, J. A. | 250.00 | 0.30 | $75.00 |

15

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Komo, Michael R. | 370.00 | 114.30 | $42,291.00 |
| Semins, W. D. | 700.00 | 80.90 | $56,630.00 |
| Stockey, Nicole | 370.00 | 216.20 | $79,994.00 |
| | Total | 414.10 | $179,827.00 |

### H.  Non-Adverse Corporate Matters

39.     During the Compensation Period, KLG incurred time (i) drafting, revising, and filing the retention application to serve as Special Counsel for the Debtors, (ii) drafting, revising, and filing its First, Second, and Third Interim Fee Applications, and this Application, (iii) preparing Monthly Statements in accordance with the Interim Compensation Order, (iv) developing budgets and staffing plans, (v) conferring with counsel to the United States Trustee on its Interim Fee Applications, and (vi) summarizing significant developments in the bankruptcy case for the non-bankruptcy attorneys handling the other Special Matters.

40.     KLG also spent a significant amount of time preparing and filing Monthly Statements in accordance with the Interim Compensation Order.  KLG's bankruptcy professionals were engaged during the Compensation Period for the limited purpose of the firm's retention, requests for compensation and reimbursement, and monitoring the progress of the Chapter 11 Cases to provide KLG's nonbankruptcy lawyers updates on case developments.

41.     In addition to retention and fee application work in these Chapter 11 Cases, KLG professionals billed time in this category (i) analyzing (at the request of lead bankruptcy counsel) the enforceability of indemnity agreements related to the Debtors' cash pooling arrangements and the rights of the Debtors to reject a sublease to real property under Pennsylvania law and remove the sub-lessee, (ii) preparing a formal response to an audit inquiry by the Debtors' accountants, (iii) researching and preparing memoranda discussing issues of European corporate, insolvency, and tax law with respect to an Italian non-debtor affiliate that was experiencing

liquidity issues (this matter is discussed further at "Project M", below) (iv) responding to an

employment law issue arising under Pennsylvania law, and (v) opining on choice of law

provisions in non-disclosure agreements.

42.    A breakdown of the time expended and associated charges for **Non-Adverse**

**Corporate Matters** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Acre, J. | 700.00 | 0.30 | $210.00 |
| Beltrami, Maria | 370.00 | 5.40 | $1,998.00 |
| Campana, A. | 370.00 | 22.80 | $8,436.00 |
| Carloni, Francesco | 700.00 | 0.40 | $280.00 |
| Dale, Charles A. | 700.00 | 2.70 | $1,890.00 |
| Fallon, Rebecca M. | 250.00 | 376.20 | $94,050.00 |
| Garraux, Lauren J. | 370.00 | 39.50 | $14,615.00 |
| Georges, J. A. | 250.00 | 2.60 | $650.00 |
| Germani, S. | 370.00 | 21.70 | $8,029.00 |
| Honeywell, R. T. | 700.00 | 6.10 | $4,270.00 |
| Hosking, R. W. | 700.00 | 25.00 | $17,500.00 |
| Jones, Sean Michael | 700.00 | 2.00 | $1,400.00 |
| Lambrakopoulos, S. E. | 700.00 | 0.50 | $350.00 |
| Lanpher, Lawrence C. | 700.00 | 0.50 | $350.00 |
| Marini, P. | 700.00 | 21.70 | $15,190.00 |
| Martinez, Vincent L. | 700.00 | 0.10 | $70.00 |
| Mawhinney, David A. | 370.00 | 114.90 | $42,513.00 |
| Meyer, D. | 250.00 | 0.90 | $225.00 |
| Morrison, Jake D. | 370.00 | 10.90 | $4,033.00 |
| Nylen, Sven T. | 700.00 | 6.00 | $4,200.00 |
| Paine, Adam | 370.00 | 151.10 | $55,907.00 |
| Parker, A. J. | 370.00 | 12.00 | $4,440.00 |
| Pavlick, M. A. | 700.00 | 4.30 | $3,010.00 |
| Phillips, E. D. | 370.00 | 27.50 | $10,175.00 |
| Reiter, T. M. | 700.00 | 19.20 | $13,440.00 |
| Rush, M. A. | 700.00 | 1.10 | $770.00 |
| Ryan, Thomas C. | 700.00 | 92.00 | $64,400.00 |
| Salvadori di Wiesenhoff, V. | 700.00 | 9.30 | $6,510.00 |
| Stockey, Nicole | 370.00 | 3.30 | $1,221.00 |
| Surman, R. C. | 370.00 | 3.20 | $1,184.00 |

302438436 v2

09/13/2018

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Thibadeau, Mary L. | 370.00 | 3.00 | $1,110.00 |
| Wright III, J. A. | 700.00 | 57.40 | $40,180.00 |
| | | 1043.60 | $422,606.00 |

## I.  DOJ Third Party Subpoena

43.     This new matter arose in June 2017, subsequent to KLG's retention in these Chapter 11 Cases.  WEC received a third-party subpoena issued by the United States Court of Federal Claims in the matter *Alabama Power Company and Georgia Power Company v. United States*, Nos. 14-167; 14-168, dated May 23, 2017 (the "Subpoena").  The Subpoena requested documentation related to the use of a nozzleless handling tool at two electric generating plants owned by the plaintiffs.  KLG coordinated with the U.S. Department of Justice ("DOJ") trial attorney in successfully negotiating a narrower scope of the subpoena, including the elimination of the need to collect and review email communications spanning multiple years, and assisted the Company in identifying, collecting, and reviewing relevant documents and preparing a discrete document production in response to the Subpoena.

