PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3253

WRITER'S DIRECT FACSIMILE
(212) 492-0253

WRITER'S DIRECT E-MAIL ADDRESS
kkimpler@paulweiss.com

May 28, 2019

VIA ECF AND EMAIL

Honorable Michael E. Wiles
United States Bankruptcy Court
 for the Southern District of New York
One Bowling Green
New York, NY 10006

Re:  *In re Westinghouse Electric Company, LLC, et al.*,
No. 17-10751 (Bankr. S.D.N.Y.)

Dear Judge Wiles:

On behalf of W Wind Down Co LLC ("Wind Down Co"), I write in response to Toshiba Corporation's ("Toshiba") May 23, 2019 letter addressing the effect of the Plan[1] on Toshiba's right to an allowed Administrative Expense Claim against the Debtors [ECF No. 4327].  As set forth below, the Plan and Confirmation Order effectuated—in explicit terms—a full and final settlement of ***all*** of Toshiba's Claims (including any purported Administrative Expense Claim).  Toshiba's attempt to resurrect those settled Claims by urging the Court to ignore the plain language of the Plan and the Confirmation Order should be denied.

Toshiba argues that the entirety of the first paragraph of Section 5.3 "is merely introductory" and therefore lacks independent meaning outside of the enumerated subsections of Section 5.3, which specify the treatment of particular categories of Claims.  In essence, Toshiba argues that the Court should simply ***ignore*** the first paragraph of Section 5.3, which provides:

> ***The Plan contemplates and is predicated upon*** entry of an order (which may be the Confirmation Order) substantively consolidating the Debtors' Estates and the Chapter 11 Cases pursuant to ***a global and integrated compromise and settlement of all disputes among the Debtors, [and] the PSA Parties*** . . . . ***Specifically, and without limitation***, ***the treatment of*** the Class 3A General Unsecured Claims (including ***the Toshiba GUC Claims***…), Class 3B General Unsecured

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Modified Second Amended Joint Chapter 11 Plan of Reorganization* [ECF No. 2986].

> Claims *[and] Released Toshiba Claims . . . provided herein is a settlement and compromise of the delay, expense, and uncertainty associated with extensive potential litigation, including among other things*, … (b) *litigation relating to the allowance and amount of the . . . Claims and Interests of Toshiba and the Toshiba Affiliates*.

Plan § 5.3 (emphasis added). This language unequivocally states that the Plan's treatment of certain Claims—as specified in subsections (a) through (h)—constitutes a "settlement and compromise," not only of those specific Claims, but of "*all disputes*" and "*Claims and Interests of Toshiba and the Toshiba Affiliates*." If, as Toshiba contends, the Plan only intended to settle the "Toshiba GUC Claims" and the "Toshiba Released Claims," then the above quoted language of Section 5.3 would have used precisely those defined terms (as the PSA Parties did in subsections (b) and (d)) rather than the much broader terms "all disputes" and "Claims and Interests." Use of these broader terms is precisely what would be expected in order to achieve the "global and integrated compromise" that the Plan was intended to achieve.

Toshiba argues that the "specific terms in a contract override the general," but this principle only applies where there is a conflict between the "specific" and the "general." *See In re Arcapita Bank B.S.C.(c)*, 520 B.R. 15, 26 (Bankr. S.D.N.Y. 2014) ("When general and specific provisions of a contract are inconsistent . . . the specific provision controls.") (citing *Muzak Corp.* v. *Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956); *Israel* v. *Chabra*, 906 N.E.2d 374, 380 n.3 (N.Y. 2009)). Here, there is no conflict. As set forth above, the treatment of specific Claims in subsections (b) and (d) is the consideration for a global settlement of all disputes that is described in the first paragraph of Section 5.3 of the Plan.

Any question regarding the scope of the global settlement embodied in the Plan is resolved by the Confirmation Order. In confirming the Plan, the Court specifically approved a "Global Settlement" using the same language that Toshiba now dismisses as "merely introductory." The Confirmation Order provides, in relevant part:

> The Plan, including Section 5.3 thereof, incorporates a global settlement and compromise of certain Debtor-creditor and intercreditor issues (the "**Global Settlement**"), including, among other things, . . . (c) *agreements to avoid litigation relating to the allowance and amount of* the VC Summer Claims, Vogtle Claims, and ***Claims and Interests of Toshiba and the Toshiba Affiliates***.

Confirmation Order ¶ 10; *see also id*. at ¶17 ("The entry of this Confirmation Order constitutes this Court's approval of the terms of the Global Settlement that are set forth in the Plan and of all other compromises and settlement set forth in the Plan, all of which are in the best interests of the Debtors, their Estates, and holders of Claims and Interests and are fair, equitable, and reasonable."). Nothing in the language quoted above, or in the Confirmation Order more generally, indicates that the Global Settlement was limited solely to those Claims addressed in subsections (b) through (h) of Section 5.3 of the Plan.

Finally, Toshiba asserts that the Global Settlement embodied in the Plan does not preclude it from now asserting an Administrative Expense Claim—even though that Claim was known at the time the Plan was confirmed—because the definition of "Claims" somehow excludes

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Michael E. Wiles                                                                                                  3

Administrative Expense Claims. As discussed at the hearing on May 16, the Plan defines "Administrative Expense Claim" as "any *Claim* against a Debtor for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code . . . ." Plan § 1.2 (emphasis added). There can be no question, therefore, that an Administrative Expense Claim is a type of Claim, and that the Global Settlement embodied in the Plan was intended to avoid litigation concerning the allowance and amount of all Claims—including Administrative Expense Claims. Tellingly, Toshiba's letter fails to address this argument.

For the reasons set forth above, Wind Down Co asserts that the terms of the Plan and Confirmation Order are clear and there is no basis for Toshiba to pursue discovery thereon. Accordingly, Wind Down Co respectfully requests that the Court disallow Toshiba's Administrative Expense Claims.[2]

Respectfully Submitted,

*/s/ Kyle J. Kimpler*

Kyle J. Kimpler

cc: Counsel of Record

---

[2] Wind Down Co is working with the Reorganized Debtors to verify whether the VC Summer Owners paid approximately $240,000 to the Debtors to reimburse Toshiba for certain L/C Fees related to the VC Summer Project during the IAA Period. In the event the Reorganized Debtors confirm that such payment was made and not remitted to Toshiba, and that such funds were transferred to Wind Down Co on the Effective Date, Wind Down Co will remit such funds to Toshiba notwithstanding the disallowance of Toshiba's Claims.