**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| In re | : | **Chapter 11** |
| | : | |
| **WESTINGHOUSE ELECTRIC COMPANY, LLC, et al.,** | : | **Case No. 17-10751 (MEW)** |
| | : | |
| Debtors. | : | |
| | : | |

**DECISION DENYING MOTION OF TIMOTHY ELLIS**
**TO ALLOW LATE FILING OF ADMINISTRATIVE CLAIM**

A P P E A R A N C E S :

LAW OFFICES OF JOEL SANSONE
Pittsburgh, Pennsylvania
*Attorney for Timothy Ellis*
    BY: Joel Sansone, Esq. (Telephonically)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Attorney for W Wind Down Co LLC
New York, New York
        BY: Kyle Kimpler, Esq. (Telephonically)

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTY JUDGE**

Before the Court is the motion by Timothy Ellis seeking entry of an order granting him permission to file a tardy administrative expense claim. As set forth below, the motion was filed on November 2, 2021, which was more than three years after the August 31, 2018 deadline that this Court set for the filing of administrative claims. More importantly, the motion was filed almost two years after Mr. Ellis was clearly notified (in connection with court proceedings in Pennsylvania) that he had missed the administrative claims deadline and that if he wished to pursue a late claim he needed permission from this Court.

The record shows that Mr. Ellis and his Pennsylvania counsel made a deliberate tactical decision not to proceed in this Court and instead to argue, in Pennsylvania, that Mr. Ellis's claim

had not been discharged and that Mr. Ellis was entitled to pursue that claim against the

reorganized company that had emerged from the Westinghouse bankruptcy.  His decision,

though erroneous, was knowing and deliberate, and there is no just cause to grant the relief he

now seeks.

## Chronology

On March 29, 2017, Westinghouse Electric Company LLC and certain of its affiliates

filed voluntary chapter 11 bankruptcy petitions before this Court.  Mr. Ellis had begun working

for Westinghouse in 2010 and he was still employed when the bankruptcy began.  Mr. Ellis

acknowledges that he knew of the bankruptcy filing and that he received certain notices from the

court.  Mr. Ellis contends that he spoke to a Human Resources Director at Westinghouse in

March 2018 and that he was told that the bankruptcy notices he had previously received did not

apply to him.  Apparently that advice was correct at the time: Mr. Ellis was still employed, and

there is no indication that he had a pre-bankruptcy claim to be asserted against Westinghouse or

that the bankruptcy had affected his rights as of March 2018.

On March 28, 2018, this Court entered an order (ECF No. 2988) (the "Confirmation

Order") confirming the Modified Second Amended Joint Chapter 11 Plan of Reorganization

(ECF No. 2986) (the "Plan") in Westinghouse's chapter 11 case.  As often happens in chapter

11, certain other events (particularly regulatory approvals) needed to occur before the Plan could

take effect.  As a result, the actual effective date of the Plan did not occur until August 1, 2018

(the "Effective Date").  It was known, at the time of the confirmation hearing, that there would

be a delay before the Plan would be effective.  As a result, the provisions of the Plan and the

Confirmation Order made clear that the transactions that were contemplated by the Plan, and the

discharges of the Debtors' liabilities, would occur as of the Effective Date of the Plan and not as of the date on which the Confirmation Order was entered.

More particularly, the Plan provided that on the Effective Date an investor would purchase the equity of one of the parent companies of Westinghouse and the equity of a foreign affiliate. *See* Plan §§ 1.97, 5.2. The proceeds would be used to pay the creditors of Westinghouse and its affiliated Debtors. On the Effective Date, Westinghouse and other Debtors would emerge from bankruptcy as newly reorganized entities and with discharges from all obligations that had arisen prior to the Effective Date. *See* Plan, §§ 11.1, 11.3; Confirmation Order ¶¶ KK, 12, 14, 15, 54. The Plan also established W Wind Down Co LLC ("Wind Down Co.") as a separate entity to hold the proceeds of the sale and certain other assets that were to be distributed to creditors, including to holders of "Administrative Expense Claims." *See* Plan, §§ 1.16, 2.1, 5.4.

Administrative Expense Claims were defined in the Plan as claims of a kind specified in section 503(b) of the Bankruptcy Code, including costs and expenses incurred after the filing of the bankruptcy case up to and including the "Effective Date" of the Plan. *See* Plan § 1.2. The Plan also established a deadline for the filing of administrative expense claims:

> Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, Wind Down Co, and the Reorganized Debtors, or their property, and such Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date.

*See* Plan, § 2.5. Since the Effective Date occurred on August 1, 2018, the deadline for the filing of such claims (the "<u>Administrative Bar Date</u>") was August 31, 2018.