44.     A breakdown of the time expended and associated charges for **DOJ Third Party Subpoena** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Cashman, Amanda R. | 370.00 | 7.20 | $2,664.00 |
| Chiccarino, J.A. | 370.00 | 0.70 | $259.00 |
| Hosking, R. W. | 700.00 | 4.80 | $3,360.00 |
| Total | | 12.70 | $6,283.00 |

302438436 v2                                                                      09/13/2018

### J.  UCC Litigation

45.     On August 18, 2017, counsel for the Creditors' Committee served document

requests pursuant to Fed. R. Bankr. P. 2004 ("2004 Requests") on the Debtors.

46.     During the Compensation Period, KLG assisted WGM in responding to discovery

requests propounded by the Creditors' Committee.  Specifically, KLG provided e-discovery

support to WGM in gathering and reviewing documents in response to the Creditors'

Committee's discovery requests.  KLG, and specifically its e-DAT Group, worked closely with

the Company to efficiently collect over 3TB of data, including electronic copies of prior

litigation productions, in multiple stages.  The data also included PST files of both former and

current Company personnel, as well as Company network shared folders.  KLG associates

coordinated the collection, review, and production of documents from the Company, working

closely with WGM to develop a privilege review protocol and chain of custody tracking of

electronically-stored information.

47.     In addition, KLG received, produced and reviewed a significant amount of data

that was previously collected and produced in the civil litigation with Southern Nuclear

Company involving the AP1000 units 3 and 4 of Plant Vogtle in or near Waynesboro, Georgia.

KLG was able to leverage the expertise of its e-DAT practice group to re-index and organize the

data, allowing it to be produced in response to the 2004 Requests.  This unique effort saved

significant time and expense and facilitated the Company's expedited fulfillment of the

discovery requests.

302438436 v2                                                                              09/13/2018

48.    A breakdown of the time expended and associated charges for **UCC Litigation** is

as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Arai, L. H. | 175.00 | 176.30 | $30,852.50 |
| Baum, Elsie S. | 370.00 | 43.80 | $16,206.00 |
| Bittle, Emily C. | 370.00 | 24.00 | $8,880.00 |
| Bortmes, J. B. | 175.00 | 100.70 | $17,622.50 |
| Bronder,Sarah A. | 370.00 | 0.90 | $333.00 |
| Brown, C. L. | 175.00 | 11.30 | $1,977.50 |
| Burdette, Allison L. | 370.00 | 22.30 | $8,251.00 |
| Cashman, Amanda R. | 370.00 | 321.40 | $118,918.00 |
| Chiccarino, J. A. | 370.00 | 369.50 | $136,715.00 |
| Connor, J. M. | 250.00 | 0.80 | $200.00 |
| Crabtree, N. | 175.00 | 204.00 | $35,700.00 |
| Diersen, Leslie A. | 250.00 | 225.30 | $56,325.00 |
| ESI Processors | | | $126,065.15 |
| Field, C. T. | 250.00 | 26.50 | $6,625.00 |
| Flanigan, K. M. | 370.00 | 38.30 | $14,171.00 |
| Gafner, Katherine M. | 370.00 | 134.70 | $49,839.00 |
| Georges, J. A. | 250.00 | 60.10 | $15,025.00 |
| Gracey, T. M. | 250.00 | 5.50 | $1,375.00 |
| Herrett, A. R. | 250.00 | 4.00 | $1,000.00 |
| Hill, C. | 175.00 | 120.30 | $21,052.50 |
| Jay, Jeffrey A. | 370.00 | 104.40 | $38,628.00 |
| Kang, D. M. | 175.00 | 34.40 | $6,020.00 |
| Kenney, N. J. | 175.00 | 177.50 | $31,062.50 |
| Komo, Michael R. | 370.00 | 9.20 | $3,404.00 |
| Kuffel, C. M. | 250.00 | 0.50 | $125.00 |
| Levine, R. E. | 175.00 | 40.30 | $7,052.50 |
| Milne, T. S. | 250.00 | 1.50 | $375.00 |
| Musambachime, M. | 250.00 | 3.80 | $950.00 |
| Phillips, E. D. | 370.00 | 7.40 | $2,738.00 |
| Rawlings, K. J. | 250.00 | 1.20 | $300.00 |
| Ray, G. R. | 175.00 | 288.20 | $50,435.00 |
| Rush, M. A. | 700.00 | 13.80 | $9,660.00 |
| Ryan, Thomas C. | 700.00 | 29.90 | $20,930.00 |
| Scott, F. J. | 175.00 | 274.20 | $47,985.00 |
| Shindo, T. M. | 175.00 | 16.00 | $2,800.00 |