As noted above, Mr. Ellis was an employee of Westinghouse in early 2018, at which time

he held the position of Vice President, Global Projects Management Operations.  However, on

May 16, 2018 – after the confirmation of the Plan, but before its Effective Date –Westinghouse

informed Mr. Ellis that his employment would be terminated.  That termination became effective

on May 31, 2018.

On July 3, 2018, Mr. Ellis filed a charge with the Equal Employment Opportunity

Commission ("EEOC"), alleging age discrimination in his termination.  Approximately one

month later, on or about August 2, 2018, a notice was sent to creditors, informing them that the

Effective Date of the Plan had occurred on August 1 and that the reorganization of the Debtors,

and the various transactions approved by the Court in the Confirmation Order, had taken effect

as of the Effective Date.  The notice also advised creditors of the August 31, 2018

Administrative Claims Bar Date.  It stated:

> **PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided by
> the Plan, the Confirmation Order, any other applicable order of the Court, or
> agreed to by the holder of an Allowed Administrative Expense Claim and the
> Debtors, all requests for payment of Administrative Expense Claims must be
> filed and served on the Debtors **no later than August 31, 2018** (the
> "**Administrative Expense Claims Bar Date**").  Holders of Administrative
> Expense Claims that are required to file and serve a request for payment of
> such Administrative Expense Claims that do not file and serve such a request
> by the Administrative Expense Claims Bar Date shall be forever barred,
> estopped, and enjoined from asserting such Administrative Expense Claims
> against the Debtors, or their property and such Administrative Expense
> Claims shall be deemed discharged as of the Effective Date.

*See* Notice [ECF No. 3705] (emphasis in original).  The affidavit of service indicates that the

notice was served by first class mail on Timothy Ellis. [ECF # 3724, Ex. D, PDF p. 292 of 1009].

Although Mr. Ellis has claimed uncertainty as to whether he received this particular notice, the

Pennsylvania District Court has ruled that he did receive it.  *See Ellis v. Westinghouse Elec. Co.*,

No. 2:18-cv-01442, 2020 WL 4499931, at *8-9 (W.D. Pa. Aug. 5, 2020).

4

Mr. Ellis filed no administrative expense claim in this Court.  On October 26, 2018, however, Mr. Ellis filed an action against the post-Effective Date company that emerged from the bankruptcy of Westinghouse ("WEC") in the District Court for the Western District of Pennsylvania, alleging discrimination in connection with his termination (the "Pennsylvania Action").  Wind Down Co. was not named as a party to the Pennsylvania Action.  The Pennsylvania Action was stayed in January 2019 for reasons that are not completely clear; for whatever reason, the case did not resume until after July 25, 2019.

On November 14, 2019, WEC filed a motion for summary judgment in the Pennsylvania Action.  Case No. 2:18cv1442 (W.D. Pa. (ECF No. 31).  WEC argued that that WEC itself had been discharged from all pre-Effective Date liabilities of Westinghouse and that Mr. Ellis should have filed a claim against Wind Down Co. in the bankruptcy proceedings.  More particularly, WEC argued:

> Any liability of WEC for Mr. Ellis' termination prior to the Effective Date of the Plan would have constituted an administrative claim under the Bankruptcy Code that was unambiguously discharged under the plain terms of the Plan. Further, the Plan clearly enjoined Mr. Ellis from continuing to pursue his claim against WEC.  The Plan permitted Mr. Ellis to seek recovery from Wind Down Co, but Mr. Ellis failed to timely file a request for payment.

*Brief in Support of summary judgment motion* (Case No. 2:18 cv 1442 (ECF No. 32 at 9); *see also id*. at 19 (arguing that the Plan "did not leave Mr. Ellis with no recourse" and that he should have filed a claim against Wind Down Co. by the Administrative Bar Date).

On November 21, 2019, WEC also filed a motion in this Court, asking this Court to enforce the Plan and Confirmation Order and the injunctions set forth therein and to compel Mr. Ellis to dismiss the Pennsylvania Action.  (ECF No. 4485).  WEC made arguments similar to those that it had made a week earlier in the papers it filed in Pennsylvania in support of its motion for summary judgment.  Four days later, on November 25, 2019, Mr. Ellis asked the

5

Pennsylvania District Court to stop WEC from proceeding with its motion in this Court.  No hearing ever was held on the motion that WEC filed in this Court.  It also does not appear that the issues that Mr. Ellis raised in his November 25, 2019 request were argued in Pennsylvania until January 2020, at the same time as the District Court heard argument on WEC's motion for summary judgment.