| Timekeeper | Rate | Hours | Amount |
|------------|------|-------|--------|
| Slavik, K. R. | 250.00 | 203.20 | $50,800.00 |
| Smith, Isaac T. R. | 370.00 | 28.60 | $10,582.00 |
| Smith, T. J. | 700.00 | 18.70 | $13,090.00 |
| Swain, E. W. | 175.00 | 152.60 | $26,705.00 |
| Tessaro, T. D. | 175.00 | 54.30 | $9,502.50 |
| Ting, K. T. | 175.00 | 10.40 | $1,820.00 |
| Treglia, R. P. | 250.00 | 129.50 | $32,375.00 |
| Ward, B. J. | 250.00 | 0.70 | $175.00 |
| Wyatt, M. A. | 175.00 | 132.20 | $23,135.00 |
| | | 3622.20 | $1,057,782.65 |

### K.  AIG Bankruptcy Motion

49.    During the Compensation Period, KLG represented the Debtors as conflicts counsel in connection with a motion for relief from stay filed by American Home Assurance Company and certain of its affiliates (collectively, "AIG").

50.    On August 16, 2017, the Debtors filed the *Motion of Debtors Pursuant to 11 U.S.C. §§ 363 and 364 and Fed. R. Bankr. P. 4001 and 6003 for Authority to Continue and Renew their Surety Bond Program* [ECF No. 1162] (the "Surety Bond Program Motion"), pursuant to which the Debtors sought authority to continue and renew their surety bond program. In response, on August 22, 2017, AIG filed the *Motion of American Home Assurance Company, the Insurance Company of the State of Pennsylvania, and National Union Fire Insurance Company of Pittsburgh, P.A. for an Order Granting them: (I) Relief from the Automatic Stay, for "Cause", Pursuant to 11 U.S.C. § 362(d) to Cancel Certain Pre-Petition Surety Bonds and Waiving the Stay of Fed. R. Bankr. P. 4001(a)(3); and (II) Such Other or Further Relief as May be Appropriate* [ECF No. 1211] (the "AIG Lift Stay Motion"), pursuant to which AIG sought relief from the automatic stay to cancel certain surety bonds it issued to certain third parties to secure and guaranty the payment and/or performance of certain obligations and contracts relating

21

to the Debtors' operations.  Maintaining the surety bonds at issue was necessary for the Debtors

to comply with ongoing contractual commitments and/or State laws, and the termination of these

bonds would have resulted in a major disruption to the Debtors' businesses.

51.     In connection with the Debtors' opposition to the AIG Lift Stay Motion, KLG:

(i) analyzed the surety bonds issued by AIG and the various underlying obligations/projects

bonded by AIG; (ii) analyzed AIG's legal arguments and case law in opposition thereto;

(iii) drafted a substantial brief in opposition to the AIG Lift Stay Motion; and (iv) prepared

stipulations adjourning the AIG Lift Stay Motion from time to time.  KLG's services were

necessary to maintain the Debtors' negotiating position with respect to its surety bond program.

52.     After substantial negotiations, AIG withdrew the AIG Lift Stay Motion and the

Surety Bond Program Motion was approved on a consensual basis pursuant to an order entered

on October 24, 2017 [ECF No. 1602].  Thereafter, KLG spent time on this matter drafting a

stipulation to resolve certain plan confirmation issues raised by AIG.

53.     A breakdown of the time expended and associated charges for **AIG Bankruptcy
Motion** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Bell, Christopher, H. | 370.00 | 23.80 | $8,806.00 |
| Dale, Charles A. | 700.00 | 12.40 | $8,680.00 |
| Fallon, Rebecca M. | 250.00 | 2.60 | $650.00 |
| Hosking, R. W. | 700.00 | 5.30 | $3,710.00 |
| Mather, E. | 370.00 | 14.40 | $5,328.00 |
| Mawhinney, David A. | 370.00 | 1.90 | $703.00 |
| Nylen, Sven T. | 700.00 | 72.70 | $50,890.00 |
| Peterson, B. T. | 370.00 | 52.50 | $19,425.00 |
| Wright III, J. A. | 700.00 | 4.60 | $3,220.00 |
| | | 190.2 | $101,412.00 |

09/13/2018

### L.  Churchill Property

54.     In late August 2017, news publications in the local Pittsburgh area mentioned a civil enforcement and potential criminal investigation of a third-party contractor related to the alleged improper abatement of asbestos-containing materials at a former location in or near Churchill, Pennsylvania (the "Churchill Property").  Although the Company is not aware of any allegation of misconduct during the time it occupied the property, KLG assisted the Company in responding to inquiries made by several employees.

55.     A breakdown of the time expended and associated charges for **Churchill Property** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Hosking, R. W. | 700.00 | 3.90 | $2,730.00 |
| Insco, J. B. | 700.00 | 8.30 | $5,810.00 |
| | Total | 12.20 | $8,540.00 |

### M. South Carolina State Law Advice

56.     During the Compensation Period, KLG advised the Company regarding matters related to two nuclear power plant construction projects in South Carolina and Georgia, respectively.