Meanwhile, on December 13, 2019, Mr. Ellis filed papers in the Pennsylvania District Court in opposition to WEC's motion for summary judgment Case No. 2:18cv1442 (ECF No. 44).  He argued that his claim arose after the entry of this Court's Confirmation Order because his termination did not occur until May 31, 2018, and contended that his claim therefore was not discharged because (he argued) section 1141 only discharges claims that arise prior to the confirmation of a Plan. *Id*. at 4, 7.  WEC filed a reply on December 28, 2019 in which it repeated many of its earlier arguments and cited to the explicit terms of the Plan and the Confirmation Order, pursuant to which WEC had been discharged from claims and liabilities arising prior to the "Effective Date."  Case No. 2:18cv1442 (ECF No. 48).  WEC further noted that "the filing of requests for payment of administrative expenses and the allowance thereof are governed by section 503" and that "untimely submissions [of administrative expense claims] are authorized only if 'permitted by the court for cause.'"  *Id.* at 1-2.

On January 10, 2020, before argument of the summary judgment motion in Pennsylvania, Mr. Ellis filed papers in this Court in opposition to the WEC's pending motion for injunctive relief.  (ECF No. 4523)  He argued, as he had argued in the Pennsylvania Action, that under section 1141(a) of the Bankruptcy Code administrative claims were only discharged to the extent they occurred prior to the entry of the Confirmation Order, and not if they occurred thereafter. *Id*. at 3-5.

The District Court in Pennsylvania heard oral argument on the pending summary judgment motion on January 15, 2020. During argument, the District Judge asked WEC's counsel whether Mr. Ellis's failure to file a claim before the expiration of the Administrative Bar Date meant that Mr. Ellis had no further rights at all. That led to the following exchange:

> MR. SOLLER: That's what he has to do to preserve his claim. He has to file the notice of claim.
>
> THE COURT: Or tough luck.
>
> MR. SOLLER: No. Or he can file an untimely notice and claim that there was cause for him to file an untimely notice, because he didn't understand or that --
>
> THE COURT: So he could file it tomorrow morning. Mr. Sansone could file one as a precautionary matter on Mr. Ellis' behalf tomorrow morning?
>
> MR. SOLLER: Right. And then go to the Southern District of New York and say, "Here's the cause why we didn't file it on or before August 31, 2018."

*See Hr'g Tr.* Case No. 18-01442, Jan. 15, 2020 at 18:15-19:1 (W.D. Pa.). WEC's counsel also noted that if Mr. Ellis were permitted to file a late claim, he could then seek relief from the automatic stay to allow him to liquidate the claim in a court other than the Bankruptcy Court. *Id.* at 19:13-20:15.

Towards the end of the hearing the Pennsylvania District Judge expressed concern that WEC had filed a motion asking this Court to rule on issues that had already been briefed for decision in Pennsylvania. *Id.* at 55:10- 58:14. He asked that WEC postpone a hearing on its motion in this Court and said that if WEC did not do so he would consider entry of an order compelling WEC to do so. *Id.* at 52:13-52:21, 55:20-58:14. The parties agreed to adjourn the hearing on WEC's motion to this Court, and thereafter WEC filed a notice of adjournment. (ECF No. 4525). WEC's motion to this court was never rescheduled and no hearing was held.

The District Court in the Pennsylvania Action denied WEC's summary judgment motion in a decision and order dated August 5, 2020. *Ellis v. Westinghouse Elec. Co*. 2:18-cv-01442, 2020 WL 4499931 (W.D. Pa. 2020). WEC then appealed to the Third Circuit Court of Appeals. In its brief on appeal, filed January 19, 2021, WEC noted again that "requests for payment of administrative claims must be 'timely' filed, and that the only way to seek and receive late payment of such an expense is by securing the bankruptcy court's permission 'for cause.'" *Brief for Appellant* at 20-21 *Ellis v. Westinghouse Electric Co., LLC*, Case No. 20-2867 (3d Cir. Jan. 19, 2021). WEC added that "[i]f Ellis had a good reason why he failed to assert his claim by the bar date, he could have advised the Bankruptcy Court and requested more time. He did not – and indeed has still not – filed a claim." *Id*. at 39.

In his responsive brief, Mr. Ellis continued to argue that he was not barred from suing WEC. He argued that his original failure to file an administrative claim in Bankruptcy Court was due to lack of notice, misunderstanding and the fact that a Westinghouse employee had previously told him (two months before his termination) that the bankruptcy did not affect him. *Brief for Appellee,* Case No. 20-2867 (ECF No. 24) *Ellis v. Westinghouse Electric Co., LLC*, Case No. 20-2867 (3d Cir. Feb. 17, 2021). However, Mr. Ellis also identified tactical reasons why he had elected not to pursue relief in the Bankruptcy Court. He argued:

> In addition, the bankruptcy court is not a proper forum in which Mr. Ellis could have a full and fair opportunity to prosecute his ADEA claim. Even had Mr. Ellis received proper notice and filed a proof of claim for this alleged administrative expense, he would have been forced to litigate his claim in a forum not designed for resolution of employment discrimination claims . . . Moreover, Mr. Ellis would be forced to waive his rights to a jury trial guaranteed to him by the ADEA. In addition, no precedent exists to support the notion that a bankruptcy judge has the equitable power of reinstatement, which is one of the powers granted to an Article III judge by ADEA.