57.     As of the Petition Date, WEC was party to an *Engineering, Procurement and Construction Agreement* (the "EPC Agreement") dated as of April 8, 2008, with the South Carolina Electric & Gas Company for itself and as agent for South Carolina Public Service Company LLC (the "VC Summer Owners") concerning an AP1000 nuclear plant at the Virgil C. Summer Nuclear Station near Columbia, South Carolina (the "VC Summer Project").  WEC and the VC Summer Owners entered into an *Interim Assessment Agreement* whereby WEC agreed to

continue to perform under the EPC Agreement while the parties attempted to negotiate a longer-term agreement with respect to the VC Summer Project's future.

58.    On July 31, 2017, the VC Summer Owners announced publicly that they were ceasing construction of the VC Summer Project and provided WEC with a notice of termination of the Interim Assessment Agreement.[2]  WEC employees were subsequently required to leave the VC Summer Project site.  See *Omnibus Motion of Debtors Pursuant to 11 U.S.C. §§ 365(a) and 105(a) for Entry of Order Authorizing Debtors to Reject Certain Executory Contracts Related to the VC Summer Project* [Docket No. 1099].

59.    Following the VC Summer Project's cancellation, South Carolina's House of Representatives and its Senate formed special committees to review the consequences of the VC Summer Owners' decision to abandon the VC Summer Project and any considerations of liability with respect to the utility owners.  One of the VC Summer Owner's, South Carolina Electric & Gas Company, is forty-five percent (45%) owned by Santee Cooper, which is South Carolina's publically-owned electric and water utility.

60.    During the Compensation Period, KLG monitored the House and Senate proceedings on behalf of WEC, including attending certain hearings where appropriate, and provided the Debtors with advice regarding the VC Summer Project.  In addition, KLG (with the assistance of its e-DAT group) assisted the Company in (i) preserving and, where appropriate, reviewing documents and other materials related to the VC Summer Project, (ii) responding to various requests related to ongoing federal and state government investigations in South Carolina, and (iii) preparing certain WEC witnesses for testimony before certain governmental entities.

---

[2] The construction of the plant in Georgia has not been cancelled and has continued to progress.

61.    A breakdown of the time expended and associated charges for **South Carolina**

**State Law Advice** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Bittle, Emily C. | 370.00 | 329.10 | $121,767.00 |
| Bortmes, J. B. | 175.00 | 41.00 | $7,175.00 |
| Brown, C. L. | 175.00 | 24.50 | $4,287.50 |
| Burdette, Allison L. | 370.00 | 11.90 | $4,403.00 |
| Burris, E. K. | 250.00 | 3.60 | $900.00 |
| Cashman, Amanda R. | 370.00 | 36.70 | $13,579.00 |
| Chiccarino, J. A. | 370.00 | 178.00 | $65,860.00 |
| Coleman, J. Walker | 700.00 | 156.60 | $109,620.00 |
| Courtois, E. S. | 250.00 | 0.20 | $50.00 |
| Crabtree, N. | 175.00 | 53.20 | $9,310.00 |
| Diersen, Leslie A. | 250.00 | 94.50 | $23,625.00 |
| Dragotta, P. S. | 175.00 | 18.80 | $3,290.00 |
| ESI Processors | | | $174,704.27 |
| Field, C. T. | 250.00 | 36.80 | $9,200.00 |
| Gafner, Katherine M. | 370.00 | 12.20 | $4,514.00 |
| Gelernter, M. A. | 370.00 | 4.50 | $1,665.00 |
| Georges, J. A. | 250.00 | 411.90 | $102,975.00 |
| Gilmartin, P. J. | 175.00 | 24.50 | $4,287.50 |
| Graham, W. F. | 700.00 | 4.80 | $3,360.00 |
| Gwost, S. D. | 250.00 | 2.60 | $650.00 |
| Herrett, A. R. | 250.00 | 0.80 | $200.00 |
| Hill, C. | 175.00 | 11.20 | $1,960.00 |
| Hubbell, M. R. | 700.00 | 226.70 | $158,690.00 |
| Jay, Jeffrey A. | 370.00 | 207.40 | $76,738.00 |
| Jones, Sean Michael | 700.00 | 0.40 | $280.00 |
| Kelch, D. I. | 370.00 | 463.40 | $171,458.00 |
| Kenney, N. J. | 175.00 | 128.40 | $22,470.00 |
| Kephart, J. A. | 370.00 | 58.10 | $21,497.00 |
| Klein, K. C. | 370.00 | 6.20 | $2,294.00 |
| Komo, Michael R. | 370.00 | 123.50 | $45,695.00 |
| Lambrakopoulos, S. E. | 700.00 | 5.10 | $3,570.00 |
| Martinez, Vincent L. | 700.00 | 339.20 | $237,440.00 |
| Nibley, S. B. | 700.00 | 0.60 | $420.00 |
| Parker, A. J. | 370.00 | 27.90 | $10,323.00 |
| Phillips, E. D. | 370.00 | 560.10 | $207,237.00 |