*Id*. at 9.  In its reply, WEC argued that Ellis had had a full and fair opportunity to pursue relief in

the Bankruptcy Court, that he had simply elected to forego that opportunity, and that he had no

right to pursue WEC.  *Reply Brief for Appellant* at 15, 20-21 n.6, (ECF No. 32).

The Court of Appeals heard argument on the appeal on April 6, 2021.  Hr'g Transcript,

Case No. 20-1867 April 6, 2021 (ECF No. 40).  One member of the panel posed the following

question to Mr. Ellis's counsel:

> You said in your brief that the employment discrimination claim could only
> be resolved by an Article III judge, not a bankruptcy judge, but wouldn't the
> typical reaction is, we're in Bankruptcy Court, he got discharged, therefore,
> shouldn't the first place you look is, do I possibly have a claim in the
> Bankruptcy Court, at least prophylactically file a claim in the bankruptcy
> case just to preserve my position.

*Hr'g Tr*. April 6, 2021 at 23:10-17.  When Mr. Ellis's counsel argued that doing so would have

impinged on the right to a jury trial, Judge Bibas noted that Mr. Ellis could have asked (once a

bankruptcy claim had been filed) to lift the automatic stay and for permission to liquidate his

claim in another court.  *Id*. at 24:2-8

The Third Circuit Court of Appeals issued its decision on August 30, 2021.  The Court

held that Mr. Ellis's claim was an administrative expense claim for purposes of the Bankruptcy

Code and the Plan; that the Plan and the Confirmation Order discharged all such claims that

arose before the Effective Date; that these actions were in compliance with the terms of section

1141 of the Bankruptcy Code; and that Mr. Ellis therefore was precluded from pursuing claims

against WEC.  The Court of Appeals held that Mr. Ellis's only recourse was to file a motion in

this Court seeking permission to pursue an untimely administrative expense claim "for cause."

*See Ellis v. Westinghouse Electric Co*., LLC, 11 F.4th 221, 226, 237, 238-39, 239 n. 12 (3d Cir.

2021).

After remand, the Pennsylvania District Court granted summary judgment in favor of WEC October 8, 2021. [Case No. 2:18 cv1442 (W.D. Pa.) (ECF No. 80)].

### The Pending Motion

On November 2, 2021, Mr. Ellis filed a motion before this Court, seeking relief from the Administrative Bar Date and seeking permission to file his administrative claim.  (ECF No. 4633)   Mr. Ellis argued that although the request to file a late proof of claim came three years after the Administrative Bar Date, there were extraordinary circumstances in this case to warrant the relief, including that (i) he had raised novel legal questions that were not resolved until the Third Circuit rendered its decision; (ii) he allegedly had received misleading information from Westinghouse's head of Human Resources in March 2018; and (iii) he did not receive the Effective Date Notice and, even if he received it, its terms were not clear.

Wind Down Co. opposed the motion.  It argued that (i) the length of the delay precludes a finding of excusable neglect; (ii) pursuing a mistaken legal strategy is not a ground for excusable neglect or for relief based on "cause;" (iii) Mr. Ellis made a conscious tactical decision not to file a claim in the Bankruptcy Court; (iv) the issue as to the adequacy of the notice was already adjudicated and rejected by the Pennsylvania District Court; and (v) allowing the late claim would be prejudicial to Wind Down Co, the Debtors' chapter 11 estates, and other creditors.

### The Applicable Legal Standards

In his motion, Mr. Ellis sought relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure (as incorporated by Rule 9024 of the Federal Rules of Bankruptcy Procedure) and under Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure.  In response to questioning by the Court at the Hearing, however, counsel acknowledged that Mr. Ellis was only seeking relief pursuant to a Rule 9006(b)(1).  *Hr'g Tr.* Jan, 19, 2022 at 6:19-7:6 (ECF No. 4642).   Rule

10

9006 of the Federal Rules of Bankruptcy Procedure states that if an order of the court requires an action to be taken on or before a particular date, and if the action is not taken by the specified deadline, the court nevertheless may extend the deadline after the fact, and may permit the act to be done belatedly, "where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1)(2).