09/13/2018

| Timekeeper | Rate | Hours | Amount |
|------------|------|-------|--------|
| Prichard, W. A. | 370.00 | 29.00 | $10,730.00 |
| Rawlings, K. J. | 250.00 | 1.80 | $450.00 |
| Ray, G. R. | 175.00 | 86.90 | $15,207.50 |
| Rush, M. A. | 700.00 | 21.60 | $15,120.00 |
| Ryan, Thomas C. | 700.00 | 212.50 | $148,750.00 |
| Sawyer, M. E. | 370.00 | 427.90 | $158,323.00 |
| Scott, F. J. | 175.00 | 63.80 | $11,165.00 |
| Shindo, T. M. | 175.00 | 23.90 | $4,182.50 |
| Slavik, K. R. | 250.00 | 13.70 | $3,425.00 |
| Stockey, Nicole | 370.00 | 484.50 | $179,265.00 |
| Sullivan, T. C. | 370.00 | 98.40 | $36,408.00 |
| Swain, E. W. | 175.00 | 14.10 | $2,467.50 |
| Taylor, K. B. | 250.00 | 241.90 | $60,475.00 |
| Tessaro, T. D. | 175.00 | 10.60 | $1,855.00 |
| Thiem, J. H. | 700.00 | 11.40 | $7,980.00 |
| Treglia, R. P. | 250.00 | 4.30 | $1,075.00 |
| Veintimilla, D. J. | 370.00 | 386.70 | $143,079.00 |
| Ward, B. J. | 250.00 | 5.80 | $1,450.00 |
| Wyatt, M. A. | 175.00 | 14.40 | $2,520.00 |
| Yammine, R. E. | 370.00 | 2.00 | $740.00 |
|  |  | 5759.60 | $2,430,161.77 |

## N.  Renegotiation of License Agreements

62.    During the Compensation Period, KLG advised the Company as conflicts counsel regarding certain claims and agreements between the Debtors and CBS Corporation ("CBS").[3]

63.    The Debtors were formed as part of a 1999 transaction in which CBS sold the Debtors to entities controlled by British Nuclear Fuels Limited ("BNFL").  As part of that transaction, CBS and WEC entered into a variety of complex and, in some cases, voluminous agreements.  Despite the passage of 18 years, as of the Petition Date, CBS and the Debtors (principally WEC) continued to have material obligations to each other under agreements.  The

---

[3]  This matter was one of several for which KLG sought to expand its retention in these Chapter 11 Cases pursuant to the *Supplemental Application by Debtors Related to the Scope of Retention of K&L Gates LLP* [Docket No. 1418].  The Court approved the supplemental retention by order entered on October 10, 2017 [Docket No. 1499].

302438436 v2                                                                09/13/2018

remaining agreements and obligations covered a variety of areas, including pension and other

employee benefits, environmental liabilities, real estate, two trademark license agreements under

which the Debtors license rights to the "Westinghouse" name and related marks, and a record

retention agreement under which CBS holds certain documents for the Debtors

64.    KLG worked extensively with the Debtors to review their remaining agreements

with CBS, to diligence those remaining obligations, and analyze the Debtors' legal alternatives.

This process required KLG to engage in a wide-ranging review of the agreements themselves

and the material developments since 1999 between WEC and CBS.  Most notably, KLG (i)

advised the Debtors in negotiations with CBS regarding the potential amendment and assumption

of various of these agreements, (ii) resolved issues with CBS that arose during the Debtors'

chapter 11 plan process, and (iii) advised the Debtors in negotiating and seeking Court approval

for a stipulation under Bankruptcy Rule 3018 resolving CBS's voting rights under the Debtors'

chapter 11 plan.  KLG also represented the Debtors in resolving certain informal comments of

CBS to the plan and confirmation order, which issues were resolved consensually in advance of

the confirmation hearing.

65.    Finally, following the confirmation of the chapter 11 plan, KLG assisted WEC in

negotiating an agreement with CBS under which the various agreements between WEC and

CBS, including the trademark licenses, were amended and assumed by reorganized WEC,

conditioned upon the effectiveness of the Plan.  KLG assisted WEC in drafting and prosecuting a

motion to amend and assume on this basis, which was approved by the Court following a hearing

on June 26, 2018.

66.    A breakdown of the time expended and associated charges for **Renegotiation of License Agreements** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Bicks, J. A. | 700.00 | 13.50 | $9,450.00 |
| Byer, D. J. | 700.00 | 0.70 | $490.00 |
| Dale, Charles A. | 700.00 | 1.50 | $1,050.00 |
| Fallon, Rebecca M. | 250.00 | 0.40 | $100.00 |
| Georges, J. A. | 250.00 | 4.80 | $1,200.00 |
| Hefferman, S. B. | 370.00 | 13.20 | $4,884.00 |
| Honeywell, R. T. | 700.00 | 1.90 | $1,330.00 |
| Lamparello, D. M. | 700.00 | 0.40 | $280.00 |
| Mawhinney, David A. | 370.00 | 1.40 | $518.00 |
| Nylen, Sven T. | 700.00 | 0.20 | $140.00 |
| Peterson, B. T. | 370.00 | 6.20 | $2,294.00 |
| Prager, E. A. | 700.00 | 2.70 | $1,890.00 |
| Roozen, T. A. | 370.00 | 13.10 | $4,847.00 |
| Rush, M. A. | 700.00 | 0.80 | $560.00 |
| Ryan, Thomas C. | 700.00 | 18.10 | $12,670.00 |
| Wright III, J. A. | 700.00 | 336.90 | $235,830.00 |
| | | 415.80 | $277,533.00 |