Section 503(a) of the Bankruptcy Code also provides that the Court may allow the untimely filing of a request for payment of an administrative expense payment "for cause." 11 U.S.C. § 503(a). Most courts have applied the "excusable neglect" standards of Rule 9006 in deciding whether "cause" for relief exists under Section 503(a). *See*, *e.g.*, *In re Bluestem Brands, Inc.*, 20-10566 (MFW), 2021 WL 3174911, at *2 (Bankr D Del July 27, 2021); *In re AMF Bowling Worldwide, Inc.*, 520 B.R. 185, 196 (Bankr. E.D. Va. 2014); *In re Bridgeview Aerosol, LLC*, No. 09 B 41021, 2010 WL 2465401, at *2 (Bankr. N.D. Ill. June 16, 2010); *In re UAL Corp.*, 02-B-48191, 2009 WL 4068023, at *6 (Bankr. N.D. Ill. Nov. 24, 2009) (noting that "nearly all of the courts considering a request for leave to file a late administrative claim under § 503(a)(1) have applied the excusable neglect standard" and citing numerous prior decisions to that effect). Mr. Ellis has not argued that relief for "cause" would be governed by any standards other than the "excusable neglect" standards that apply under Rule 9006. For completeness, the Court nevertheless has separately considered both the "excusable neglect" standard and also whether any "cause" for relief might otherwise arguably exist.

## Excusable Neglect

The leading decision on the application of "excusable neglect" standards is the decision of the United States Supreme Court in *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer*, an attorney filed a claim twenty

days after the bar date. The attorney claimed that he had been experiencing a major and significant disruption in his life due to his withdrawal from his former law firm, and that he was unaware of the bar date until after the bar date had passed. The Supreme Court held that the wording of Rule 9006 shows that relief may be available even if a deadline is missed due to neglect, which includes instances in which deadlines are missed due to carelessness or inattentiveness. It further held that for this purpose, the term "neglect" encompasses "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id*. at 388. The Supreme Court also held that the determination of whether neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395. The relevant factors include: (1) the danger of prejudice; (2) the length of the delay and its potential impact on proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id*. at 396-97.

Applying these principles, the Supreme Court held in *Pioneer* that excusable neglect had been demonstrated. *Id*. at 397-99. The Supreme Court confirmed that parties are responsible for the conduct of their attorneys, and it held that clients cannot obtain relief from deadlines that their lawyers missed unless the lawyers' own neglect was excusable. *Id.* at 397. The Court also gave "little weight" to the fact that counsel was allegedly experiencing upheaval in his law practice. *Id*. at 398. However, since the bar date notice had been set forth in a notice of a creditor meeting, without any indication in the title of the notice that it also included information about a bar date, the Supreme Court held that counsel's admitted lack of actual knowledge of the bar date, coupled with a lack of prejudice and a demonstration of good faith, constituted excusable neglect. *Id*. at 398-99.

12

The Second Circuit has taken what it has called "a hard line" in applying the *Pioneer* factors. *See Midland Cogeneration Venture L. P. (In re Enron Corp.)*, 419 F.3d 115, 122 (2d Cir. 2005) (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003), cert. denied sub nom. *Essef Corp. v. Silivanch*, 540 U.S. 1105, 124 S.Ct. 1047, 157 L.Ed.2d 890 (2004). In *Silivanch*, the Second Circuit applied the Pioneer factors in determining whether an untimely filing of an appeal was due to excusable neglect. The court held that the third of the Pioneer factors – the reason for a delay and whether it was in the reasonable control of the movant – is to be given the most weight in determining whether excusable neglect has been shown. 333 F.3d at 366 n.7. The Second Circuit further instructed that if a deadline is clear and understood, but is missed anyway, "we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test," even if other factors favor the movant. *Id*. at 366-67. In a later decision, the Second Circuit emphasized again that "it is the third factor – the reason for delay – that predominates, and the other three are significant only in close cases." *Matter of Pac. Drilling S.A.*, 616 BR 634, 643 (Bankr S.D.N.Y. 2020) (citing *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004); *see also Enron Corp.*, 419 F.3d at 122 (rejecting a request for relief from a bar date based on allegations of excusable neglect).

The burden of proving "excusable neglect" rests with the party who seeks relief. *In re Tronox Inc.*, 626 B.R. 688, 725 (Bankr. S.D.N.Y. 2021) (citing, *Enron Corp.*, 419 F.3d at 121). The Court will apply the *Pioneer* factors, starting first with the fact that is to be given the greatest weight pursuant to the Second Circuit's instructions.

## A.    Reasons for the Delay/Whether Action was Within Movant's Control

Mr. Ellis has asserted a number of separate reasons why he believes that his delay was not within his reasonable control and why the delay therefore should be excused.

13

  <u>First</u>, Mr. Ellis argues that the delay was reasonable because his pursuit of the
Pennsylvania Action raised novel legal issues, and a definitive resolution of those issues was not
reached until the Third Circuit ruled that his claim was an administrative claim subject to the
Administrative Bar Date.  However, the above chronology makes it abundantly clear that Mr.
Ellis was advised, no later than November 2019, that he was proceeding at his own peril if he did
not also file a protective motion in this Court seeking permission to file a late claim and thereby
protecting his rights in the event his arguments against WEC did not prevail.  The bankruptcy
arguments and principles were spelled out to Mr. Ellis and his counsel; the practical
consequences of their choices were made clear; they were informed that a protective motion
should be filed if Mr. Ellis sought to preserve any rights in this Court; and yet Mr. Ellis took no
such action.  In short, Mr. Ellis and his counsel chose to put all their eggs in one basket and
decided to pursue claims against WEC to the exclusion of other alternatives.  This legal choice
turned out to be a wrong one, but it was a choice that was knowingly made.