### O.  Project M

67.    As referenced above regarding "Non-Adverse Corporate Matters", which contains the initial time entries with respect to this matter, KLG professionals advised the Company during the Compensation Period regarding issues of European corporate, insolvency, and tax law regarding an Italian non-debtor affiliate (the "Affiliate").  KLG was able to leverage its global platform in addressing these issues, utilizing attorneys within its Italian office with expertise in corporate and insolvency law.  Specifically, KLG attorneys in the Milan office assisted WGM in negotiating and drafting the necessary amendments to the Debtors' debtor-in-possession ("DIP") financing to allow WEC to transfer DIP funds to the Affiliate to address liquidity issues, and

later assisted WGM in negotiating and drafting the necessary amendments to the Debtors'

chapter 11 plan and related corporate agreements to allow WEC and the Affiliates to address

issues related to Italian corporate and tax law.

68.    In addition, attorneys in KLG's Milan office negotiated and advised upon a

transaction between WEC and Toshiba pursuant to which Toshiba conveyed its equity interests

in the Affiliate to WEC.  In connection with this transaction, KLG professionals: (i) attended

meetings of the shareholders of Affiliate; (ii) drafted and negotiated the stock purchase

agreement; (iii) negotiated with Toshiba's counsel; (iv) advised on various Italian corporate law

matters; (v) provided tax advice in connection with the structuring of the transaction; (vi)

assisted in the closing of the transaction, and (vii) advised on post-closing matters concerning

Italian corporate law.

69.    A breakdown of the time expended and associated charges for **Project M** is as

follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Beltrami, Maria | 370.00 | 2.40 | $888.00 |
| Campana, A. | 370.00 | 9.70 | $3,589.00 |
| Germani, S. | 370.00 | 222.70 | $82,399.00 |
| Hosking, R. W. | 700.00 | 8.00 | $5,600.00 |
| Marini, P. | 700.00 | 254.00 | $177,800.00 |
| Peruffo, F. | 370.00 | 40.90 | $15,133.00 |
| Salvadori di Wiesenhoff, V. | 700.00 | 292.50 | $204,750.00 |
| | | 830.20 | $490,159.00 |

### P.  DOL Claim

70.    This Special Matter arose in November 2017, after an employee filed a complaint with the Department of Labor ("DOL") asserting retaliation claims under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A and the Energy Reorganization Act, 42 U.S.C. § 5851.  KLG professionals reviewed the claim, interviewed witnesses, and researched the legal issues in connection therewith.  KLG attorneys spent time on this matter reviewing relevant documents and drafting a factual narrative for use in witness interviews.  KLG assisted the Debtors in drafting a formal response to the complaint on December 4, 2017.

71.    The employee subsequently filed a companion complaint with the Nuclear Regulatory Commission ("NRC") and opted to initiate early dispute resolution process, as prescribed under a program administered through the NRC.  KLG spent significant time reviewing documents, conducting legal research and drafting the mediation statement.  Further, KLG spent significant time developing settlement and litigation strategies with the Company and its other advisors.  The matter was successfully resolved through mediation on March 22, 2018, thereby resolving both the NRC and the DOL Claim, and avoiding further expense on the matter.

72.    A breakdown of the time expended and associated charges for **DOL Claim** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Bittle, Emily C. | 370.00 | 56.30 | $20,831.00 |
| Burdette, Allison L. | 370.00 | 8.10 | $2,997.00 |
| Chiccarino, J. A. | 370.00 | 10.40 | $3,848.00 |
| Diersen, Leslie A. | 250.00 | 4.70 | $1,175.00 |
| Field, C. T. | 250.00 | 11.60 | $2,900.00 |
| Georges, J. A. | 250.00 | 8.00 | $2,000.00 |
| Hosking, R. W. | 700.00 | 2.30 | $1,610.00 |
| Jay, Jeffrey A. | 370.00 | 123.90 | $45,843.00 |
| Kaufman, C. M. | 370.00 | 25.30 | $9,361.00 |

30

09/13/2018

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Kephart, J. A. | 370.00 | 56.70 | $20,979.00 |
| Komo, Michael R. | 370.00 | 2.10 | $777.00 |
| Parker, A. J. | 370.00 | 215.30 | $79,661.00 |
| Pavlick, M. A. | 700.00 | 21.30 | $14,910.00 |
| Phillips, E. D. | 370.00 | 42.00 | $15,540.00 |
| Ryan, Thomas C. | 700.00 | 145.90 | $102,130.00 |
| Slavik, K. R. | 250.00 | 0.60 | $150.00 |
| Stockey, Nicole | 370.00 | 9.30 | $3,441.00 |
| Stockey, Nicole | 370.00 | 123.80 | $45,806.00 |
| Veintimilla, D. J. | 370.00 | 47.50 | $17,575.00 |
| | | 915.10 | $391,534.00 |

## Q.  BI Insurance Advice

73.    During the Compensation Period, KLG professionals provided WEC with advice on an insurance recovery strategy regarding potential business interruption insurance coverage arising out of a shutdown at the South Carolina facility and economic losses relating thereto. This work involved review of insurance policies, factual background materials relating to the loss, and insurance-related course of dealings, as well as consultations with WEC and its insurance broker, research regarding applicable law, and drafting and reviewing insurance correspondence.