  This was not "neglect" of the kind envisioned by Rule 9006.  "Legal mistakes are usually
not considered excusable neglect."  *Michigan Self-Insurers' Sec. Fund v. DPH Holdings Corp.
(In re DPH Holdings Corp.)*, 434 B.R. 77, 84, 85 (S.D.N.Y. 2010) (holding that the creditor's
erroneous belief ''that it did not possess a claim against the Debtors as of the Bar Date" was not
a valid ground for excusable neglect); *In re Motors Liquidation Co*., 576 B.R. 761, 778-79
(Bankr. S.D.N.Y. 2017) (concluding that a claimant's argument that he could not file a proof of
claim until his state law claim accrued was a mistake of law, which does not constitute excusable
neglect); *In re Mother Hubbard, Inc.*, 152 B.R. 189, 193-94 (Bankr. W.D. Mich.
1993) ("Although [the creditor] may have made a bad decision in failing to timely file his claim,

making such a conscious decision is not 'excusable.'  Indeed [the creditor's] decision is not

'neglect' -- it was a voluntary omission within his sole control.").

Mr. Ellis and his counsel knew what they were doing and knew the risks that they were

taking.  Their delay in seeking relief in this Court was entirely in their control.  They knew what

the consequences of inaction would be if their arguments failed in Pennsylvania.  They

nevertheless elected to proceed solely in Pennsylvania and to seek no protective relief here.

There is no equity in their current contention that they should be freed from the obvious

consequences of the choices that they made merely because those choices turned out to be bad

ones.  Courts do not extend bar dates where claimants are found to have made "conscious,

tactical decision[s]" not to file timely claims as it is "a voluntary omission within [the creditor's]

control."  *Enron Corp.*, 419 F.3d at 127.  The pursuit of legal remedies always involves choices

and deadlines, and the legal system cannot function properly unless the consequences of those

choices are enforced.  *Silivanch*, 333 F.3d at 367-368 (explaining that "the legal system would

groan under the weight of a regimen of uncertainty in which time limitations were not rigorously

enforced—where every missed deadline was the occasion for the embarkation on extensive trial

and appellate litigation to determine the equities of enforcing the bar.")

Second, Mr. Ellis argued that there are grounds to excuse Mr. Ellis's late filing because

Mr. Ellis allegedly was affirmatively misled when Westinghouse's HR director said, in March

2018, that prior bankruptcy notices were of no concern to Mr. Ellis.  But that conversation took

place two months *before* Mr. Ellis was terminated, as the Pennsylvania District Court noted

during oral argument of the summary judgment motion.  Jan. 15, 2020 Hr'g Tr. at 45:23-46:13.

In addition, the comments were just advice about where Mr. Ellis stood as of March 2018, and

that advice apparently was correct at the time it was given.  Nobody could reasonably have

interpreted the March 2018 comments as meaning that the bankruptcy case and its claims process

would be irrelevant to Mr. Ellis *even if* Mr. Ellis's employment was later terminated.

More importantly, a party who misses a deadline (such as Mr. Ellis), and who wishes

relief based on equitable considerations, must act promptly to take the action that should have

been taken earlier.  It is therefore not enough for Mr. Ellis to focus on reasons why he allegedly

did not file a claim in August 2018.  Instead, he must explain the full delay of more than three

years that occurred before he sought permission to file such a claim.  *See, e.g., In re AMR Corp.*,

492 B.R. 660, 667 (Bankr. S.D.N.Y. 2013), (holding that a three-month delay after learning of a

missed deadline was an unreasonable delay in applying the *Pioneer* factors); *Board v. AMF

Bowling Worldwide, Inc. (In re AMF Bowling Worldwide, Inc.)*, 520 B.R. 185, 196–97 (Bankr.

E.D. Va. 2014), *aff'd*, 533 B.R. 144 (E.D. Va 2015) (unknown creditor receiving notice of the

administrative claim bar date by publication failed to demonstrate excusable neglect where

creditor waited more than a year before commencing lawsuit against debtor in state court

alleging a post-petition personal injury claim, and only filed a motion for enlargement in

bankruptcy case at state court judge's direction, six months after she received actual notice of the

bankruptcy); *Toscano v. RSH Liquidating Trust (In re RS Legacy Corp.)*, 577 B.R. 134, 142

(Bankr. D. Del. 2017) (refusing to find excusable neglect where creditor with actual notice of the

bar date first learned about her potential claim after the bar date but waited an additional eleven

months before asserting a claim); *Seven Oaks Partners, LP v. Licata (In re Seven Oaks Partners,

LP)*, 749 Fed. Appx. 67, 69 (2d Cir. 2019) (summary order) (once creditor had knowledge of

bankruptcy and of allegedly incorrect listing it was creditor's obligation to file a claim); *In re

Majestic Holdco, LLC*, No. 09-14142 (KG), 2013 Bankr. LEXIS 657, at *12, 16 (Bankr. D. Del.