74.    A breakdown of the time expended and associated charges for **BI Insurance Advice** is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Hosking, R. W. | 700.00 | 2.00 | $1,400.00 |
| Kephart, J. A. | 370.00 | 7.50 | $2,775.00 |
| Reiter, T. M. | 700.00 | 17.10 | $11,970.00 |
| Total | | 26.60 | $16,145.00 |

### R. Mechanics Lien Advice

75.    This Special Matter arose in February 2018 and required KLG to review and

provide advice on a mechanics lien that was filed against certain of the Debtors' assets.

76.    A breakdown of the time expended and associated charges for **Mechanics Lien**

**Advice** is as follows:

| Timekeeper | | Rate | Hours | Amount |
|---|---|---|---|---|
| Bowman, C. G. | | 700.00 | 4.60 | $3,220.00 |
| | Total | | 4.60 | $3,220.00 |

### S. DOE Funding

77.    This Special Matter arose in February 2018 after WEC requested KLG's

assistance in responding to a Department of Energy funding opportunity announcement

("FOA").  KLG professionals provided advice on how WEC might respond to the FOA, which

required analysis of foreign ownership restrictions in the FOA in light of the Debtors' Canadian

and Japanese ownership.  Work performed on this Special Matter during the Compensation

Period included research of the applicable regulations regarding eligibility requirements and

formulating a formal respond to the FOA.

78.    A breakdown of the time expended and associated charges for **DOE Funding** is

as follows:

| Timekeeper | | Rate | Hours | Amount |
|---|---|---|---|---|
| Bakies, E. L. | | 370.00 | 4.80 | $1,776.00 |
| Hill, S. F. | | 700.00 | 1.50 | $1,050.00 |
| Peckinpaugh, T. L. | | 700.00 | 0.80 | $560.00 |
| | Total | | 7.10 | $3,386.00 |

### T.  Compliance Policy Review

79.    During the Compensation Period, WEC requested KLG's assistance in preparing

certain internal compliance policies and procedures and training materials relating to confidential

or privileged communications.  KLG professionals reviewed WEC's existing policies and

relevant operations, and worked with WEC's compliance personnel to prepare policies,

procedures and training materials.

80.    A breakdown of the time expended and associated charges for Compliance Policy

Review is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Lambrakopoulos, S. E. | 700.00 | 17.50 | 12,250.00 |
| Martinez, Vincent L. | 700.00 | 0.90 | 630.00 |
| Ryan, Thomas C. | 700.00 | 0.80 | 560.00 |
| Total | | 19.20 | $13,440.00 |

### U.  Confidential Acquisition

81.    In April 2018, KLG began assisting the Company in connection with a potential

acquisition, which included the review of various due diligence materials and the preparation of

draft documents.  A breakdown of the time expended and associated charges for Confidential

Acquisition is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Acre, J. | 700.00 | 31.50 | $22,050.00 |
| Bowen, P. W. | 700.00 | 8.50 | $5,950.00 |
| Pavlick, M. A. | 700.00 | 2.10 | $1,470.00 |
| Rearick, S. R. | 370.00 | 10.40 | $3,848.00 |
| | | 52.50 | $33,318.00 |

09/13/2018

### V.  On-Site Compliance Buildout Support

82.    In May 2018, the Company requested that KLG assist it with providing legal support to its compliance staff, pending a full-time hire.  KLG agreed to make a partner with an expertise in the specific regulatory compliance areas available on-site for three days per week at a reduced rate of $535 per hour for an agreed period.  This partner worked alongside WEC employees and other KLG attorneys to review and revise various policies and procedures for the Company on issues such as anti-corruption, gifts and hospitality, state secrets, and JV compliance.