Feb. 21, 2013) (five-month delay after learned of error barred relief); *State Dep't of Envtl. Prot.*

*v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, No. 01-1139 (JKF), 2008 WL 687357, at *4 (D.

Del. Mar. 11, 2008) (4-year delay).

Even if the March 2018 conversation with an HR Director had somehow confused Mr.

Ellis in July and August 2018 (a question about which the Court has strong doubts), any such

confusion was plainly cleared up no later than November 2019, when WEC filed its summary

judgment motion in the Pennsylvania Action.  If it was Mr. Ellis's alleged confusion that had

prevent him from taking action before November 2019, then he could and should have

immediately filed a motion seeking permission to file an untimely administrative expense claim.

It was entirely within the control of Mr. Ellis and his counsel to seek relief from this Court

promptly after the underlying issues had been explained to them.  They did not do so, and the

March 2018 conversations with an HR director cannot explain their failure to do so.

Third, Mr. Ellis argues that he either did not receive the notice of the Administrative Bar

Date or that the applicability of the notice to his claims was unclear.  It appears that the

Pennsylvania District Court has already decided these points adversely to Mr. Ellis.  It does not

matter, however, because Mr. Ellis's arguments about his receipt of the notice, and about the

allegedly confusing language of the notice, do not explain the full three-year delay that Mr. Ellis

seeks to excuse.  Any possible confusion over the application of the Administrative Bar Date to

Mr. Ellis's claims was cleared up no later than November 2019, when the bankruptcy issues

were explained in clear detail in the Pennsylvania Action and where Mr. Ellis's recommended

course of action was also plainly identified.  The entire two-year period of Mr. Ellis' delay after

that time was under the control of Mr. Ellis and his counsel, yet Mr. Ellis still took no action.

Fourth, Mr. Ellis suggests that WEC misled him by not raising the bar date issues until

November 2019.  Here, once again, Mr. Ellis wrongly argues as though the only delay that he

needs to excuse is his initial failure to file a claim in August 2018, and as though the two years of

his own conscious delays after November 2019 were of no consequence at all.  The chronology

makes clear that even if Mr. Ellis's other excuses had played any role in his prior delays, all of

his delays after November 2019 are attributable solely to his own conscious choices.

Fifth, Mr. Ellis's counsel suggested during oral argument of the pending motion that Mr.

Ellis somehow believed that the District Court in Pennsylvania had directed all of the parties

(including Mr. Ellis) to refrain from taking any action at all in this Court.  I directed the parties to

make supplemental submissions on this point and to highlight the comments that the District

Judge had made. It is quite clear from those submissions, and from the transcript of the

proceedings before the District Court, that the District Court was only concerned that WEC was

asking another court to decide issues (i.e., the effect of the discharge on WEC) that had already

been raised for decision in Pennsylvania, and that the District Court only raised the prospect of

enjoining WEC from pursuing such a duplicative motion.  (Jan. 15, 2020 Hr'g  Tr. 52:16-21.).

The possibility that Mr. Ellis might file a protective motion in this Court was even referenced

during the hearing, and there was no suggestion that the Pennsylvania Court was barring Mr.

Ellis from doing so.  To the contrary: the Pennsylvania District Judge noted that it would be a

prudent thing for Mr. Ellis to do.  [Jan. 15, 2020 Hr'g Tr. 18:21-19:1].

Sixth, Mr. Ellis's counsel has argued that WEC filed a motion in this Court and that he

assumed, therefore, that Mr. Ellis's rights were protected and that Mr. Ellis would retain those

rights when the purported "stay" was lifted in the proceedings in this Court.  This contention –

which amounts to an assertion that Mr. Ellis thought he had already been made part of the

bankruptcy proceedings – is belied by Mr. Ellis's arguments in Pennsylvania and in the Third

Circuit, where Mr. Ellis took the position that he was not part of the bankruptcy case and where

he attempted to explain the reasons why he had not proceeded in this Court.  In any event, there was nothing about Westinghouse's motion in the Bankruptcy Court that made Mr. Ellis a party to anything with Wind Down Co. or that constituted the assertion, by Mr. Ellis, of an administrative claim against Wind Down Co.  WEC's motion just asked for an injunction that would have stopped Mr. Ellis from proceeding in Pennsylvania, and that motion was never heard and eventually became moot.  WEC's motion made clear that Mr. Ellis had *not* filed a claim against Wind Down Co., and there was absolutely nothing about the motion that Mr. Ellis or his counsel could reasonably have interpreted as meaning that they had effectively already filed such a claim or that they did not need to do so.