83.    A breakdown of the time expended and associated charges for On-site Compliance Buildout Support is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Dai, C. Y. | 370.00 | 6.00 | $2,220.00 |
| Hong, C. S. Y. | 700.00 | 0.60 | $420.00 |
| Semins, W. D. | 535.00 | 277.00 | $148,195.00 |
| Stockey, Nicole | 370.00 | 41.20 | $15,244.00 |
| Fixed Fee Adjustment | | | $6,011.00 |
| | | 324.80 | $172,090.00 |

### W. Agent Due Diligence

84.    In May 2018, KLG was engaged by the Company to conduct third-party due diligence for a potential agent, which included international travel for interviews and the preparation of a privileged and confidential report.  A breakdown of the time expended and associated charges for Agent Due Diligence is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Bittle, Emily C. | 370.00 | 27.80 | $10,286.00 |

34

| | | | |
|---|---|---|---|
| Semins, W. D. | 700.00 | 3.40 | $2,380.00 |
| Bittle, Emily C. | 370.00 | 19.90 | $7,363.00 |
| | | 51.10 | $20,029.00 |

### X.  EPLI Insurance Claim

85.    In May 2018, KLG began assisting the Company in connection with a claim that it made under its Employment Practices Liability Insurance (the "EPLI Insurance Claim"), in connection with claims filed against it by former employees under the Worker Adjustment and Retraining Notification Act.  Time spent on the EPLI Insurance Claim included reviewing materials related to the claim and corresponding with AIG.  A breakdown of the time expended and associated charges for EPLI Insurance Claim is as follows:

| **Timekeeper** | **Rate** | **Hours** | **Amount** |
|---|---|---|---|
| Reiter, T.M. | 700.00 | 11.60 | $8,120.00 |
| Total | | 11.60 | $8,120.00 |

302438436 v2                                                          09/13/2018

### Y.  China Due Diligence Project

86.    In April 2018, KLG was engaged to assist with an internal audit into a privileged and confidential investigation involving an employment tax issue for an employee working in China.

87.    A breakdown of the time expended and associated charges for China Due Diligence Project is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Kephart, J. A. | 370.00 | 44.80 | $16,576.00 |
| Ryan, Thomas C. | 700.00 | 1.40 | $980.00 |
| Semins, W. D. | 700.00 | 4.50 | $3,150.00 |
| | | 50.70 | $20,706.00 |

36

## Z.  French Subsidiary Accounting Inquiry

88.     In April 2018, KLG was engaged to assist with an internal audit and the

compliance function in conducting a privileged and confidential investigation following up an

anonymous complaint received through an ethics hotline.

89.     A breakdown of the time expended and associated charges for French Subsidiary

Accounting Inquiry is as follows:

| Timekeeper | Rate | Hours | Amount |
|------------|------|-------|--------|
| Cashman, Amanda R. | 370.00 | 16.50 | $6,105.00 |
| Chiccarino, J. A. | 370.00 | 8.90 | $3,293.00 |
| Diersen, Leslie A. | 250.00 | 3.10 | $775.00 |
| Georges, J. A. | 250.00 | 1.10 | $275.00 |
| Kenney, N. J. | 175.00 | 41.80 | $7,315.00 |
| Pathayapura, H. | 175.00 | 52.70 | $9,222.50 |
| Ryan, Thomas C. | 700.00 | 5.20 | $3,640.00 |
| Slavik, K. R. | 250.00 | 0.30 | $75.00 |
| Swain, E. W. | 175.00 | 20.30 | $3,552.50 |
|  |  | 149.90 | $34,253.00 |

302438436 v2                                                                                    09/13/2018

### AA.    Mexican Agent Due Diligence (II)

90.    In April 2018, KLG was engaged by the Company to conduct third-party due diligence for another potential agent, which included international travel for interviews and the preparation of a privileged and confidential report.

91.    A breakdown of the time expended and associated charges for Mexican Agent Due Diligence (II) is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Semins, W. D. | 700.00 | 0.40 | $280.00 |
| Veintimilla, D. J. | 370.00 | 0.40 | $148.00 |
|  |  | 0.80 | $428.00 |

### BB.    French Compliance Review

92.    In April 2018, WEC leveraged the KLG platform and sought legal advice related to EU compliance issues from lawyers in KLG's Paris and London offices.

93.    A breakdown of the time expended and associated charges for French Compliance Review is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Armingaud, C. E. | 700.00 | 1.50 | $1,050.00 |
| Balducci, A. | 370.00 | 1.50 | $555.00 |
| Millward, J. G. | 370.00 | 2.40 | $888.00 |
| Moses, D. G. | 700.00 | 1.50 | $1,050.00 |
|  |  | 6.90 | $3,543.00 |

09/13/2018

### CC.    Due Diligence

94.    In April 2018, KLG was engaged by the Company to conduct third-party due diligence for another potential agent, which included international travel for interviews and the preparation of a privileged and confidential report.

95.    A breakdown of the time expended and associated charges for Due Diligence is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Bittle, Emily C. | 370.00 | 0.40 | $148.00 |
| Veintimilla, D. J. | 370.00 | 0.60 | $222.00 |
| | | 1.00 | $370.00 |

### DD.    Rule 45 Subpoena Response

96.    In April 2018, KLG was engaged to assist in collecting, searching and organizing documents in response to a third-party subpoena the Company received in a civil litigation matter to which it is not a party.

97.    A breakdown of the time expended and associated charges for Rule 45 Subpoena Response is as follows:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Lambrakopoulos, S. E. | 700.00 | 1.40 | $980.00 |
| Nichols, D. M. Jr. | 370.00 | 4.40 | $1,628.00 |
| Ryan, Thomas C. | 700.00 | 2.50 | $1,750.00 |
| | | 8.30 | $4,358.00 |

302438436 v2                                                                09/13/2018