Finally, throughout his papers Mr. Ellis seeks to downplay the distinctions between WEC and Wind Down Co., treating them as though they are one and the same and suggesting at times that his pursuit of the wrong entity (WEC) should be excused.  It is not necessary for me to decide whether Mr. Ellis and his counsel actually labored under such a misunderstanding at any time, or whether such confusion could have been reasonable.  The distinctions between WEC and Wind Down Co. were plainly explained in the papers filed in the Pennsylvania Action no later than November 2019.  Mr. Ellis and his counsel had to know – they were told so clearly – that by proceeding with a claim against WEC they were *not* pursuing a claim against Wind Down Co., which was a separate legal entity under the supervision of this Court.  They nevertheless elected to proceed only against WEC.

The reasons for Mr. Ellis's delay (namely his conscious tactical choices), and the fact that the delays were within his control, weigh heavily against his motion for relief.

B.      **Length of the Delay**

As the above discussion makes clear, the delay that Mr. Ellis seeks to excuse is an

extremely lengthy one, and no explanation (other than his desire to be relieved from the

consequences of his own choices) has been offered to explain the delays that occurred since

November 2019.  This factor also weighs strongly against Mr. Ellis's motion.

C.      **Prejudice**

If Mr. Ellis had sought relief two years ago (or earlier), and if relief had been granted

then, Wind Down Co. could have taken discovery and litigated the merits of Mr. Ellis's claim.

That would have taken place during a time when Wind Down Co. was also resolving many other

claims and proceedings.  Now, however, the situation is different.  Wind Down Co. has almost

completed the resolution of claims.  It has made substantial distributions and looks forward to the

date when it can make the final distributions to a large creditor whose claim was subordinated

under the terms of the Plan.  The late filing of Mr. Ellis's claim, if permitted, would only result

in further delays and would be prejudicial to Wind Down Co. and to other creditors.  The

prejudice weighs against Mr. Ellis's motion.

Wind Down Co. argues that the allowance of Mr. Ellis's motion could also open the

floodgates to similar motions by other creditors.  As the Court recognized in *Motors Liquidation*,

"[a]llowing even a single late claim risks inspiring similar efforts from creditors who also missed

the bar date." 600 B.R. at 491; *see also In re Lehman Brothers Holdings Inc.*, 433 B.R. 113, 121

(Bankr. S.D.N.Y. 2010) (prejudice to the debtor was "not traceable to the filing of any single

additional claim but to the impact of permitting exceptions that will encourage others to seek

similar leniency").  In this particular case, however, I am not aware of any circumstances

suggesting that a flood of similar motions would await me if I were to grant relief to Mr. Ellis.  I

therefore decline to rely on this particular assertion as a separate finding of "prejudice" to Wind Down Co. in the event the motion were to be granted.

### D.    Good Faith

Some of the arguments that Mr. Ellis and his counsel have asserted are strained, but I do not question their good faith in pursuing the motion.  However, "good faith" by itself is not sufficient to entitle a movant to relief.  *Silivanch v Celebrity Cruises, Inc.*, 333 F.3d at 366 ("rarely in the decided cases is the absence of good faith at issue"); *In re Motors Liquidation Co.*, 619 B.R. 63, 80 (Bankr. S.D.N.Y. 2020) ("the presence of good faith is almost never a determinative factor in the *Pioneer* analysis").

Consideration of the *Pioneer* factors plainly shows that Mr. Ellis's motion should be denied.  His delays were lengthy; they were of his own conscious choosing; they were under his full control; and allowing a late claim to be filed now, after such long delays, would be prejudicial to other parties in interest.

### "Cause" Under Section 503(a)

Section 503(a) of the Bankruptcy Code provides that "for cause" a court may permit an untimely administrative claim to be filed.  11 U.S.C. § 503(a).  As noted above, most courts have held that the "excusable neglect" factors govern a determination of whether "cause" exists to permit a late filing, and Mr. Ellis has not argued otherwise.  Even if section 503(a) arguably could permit relief where "excusable neglect" standards would not do so, however, I find no circumstances in this case that provide any just "cause" for relief.  Litigants must live with the consequences of their deliberate choices.  The motion does not establish "cause" for relief under section 503(a) of the Bankruptcy Code just because Mr. Ellis and his counsel made litigation judgments that turned out to be mistaken.

21

## **Conclusion**

For the foregoing reasons, the motion by Mr. Ellis for permission to file a late

administrative claim is denied.  A separate Order will be entered to reflect the Court's ruling.

Dated: New York, New York
          February 15, 2022

                                              /s/ **Michael E. Wiles**
                                              UNITED STATES BANKRUPTCY JUDGE